**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLUMBIA**

| | |
|---|---|
| IN RE DOMESTIC AIRLINE TRAVEL ANTITRUST LITIGATION | MDL Docket No. 2656 Misc. No. 15-1404 (CKK) |
| This Document Relates To: | JURY TRIAL DEMANDED |
| ALL CASES | |

**MEMORANDUM IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT WITH DEFENDANT SOUTHWEST AIRLINES CO.**

## I.        INTRODUCTION

Plaintiffs, on their own behalf and on behalf of all others similarly situated, respectfully submit this memorandum in support of their motion for preliminary approval of the settlement ("Settlement") reached with Defendant Southwest Airlines Co. ("Southwest").  The proposed Settlement, pursuant to which Southwest has agreed to provide a $15 million cash payment and significant cooperation to Plaintiffs in pursuing their case against the non-settling Defendants, will resolve this case against Southwest.[1]  This icebreaker settlement was reached after hard-fought, arm's-length negotiations by experienced counsel over the course of three months.  As demonstrated below, the proposed Settlement, which is the first settlement in the case, is an excellent result for the Class.  It plainly "falls within the range of possible judicial approval"[2] and is "sufficiently within the range of reasonableness"[3] that notice to the class and a hearing on final approval is warranted.

## II.       BACKGROUND

### A.        The Litigation

Beginning in July of 2015, numerous cases were filed around the country against the four largest commercial air passenger carriers in the United States—Southwest, American Airlines, Inc. ("American"), Delta Air Lines, Inc. ("Delta"), and United Airlines, Inc. ("United") (collectively, "Defendants")—alleging that they violated Section 1 of the Sherman Act, 15 U.S.C. § 1, by, *inter alia*, colluding to limit capacity and increase prices for domestic airfares on the respective airlines.  The cases were consolidated and assigned to this Court by the Judicial

---

[1]  A copy of the Settlement Agreement is attached as Exhibit A to the Declaration of Hilary K. Scherrer ("Scherrer Decl.").  All capitalized terms herein shall have the same meaning they have in the Settlement Agreement.
[2]  *Richardson v. L'Oreal USA*, 951 F. Supp. 2d 104, 107 (D.D.C. 2013); *In re Vitamins Antitrust Litig.*, 1999 WL 1335318, at *5 (D.D.C. Nov. 23, 1999).
[3]  *Vista Healthplan, Inc. v. Bristol-Myers Squibb Co.*, 266 F. Supp. 2d 44, 44 (D.D.C. 2003).

Panel on Multidistrict Litigation in October 2015, and Hausfeld LLP and Cotchett, Pitre & McCarthy LLP were appointed Interim Co-Lead Counsel on February 4, 2016. ECF No. 76.

In May 2016, Defendants filed a joint motion to dismiss arguing that Plaintiffs had not sufficiently alleged a conspiracy or facts sufficient to establish their standing.  ECF No. 106.  Southwest also filed a separate motion to dismiss arguing, *inter alia,* that it employs a fundamentally different business model than the other Defendants and it was an aggressive competitor, not a conspirator.  ECF No. 110.  The Court denied both motions to dismiss, ECF No. 2124, and the parties commenced discovery in early 2017.

To date, Defendants have produced over 638,000 documents and extensive transactional data.  Scherrer Decl. at ¶ 11.  Additionally, some sixteen third parties have produced over 88,000 documents.  *Id.*  Plaintiffs' Counsel have reviewed a significant majority of these documents and have been working with their experts to analyze the transactional data.  *Id.*

**B.     The Settlement Negotiations And The Settlement Terms**

Interim Co-Lead Counsel and counsel for Southwest first discussed settlement in September 2017.  Thereafter, over the course of three months the parties engaged in hard-fought, arm's length transactions.  *Id.* at ¶¶ 5-6.  The parties participated in numerous in-person and telephonic negotiation sessions and exchanged positions and drafts by email.  *Id.* at ¶ 6.  The settlement amount and other key terms of the agreement between the parties were memorialized in an enforceable Memorandum of Understanding, dated November 20, 2017.  *Id.* at ¶ 7.  Thereafter, the parties continued negotiations regarding the detailed provisions of a Settlement Agreement, which was executed on December 20, 2017.  Scherrer Decl. at ¶ 8.  Southwest's counsel, who are highly experienced and capable, vigorously advocated their client's positions in the settlement negotiations.  *Id.* at ¶ 9.  Interim Co-Lead Counsel, who were well-informed of the

facts and issues concerning liability and damages and the relative strengths and weaknesses of

each side's litigation position, vigorously advocated Plaintiffs' positions. *Id.* at ¶ 10.

Pursuant to the Settlement Agreement, Southwest will make a cash payment of $15

million and provide extensive cooperation, including the following:

- Southwest's Counsel shall provide a full account of facts then known to Southwest that are relevant to the claims asserted in the Action, including, but not limited to, facts related to the alleged conduct, the specific locations and dates of and participants in meetings and communications relating to the alleged conduct, the alleged conduct's effect on pricing and profitability in the domestic air transportation industry, the identities of persons that have knowledge of facts related to the alleged conduct, including current and former employees of Southwest, the other Defendants, and third parties, and the role of institutional investors and analysts in the domestic air transportation industry;

- Southwest's Counsel shall facilitate an informational meeting or meetings between Plaintiffs' Counsel and an industry expert regarding the domestic air transportation industry, including issues related to market conditions, competition, capacity, pricing, costs, data, revenue management, and other business operations. Southwest will pay for up to sixteen (16) hours of the industry expert's time;

- At Southwest's expense, Southwest shall use its good faith best efforts to make available for interviews with Plaintiffs' Counsel and/or their experts up to seven (7) current Southwest employees at the Vice President level or lower or former Southwest employees at the Vice President level or lower represented by Southwest's Counsel, as designated by Plaintiffs' Counsel.;

- Southwest shall use its good faith best efforts to make available up to three (3) current Southwest employees at the Vice President level or lower or former Southwest employees at the Vice President level or lower represented by Southwest's Counsel, as designated by Plaintiffs' Counsel, to provide deposition testimony in the Action;

- Southwest shall use its good faith best efforts to make available up to two (2) current Southwest employees at the Vice President level or lower or former Southwest employees at the Vice President level or lower represented by Southwest's Counsel, as designated by Plaintiffs' Counsel, to provide a declaration or affidavit;

- With respect to senior executive management (above Vice-President level), Southwest, at a time mutually agreeable to the parties but in all events prior to the close of fact discovery, will provide information gathered from those senior executives through an attorney proffer session(s).  At a later date, and upon Plaintiffs' request, Southwest will undertake good faith best efforts to provide information in an admissible evidentiary format (via affidavit/declaration or otherwise) in response to a reasonable number of targeted, specific requests for particular information; and

- Southwest shall use its good faith best efforts to make available for testimony at trial in the Action one (1) then-current Southwest employee at the Vice President level or lower designated by Plaintiffs' Counsel who possesses information, based on Plaintiffs' Counsel's good faith belief, that would assist Class Plaintiffs in the trial of the Class Plaintiffs' claims as alleged in the Action.

Settlement Agreement at ¶¶ 37, 45-53.

The cooperation provided pursuant to the Settlement Agreement does not commence until after the Court grants preliminary approval. *Id.* at ¶¶ 45-53. Accordingly, the Settlement is contingent upon preliminary approval by the Court within 45 days of the filing of this motion. *Id.* at ¶ 27. This is because the cooperation becomes less valuable if it is not provided in a timely manner such that it can be used in the ongoing litigation against the non-settling Defendants.

In addition, Southwest will stipulate to the certification of the following Settlement Class for settlement purposes only:

> All persons and entities that purchased air passenger transportation services for flights within the United States and its territories and the District of Columbia from Defendants or any predecessor, subsidiary or affiliate thereof, at any time between July 1, 2011 and December 20, 2017. Excluded from the class are governmental entities, Defendants, any parent, subsidiary or affiliate thereof, Defendants' officers, directors, employees, and immediate families, and any judges or justices assigned to hear any aspect of this action.

*Id.* at ¶ 22. In exchange for the consideration described above, members of the Settlement Class shall release Southwest from any and all claims that were or could have been alleged in this Action. *Id.* at ¶¶ 32-34.[4] Claims against the non-settling Defendants are not released by the Settlement and the sales of domestic air passenger transportation services by Southwest to Class Members shall remain in the case against the Non-Settling Defendants. *Id.* at ¶ 63.

---

[4] The full text of the proposed release, including the limitations thereof, is set forth in the Settlement Agreement. *Id.* ¶¶ 32-34.

4

### III.     LEGAL STANDARD

"Review of a proposed class action settlement generally involves two hearings.  First, counsel submit the proposed terms of the settlement and the judge makes a preliminary fairness evaluation."  Manual for Complex Litigation (Fourth) § 21.632, at 414 (1st ed. 2004) ("Manual").  At the second stage of the approval process, the court conducts a formal fairness hearing at which "the proponents of the settlement must show that the proposed settlement is 'fair, reasonable and adequate.'"  *Id.* § 21.634, at 414; *see also In re Vitamins Antitrust Class Actions,* 215 F.3d 26, 30 (D.C. Cir. 2000); *Pigford v. Glickford,* 206 F.3d 1212, 1215 (D.C. Cir. 2000); *United States v. Dist. of Columbia,* 933 F. Supp. 42, 47 (D.D.C. 1996).

Under these standards, the court reviews the proposed settlement at the preliminary approval stage to determine whether it is "sufficiently within the range of reasonableness so that notice of the proposed settlement should be given."  *Vista Healthplan, Inc. v. Bristol-Myers Squibb Co.*, 266 F. Supp. 2d 44, 44 (D.D.C. 2003); *see also Meijer, Inc. v. Warner Chilcott Holdings Company III, Ltd.,* No. 05 Civ. 2195, Dkt. 172 at ¶1 (D.D.C. Jan. 2, 2008) (granting preliminary approval of class settlement because it was "sufficiently fair, reasonable and adequate to authorize dissemination of notice to the class") (Kollar-Kotelly, J.); *In re Ampicillin Antitrust Litig.*, 526 F. Supp. 494, 496 (D.D.C. 1981); *In re Traffic Exec. Ass'n,* 627 F.2d 631, 633-34 (2d Cir. 1980); Manual at § 30.41.

In *Richardson*, the court stated that it "will generally grant preliminary approval of a class action settlement if it appears to fall 'within the range of possible approval' and 'does not disclose grounds to doubt its fairness or other obvious deficiencies, such as unduly preferential treatment of class representatives or of segments of the class, or excessive compensation for attorneys."  951 F. Supp. 2d at 106; *accord In re Vitamins Antitrust Litig.*, 2001 WL 856292, at

*4 (D.D.C. July 25, 2001) (same); Manual at § 21.632; 4 Newberg on Class Actions § 13.13 at 310 (5th ed. 2014) ("[T]he goal of preliminary approval is for a court to determine whether notice of the proposed settlement should be sent to the class, not to make a final determination of the settlement's fairness.  Accordingly, the standard that governs the preliminary approval inquiry is less demanding than the standard that applies at the final approval phase."); *Heldt v. Payday Financial, LLC*, 2016 WL 96156, at *6 (D.S.D. Jan. 8, 2016) (same).

Additionally, "[a] presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's length negotiations between experienced, capable counsel after meaningful discovery."  *In re Vitamins Antitrust Litig.,* 305 F. Supp. 2d 100, 104 (D.D.C. 2004) ("*Vitamins II*") (citing Manual at § 30.42). "Thus the function of the reviewing court is not to substitute its judgment for that of the parties to the decree, but to assure itself that the terms of the decree are fair and adequate and are not unlawful, unreasonable, or against public policy." *Dist. of Columbia*, 933 F. Supp. at 46-47.

While the court generally has discretion to decide whether to approve or reject a proposed settlement, *see Mayfield v. Barr,* 985 F.2d 1090, 1092 (D.C. Cir. 1993), the court's decision "is constrained by the 'principle of preference' favoring and encouraging settlement in appropriate cases." *Vitamins* II, 305 F. Supp. 2d at 103.  This preferential treatment is a matter of public policy in this Circuit, which strongly favors and encourages settlements, particularly in class actions and other complex matters, to avoid the inherent costs, delays, and risks of continued litigation.   As this Court stated earlier this year in an opinion granting preliminary approval of a class settlement, "[t]here is a longstanding judicial attitude favoring class action settlements." *Prince v. Aramark Corp.,* No. 16-cv-1477, Dkt. 33 at 9 (D.D.C. March 14, 2017) (Kollar-Kotelly, J.); *see also Meijer Inc. v. Warner Chilcott Holdings Co. III Ltd.*, 565 F. Supp. 2d 49, 54

(D.D.C. 2008) (Kollar-Kotelly, J.); *Mayfield,* 985 F.2d at 1092; *United States v. MTU Am. Inc.*, 105 F. Supp. 3d 60, 63 (D.D.C. 2015) ("Settlement is highly favored, as "'[n]ot only the parties, but the general public as well, benefit from the saving of time and money that results from the voluntary settlement of litigation.'") (quoting *Citizens for a Better Environ. v. Gorsuch*, 718 F.2d 1117, 1126 (D.C. Cir. 1983)); *Freeport Partners, LLC v. Allbritton*, No. CIV.A. 04-2030, 2006 WL 627140, at *8 (D.D.C. Mar. 13, 2006) ("Public policy in this Circuit favors settlement of class actions . . . .").

After determining whether to approve a settlement, the court must analyze whether to certify a settlement class under Federal Rule of Civil Procedure 23. *See Thomas v. Albright*, 139 F.3d 227, 234 (D.C. Cir. 1998) ("A 'settlement-only class certification' does . . . depend upon compliance with all of the requirements of Rule 23(a) and (b)."). The proposed settlement class must satisfy the Rule 23(a) requirements referred to as "numerosity, commonality, typicality, and adequacy of representation." *Cohen v. Chilcott*, 522 F. Supp. 2d 105, 113 (D.D.C. 2007). Additionally, the proposed class must meet one of the Rule 23(b) requirements. Here, Plaintiffs seek certification of the proposed settlement class pursuant to Rule 23(b)(3), which requires a showing of "predominance and superiority." *Id.*

However, the Court need not apply the Rule 23 requirements as stringently as it would in reviewing an opposed class certification motion. "[I]f the case is surely going to be settled, then the 'district court need not inquire whether the case, if tried, would present intractable management problems.'" *Thomas*, 139 F.3d at 234 (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1998)); *see also Stewart v. Rubin,* 948 F. Supp. 1077, 1091 (D.D.C. 1996) (recognizing that "manageability and efficiency of a class action settlement is quite different than that in a litigated case").

## IV.     THE COURT SHOULD APPROVE THE SOUTHWEST CLASS SETTLEMENT

The determination of a settlement's fairness "calls for a comparative analysis of the treatment of the class members vis-a-vis each other and vis-a-vis similar individuals with similar claims who are not in the class."  Manual at § 21.62.  This inquiry should "avoid protracted examination of the parties' legal rights," and instead focus on the settlement's "overall fairness to beneficiaries and consistency with the public interest."  *Dist. of Columbia*, 933 F. Supp. at 46-47 (citing *Gorsuch*, 718 F.2d at 1126).

In evaluating the fairness of a proposed class settlement, courts within this Circuit consider a range of factors, including: "(1) whether the settlement is the result of arm's-length negotiations; (2) the terms of the settlement in relation to the strength of plaintiffs' case; (3) the status of the litigation at the time of the settlement; (4) the reaction of the class; and (5) the opinion of experienced counsel."  *Radosti v. Envision EMI, LLC*, 717 F. Supp. 2d 37, 54 (D.D.C. 2010) (Kollar-Kotelly, J.) (citing *Vitamins II*, 305 F. Supp. 2d at 104); *In re Baan Co. Secs. Litig.,* 284 F.Supp.2d 62, 64–67 (D.D.C. 2003).  As discussed in more detail below, the proposed Settlement satisfies these factors.[5]

### A.     The Proposed Settlement Was the Result of Arm's-Length Negotiations Conducted by Experienced Counsel

The parties' negotiations were hard-fought over a period of three months.  Scherrer Decl. at ¶¶ 5-6.  Southwest's counsel, who are highly experienced and capable, vigorously advocated their client's positions in the settlement negotiations.  *Id.* at ¶ 9.  Interim Co-Lead Counsel were well-informed of the facts and issues concerning liability and damages and the relative strengths and weaknesses of each side's litigation position. *Id.* at ¶ 10.  Moreover, they have decades of

---

[5] The reaction of the class cannot be evaluated yet.  Plaintiffs will be able to report on that element in their motion for final approval, which they will file after notice to the Settlement Class.

experience litigating complex antitrust cases and have negotiated settlements in a wide range of cases.  Scherrer Decl. at ¶ 12; *see also* ECF No. 58-1. They used their specific case knowledge and their experience in other cases to negotiate an extremely valuable initial settlement on behalf of the Settlement Class in a complex, difficult case.  Scherrer Decl. at ¶ 12.  In granting preliminary approval to a class settlement several months ago, this Court stated that "[a] presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's length negotiations between experienced, capable counsel after meaningful discovery." *Prince v. Aramark*, Op. at 9-10.  The Court further stated that "[t]he opinion of experienced and informed counsel should be afforded substantial consideration by a court in evaluating the reasonableness of a proposed settlement . . . .  Counsel for both parties in this matter believe the settlement to be fair, reasonable, and adequate, which further weighs in favor of granting preliminary approval."  *Id.* at 12; *accord Vitamins II*, 305 F. Supp. 2d at 104; *Radosti*, 717 F. Supp. 2d at 56; *Meijer*, 565 F. Supp. 2d at 55; *Cohen*, 522 F. Supp. 2d at 121.

**B.      The Proposed Settlement Provides Substantial Value to the Settlement Class In Light of the Strength of Plaintiffs' Case and the Status of the Litigation**

The Settlement provides substantial value to the Settlement Class in light of the attendant risks of continued litigation.  Not only will the $15 million cash payment provide a monetary benefit to Settlement Class Members, the Settlement also preserves their right to recover the entire amount of damages against the Non-Settling Defendants based on joint and several liability (after an offset for the settlement amounts). *See In re Corrugated Container Antitrust Litig.*, No. MDL 310, 1981 WL 2093, at *17 (S.D. Tex. June 4, 1981) (noting that partial settlements preserved plaintiffs' ability to seek the entire amount of damages from non-settling defendants, thus weighing in favor of settlement approval).

While Plaintiffs believe their case against Southwest is strong, there are still many hurdles

to overcome: class certification, *Daubert* motions, summary judgment, trial, and appeals all offer potential stumbling blocks to Plaintiffs securing a recovery for the Settlement Class.  Scherrer Decl. at ¶ 13; *see also Meijer*, 565 F. Supp. 2d at 55 ("complex antitrust litigation is rife with uncertainties, risks, and delays."); *In re Vitamin C Antitrust Litig.*, No. 06-MD-1738 BMC JO, 2012 WL 5289514, at *4 (E.D.N.Y. Oct. 23, 2012) ("Federal antitrust cases are complicated, lengthy, and bitterly fought, as well as costly."). Providing $15 million now through this Settlement avoids these potential barriers and provides the Settlement Class a sure recovery.  For this reason, courts recognize that relatively prompt payment in light of the challenges inherent in litigating class actions weighs in favor of approving settlements.  *See, e.g.*, *Stephens v. US Airways Group, Inc.*, 102 F. Supp. 2d 222, 227 (D.C. 2015) ("[T]he delay in providing relief to the class if this case were to be litigated is a factor strongly supporting the compromise reached by the parties.") (quoting *Luevano v Luevano v. Campbell,* 93 F.R.D. 68, 89 (D.D.C.1981)); *Trombley v. Nat'l City Bank*, 826 F. Supp. 2d 179, 195 (D.D.C. 2011) (same).

The $15 million cash recovery to the Settlement Class is substantially enhanced by the cooperation Southwest will provide.  The value of this cooperation cannot be quantified, particularly in light of the complexities of this case and this industry, in which Plaintiffs seek to establish the existence of a conspiracy among multiple large, sophisticated Defendants, facilitated by their relationships with large institutional investors.  In approving a settlement with defendant Warner Chilcott in the *Meijer* antitrust class action, this Court emphasized the importance of Warner Chilcott's agreement to cooperate with Plaintiffs in their continued litigation against the non-settling defendant, noting that "this cooperation has real value." *Meijer*, 565 F. Supp. 2d at 56.

Similarly, the court in *In re Cathode Ray Tube (CRT) Antitrust Litig.*, MDL No. 1917,

2015 WL 9266493 (N.D. Cal. Dec. 17, 2015), held that the "'provision of such assistance is a substantial benefit to the classes and strongly militates toward approval of the Settlement Agreement.'" *Id*. at *6 (quoting *In re Linerboard Antitrust Litig.*, 292 F. Supp. 2d 631, 643 (E.D. Pa. 2003)); *see also Precision Assocs. v. Panalpina World (Holding) Transp. Ltd.*, No. 08-CV-42 (JG) (VVP), 2013 WL 4525323, at *9 (E.D.N.Y. Aug. 27, 2013); *In re Packaged Ice Antitrust Litig.*, No. 08-MD-01952, 2011 WL 717519, at *10 (E.D. Mich. Feb. 22, 2011) (noting cooperation "has already been beneficial to the OTC Plaintiffs in their continued prosecution of their claims against the non-settling Defendants"); *IPO*, 226 F.R.D. at 197; *In re Corrugated Container Antitrust Litig.*, No. MDL 310, 1981 WL 2093, at *16 (S.D. Tex. 1981) ("The cooperation clauses constituted a substantial benefit to the class."); *In re Processed Eggs Prods. Antitrust Litig.*, 284 F.R.D. 249, 275 (E.D. Pa. 2012) (settling defendant's agreement "to cooperate with Plaintiffs throughout the course of pre-trial proceedings and trial is valuable consideration in light of the risks in proceeding with this suit against the remaining Defendants" and "confer[s] real and substantial benefits upon the Class.").

Finally, as a so-called "ice-breaker" settlement, this Settlement has the potential to "'bring other defendants to the point of serious negotiations." *In re Linerboard Antitrust Litig.*, 292 F. Supp. 2d at 643 (noting "that this settlement has significant value as an 'ice-breaker' settlement—it is the first settlement in the litigation—and should increase the likelihood of future settlements."). This exerts significant pressure on the non-settling Defendants. As the court in *Corrugated Container* explained: "[T]his strategy was designed to achieve a maximum aggregate recovery for the class and the fact that the later settlements were at considerably higher rates tends to show that the strategy was successful." 1981 WL 2093, at *23.

## V.     THE COURT SHOULD CERTIFY THE SETTLEMENT CLASS

### A.     The Proposed Settlement Class Satisfies the Requirements of Rule 23(a)

Federal Rule of Civil Procedure 23(a) provides that a class may be certified when "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). The Southwest Settlement Class satisfies each of these requirements.

#### 1.  Numerosity

D.C. courts "have generally found that the numerosity requirement is satisfied and that joinder is impracticable where a proposed class has at least forty members." *Cohen*, 522 F. Supp. 2d at 114 (citing cases); *see also Thorpe v. D.C.*, 303 F.R.D. 120, 144 (D.D.C. 2014). The Southwest Settlement Class easily meets this standard, as it is estimated that millions of individuals fall within the class definition. All of these members should qualify for relief under the settlement. Therefore, the Southwest Settlement Class is sufficiently numerous to satisfy Rule 23(a).

#### 2.  Commonality

Rule 23(a) next requires that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). This requirement is satisfied where "'there is at least one issue, the resolution of which will affect all or a significant number of the putative class members.'" *Cohen*, 522 F. Supp. 2d at 114 (quoting *In re Lorazepam & Clorazepate Antitrust Litig.*, 202 F.R.D. 12, 26 (D.D.C. 2001)). The Rule does not require commonality of all issues; rather, "even a single common question will do." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 359

(2011) (internal quotation marks and alterations omitted); *see also Bynum v. Dist. of Columbia*,

214 F.R.D. 27, 33 (D.D.C. 2003) ("[F]actual variations among the class members will not defeat

the commonality requirement, so long as a single aspect or feature of the claim is common to all

proposed class members.").  Furthermore, "a single factual dissimilarity does not suffice to

defeat the commonality requirement."  *Bynum*, 214 F.R.D. at 33.  Commonality is particularly

satisfied when "the most crucial issues . . . are common to every member of the proposed class."

*See Lindsay v. Gov't. Employees Ins. Co.*, 251 F.R.D. 51, 55 (D.D.C. 2008).

There are a significant number of common legal and factual questions for the members of

the Settlement Class, including:

- Whether Defendants engaged in a combination or conspiracy with their co-conspirators to fix, raise, maintain, and/or stabilize the prices for fares charged for air passenger transportation services by, *inter alia,* collusively reducing capacity;

- Whether the purpose and/or effect of the acts and omissions alleged was to restrain trade, or to affect, fix, control, and/or maintain the prices for air passenger transportation services by, *inter alia,* collusively reducing capacity;

- The existence and duration of the horizontal agreements alleged to fix, raise, maintain, and/or stabilize the prices for air passenger transportations services;

- Whether Defendants violated Sections 1 and 3 of the Sherman Act (15 U.S.C. §§ 1, 3);

- Whether Defendants' agents, officers, employees, or representatives participated in correspondence and meetings in furtherance of the illegal conspiracy alleged, and, if so, whether such agents, officers, employees, or representatives were acting within the scope of their authority and in furtherance of Defendants' business interests;

- Whether, and to what extent, the conduct of Defendants caused injury to Plaintiffs and members of the Class, and, if so, the appropriate measure of damages; and

- Whether Plaintiffs and members of the Class are entitled to injunctive relief to prevent the continuation or furtherance of the violation of Sections 1 and 3 of the Sherman Act.

These legal and factual questions are common to each member of the Settlement Class. This

easily satisfies the requirements of Rule 23(a)(2).

### 3.  Typicality

Rule 23(a) also mandates that claims of the class representatives be typical of those of the class.  Fed. R. Civ. P. 23(a)(3).  "The typicality requirement is satisfied 'if each class member's claim arises from the same course of events that led to the claims of the representative parties and each class member makes similar legal arguments to prove the defendant's liability.'" *Cohen*, 522 F. Supp. 2d at 115 (quoting *Lorazepam,* 202 F.R.D. at 27); *see also Johnson v. Dist. of Columbia*, 248 F.R.D. 46, 53 (D.D.C. 2008).  The typicality requirement "has been liberally construed by courts."  *Johnson,* 248 F.R.D. at 53.  Therefore, "[t]ypicality is not destroyed merely by factual variations."  *Wagner v. Taylor*, 836 F.2d 578, 591 (D.C. Cir. 1987); *see also Bynum*, 214 F.R.D. at 34 ("[F]actual variations between the claims of class representatives and the claims of other class members . . . do not negate typicality.").  Instead, typicality "refers to the nature of the claims of the representative, not the individual characteristics of the plaintiff" and "is satisfied if each class member's claim arises from the same course of events that led to the claims of the representative parties and each class member makes similar legal arguments to prove the defendant's liability."  *Lightfoot v. Dist. of Columbia*, 246 F.R.D. 326, 338 (D.D.C. 2007) (internal quotation marks omitted).

Typicality is satisfied here.  Plaintiffs' claims arise out of the same course of conduct as the claims of the Settlement Class—the purchase, from Defendants, of allegedly artificially inflated domestic airfares.  Furthermore, Plaintiffs' and Settlement Class Members' claims are premised on the same legal theories.  The claims of the class representatives are therefore typical of the claims of the Settlement Class members that they represent.

### 4.  Adequacy of Representation

Finally, Rule 23(a) requires that "the representative parties will fairly and adequately

protect the interests of the class." Fed. R. Civ. P. 23(a)(4).  Courts generally recognize two criteria for determining adequacy: "'(1) the named representative must not have antagonistic or competing interests with the unnamed members of the class, and (2) the representative must appear able to vigorously prosecute the interests of the class through qualified counsel.'" *Cohen*, 522 F. Supp. 2d at 115 (quoting *Twelve John Does v. Dist. of Columbia*, 117 F.3d 571, 575 (D.C. Cir. 1997).

As addressed above, the claims of the class representatives are consistent with those of other class members.  There are no conflicts between the class representatives and the class as a whole, meaning the representatives provide adequate representation of the class as a whole. Additionally, Interim Co-Lead Counsel are well-qualified to represent the interests of the Settlement Class and conducted a thorough review of the case against Southwest before engaging in settlement negotiations.  Scherrer Decl. at ¶¶ 10-11; ECF No. 58-1.  Interim Co-Lead Counsel have litigated this case through motions to dismiss and have conducted substantial discovery, including the review hundreds of thousands of documents, before agreeing to this settlement.  *Id.*  Through this vigorous litigation and negotiation, Interim Co-Lead Counsel have established that they are focused on pursuing the best interests of the Settlement Class. Adequacy of representation is therefore satisfied.

**B.      The Proposed Settlement Class Satisfies the Requirements of Rule 23(b)**

Plaintiffs are moving to certify the Settlement Class under Rule 23(b)(3), which allows for certification if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  The requirements of predominance and superiority are both satisfied here.

### 1.  Predominance

"[I]n general, predominance is met 'when there exists generalized evidence which proves

or disproves an element on a simultaneous, class-wide basis, since such proof obviates the need

to examine each class members' individual position.'"  *Cohen*, 522 F. Supp. 2d at 116 (quoting

*In re Vitamins Antitrust Litig.*, 209 F.R.D. 251, 262 (D.D.C. 2002)).  The court's analysis "turns

on whether there is sufficient common evidence of a resulting injury and the amount of that

injury."  *In re Nifedipine Antitrust Litig.*, 246 F.R.D. 365, 369 (D.D.C. 2007).  However, the

predominance requirement

> does not simply require a mathematical accounting of whether common or
> individualized questions are more *numerous*.  Instead, it requires a qualitative
> assessment . . . it is not bean counting … If the most substantial issues in
> controversy will be resolved by reliance primarily upon common proof, class
> certification will generally achieve the economies of litigation that Rule 23(b)(3)
> envisions.

*In re Air Cargo Shipping Servs. Antitrust Litig.*, No. 06-MD-1775, 2014 WL 7882100, at *35

(E.D.N.Y. Oct. 15, 2014) (quotation omitted).  In other words, even a single issue "of central

importance to the case and common to all class member claims . . . can cause class litigation to

be appropriate."  *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1231-32 (9th Cir. 1996).

Indeed, "[p]redominance is a test readily met in certain cases alleging . . . violations of

the antitrust laws." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997); *see also In re*

*NASDAQ Market-Makers Antitrust Litig.*, 169 F.R.D. 493, 518 (S.D.N.Y. 1996) ("the existence

of a conspiracy is the predominant issue in price fixing cases"); *In re Vitamin C Antitrust Litig.*,

279 F.R.D. 90, 109 (E.D.N.Y. 2012) ("[C]ourts have frequently held that the predominance

requirement is satisfied [in price-fixing cases] because the existence and effect of the conspiracy

are the prime issues in the case and are common across the class." (citing cases)).

Because the Court need not consider manageability issues as part of the predominance

inquiry for purposes of a settlement class, *Thomas*, 139 F.3d at 234, predominance is easily satisfied here.  *Accord Radosti*, 717 F. Supp. 2d at 54 ("Because the class is being certified for purposes of settlement only, the Court need not consider whether the case, if tried, would present intractable management problems.").

### 2.  Superiority

The superiority question requires the court to ask whether a "class action is superior to other available methods for fair and efficient adjudication of the controversy."  Fed. R. Civ. P. 23(b)(3).  The court's determination should focus on whether the settlement will "achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated without sacrificing procedural fairness or bringing about other undesirable results."  *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 615 (1997).

Here, it would be inefficient to litigate the predominating common issues in countless individual proceedings in this Court, rather than on a class basis. *See High-Tech Emp. Antitrust Litig.*, 985 F. Supp. 2d 1167, 1228-29 (N.D. Cal. 2013) ("[T]he nature of Defendants' alleged overarching conspiracy and the desirability of concentrating the litigation in one proceeding weigh heavily in favor of finding that class treatment is superior. . . .").  Additionally, a class action is also superior because "[i]n antitrust cases such as this, the damages of individual direct purchasers are likely to be too small to justify litigation, but a class action would offer those with small claims the opportunity for meaningful redress." *In re Static Random Access (SRAM) Antitrust Litig.*, No. C 07-1819, 2008 WL 4447592, at *7 (N. D. Cal. Sept. 29, 2008); *In re Aftermarket Auto. Lighting Prods. Antitrust Litig.*, 276 F.R.D. 364, 375 (C.D. Cal. 2011). This action provides a single forum to adjudicate the rights of thousands of purchasers, and thus affords an efficient resolution of this controversy.

## VI.     THE COURT SHOULD APPOINT HAUSFELD LLP AND COTCHETT, PITRE & McCARTHY LLP AS SETTLEMENT CLASS COUNSEL

Rule 23(c)(1)(B) states that "[a]n order that certifies a class action . . . must appoint class counsel under Rule 23(g)." Rule 23(g)(1)(A) states that "[i]n appointing class counsel, the court (i) must consider: [1] the work counsel has done in identifying or investigating potential claims in the action; [2] counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; [3] counsel's knowledge of the applicable law; and [4] the resources that counsel will commit to representing the class." All factors weigh in favor of appointing Hausfeld LLP and Cotchett, Pitre & McCarthy LLP as Settlement Class Counsel. As noted, the Court already has appointed Hausfeld LLP and Cotchett, Pitre & McCarthy LLP as Interim Co-Lead Counsel to manage this litigation. ECF No. 76. These firms have and continue to be willing and able to vigorously prosecute this action and to devote all necessary resources to obtain the best possible result for Settlement Class Members.

## VII.     CONCLUSION

For these reasons, Plaintiffs ask that the Court grant the attached proposed Order, which (1) preliminarily approves the Settlement; (2) conditionally certifies the Southwest Settlement Class; (3) and appoints Hausfeld LLP and Cotchett, Pitre & McCarthy LLP as Settlement Class Counsel.  Within 45 days of the Preliminary Approval Order, Plaintiffs will submit for approval by the Court a notice plan for purposes of advising Settlement Class Members, among other things, of their right to object to the Settlement Agreement, their right to exclude themselves from the Settlement Class, the procedure for submitting a request for exclusion, the time, date, and location of the Fairness Hearing, and their right to appear at the Fairness Hearing.[6]

---

[6] Such a procedure is common. *See, e.g., In re Foreign Exchange Benchmark Rates Antitrust Litig.*, No. 13-cv-7789, ECF. No. 882 (S.D.N.Y. Sept. 29, 2017) (order granting preliminary approval and noting that plaintiffs shall submit a proposed notice plan at a later date); *In re LIBOR-Based Financial Instruments Antitrust Litig.*, No. 11-

Dated: December 29, 2017                    Respectfully submitted,


*/s/ Adam J. Zapala*                        */s/ Michael D. Hausfeld*
Steven N. Williams                          Michael D. Hausfeld
Adam J. Zapala                              Hilary K. Scherrer
Elizabeth Tran                              Jeannine M. Kenney
COTCHETT, PITRE & McCARTHY, LLP             Braden Beard
840 Malcolm Road, Suite 200                 HAUSFELD, LLP
Burlingame, CA 94010                        1700 K Street NW, Suite 650
Telephone: 650-697-6000                     Washington, DC 20006
swilliams@cpmlegal.com                      Telephone: (202) 540-7200
azapala@cpmlegal.com                        mhausfeld@hausfeld.com
etran@cpmlegal.com                          hscherrer@hausfeld.com
                                            jkenney@hausfeld.com
                                            bbeard@hausfeld.com

                                            Michael P. Lehmann
                                            Bonny E. Sweeney
                                            HAUSFELD, LLP
                                            600 Montgomery Street, Suite 3200
                                            San Francisco, CA 94111
                                            Telephone: (415) 633-1908
                                            mlehmann@hausfeld.com
                                            bsweeney@hausfeld.com

                        ***Interim Co-Lead Counsel***

---

2262, ECF No. 2247 (S.D.N.Y. Aug. 31, 2017) (same); *In re Air Cargo Shipping Servs. Antitrust Litig.*, No. 06-1775, ECF No. 2402 (E.D.N.Y. Jan. 12, 2016) (same).