**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLUMBIA**

| | |
|---|---|
| IN RE DOMESTIC AIRLINE TRAVEL ANTITRUST LITIGATION | MDL Docket No. 2656 Misc. No. 15-1404 (CKK) |
| This Document Relates To: ALL CASES | JURY TRIAL DEMANDED |

**DECLARATION OF HILARY K. SCHERRER**
**IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF**
**SETTLEMENT WITH DEFENDANT SOUTHWEST AIRLINES CO.**

Pursuant to 28 U.S.C. § 1746, I, Hilary K. Scherrer, declare:

1.      I am a partner in the law firm of Hausfeld LLP.  My firm serves as Interim Co-Lead Counsel for the putative class in the above-captioned litigation.  *See* ECF No. 76.

2.      I submit this declaration in support of the Plaintiffs' motion for preliminary approval of the Settlement with Defendant Southwest Airlines Co. ("Southwest").  I have been actively involved in prosecuting and resolving this action, am familiar with its proceedings, and have personal knowledge of the matters set forth herein, and if called upon and sworn as a witness, I could competently testify thereto.

3.      Because this declaration is submitted in support of a Settlement, it is inadmissible in any subsequent proceedings, other than in connection with the Settlement.  In the event the Settlement is not approved by the Court, this declaration and the statements contained herein are without prejudice to Plaintiffs' position on the merits of the case.

4.      Attached hereto as Exhibit A is a true and correct copy of the Settlement Agreement between the Plaintiffs and Southwest (together with Plaintiffs, the "Parties").  If approved, the

proposed Settlement, consisting of an agreement by Southwest to pay $15 million in cash and to provide significant cooperation to Plaintiffs in pursuing their case against the non-settling defendants, will resolve this complex case against Southwest.[1]

5.      The Settlement with Southwest is the first settlement by Plaintiffs in the litigation – a so-called "ice-breaker" settlement.  The Settlement is the culmination of extremely hard-fought, arm's-length negotiations by counsel highly experienced in complex antitrust matters.

6.      Interim Co-Lead Counsel and counsel for Southwest first discussed the possibility of settlement in September 2017.  Over the course of the next three months, the parties participated in numerous in-person and telephonic negotiation sessions and exchanged positions and drafts by email.

7.      The settlement amount and other key terms of the agreement in principle were memorialized in a Memorandum of Understanding, dated November 20, 2017.

8.      Thereafter, the parties continued negotiations regarding the detailed provisions of a Settlement Agreement, which was executed on December 20, 2017.

9.      Southwest's counsel, who are highly experienced and capable, vigorously advocated their client's positions in the settlement negotiations.

10.      Interim Co-Lead Counsel were well-informed of the facts and issues concerning liability and damages and the relative strengths and weaknesses of each side's litigation position.

11.      To date, Defendants have produced over 638,000 documents and extensive transactional data.  Additionally, some sixteen third parties have produced over 88,000 documents. Plaintiffs' Counsel have reviewed a significant majority of these documents and have been

---

[1] The non-settling Defendants are American Airlines, Inc. ("American"), Delta Air Lines, Inc. ("Delta"), and United Airlines, Inc. ("United").

working with their experts to analyze the transactional data.

12.     Interim Co-Lead Counsel vigorously advocated Plaintiffs' positions and used their specific case knowledge and decades of experience in other cases to negotiate an extremely valuable initial settlement on behalf of the Settlement Class.

13.     While Plaintiffs believe their case against Southwest is strong, there are still many hurdles to overcome in a case of this size and scope: class certification, *Daubert* motions, summary judgment, trial, and appeals would all offer potential stumbling blocks to Plaintiffs securing a recovery for the Settlement Class.

14.     The fact that Southwest's cooperation comes at this stage of the case greatly enhances the value of the Settlement to Plaintiffs and the Settlement Class.   For instance, Southwest's cooperation will permit Plaintiffs' Counsel to obtain information that will help guide discovery going forward and may help drive settlement negotiations with other Defendants.


I declare under penalty of perjury that the forgoing is true and correct.

Executed on December 29, 2017
Washington, DC

 */s/ Hilary K. Scherrer*
Hilary K. Scherrer

# EXHIBIT A

# UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

| | |
|---|---|
| **IN RE DOMESTIC AIRLINE TRAVEL ANTITRUST LITIGATION** | **MDL Docket No. 2656**<br>**Misc. No. 15-1404 (CKK)** |
| **This Document Relates To:**<br><br>**ALL CASES** | |

## SETTLEMENT AGREEMENT BETWEEN
## PLAINTIFFS AND SOUTHWEST AIRLINES CO.

This Settlement Agreement ("Agreement") is made and entered into as of this 20th day of December 2017 (the "Execution Date") by and between Southwest Airlines Co. ("Southwest") and Plaintiffs (as defined herein at Paragraph 12), both individually and on behalf of a Settlement Class (as defined herein at Paragraph 22) of purchasers of domestic air passenger transportation services.

WHEREAS, Plaintiffs are prosecuting the above-captioned action currently pending and consolidated in the District Court for the District of Columbia, and including all actions transferred for coordination, and all actions currently pending such transfer (including, but not limited to, "tag-along" actions) on their own behalf and on behalf of the Settlement Class against certain Defendant air carriers, including Southwest (the "Action");

WHEREAS, Plaintiffs allege that Southwest participated in an unlawful conspiracy to fix, raise, maintain, and/or stabilize prices for domestic air passenger transportation services within the United States, its territories and the District of Columbia in violation of Sections 1 and 3 of the Sherman Antitrust Act (15 U.S.C. §§ 1, 3), by, *inter alia*, colluding with certain Defendant air carriers to limit capacity on their respective airlines;

WHEREAS, Plaintiffs contend that they and the Settlement Class suffered monetary damages as a result of Southwest's (and the other Defendants') alleged conduct;

WHEREAS, Southwest denies any and all wrongdoing in connection with the claims that have been or could have been alleged against it in the Action and has asserted a number of defenses to Plaintiffs' claims;

WHEREAS, Southwest has agreed to enter into this Agreement solely to avoid

the further expense, inconvenience and distraction of burdensome and protracted litigation, and to thereby put to rest with finality this controversy with Plaintiffs and the Settlement Class;

WHEREAS, Plaintiffs' Counsel and Southwest's Counsel have engaged in good faith arm's-length settlement negotiations, and this Agreement has been reached as a result of these negotiations;

WHEREAS, Plaintiffs have concluded that settlement with Southwest on the terms set forth below is the best that is practically attainable, that it is in the best interests of the Settlement Class to enter into this Agreement, and that the Agreement is fair, reasonable, and adequate, and beneficial to and in the best interests of Plaintiffs and the Settlement Class; and,

WHEREAS, the Parties expressly acknowledge that nothing in this Agreement, including payment of the Settlement Amount (as defined herein at paragraph 37), constitutes an admission of liability by Southwest;

NOW, THEREFORE, in consideration of the covenants, agreements, and releases set forth herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, it is agreed by and among the undersigned that the Action be settled, compromised and dismissed on the merits with prejudice as to Southwest only, without costs as to Plaintiffs, the Settlement Class, or Southwest, and subject to the approval of the Court, on the following terms and conditions:

**A.      Definitions**

The following terms, as used in this Agreement, have the following meanings:

1.    "Claims Administrator" shall mean the entity engaged by Plaintiffs' Counsel and approved by the Court to disseminate notice and to receive, review, and process claims for payment from the Settlement Fund.

2.    "Class Member" or "Class" shall mean each member of the Settlement Class, as defined in Paragraph 22 of this Agreement, who does not timely elect to be excluded from the Settlement Class, and includes, but is not limited to, Plaintiffs.

3.    "Class Period" shall mean the period from and including July 1, 2011 up to and including the Execution Date.

4.    "Court" shall mean the United States District Court for the District of Columbia.

5.    "Defendants" shall refer to Southwest, American Airlines, Inc., Delta Air Lines, Inc., and United Airlines, Inc.

6.    "Effective Date" shall have the meaning set forth in Paragraph 26 of this Agreement.

7.    "Escrow Account" means the account with the Escrow Agent that holds the Settlement Fund.

8.    "Escrow Agent" means the bank into which the Settlement Fund shall be deposited and maintained as set forth in Paragraph 37 of this Agreement.

9.    "Fairness Hearing" means a hearing on the settlement proposed in this Agreement held by the Court to determine whether the proposed settlement is fair, reasonable, and adequate, and whether it should be finally approved by the Court.

10.    "Non-Settling Defendants" shall refer to Defendants other than Southwest.

11.    "Parties" means Southwest and Plaintiffs.

3

12.    "Plaintiffs" shall mean each of the following proposed named Class representatives:  Boston Amateur Basketball Club; Katherine Rose Warnock; Cherokii Verdozco; Kumar Patel; Samantha White; Seth Lyons; Howard-Sloan Koller Group Inc.; Breanna Jackson; Stephanie Jung; Elizabeth Cumming; and Steven Yeninas.

13.    "Plaintiffs' Counsel" shall refer to the law firms of Hausfeld LLP, 1700 K Street NW, Suite 650, Washington, DC 20006; and Cotchett Pitre & McCarthy LLP, 840 Malcolm Road, Suite 200, Burlingame, CA 94010.

14.    "Releasors" shall have the meaning set forth in Paragraph 32 below.

15.    "Released Parties" shall have the meaning set forth in Paragraph 32 below.

16.    "Released Claims" shall have the meaning set forth in Paragraph 32 below.

17.    "Settlement Neutral" means Nancy Lesser of Pax ADR LLC.

18.    "Settlement Amount" shall have the meaning set forth in Paragraph 37 below.

19.    "Settlement Class" shall have the meaning set forth in Paragraph 22 below.

20.    "Settlement Fund" shall refer to the funds deposited into and accrued in the Escrow Account established in accordance with Paragraph 37 below.

21.    "Southwest's Counsel" shall refer to the law firms of Fine Kaplan and Black, One South Broad Street, Suite 2300, Philadelphia, PA 19107;  Freedman Boyd Hollander Goldberg Urias & Ward P.A., 20 First Plaza, Suite 700, Albuquerque, NM 87102; and Vinson & Elkins L.L.P., 2200 Pennsylvania Avenue, NW, Suite 500 West Washington, DC 20037.

**B.    Settlement Class Certification**

22.    The Parties to this Agreement hereby stipulate for purposes of settlement

only that the requirements of Rules 23(a) and 23(b)(3) of the Federal Rules of Civil

Procedure are satisfied, and, subject to Court approval, the following Settlement Class

shall be certified for settlement purposes as to Southwest only (with the understanding

that, by stipulating to the proposed Settlement Class, Southwest does not agree that Rule

23 requirements are met for purposes of a litigation class):

> All persons and entities that purchased air passenger transportation services
> for flights within the United States and its territories and the District of
> Columbia from Defendants or any predecessor, subsidiary or affiliate thereof,
> at any time between July 1, 2011 and the Execution Date of the Settlement
> with Southwest. Excluded from the class are governmental entities,
> Defendants, any parent, subsidiary or affiliate thereof, Defendants' officers,
> directors, employees, and immediate families, and any judges or justices
> assigned to hear any aspect of this action.

**C.     Approval of this Agreement, Stay of Case Deadlines, and Dismissal of Claims**

23.     Southwest shall cooperate to the extent reasonably necessary in connection

with Plaintiffs' Counsel's motions for preliminary and final approval of the settlement and

related documents necessary to effectuate and implement the terms and conditions of this

Agreement.  Prior to submission of the motions for preliminary approval, notice to the

class and final approval of the settlement and any related documents, Plaintiffs' Counsel

will provide drafts to Southwest for its comments and approval, including the opportunity

to review and comment on the proposed class notice and plan of notice.  Plaintiffs'

Counsel will, in good faith, consider Southwest's comments.

24.     At the time of filing the motion for preliminary approval, or sooner as may

be agreed between the Parties, the Parties shall move the Court to stay all case deadlines

currently applicable to Southwest in the Action, including discovery deadlines.

25.     Plaintiffs shall, following entry by the Court of an Order granting

preliminary approval ("Preliminary Approval") of this Settlement and dissemination of

notice to the Settlement Class, seek entry of an order granting final approval and entering

final judgment in a form to be agreed upon by the Parties which shall:

> a.      approve finally this Agreement and its terms as being a fair,
> reasonable, and adequate settlement as to the Settlement Class Members
> within the meaning of Rule 23 of the Federal Rules of Civil Procedure and
> directing its consummation according to its terms;

> b.      determine that the Class Notice constituted, under the
> circumstances, the most effective and best practicable notice of this
> Agreement and of the Fairness Hearing, and constituted due and sufficient
> notice for all other purposes to all persons entitled to receive notice;

> c.      confirm the appointment of Plaintiffs as class representatives and
> Plaintiffs' Counsel as Settlement Class Counsel;

> d.      direct that, as to Southwest, the Action be dismissed with prejudice
> and, except as explicitly provided for in this Agreement, without costs;

> e.      reserve to the United States District Court for the District of
> Columbia exclusive jurisdiction over the settlement and this Agreement,
> including the administration and consummation of this settlement;

> f.      determine under Federal Rule of Civil Procedure 54(b) that there is
> no just reason for delay, and directing that the final judgment of dismissal
> as to Southwest shall be entered; and

> g.      require Plaintiffs' Counsel to file with the Clerk of the Court a
> record with the names and addresses of Class Members who timely
> exclude themselves from the Settlement Class, and provide a copy of the
> record to Southwest's Counsel.

26.   This Agreement shall become final only upon the expiration of the time for

appeal or to seek permission to appeal from the Court's final approval of this Agreement

and entry of the final judgment or, if an appeal from a final approval and final judgment

is taken, the affirmance of such final judgment in its entirety, without modification, by

the court of last resort to which an appeal of such final judgment may be taken (the

"Effective Date"). It is agreed that neither the provisions of Rule 60 of the Federal Rules

of Civil Procedure nor the All Writs Act, 28 U.S.C. § 1651, shall be taken into account in

determining if the Effective Date has occurred.  The Agreement shall not be rescinded except in accordance with Paragraphs 56-58 of this Agreement.

27.    This Agreement is contingent upon preliminary approval by the Court within forty five (45) days of filing of the motion for preliminary approval.  Absent preliminary approval, the settlement and the Memorandum of Understanding ("MOU") executed between the Parties on November 20, 2017 are null and void and any and all amounts constituting the Escrow Account (including, but not limited to, any fees, costs, and/or expenses advanced to Class Counsel with the exception of the reasonable costs of notice approved by the Court) shall be returned forthwith to Southwest, plus accrued interest.

**D.     Notice of Settlement to Class Members**

28.    Plaintiffs' Counsel shall take all necessary and appropriate steps to ensure that notice of this Settlement Agreement and the date of the hearing scheduled by the Court to consider the fairness, adequacy, and reasonableness of this Agreement are provided in accordance with the Federal Rules of Civil Procedure and any Court orders. Notice will be issued after preliminary approval by the Court and subject to any Court orders regarding the content and means of dissemination of notice.

29.    For purposes of effectuating notice, Southwest has provided in its transactional data email addresses of its customers to the extent it maintains email addresses in the ordinary course of business.  Plaintiffs shall use the email addresses for notice (or claims allocation) and for no other purpose.

30.    Subject to Court approval, disbursements for any payments and expenses incurred in connection with the costs of notice and administration of the Agreement by

the Claims Administrator shall be made from the Escrow Account upon written notice to

the Escrow Agent by Plaintiffs' Counsel of such payments and expenses.

31.     If notice of the Agreement is combined with dissemination of notice of

other settlement agreements, the costs of the combined notice and settlement

administration shall be apportioned by Plaintiffs' Counsel subject to approval of the

Court.

**E.      Release and Discharge**

32.     Upon the Effective Date, all members of the Settlement Class, on behalf of

themselves and their respective past, present, direct and indirect parents, subsidiaries,

affiliates, predecessors and successors, and their past and present officers, directors,

employees, agents, insurers, attorneys, shareholders, joint venturers, partners, and

representatives, as well as the predecessors, successors, heirs, executors, administrators,

and assigns of each of the foregoing ("Releasors") shall be deemed to have, and by

operation of the Final Order and Judgment, shall have, fully, finally and forever, released

and discharged Southwest, its past and present, direct and indirect parents, subsidiaries,

affiliates, predecessors and successors, and their past and present officers, directors,

employees, agents, insurers, attorneys, shareholders, joint venturers, partners and

representatives, as well as the predecessors, successors, heirs, executors, administrators,

and assigns of each of the foregoing ("Released Parties") from all claims, actions, causes

of action, lawsuits, damages, liabilities, costs, expenses, whether class or individual in

nature, whether known or unknown, foreseen or unforeseen, existing in the past, existing

in the present or arising in the future, that were or could have been alleged in this Action

("Released Claims").  To avoid any ambiguity, the Parties agree that the release of claims

shall be to the fullest extent allowed by law, limited only by the identical factual

predicate doctrine.  Each Releasor hereby covenants and agrees that he, she, or it shall

not, hereafter, assert a claim or otherwise seek to establish liability against any Released

Party based in whole or in part on any Released Claims.

33.     In addition, each Releasor hereby expressly waives and releases, upon this

Settlement Agreement becoming final, any and all provisions, rights, or benefits

conferred by section 1542 of the California Civil Code, which provides:

> A general release does not extend to claims which the creditor does not
> know or suspect to exist in his or her favor at the time of executing the
> release, which if known by him or her must have materially affected his or
> her settlement with the debtor

and any law of any state or territory of the United States, or principle of common law,

which is similar, comparable or equivalent to section 1542 of the California Civil Code.

Each member of the Settlement Class may hereafter discover facts other than or different

from those which he, she or it knows or believes to be true with respect to the Released

Claims.  Nevertheless, each member of the Settlement Class hereby expressly waives and

fully, finally and forever settles and releases, upon this settlement becoming final, the

Released Claims, whether any Released Claim is known or unknown, suspected or

unsuspected, contingent or non-contingent, concealed or hidden, without regard to the

subsequent discovery or existence of such different or additional facts.  Each Releasor

further forever waives and relinquishes any and all rights and benefits existing under any

law or principle of law in any jurisdiction that would limit or restrict the effect or scope

of the provisions of the release set forth above without regard to the subsequent discovery

or existence of other or different facts.

34.     The Releases set forth herein shall not release any claims, whether

pending or not, whether known or unknown, for product liability, personal injury, breach

of warranty, breach of contract, violation of the Uniform Commercial Code or any other

claims that were not or could not have been alleged in the Action whatsoever that are not

related to the subject matter of the Complaint.

35.     Each Plaintiff and each Settlement Class Member who submits a claim to

participate in the distribution of the Settlement Fund shall represent and warrant that his,

her or its portion of the Released Claims is his, her or its property and he, she or it has not

assigned or transferred to any person or entity any right to recovery for any claim or

potential claim that would otherwise be released under this Agreement.  Each Plaintiff

and each Settlement Class Member who submits a claim to participate in the distribution

of the Settlement Fund shall further represent and warrant that each of them has a valid

and existing right to release such claims and is releasing such claims pursuant to his, her

or its membersip in the Settlement Class.

36.     Upon the Effective Date, Southwest shall release Plaintiffs, Settlement

Class members, and their counsel from any claims relating to the institution, prosecution

or settlement of the pending Action except for claims arising out of breach or

enforcement of this Agreement.

**F.      Payment**

37.     Southwest shall pay or cause to be paid fifteen million dollars

($15,000,000) (the "Settlement Amount") in settlement of the Action.  The Settlement

Amount shall be wire transferred by Southwest or its designee to the Bank designated as

Escrow Agent by Plaintiffs' Counsel within ten (10) business days of entry of an order

by the Court granting preliminary approval of the settlement.

38.     The Parties expressly agree that under no circumstances whatsoever shall Southwest be responsible for paying any monies, benefits, costs, administrative costs, expenses, or attorneys' fees in settlement of this Action other than as expressly provided for by this Agreement, nor will Southwest be required to take any action or incur any liability except as expressly provided by this Agreement.

39.     Each Settlement Class Member shall look solely to the Settlement Fund for settlement and satisfaction, as provided herein, of all claims released by the Releasors pursuant to this Agreement.

**G.     Allocation of Settlement Fund**

40.     The allocation of the Settlement Fund among the Settlement Class shall be subject to a plan of allocation to be proposed by Plaintiffs' Counsel and approved by the Court.  Southwest will take no position with respect to such proposed plan of allocation or such plan as may be approved by the Court.  Southwest also will have no involvement in the claims process.

41.     Southwest shall not have any responsibility, financial obligation, or liability whatsoever with respect to the investment, distribution, use or administration of the Escrow Account, including, but not limited to, the costs and expenses of such investment, distribution, use, or administration.

**H.     Plaintiffs' Counsel's Fees and Expenses**

42.     Plaintiffs' Counsel's attorneys' fees and expenses, as awarded by the District Court, shall be paid from the Escrow Account, immediately upon the entry of the order by the District Court awarding such amounts ("Fee and Expense Award"), notwithstanding the existence of any timely filed objections thereto, or potential for

appeal therefrom, or collateral attack on the settlement or any part thereof, subject to

Plaintiffs' Counsel's joint and several obligation to repay those amounts to the Escrow

Account, plus accrued interest at the same net rate as is earned by the Escrow Account,

and subject to an appropriate undertaking, if and when, as a result of any appeal and

further proceedings on remand, or successful collateral attack, the Fee and Expense

Award is reduced or reversed, or return of the Escrow Account is required.

43.    If there is any payment of attorneys' fees or reimbursement of expenses

advanced by Plaintiffs' Counsel prior to the Effective Date, any attorneys, individuals or

firms receiving payment shall provide letters of credit from nationally chartered banks

payable to Southwest sufficient to secure any repayment obligations of those attorneys,

individuals or firms.  In the event the Fee and Expense Award is reduced or reversed or

return of the Escrow Account is otherwise required, Plaintiffs' Counsel shall, within ten

(10) business days from the event which requires repayment of the Fee and Expense

Award, refund to the Escrow Account the Fee and Expense Award paid to them, plus

accrued interest at the same net rate as is earned by the Escrow Account.

44.    Southwest will take no position on Plaintiffs' Counsel's request for

attorneys' fees and expenses, the appropriateness of any such award by the Court, or the

timing of payment to Plaintiffs' Counsel.  Plaintiffs' Counsel may, at a time approved by

the Court, seek an award of attorneys' fees and reasonable litigation expenses and

incentive awards for class representatives approved by the Court, to be paid out of the

Escrow Account after the final approval of the Agreement.

**I.    Cooperation**

45.    Southwest shall provide cooperation in accordance with the terms and

provisions of this Agreement.

46.   <u>Applicable Protections</u>

   a.   Nothing in this Agreement shall impose on Southwest an obligation to produce or provide any materials or information protected from disclosure by the attorney-client privilege, attorney work-product doctrine, common interest doctrine, joint defense privilege, and/or any other applicable privilege or protection.  No materials or information protected by the joint defense privilege will be produced or provided pursuant to this Agreement.  In addition, any documents or other information provided by Southwest pursuant to its cooperation obligations shall be governed by the operative Protective Order entered in the Action.

   b.   Any proffers, counsel inquiries, or witness interviews provided prior to the Effective Date shall be treated as confidential Rule 408 settlement communications unless otherwise ordered by the Court.

   c.   Southwest's cooperation obligations shall apply only to Releasors who act with, by or through Plaintiffs' Counsel pursuant to this Agreement in this Action.

47.   <u>Industry Background</u>

   a.   Within ten (10) business days of entry of an order granting preliminary approval of the settlement, or by an alternative date agreed to by the Parties, Southwest's Counsel shall facilitate an informational meeting or meetings between Plaintiffs' Counsel and an industry expert

13

regarding the domestic air transportation industry, including issues

related to market conditions, competition, capacity, pricing, costs,

data, revenue management, and other business operations. Southwest

will pay for up to sixteen (16) hours of the industry expert's time.

Within ten (10) business days of the meetings described in this

paragraph, or by an alternative date agreed to by the Parties,

Southwest's Counsel will meet with Plaintiffs' Counsel at a mutually

agreeable time and place to supplement the information provided by

the industry expert.

b.   Southwest may, upon reasonable request by Plaintiffs' Counsel after

the meeting(s) with the industry expert, make available for an

informational meeting or meetings with Plaintiffs' Counsel an

employee or employees of Southwest with expertise in the topics set

forth in Paragraph 47 (a) to provide information regarding those

topics. Such meeting(s) shall not count against the witness interviews

provided for in Paragraph 52.

48.   <u>Proffers</u>

a.   As soon as possible after preliminary approval of this Agreement but

no later than ten (10) business days after such approval, or at an

alternative date agreed to by the Parties, Southwest's Counsel will

meet with Plaintiffs' Counsel at a mutually agreeable time and place to

provide a full account of facts then known to Southwest that are

relevant to the claims asserted in the Action, including, but not limited

to, facts related to the alleged conduct, the specific locations and dates

of and participants in meetings and communications relating to the

alleged conduct, the alleged conduct's effect on pricing and

profitability in the domestic air transportation industry, the identities of

persons that have knowledge of facts related to the alleged conduct,

including current and former employees of Southwest, the other

Defendants, and third parties, and the role of institutional investors

and analysts in the domestic air transportation industry.

b.   Southwest's Counsel will supplement this proffer session with an

additional session or sessions as they may gain more information.

49.   <u>Counsel Inquiries</u>:  Southwest's Counsel will use good faith best efforts to

respond to reasonable follow-up inquiries of Plaintiffs' Counsel throughout the duration

of this Action related to the subjects of the industry background set forth in Paragraph

47(a) above and proffers set forth in Paragraph 48 above, including to produce further

information relating thereto and a reasonable number of documents responsive to targeted

requests relating thereto.

50.   <u>Transactional Data</u>

a.   The Parties recognize and agree that Southwest has already produced

voluminous transactional data (customer-level data concerning flights

and prices).  If Plaintiffs identify any missing transactional data from

this production, Southwest will use good faith best efforts to produce

relevant and reasonably accessible responsive transactional data;

b.   Southwest shall use its good faith best efforts to produce, in native

format, reports containing information as in

SWA_MDL_DOJ_868158 for each month during the period January

1, 2006 through December 31, 2016, to the extent available; and

c.  Southwest shall use its good faith best efforts to make available, by

phone, videoconference, or in person in Dallas, Texas, its current

personnel or in-house experts at reasonable times, to assist Plaintiffs'

Counsel in understanding Southwest's transactional data.

51.  Documents

a.  Within a reasonable amount of time following the request, Southwest

shall produce documents as set forth in Paragraph 50 above;

b.  Within ten (10) business days of the applicable proffer(s) and witness

interview(s), unless otherwise agreed by the Parties, Southwest shall

produce reasonably accessible specific documents identified or relied

upon in the proffers described in Paragraph 48 above and the witness

interviews described in Paragraph 52 below.   For purposes of clarity,

the term "document" is defined to be synonymous in meaning and

equal in scope to the usage of the term "documents or electronically

stored information" in Fed. R. Civ. P. 34(a)(1)(A);  and

c.  As applicable and upon request, Southwest shall use its good faith best

efforts to produce a business record and authenticity declaration as to

documents produced by Southwest pursuant to its prior discovery

obligations, this Settlement Agreement, or any other process.

52.  Interviews, Depositions, Declarations, and Affidavits

a. Southwest shall make current employees of Southwest and former employees of Southwest represented by Southwest's Counsel available by phone, videoconference, or in person in Dallas, Texas, at Plaintiffs' Counsel's discretion, for interviews, depositions, declarations, and affidavits as follows:

   i. At Southwest's expense, Southwest shall use its good faith best efforts to make available for interviews with Plaintiffs' Counsel and/or their experts up to seven (7) current Southwest employees at the Vice President level or lower or former Southwest employees at the Vice President level or lower represented by Southwest's Counsel, as designated by Plaintiffs' Counsel. To the extent a former employee refuses to participate in any such interview, notwithstanding Southwest's good faith best efforts to secure participation, that individual shall not count against Plaintiffs' total of seven (7) interviewees. Any interviews conducted pursuant to this subsection shall be limited to five (5) hours of interview time (excluding breaks).

   ii. Southwest shall use its good faith best efforts to make available up to three (3) current Southwest employees at the Vice President level or lower or former Southwest employees at the Vice President level or lower represented by Southwest's Counsel, as designated by Plaintiffs' Counsel, to provide deposition testimony in the Action. Any depositions conducted pursuant to this subsection shall be

limited to a single day of seven (7) hours of testimony, inclusive of examination by any parties other than Plaintiffs.

iii.  Southwest shall use its good faith best efforts to make available up to two (2) current Southwest employees at the Vice President level or lower or former Southwest employees at the Vice President level or lower represented by Southwest's Counsel, as designated by Plaintiffs' Counsel, to provide a declaration or affidavit.

iv.  With respect to senior executive management (above Vice-President level), Southwest, at a time mutually agreeable to the parties but in all events prior to the close of fact discovery, will provide information gathered from those senior executives through an attorney proffer session(s).  At a later date, and upon Plaintiffs' request, Southwest will undertake good faith best efforts to provide information in an admissible evidentiary format (via affidavit/declaration or otherwise) in response to a reasonable number of targeted, specific requests for particular information.

v.  At Plaintiffs' Counsel's request, and for good cause, Southwest will meet and confer regarding additional interviews, depositions, declarations, and/or affidavits.

vi.  To the extent Plaintiffs otherwise interview or take the deposition of any former Southwest employee that is represented by Southwest's Counsel (excluding former employees currently employed by another Defendant in the Action), any such interview or deposition

shall count against the interview, deposition, declaration, and affidavit limits set forth above.

b.  Southwest will use its good faith best efforts to make current Southwest employees and former Southwest employees represented by Southwest's Counsel available to provide declarations, certifications, or affidavits regarding the authentication of documents, including their certification as records of a regularly conducted activity pursuant to Fed. R. Evid. 803(6) (such declarations, certifications, and/or affidavits shall not count towards those permitted pursuant to (a) above).

53.  <u>Testimony at Trial</u>:  Southwest shall use its good faith best efforts to make available for testimony at trial in the Action one (1) then-current Southwest employee at the Vice President level or lower designated by Plaintiffs' Counsel who possesses information, based on Plaintiffs' Counsel's good faith belief, that would assist Class Plaintiffs in the trial of the Class Plaintiffs' claims as alleged in the Action.

54.  <u>Continuation, Scope, and Termination of Southwest's Cooperation Obligations</u>:  Southwest's obligations to cooperate under this Agreement shall terminate upon the earlier of:  (a) the date on which an order by the Court denying preliminary approval of the settlement is entered; (b) the date on which an order by the District Court denying final approval of the settlement is entered; (c) the date when final judgment has been rendered, with no remaining rights of appeal, in the Action against all Defendants; and (d) seven (7) years after the Court enters the preliminary approval order. If the Court does not grant final approval of the Settlement Agreement and either party files an appeal from such an Order, the parties shall both cooperate on the appeal to seek approval of the

Settlement Agreement by the Court of Appeals.

55.   <u>Dispute Resolution</u>:  In the event of a disagreement between Southwest and Plaintiffs' Counsel with respect to any cooperation obligation, the Parties will seek resolution from the Settlement Neutral, if necessary.  Any decision by the Settlement Neutral shall be binding on the Parties.

**J.     Rescission**

56.   If the Court refuses to give final approval to this Agreement or if such approval is modified or set aside on appeal, or if the Court does not enter the final judgment provided for in Paragraph 25 of this Agreement, or if the Court enters the final judgment and appellate review is sought, and on such review, such final judgment is not affirmed, then Southwest and Plaintiffs shall each, in their sole discretion, have the option to rescind this Agreement in its entirety within ten (10) business days of the action giving rise to such option.  If this Agreement is rescinded, within ten (10) business days of the later of the written notice of rescission to Plaintiffs' Counsel and the Escrow Agent and Southwest's written instructions to the Escrow Agent, the $15 million Settlement Fund and any accrued interest, less only the cost of notice authorized pursuant to this Agreement and Court Order, shall be wire transferred to Southwest, pursuant to its instructions.

57.   If this Agreement does not become final as provided for in paragraph 26, , Plaintiffs' Counsel and Southwest agree that this Agreement, including its exhibits, and any and all negotiations, documents, information, and discussions associated with it shall be without prejudice to the rights of Southwest or Plaintiffs, shall not be deemed or construed to be an admission or denial, or evidence or lack of evidence of any violation

of any statute or law or of any liability or wrongdoing, or of the truth or falsity of any of the claims or allegations made in this Action in any pleading, and shall not be used directly or indirectly, in any way, whether in this Action or in any other proceeding.  The Parties specifically agree that Southwest's stipulation to a Settlement Class shall not be used or relied upon by Plaintiffs in support of certification of a litigation class. Plaintiffs reserve their rights to use any documents or depositions that Southwest provided pursuant to its cooperation obligations under this Agreement, but only if both parties agree that such documents or depositions would have been obtainable by separate and independent discovery served on Southwest under the Federal Rules of Civil Procedure.

58.     Plaintiffs' Counsel further agree that, in the event of rescission, the originals and all copies of any notes, memos or records related to the cooperation obligations pursuant to paragraphs 45-54 shall be returned to Southwest at Southwest's expense or destroyed by Plaintiffs' Counsel at their own expense, provided however that such attorney notes, memoranda or records may be destroyed rather than returned if an affidavit of such destruction is promptly provided by Plaintiffs' Counsel to Southwest's Counsel.

## K.     Dispute Resolution

59.     Any dispute arising out of the finalization of the settlement documentation (or this Settlement Agreement) will be resolved by the Settlement Neutral.  Any decision by the Settlement Neutral shall be binding on the Parties.

## L.     Taxes

60.     Plaintiffs' Counsel shall be solely responsible for directing the Claims Administrator to file all informational and other tax returns necessary to report any

taxable and/or net taxable income earned by the Settlement Fund.  Further, Plaintiffs'

Counsel shall be solely responsible for directing the Escrow Agent to make any tax

payments, including interest and penalties due, on income earned by the Settlement

Fund ("Tax Expenses").  Plaintiffs' Counsel shall be entitled to direct the Escrow Agent

in writing to pay customary and reasonable Tax Expenses, including reasonable

professional fees and expenses incurred in connection with carrying out their

responsibilities as set forth in this Paragraph, from the applicable Settlement Fund by

notifying the Escrow Agent in writing.  Southwest shall have no responsibility to make

any tax filings or tax payments relating to this Agreement or the Settlement Fund.

61.     For the purpose of § 468B of the Internal Revenue Code of 1986, as

amended, and the regulations promulgated thereunder, the "Administrator" of the

Settlement Amount shall be the Claims Administrator, who shall timely and properly

file or cause to be filed on a timely basis, all tax returns necessary or advisable with

respect to the Settlement Fund (including, without limitation, all income tax returns, all

informational returns, and all returns described in Treas. Reg. § 1.468B 2(1)).

62.     The Parties to this Agreement and their Counsel shall treat, and shall cause

the Claims Administrator to treat, the Settlement Fund as being at all times a "qualified

settlement fund" within the meaning of Treas. Reg. § 1.468B 1.  In addition, the Claims

Administrator and, as required, the parties, shall timely make such elections as necessary

or advisable to carry out the provisions of this Paragraph, including the "relation-back"

election" (as defined in Treas. Reg. § 1.468B 1(j)) back to the earliest permitted date.

Such elections shall be made in compliance with the procedures and requirements

contained in such regulations.  It shall be the responsibility of the Claims Administrator

to timely and properly prepare and deliver the necessary documentation for signature by all necessary parties and thereafter to cause the appropriate filing to occur.  All provisions of this Agreement shall be interpreted in a manner that is consistent with the Settlement Fund being a "qualified settlement fund" within the meaning of Treas. Reg. § 1.468B 1.

**M.    Miscellaneous**

63.    This Agreement does not settle or compromise any claim by Plaintiffs or any Settlement Class Member asserted in the Action against any Non-Settling Defendant or any potential defendant other than the Released Parties.  All rights of any Class Member against Non-Settling Defendants or any other person or entity other than the Released Parties are specifically reserved by Plaintiffs and the Settlement Class Members.  The sales of domestic air passenger transportation services by Southwest to Class Members shall remain in the case against the Non-Settling Defendants in the Action as a basis for damage claims and shall be part of any joint and several liability claims against Non-Settling Defendants in the Action or other persons or entities other than the Released Parties.

64.   The United States District Court for the District of Columbia shall retain jurisdiction over the implementation, enforcement, and performance of this Agreement, and shall have exclusive jurisdiction over any suit, action, proceeding, or dispute arising out of or relating to this Agreement or the applicability of this Agreement, subject to the dispute resolution provisions set forth above in paragraphs 55 and 59.  This Agreement shall be governed by and interpreted according to the substantive laws of the District of Columbia without regard to its choice of law or conflict of laws principles.  Southwest

submits to the jurisdiction of the District of Columbia only for the purposes of

adjudicating the implementation, enforcement, and performance of this Agreement.

Southwest otherwise retains all defenses to the Court's exercise of personal jurisdiction

over Southwest.

65.     This Agreement constitutes the entire agreement among Plaintiffs (and the

other Releasors) and Southwest (and the other Released Parties) pertaining to the

settlement of the Action against Southwest only, and supersedes any and all prior and

contemporaneous undertakings of Plaintiffs and Southwest in connection therewith,

including the MOU executed on November 20, 2017.  In entering into this Agreement,

Plaintiffs and Southwest have not relied upon any representation or promise made by

Plaintiffs or Southwest not contained in this Agreement.  This Agreement may be

modified or amended only by a writing executed by Plaintiffs and Southwest and

approved by the Court.

66.     This Agreement shall be binding upon, and inure to the benefit of, the

successors and assigns of Releasors and Released Parties.  Without limiting the generality

of the foregoing:  (a) each and every covenant and agreement made herein by Plaintiffs or

Plaintiffs' Counsel shall be binding upon all Settlement Class Members and Releasors;

and (b) each and every covenant and agreement made herein by Released Parties shall be

binding upon all Released Parties.

67.     This Agreement may be executed in counterparts by Plaintiffs' Counsel

and Southwest's Counsel, and an electronically-scanned (in either .pdf or .tiff format)

signature will be considered an original signature for purposes of execution of this

Agreement.

68.     The headings in this Agreement are included for convenience only and shall not be deemed to constitute part of this Agreement or to affect its construction.

69.     In the event this Agreement is not approved, or in the event that the Order and final judgment approving the settlement is entered but is reversed, modified, or vacated, the pre-settlement status of this Action (including, without limitation,  any applicable tolling of all statutes of limitations) shall be restored, and the Agreement shall have no effect on the rights of Plaintiffs or Southwest to prosecute or defend the pending Action in any respect, including the right to litigate fully the issues related to class certification, raise personal jurisdictional defenses, or any other defenses, which rights are specifically and expressly retained by Southwest.

70.     Neither Southwest nor Plaintiffs, nor any of them, shall be considered to be the drafter of this Agreement or any of its provisions for the purpose of any statute, case law, or rule of interpretation or construction that would or might cause any provision to be construed against the drafter of this Agreement.

71.     Nothing expressed or implied in this Agreement is intended to or shall be construed to confer upon or give any person or entity other than Class Members, Releasors, Southwest, and Released Parties any right or remedy under or by reason of this Agreement.

72.     Any putative Class Member that does not opt out of the Settlement Class created pursuant to the Agreement may remain in the Class without prejudice to the right of such putative Class Member to opt out of any future settlement class or certified litigation class in the Action.

73.     Where this Agreement requires any party to provide notice or any other

communication or document to any other party, such notice, communication, or

document shall be provided by electronic mail or overnight delivery to:

<u>For the Settlement Class</u>:
Michael Hausfeld
Hausfeld LLP
1700 K Street NW, Suite 650
Washington, DC 20006
mhausfeld@hausfeld.com

<u>For Southwest</u>:
Roberta Liebenberg
Fine Kaplan and Black
One South Broad Street, Suite 2300
Philadelphia, PA 19107
rliebenberg@finekaplan.com

74.     Each of the undersigned attorneys represents that he or she is fully

authorized to enter into the terms and conditions of, and to execute, this Agreement,

subject to Court approval.

Dated: December 2, 2017

By: _NKScherrer_          By: _[signature]_

Michael D. Hausfeld                    Steven N. Williams
Hilary K. Scherrer                     Adam J. Zapala
Jeannine M. Kenney                     Joyce Chang
**HAUSFELD, LLP**                      **COTCHETT, PITRE & McCARTHY, LLP**
1700 K Street NW, Suite 650            840 Malcolm Road, Suite 200
Washington, DC 20006                   Burlingame, CA 94010
Telephone: (202) 540-7200              Telephone: (650) 697-6000

*Plaintiffs' Counsel*


By: _____          By: _____

Roberta D. Liebenberg                  Joseph Goldberg
Matthew Duncan                         **FREEDMAN BOYD HOLLANDER**
**FINE KAPLAN AND**                    **GOLDBERG URIAS & WARD P.A.**
**BLACK**                              20 First Plaza, Suite 700
One South Broad Street, Suite 2300     Albuquerque, NM 87102
Philadelphia, PA 19107                 Telephone: (505) 842-9960
Telephone: (215) 567-6565

*Counsel for Southwest Airlines Co.*

27

Dated:  December ___, 2017

By: _____

Michael D. Hausfeld
Hilary K. Scherrer
Jeannine M. Kenney
HAUSFELD, LLP
1700 K Street NW, Suite 650
Washington, DC 20006
Telephone: (202) 540-7200

By: _____

Steven N. Williams
Adam J. Zapala
Joyce Chang
COTCHETT, PITRE & McCARTHY, LLP
840 Malcolm Road, Suite 200
Burlingame, CA 94010
Telephone: (650) 697-6000

*Plaintiffs' Counsel*

By: _____

Roberta D. Liebenberg
Matthew Duncan
FINE KAPLAN AND BLACK
One South Broad Street, Suite 2300
Philadelphia, PA 19107
Telephone: (215) 567-6565

By: _____

Joseph Goldberg
FREEDMAN BOYD HOLLANDER
GOLDBERG URIAS & WARD P.A.
20 First Plaza, Suite 700
Albuquerque, NM 87102
Telephone: (505) 842-9960

*Counsel for Southwest Airlines Co.*