**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| |
|---|
| IN RE DOMESTIC AIRLINE TRAVEL ANTITRUST LITIGATION |
| ‾‾ This Document Relates to: ALL CASES. |

**MDL Docket No. 2656**
**Misc. No. 15-1404 (CKK)**

**REPORT AND RECOMMENDATION NO. 4**
**REGARDING DEFENDANTS' MOTION TO COMPEL PLAINTIFFS TO ANSWER**
**CERTAIN OF DEFENDANTS' INTERROGATORIES**
(June 13, 2018)

Before the Special Master is Defendants' Motion to Compel Plaintiffs to answer

Defendants' Interrogatories Nos. 8-10, 15, 16(a), and 16(b). Having reviewed the briefs of the

parties and having heard oral argument, the Special Master recommends that the Court grant in

part and deny in part Defendants' motion.

**Background**[1]

This case has been pending before this Court since October 2015, when earlier-filed

actions in multiple jurisdictions were consolidated and transferred to this Court. [Transfer Order

from the Judicial Panel on Multidistrict Litigation to the U.S. District Court for the District of

Columbia, (ECF No. 1)]. Plaintiffs filed a Consolidated Amended Class Action complaint on

March 25, 2016. (ECF No. 91). The essence of their complaint is that four major airlines—

American Airlines, Inc. ("American"), Delta Air Lines, Inc. ("Delta"), Southwest Airlines Co.

---

[1] To give context to the instant dispute, the Special Master believes it is appropriate to outline the overall scope of discovery to date.

("Southwest"), and United Airlines, Inc. ("United")—fixed prices for domestic airlines tickets by keeping capacity artificially low.  (*Id*. at ¶ 1).

Discovery began on January 30, 2017.  [Scheduling Order Regarding Discovery and Briefing on Motion for Class Certification, at 1 (ECF No. 152, ¶ 1)].  Defendants served their First Set of Interrogatories on Plaintiffs on March 20, 2017, including Interrogatories Nos. 8-10, which are the subject of the current motion.  Among other things, these interrogatories ask "Plaintiffs to provide the facts supporting the allegations in Plaintiffs' complaint of Defendants' supposed unlawful agreement." (Defs.' Mot. to Compel at 1).[2]  Plaintiffs objected to these interrogatories on April 19, 2017, as "premature," noting "[d]iscovery has only recently begun" and referred Defendants to the Complaint.  (Pls.' Responses and Objections to Defs.' First Set of Interrogatories to All Plaintiffs at 13-15).

Shortly after discovery began, in February 2017, each Defendant produced to Plaintiffs the documents it had produced to the Department of Justice ("DOJ") pursuant to a Civil Investigative Demand ("CID") issued by DOJ.  The parties reported at a weekly status conference with the Special Master that the DOJ production totaled approximately 450,000 documents.  [*See also,* Joint Status Rep., May 31, 2018 at ¶¶ II (A-C) (ECF No. 243)].  Defendants also produced the privilege logs they had submitted to DOJ.

By the end of July 2017, Defendants produced to Plaintiffs at least 400 gigabytes of transactional data, "which consisted of, among other things, detailed information about every trip by hundreds of millions of passengers on Defendants' domestic flights between 2007 and 2016," and "airline ticket purchases." [*See,* Joint Status Rep., Nov. 13, 2017 at 2 (ECF No. 194)].

---

[2] The full text of Interrogatories Nos. 8-10 is set forth *infra* at 4.

Beginning in the winter of 2017-2018, Defendants made rolling production of documents to Plaintiffs from custodians, as well as documents from shared drives (the core documents).  As of April 30, 2018, production of these core documents was complete.  Defendants' core document production totaled approximately 6.4 million documents.  Plaintiffs produced approximately 15,000 documents.  [*See,* Joint Status Rep., May 31, 2018 at ¶¶ II (A-D)(ECF No. 243)].

In addition, Plaintiffs subpoenaed documents from 37 third-parties, of which 24 have produced documents to Plaintiffs totaling "more than 975,000 pages of documents and substantial data."  (*Id*. at ¶ III).

While the discovery was ongoing, on December 20, 2017, Plaintiffs and Defendant Southwest executed a settlement agreement, which the Court preliminarily approved on January 3, 2018.  (ECF No. 196-2, ECF No. 197).  Under the terms of that settlement agreement, Southwest agreed to make a cash payment to Plaintiffs, as well as to cooperate with "Plaintiffs in pursuing their case against non-settling Defendants."  [Memorandum in Support of Motion for Preliminary Approval of Settlement with Defendants Southwest Airlines Co. at 1 (ECF No. 196-1)].

Following announcement of the settlement with Southwest, the remaining three Defendants jointly served additional interrogatories on Plaintiffs, seeking among other information: "facts provided to Plaintiffs by Southwest pursuant to their Settlement Agreement" (Interrogatory 15); "the name of the airline industry expert made available to Plaintiffs and paid for by Southwest under  … the Settlement Agreement" [Interrogatory 16(a)]; and "the names of Southwest employees interviewed by Plaintiffs pursuant to . . . the Settlement Agreement" [Interrogatory 16(b)].  (Defs.' Motion to Compel, Exh. 2).  Following Plaintiffs' objections to the

Third Set of Interrogatories, the parties met and conferred in an attempt to resolve their

disagreements concerning interrogatories. (*See, e.g.*, Defs.' Motion to Compel, Exhs. 5-8).

Although the parties resolved some issues during the meet and confers, Interrogatories Nos. 8-

10, 15, 16(a), and 16(b) remain unresolved.

### Interrogatories Nos. 8-10

The first group of Interrogatories before the Special Master are Interrogatories Nos. 8-10,

which ask Plaintiffs to:

> Identify each agreement (including any understanding, contract,
> combination, or conspiracy) among the Defendants for which You seek
> relief in this case and the documents and evidence substantiating your
> answer. [Interrogatory No. 8]

> Identify all meetings and communications, direct or indirect, between or
> among Defendants, related to the alleged conspiracy, and for each identify
> the persons participating in the meeting or communication, the date of the
> meeting or communication, and the location and describe the meetings and
> communications. [Interrogatory No. 9]

> Describe in detail the facts supporting Your allegation that that Defendants
> agreed to 'fix, raise, maintain, and/or stabilize prices for air passenger
> transportation services' by 'colluding to limit capacity on their respective
> airlines' (Complaint ¶ 1), including each capacity-related action that
> resulted from the alleged agreement; each flight, city-pair and segment
> affected by the alleged agreement; the capacity that would have been
> provided or available but-for the alleged agreement; the price(s) actually
> charged; and the price(s) that would have been charged but for the alleged
> agreement. [Interrogatory No. 10]

In response to Defendants' present motion, Plaintiffs continue to object, as they did in

April 2017, that these interrogatories are "premature" "contention" interrogatories that do not

need to be answered until "the end of discovery." (Pls.' Opp. at 9). Moreover, Plaintiffs argue

that "it is simply unrealistic and a waste of party resources to require Plaintiffs to identify all facts now." (*Id.*).[3]

Regardless of whether these interrogatories are or are not deemed "contention interrogatories," in the end Federal Rule of Civil Procedure 33(a)(2)[4] expressly vests courts with authority to order parties to respond to contention interrogatories.  In any event, in this case the Court explicitly authorized Defendants collectively to serve 25 contention interrogatories.  [*See* Discovery Stipulation and Order, March 13, 2017 at ¶ III (ECF No. 160)].

Rather than engage in a detailed examination of what is or is not a "contention interrogatory," the real issue is one of timing; that is, whether answering interrogatories, however denominated, now will clarify and narrow the issues in dispute.  *See, e.g.*, *In re Convergent Technologies Securities Litigation*, 108 F.R.D. 328, 338 (N.D. Ca. 1985) (The key issue is whether ordering answers to interrogatories at this time "will contribute meaningfully to clarify the issues in the case, narrowing the scope of dispute, or setting up early settlement discussions, or that such answers are likely to expose substantial basis for a motion under Rule 11 or Rule 56").

---

[3] Plaintiffs also contend that Defendants are not deprived of any facts needed to fashion their defense as Defendants' own records will be the primary source of information of the alleged antitrust conspiracy. (Pls.' Opp. at 9).  This argument is not persuasive.  Although a party may produce or identify its own business records instead of providing a narrative answer to an interrogatory under Federal Rule of Civil Procedure 33(d), the rules do not allow the responding party to rely on production of another party's documents to satisfy its obligations under Rule 33.  Furthermore, the purpose of interrogatories is not merely to gather information and evidence; it is also a tool to require a party to state its positions on an issue in writing and under oath.  *See Covad Comm. v. Revonet, Inc.*, 258 F.R.D. 17, 20 (D.D.C. 2009).

[4] Fed. R. Civ. P. 33(a)(2) provides: "[A]n interrogatory is not objectionable merely because it asks for an opinion or contention that relates to fact or the application of law to fact, but the court may order that the interrogatory need not be answered until designated discovery is complete, or until a pretrial conference or some other time."

The Special Master concludes that, at this juncture, where the cases were filed over two-and-a-half years ago, where counsel has conducted 15 months of discovery, and where core document discovery is complete, this case will benefit from Plaintiffs answering Interrogatories 8, 9 and part of 10.  *See, e.g.*, *Mills v. Billington*, 2008 WL 11388757 at *2 (D.D.C. 2008) ("Because discovery in this case has been ongoing from more than a year, the Court finds it appropriate for Plaintiffs to respond to inquiries about the basis of their claims.").

Answers to the interrogatories at issue have a high probability of focusing the issues and establishing the significant facts relevant and pertinent to Plaintiffs' claims and allegations.  In a case as sprawling and voluminous as this case is, intermediate milestones will be helpful to keep discovery and, indeed, the case as a whole on track.  Answers to these interrogatories are likely to aid all the parties in assessing the strengths and weaknesses of their cases.  Moving from pleading allegations to identifying evidence can serve as a helpful reality check.  The Special Master does not agree that requiring answers at this juncture will be a waste of time and resources.

Plaintiffs should answer these interrogatories based on their knowledge as of the time they answer the interrogatories.  As the court noted in *In re Domestic Drywall Antitrust Litigation*, 300 F.R.D. 228, 231 (E.D. Pa. 2014):

> At this stage, Plaintiffs do not yet have sufficient information to identify all the relevant actors and communications.  But it is reasonable to expect Plaintiffs to be able to identify at least some of them.  Defendants have a reasonable need to know the identities of the products, individuals who discussed prices with competitors, and the dates and substance of the communications, to proceed with their own effective discovery and investigation.

If Plaintiffs have not yet identified evidence to support their allegations, they may so indicate.

Answering these interrogatories at this time does not limit Plaintiffs only to what they now say. Plaintiffs may amend and/or supplement their interrogatory responses as more evidence is discovered. Indeed, Plaintiffs have an ongoing duty to supplement their responses under Federal Rule of Civil Procedure 26(e).

Recognizing that final production of core documents occurred on April 30, 2018, Plaintiffs should have the opportunity to review the recent document productions. Thus, Plaintiffs shall serve their answers by July 23, 2018. The July 23 date also gives the parties time to prepare for depositions, which the parties expect to begin in late summer and fall. (*See*, Joint Status Rep., May 31, 2018 at 1).

With respect to Interrogatory No. 10, however, Plaintiffs should answer only that portion that requests Plaintiffs to:

> [d]escribe in detail the facts supporting Your allegation that that Defendants agreed to 'fix, raise, maintain, and/or stabilize prices for air passenger transportation services' by 'colluding to limit capacity on their respective airlines' (Complaint ¶ 1), including each capacity-related action that resulted from the alleged agreement; each flight, city-pair and segment affected by the alleged agreement[.]

The Special Master recommends Plaintiffs not be ordered to respond on July 23 to the remainder of Interrogatory No. 10, which asks about "the capacity that would have been provided or available but-for the alleged agreement; the price(s) actually charged; and the price(s) that would have been charged but for the alleged agreement." These latter requests may well be impacted by future discovery and will likely require expert opinion and testimony. Thus, the Special Master concludes that responses to these matters in Interrogatory No. 10 are more properly addressed under this Court's schedule and process set forth for expert discovery. *See*,

Expert Stipulation and Order, Mar. 13, 2017 (ECF No. 159), and Amended Scheduling Order

Regarding Discovery and Class Certification, Feb. 14, 2018, (ECF No. 207).

## Interrogatories No. 15, and 16 (a) and (b)

The Interrogatories subject to the current Motion to Compel read:

Interrogatory No. 15:

> Describe in detail the facts and information disclosed by Southwest under
> the provisions of the Settlement:
>
> (a) requiring disclosure of "facts then known to Southwest that are relevant
> to the claims asserted in the Action" (Settlement at 14–15);
> (b) requiring Southwest to provide information from its "senior executive
> management" to Plaintiffs "through an attorney proffer session" (id. at 18);
> and
> (c) requiring Southwest to respond "to a reasonable number of targeted,
> specific requests for particular information" from Plaintiffs (id.).

Interrogatory No. 16:

> Identify and provide contact information for the following individuals
> designated under the Settlement:
>
> (a)  the industry expert designated under the provision requiring Southwest
> to "facilitate an informational meeting or meetings between Plaintiffs'
> Counsel and an industry expert regarding the domestic air transportation
> industry" (id. at 13);
> (b)  the Southwest employees or former employees designated under the
> provision requiring Southwest to "make available for interviews with
> Plaintiffs' Counsel and/or their experts up to seven (7) current Southwest
> employees at the Vice President level or lower or former Southwest
> employees at the Vice President level or lower represented by Southwest's
> Counsel, as designated by Plaintiffs' Counsel" (id. at 17)[.]

As written, these interrogatories focus on discovering what information Southwest

provided Plaintiffs pursuant to their Settlement Agreement.  Plaintiffs primarily object to these

interrogatories on the basis that responses will disclose attorney-work product.  As Plaintiffs

indicated at the June 4, 2018, status conference with the Special Master, information provided by

Southwest to Plaintiffs took place in the context of Southwest providing information to Plaintiffs and also in response to questions posed by Plaintiffs' counsel.  No transcripts were made of the sessions held to-date between Plaintiffs and Southwest.

It is understandable—indeed expected—that Defendants want to discover what Southwest knows about any alleged price fixing and capacity reductions, among many other facts.  In neither their briefs nor oral argument, however, did Defendants articulate a convincing reason as to why discovery of *Plaintiffs'* understanding of Southwest's facts would assist Defendants in developing their defense.

Southwest is the entity with first-hand knowledge of the information Defendants seek, and Defendants' have not argued their ability to discover facts directly from Southwest is compromised.  At this point, there is no persuasive reason to order Plaintiffs to provide Defendants with information Plaintiffs gleaned from Southwest.  Moreover, insofar as information came from the proffers of Southwest's counsel or other persons providing second-hand information, such information does not constitute the first-hand testimony that Defendants may want from Southwest.  *See,* Fed. R. Civ. P. 26(b)(C)(1) (A court should limit discovery if it determines that "the discovery . . . can be obtained from some other source that is more convenient, less burdensome, or less expensive.")

Interrogatory No. 16(a) seeks the identity of the industry expert "regarding the domestic air transportation industry" that the Settlement Agreement requires Southwest to make available to Plaintiffs.  If Plaintiffs retain the industry expert in question, Defendants will learn of the expert's identity in due course.  [*See*, Expert Stipulation and Order, March 13, 2017 (ECF No. 159)].  At such time, Defendants will have ample opportunity to examine the person.  Now,

however, Defendants have provided no persuasive reason why they need to know the identity of the industry expert provided to Plaintiffs by Southwest.

In Interrogatory No. 16(b) Defendants seek the identities of present or former Southwest employees Southwest has or will make available to Plaintiffs for interviews.  Here, again, Defendants have failed to establish any need or entitlement to obtain such information from Plaintiffs.  Defendants have the ability under the Federal Rules of Civil Procedure to seek from Southwest the names and contact information of individuals with knowledge of the claims and defenses and then decide whether to depose such persons.  Asking Plaintiffs to identify the persons from Southwest that Plaintiffs interviewed as part of the settlement process does not aid Defendants' preparation of their defense.

Accordingly, the Special Master recommends denying Defendants' Motion to Compel answers to Interrogatories Nos. 15, and 16(a) and (b).  Defendants have the documents Southwest produced to Plaintiffs, and Defendants may depose Southwest witnesses directly under Federal Rule Civil Procedure 30.  Rule 30(b)(6) gives Defendants the traditional mechanism to narrow discovery against an organization.

## Conclusion

For the reasons set out above, the Special Master recommends the Court order Plaintiffs to answer Defendants' Interrogatories 8 and 9, in full, and Interrogatory 10, as limited above, by July 23, 2018.  The Special Master also recommends the Court deny Defendants' motion to compel as to interrogatories 15 and 16(a) and (b).


Date: _____June 13, 2018_____                   _____/s/_____

                                                                              Hon. Richard A. Levie (Ret.)
                                                                              Special Master

10