UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|IN RE DOMESTIC AIRLINE TRAVEL ANTITRUST LITIGATION| |
|---|---|
|This Document Relates To:<br>ALL CASES|MDL Docket No. 2656<br>Misc. No. 15-1404 (CKK)|

**MEMORANDUM OPINION**
August 23, 2018

Pending before this Court is Plaintiffs' [218] Motion for Approval of Settlement Notice Program, pertaining to Plaintiffs' proposed settlement with Defendant Southwest Airlines Co. and the [218-1] Memorandum in support thereof; and Plaintiffs' [257] Motion for Approval of Settlement Notice Program, pertaining to Plaintiffs' proposed settlement with Defendant American Airlines, Inc. and the [257-1] Memorandum in support thereof.[1] Attached to both of Plaintiffs' motions is a [257-2] Declaration by Shannon Wheatman, as well as a list of properties and websites in online networks where banner ads will be posted [Ex.1]; the proposed E-mail Notice [Ex. 2]; the proposed Publication Notice [Ex. 3]; and the proposed Long Form Notice [Ex.

---

[1] The Non-Settling Defendants referenced herein are Delta Air Lines and United Airlines. In connection with Plaintiffs' [218] Motion for Approval of Settlement Notice Program ("Pls.' SW Mot.") and Plaintiffs' [257] Motion for Approval of Settlement Notice Program ("Pls.' Am. Mot."), the Court considered the Non-Settling Defendants' [219] Response to the Plaintiffs' SW Motion ("Non-Settling Defs.' SW Resp."); the Plaintiffs' [225] Reply in support of SW Motion ('Pls.' SW Reply"); the Non-Settling Defendants' [263] Response to the Plaintiffs' Am. Motion ("Non-Settling Defs' Am. Resp."); the Plaintiffs' [266] Reply in support of Am. Mot. ("Pls.' Am. Reply"); Southwest's [227] Response to the Court's April 16, 2018 Minute Order; Defendants' [230] Sealed Response to the Court's April 16, 2018 Minute Order; and Plaintiffs' [236] Sealed Supplemental Memorandum submitted in Response to the Court's April 25, 2018 Minute Order.

1

4]. Ms. Wheatman is the president of Kinsella Media, LLC, an advertising and notification consulting firm in Washington, D.C. specializing in the design and implementation of class action and bankruptcy notification programs.[2] Plaintiffs' proposed Notice Program envisions notification to customers/prospective class members through both e-mail addresses and publication, which necessitates that the Non-Settling Defendants (and American) provide Plaintiffs with their customer e-mail addresses.[3] The Non-Settling Defendants have suggested that Plaintiffs provide notification by direct mail instead of e-mail.

In the Plaintiffs' American Motion, Plaintiffs acknowledge that "[t]he Notice Program sought through [the second motion] is in substance the same as that previously proposed in connection with the Southwest Settlement [and] [further,] [t]he notice forms submitted in connection with the Southwest settlement have been revised to include information concerning the American settlement." Pls.' Am. Mot., ECF No. 257, at 1. The Court notes that the two motions submitted by the Plaintiffs are significantly analogous as they discuss the same Notice Program and same arguments in support thereof. Similarly, the Non-Settling Defendants' Response to the American Motion reiterates that "the non-settling Defendants have not refused, and do not object to, providing relevant customer e-mail addresses in their possession [i]f the Court decides that information is necessary to effectuate the "best notice practicable" pursuant to Rule 23(c)(2)(B) and Rule 23(e)(1). . . ." *See* Non-Settling Defs.' Am. Resp., ECF No. 263, at 1; *see also* Non-Settling Defs.' SW Resp., ECF No. 219, at 1. The Non-Settling Defendants estimate however that

---

[2] Ms. Wheatman's curriculum vitae is attached as Exhibit 1 to her [218-2] Declaration in support of Pls.' SW Mot, ECF No. 218.
[3] Defendant Southwest has "already provided Plaintiffs with their available customer contact information." Pls.' Am. Mot., ECF No. 257, at 1.

it may take "up to a month" to retrieve the e-mail addresses. *Id.*[4]

Accordingly, the issue to be resolved by this Court is a determination of what constitutes the "best notice practicable" under the circumstances of this particular multidistrict litigation. For the reasons explained herein, the Court shall GRANT the Plaintiffs' motions for approval of Settlement Notice Program and order the production of customer e-mail addresses by the Non-Settling Defendants. A separate Order, including a schedule for notice and final approval of the Settlement, accompanies this Memorandum Opinion.

**I. BACKGROUND**

Plaintiffs are purchasers of air passenger transportation for domestic travel directly from Defendants — American Airlines, Inc. ("American"), Delta Air Lines, Inc. ("Delta"), Southwest Airlines Co. ("Southwest"), and United Airlines, Inc. ("United") — or their predecessors and/or through websites including Travelocity.com, Orbitz.com, Priceline.com, Expedia.com, and Flyfar.ca. *See* Corrected Consolidated Amended Class Action Complaint, ECF No. 184, ¶¶ 11-22. The plaintiffs named in the Complaint include individuals who are residents of various states and the District of Columbia, a non-profit corporation, and a corporation. *Id.* Plaintiffs define the putative class, with certain exceptions, as: "All persons and entities that purchased air passenger transportation services for flights within the United States and its territories and the District of Columbia from Defendants or any predecessor, subsidiary or affiliate thereof, at any time between July 1, 2011 and the present." *Id.* ¶ 142. Plaintiffs assert that they do not know the exact number

---

[4] "The settlement with American contains a provision whereby such e-mail contact information will be provided to Plaintiffs should the Court order production of such information pursuant to the [pending] Motion." Pls.' Am. Mot., ECF No. 257, at 1.

of members in the putative class because that information is within the Defendants' control, but Plaintiffs believe that the number of Class Members is in the millions and that Class Members "are sufficiently numerous and geographically dispersed throughout the United States so that joinder of all Class [M]embers is impracticable." *Id.* ¶ 143.

The basis of Plaintiffs' lawsuit is Plaintiffs' allegation that Defendants colluded to limit capacity on their respective airlines in a conspiracy to fix, raise, maintain, and/or stabilize prices for air passenger transportation services within the United States, its territories, and the District of Columbia in violation of Sections 1 and 3 of the Sherman Antitrust Act (15 U.S.C. §§ 1, 3), and that Plaintiffs suffered pecuniary injury by paying artificially inflated ticket prices as a result of this purported antitrust violation. *Id.* ¶¶ 1, 11-22. Defendants filed a motion to dismiss the Plaintiffs' Consolidated Amended Complaint, but that motion was denied by this Court. *See* Order, ECF No. 123, Memorandum Opinion, ECF No. 124. The Court entered a subsequent Scheduling Order regarding Discovery and Briefing on the Motion for Class Certification, ECF No. 152, and appointed a Special Master to consider and rule upon discovery disputes. *See* Order Appointing Special Master, ECF No. 154. That Scheduling Order was later amended, *see* ECF No. 207, and discovery is currently ongoing.

On December 29, 2017, Plaintiffs filed a [196] Motion for Preliminary Approval of Settlement with Southwest Airlines Co., and the Court entered an Order Preliminarily Approving the Settlement with Defendant Southwest. *See* January 3, 2018 Order, ECF No. 197. In that January 3, 2018 Order, the Court found that "the prerequisites for a class action have been met" and certified for settlement purposes the following Settlement Class:

All persons and entities that purchased air passenger transportation services for flights

within the United States and its territories and the District of Columbia from Defendants or any predecessor, subsidiary or affiliate thereof, at any time between July 1, 2011 and December 20, 2017. Excluded from the class are governmental entities, Defendants, any parent, subsidiary or affiliate thereof, Defendants' officers, directors, employees, and immediate families, and any judges or justices assigned to hear any aspect of this action.

January 3, 2018 Order, ECF No. 197, at 2.

On June 15, 2018, Plaintiffs filed a [248] Motion for Preliminary Approval of Settlement with Defendant American Airlines, Inc., and the Court entered an Order preliminarily Approving the Settlement with Defendant American. *See* June 18, 2018 Order, ECF No. 249. In that June 18, 2018 Order, the Court found that "the prerequisites for a class action have been met" and certified a Settlement Class virtually identical to the aforementioned Settlement Class, except that the dates run "between July 1, 2011 and June 14, 2018." *See* June 18, 2018 Order, ECF No. 249, at 2.

Now pending before this Court are Plaintiffs' two [almost verbatim] motions for approval of the Settlement Notice Program. Plaintiffs move this Court for approval of their proposed Settlement Notice Program, which is intended to advise Settlement Class Members of their rights regarding objecting to the Settlement Agreement and excluding themselves from the Settlement Class, the procedure for submitting such exclusion request; and specifics about the Fairness Hearing and their right to appear at that Hearing. Plaintiffs further request that this Court order the Non-Settling Defendants — Delta and United — to provide Plaintiffs with e-mail customer contact information in order that Plaintiffs may give notice to possible class members. As previously noted, the Non-Settling Defendants "do not object to providing the e-mail addresses associated with the relevant tickets in their transactional data" but they request 30 days from the date of this Court's Order in which to do so.

5

## II. LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 23(e)(1), a district court, when approving a class action settlement, "must direct notice in a reasonable manner to all class members who would be bound by the proposal." Furthermore, "[f]or any class certified under Rule 23(b)(3), the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). As the Supreme Court has explained, "Rule 23 instructs the court to 'direct to the members of the class the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort'" in order "[t]o alert class members to their right to 'opt out' of a (b)(3) class[.]" *Amchem Prods, Inc. v. Windsor*, 521 U.S. 591, 617 (1997) (citing Fed. R. Civ. P. 23(c)(2)(B)).

The Due Process Clause also gives unnamed class members the right to notice of a class action settlement but does not require actual notice to all class members who may be bound by the litigation. *Fidel v. Farley*, 534 F.3d 508, 513-14 (6th Cir. 2008) (citing *DeJulius v. New England Health Care Employees Pension Fund*, 429 F.3d 935, 943-44 (10th Cir. 2005)). Notice need only be reasonably calculated to reach the class in order to satisfy due process. *Peters v. National R.R. Passenger Corp.*, 966 F.2d 1483, 1486 (D.C. Cir. 1992) (discussing notice by first class mail). Notice of a proposed settlement is adequate and satisfies Rule 23 and due process if it "fairly apprise[s] the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.,* 396 F.3d 96, 114-15 (2d Cir. 2005).

**III. ANALYSIS OF CLASS NOTICE**

In the instant case, Plaintiffs have retained Kinsella Media, LLC ("KM") and Shannon Wheatman Ph.D. "to design and implement a comprehensive class notice program." Pls.' Am. Mem., ECF No. 257-1, at 9.[5] The Notice Program anticipates a four-pronged approach to notifying potential Class Members. First, Plaintiffs will provide direct e-mail notice to Southwest customers, where "Southwest's transactional data includes e-mail addresses for approximately 95% of its customers." Pls.' Am. Mem., ECF No. 257-1, at 9-10. Plaintiffs have also requested that this Court order the Non-Settling Defendants to produce their customer e-mail addresses so that those customers may be directly e-mailed.[6] Even if the Court does not require the Non-Settling Defendants to provide e-mail customer contact information, class notice will be directly e-mailed to "approximately 38.95 million settlement class members." Pls.' Am. Mem., ECF No. 257-1, at 10. The e-mail delivery will be tracked and where an e-mail is returned as undeliverable because of circumstances other than a non-existent address (a "soft bounce"), e-mail delivery will be attempted up to three times.

Second, Plaintiffs propose a paid media publication plan whereby they will place advertisements about the proposed settlement in Time Magazine and on a variety of websites, distributions channels, and social media networks, to supplement the direct e-mail notice. Third,

---

[5] The page number references refer to the page numbers assigned by the ECF system. The Court cites primarily to Plaintiffs' second motion since the two motions are almost verbatim and the second motion references both settling defendants.

[6] As previously noted, Plaintiffs' settlement with American provides that disclosure of e-mail customer contact is contingent on this Court's ruling on these motions.

Plaintiffs will employ an earned media program, which includes a press release "distributed to PR Newswire's US1 news circuit reaching approximately 15,000 print and online media outlets and more than 5,400 websites, databases, and online services." Pls.' Am. Mem., ECF No. 257-1, at 11. Finally, Plaintiffs will establish a website that enables potential Class Members access to additional information about the settlement and the case, including a toll-free number for further inquiries.

As previously noted, the Non-Settling Defendants do not object to providing customer e-mail addresses if they are given thirty days in which to accomplish this task. The Non-Settling Defendants note however that "extensive physical mailing address information [is] also available in the non-settling Defendants' transactional data, much of which has already been produced to Plaintiffs[,]" although Plaintiffs counter this statement with their assertion that "the non-settling Defendants have produced very little residential contact information." *See* Non-Settling Defs.' SW Resp., ECF No. 219, at 1; Pls' SW Reply, ECF No. 225, at 6.[7]

The Non-Settling Defendants assert that at least for Delta, the proposed e-mail notice may reach fewer passengers than notice by mail. The Non-Settling Defendants suggest that the best notice practicable may be a combination of e-mail and traditional mail notice, with no reference to any difference in costs associated with e-mail versus traditional mail and how it will affect the total settlement fund. In contrast,

> Plaintiffs' notice experts estimate that a mailing to an individual class member would substantially exhaust the settlement fund — requiring payments of anywhere from $12.3

---

[7] According to the Non-Settling Defendants, Delta had "already produced all of the physical mailing addresses associated with the tickets" issued between July 1, 2011 and December 31, 2016, but "United did not have physical mailing addresses in its transactional data[.]" Non-Settling Defs.' SW Resp., ECF No. 219, at 3.

> million to $43.4 million to provide mailed notice [and] [t]hus, providing mailed notice to the class, or even to a small fraction of the class, would quickly devour the entirety or the vast majority of the settlement corpus of $15 million.

Pls.' SW Reply, ECF No. 225, at 5 (internal citation omitted); *see* Wheatman Decl., ECF No. 218-2, ¶18. The total settlement corpus was $15 million based on the Plaintiffs' settlement with Southwest, but it is now closer to $60 million based on Plaintiffs' settlement with American for $45 million. *See* Memorandum in support of Motion for Preliminary Approval of Settlement with Defendant American, ECF No. 248-1, at 2.

The Non-Settling Defendants rely on *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 176 (1974) for the proposition that individual notice to identifiable class members is an unambiguous requirement of Rule 23, and further, that such notice need not be "tailored to fit the pocketbooks of particular plaintiffs." Defendants' reliance on *Eisen* is misplaced for several reasons. That 1974 case involved a choice between direct individual notice by mail or publication, while this case anticipates the use of direct individual notice by e-mail <u>and</u> publication in print and on Internet sites. In *Eisen*, the names and addresses of class members could be easily ascertained, whereas in this case, the Non-Settling Defendants indicate that their data "do not necessarily identify the person or entity that actually "*purchased*" their air transportation services" but instead include some contact information for passengers, and verifying the identity of any particular class member (the ticket purchaser) "may require a highly individualized inquiry." *See* Non-Settling Defs.' SW Resp., ECF No. 219, at 2. In another case involving a class comprised of purchasers of airline tickets, the information compiled by defendants there; *i.e.*, names and addresses of 9.3 million persons associated with credit card numbers, was determined by the court not to be a list of class

9

members, and thus, the court concluded that there was no assurance that notice to persons on that list would definitely result in notice to a substantial number of class members, and this was "not the classic case where Rule 23(c)(2) individual notice [was] mandated." *See In re Domestic Air Transp. Antitrust Litig.*, 141 F.R.D. 534, 539-47 (N.D. Ga. 1992). Finally, the class in *Eisen* was composed of 6 million people, with 2.25 million people able to be identified for purposes of individual notice, whereas the class here is estimated to be between 84.7 million and 153.8 million. *See* Pls.' SW Reply, ECF No. 225, at 8. The cost of individual notice in *Eisen* was about $225,000, while the cost of mailing a postcard notice to Settlement Class Members here would be between $12,333,000 and $31,834,000, (after accounting for the 41 million Southwest e-mails), and this would either decimate or deplete the "settlement corpus of $15 million" paid by Southwest, and it would substantially reduce the settlement corpus of $45 million paid by American. [8] *See* Pls.' SW Reply, ECF No. 225, at 5.

Plaintiffs contend that courts commonly approve notice programs providing for e-mail notice and in support of this contention, they cite *Levine v Am. Psychological Ass'n*, (*In re APA Assessment Fee Litig.*), 311 F.R.D. 8, 13 (D.D.C. 2015) (involving a class or 75,000 people, where e-mail notice was utilized for 51,000 people and traditional mail notice for the rest); *In re Livingsocial Mktg.& Sales Practice Litig.*, 298 F.R.D. 1, 8 (D.D.C. 2013) (involving a class of 10.9 million persons contesting gift certificates sold via the internet, in which notice was given

---

[8] In *Eisen*, the Circuit Court determined that individual notice to the 2.25 million class members who could be reasonably identified was required by Rule 23, and the cost was to be borne by the petitioner. *Eisen*, 417 U.S. at 176-77. Because the petitioner had indicated that he would not bear the cost of notice to members of the class, as defined in his complaint, the case was remanded with instructions to dismiss the class action as it was defined. *Id.* at 179.

through e-mail); and *In re Sony PS3 "Other OS" Litig.*, Case No. 10-cv-01811-YGR, 2017 WL 5598726 (N.D. Cal. Nov. 21, 2017) (involving breach of contract claims by purchasers of computer entertainment consoles, where dissemination of settlement information was to be completed by giving notice "to Class Members via email for those Class members for whom an email address is available").

The type of notice to which a class member is entitled "depends upon the information available to the parties about that person." *In re Pool Products Distrib. Market Antitrust Litig.,* 310 F.R.D. 300, 317 (E.D. La. 2016) (citing *In re Nissan Motor Corp. Antitrust Litig.*, 552 F.2d 1088, 1098 (5th Cir. 1977)). "[N]o single formula can be derived which will anticipate the myriad of circumstances that may confront class action litigants attempting to identify absentee class members of a 23(b)(3) action and resolve whether the effort is reasonable." *Nissan,* 552 F.2d at 1097. Instead, this Court must examine the available information and possible methods of identification before deciding what amounts to reasonable efforts under the circumstances. The Court must balance between protecting class members and making Rule 23 workable, with consideration of the circumstances, size of the class, and cost of providing notice compared to the total settlement fund. S*ee McKinney v United States Postal Service*, 292 F.R.D.62, 66-68 (D.D.C. 2013) (discussing the flexible notice requirements under Rule 23); *see also In re "Agent Orange" Product Liability Litig.*, 818 F. 2d 145, 168 (2d Cir. 1987) (Rule 23 "accords considerable discretion to a district court in fashioning notice to a class."), *cert. denied*, 484 U.S. 1004 (1988).

In an effort to determine if notification through a combination of e-mail and publication constitutes the best notice practicable in this case involving an estimated 84-153 million prospective members of the class and a settlement corpus that now stands at $60 million, the Court

asked the Non-Settling Defendants to indicate what percentage of their airline reservations are completed using the Internet. *See* April 16, 2018 Minute Order. American Airlines and Non-Settling Defendants Delta and United estimated that for all three airlines, for the period 2011-2017, the majority of domestic airline travel was booked online using the airline's website or an online travel agent.[9] *See* Sealed Response, ECF No. 230. The Court posed the following question to Southwest:

> [I]n light of the fact that Plaintiffs have indicated that Southwest's transactional data includes e-mail addresses for approximately 95% of its customers. . . does Southwest also have postal addresses for its customers, and is so, [ ] for what percentage of its customers does it have postal addresses?

April 16, 2018 Minute Order. Southwest responded that "approximately 89% of [its] reservations are made over the internet" and it "has postal addresses for approximately 90% of purchasers." *See* Southwest's Resp. to the Court's April 16, 2018 Minute Order, ECF No. 227, at 2.

Pursuant to a Minute Order dated April 25, 2018, the Court requested that Plaintiffs respond to the following question:

> [I]n light of the fact that Plaintiffs have indicated that the cost of mailing notices to potential class members would range between 12.3 and 43.4 million dollars, the Court requests an estimate of the range of costs associated with providing e-mail notification to potential class members, and the range of costs associated with the other methods of disseminating notice, as proposed in the Plaintiffs' notice program.

April 25, 2018 Minute Order. The Plaintiffs responded by estimating the cost of e-mail notification and publication based on three difference scenarios: (1) assuming they only had the Southwest

---

[9] Because the information in Defendants' [230] Response to the Court's Minute Order of April 16, 2018 has been filed under seal and designated as "highly confidential," the Court does not state the exact percentages referenced therein.

12

customer e-mails already in their possession, which would necessitate a broader range of publication; (2) assuming they had additional e-mail addresses, which would allow a more narrow scope of publication; and (3) assuming they had virtually all the e-mail addresses in the Non-Settling Defendants' possession, which would permit an even narrower scope of publication. The combined total costs for the e-mail and publication notification decreased as more e-mails were added and a more narrow scope of publication was required, and the overall cost for any of the three scenarios was meager when compared to the cost of using direct mail.[10] Accordingly, taking into account that the majority of class members use the Internet to book their flights, as well as the large size of the class and the disproportionately higher cost of providing notification by direct mail as opposed to e-mail, and considering that the e-mail notification will be supplemented by publication through print and media outlets and numerous websites, databases and online services, the Court finds that the notice proposed in the Settlement Notice Program constitutes the "best notice practicable" under the circumstances of this case.

## IV. CONCLUSION

For the foregoing reasons, the Court shall GRANT Plaintiffs' Motions for Approval of Settlement Notice Program, and the Non-Settling Defendants will be permitted thirty days in which to compile and provide the relevant customer e-mail addresses to the Plaintiffs. A separate Order accompanies this Memorandum Opinion.

*/s/*
**COLLEEN KOLLAR-KOTELLY**
UNITED STATES DISTRICT JUDGE

---

[10] The Court does not disclose the exact estimated figures provided by Plaintiffs as their [238] Response was provided under seal and marked "highly confidential."