# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **IN RE DOMESTIC AIRLINE TRAVEL ANTITRUST LITIGATION**<br><br>**This Document Relates To:**<br><br>**ALL CASES** | **MDL No. 2656**<br>**Case No. 1:15-mc-01404-CKK**<br><br>**[ORAL ARGUMENT REQUESTED]** |

### PLAINTIFFS' MOTION FOR AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF REASONABLE LITIGATION EXPENSES, AND AWARD OF FUTURE LITIGATION EXPENSES

Pursuant to Federal Rules of Civil Procedure 23(h) and 54(d)(2), and in connection with the final approval of the American Airlines, Inc. ("American") and Southwest Airlines Co. ("Southwest") settlements, Plaintiffs hereby move the Court for (1) an award of attorneys' fees in the amount of $15 million, which constitutes 25 percent of the Settlement Fund,[1] (2) reimbursement of reasonably incurred litigation expenses in the amount of $1,573,192.48, and (3) approval of $3 million (5 percent of the Settlement Fund) to be set aside for the purpose of creating a fund for future litigation expenses. Fed. R. Civ. P. 23(h), 54(d)(2). The Court should grant this Motion because the fees and costs requested are fair and reasonable in light of the resources expended and risks undertaken to litigate this case against the four largest U.S.-based airlines. Plaintiffs' request falls well within the range that other district courts within this Circuit have approved.

---

[1] "Settlement Fund" means the American settlement of $45 million, plus the Southwest settlement of $15 million, which total $60 million.

This motion is based on the Memorandum of Law as well as the Joint Declaration of Cotchett, Pitre & McCarthy, LLP and Hausfeld LLP and the exhibits thereto.

Dated: December 5, 2018

Respectfully Submitted,

*/s/ Adam J. Zapala*
Adam J. Zapala
Elizabeth T. Castillo
Adam J. Trott
Michael A. Montano
COTCHETT, PITRE & McCARTHY, LLP
840 Malcolm Road, Suite 200
Burlingame, CA 94010
Telephone: 650-697-6000
azapala@cpmlegal.com
ecastillo@cpmlegal.com
atrott@cpmlegal.com
mmontano@cpmlegal.com


Alexander E. Barnett
COTCHETT, PITRE & McCARTHY, LLP
40 Worth Street, 10th Floor
New York, NY 10013
Telephone: 212-201-6820
abarnett@cpmlegal.com

*Interim Co-Lead Class Counsel*

*/s/ Michael D. Hausfeld*
Michael D. Hausfeld
Hilary K. Scherrer
Jeannine Kenney
HAUSFELD LLP
1700 K Street NW, Suite 650
Washington, DC 20006
Telephone: (202) 540-7200
mhausfeld@hausfeld.com
hscherrer@hausfeld.com
jkenney@hausfeld.com


Michael P. Lehmann
Bonny E. Sweeney
HAUSFELD, LLP
600 Montgomery Street, Suite 3200
San Francisco, CA 94111
Telephone: (415) 633-1908
mlehmann@hausfeld.com
bsweeney@hausfeld.com

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| IN RE DOMESTIC AIRLINE TRAVEL ANTITRUST LITIGATION | **MDL No. 2656**<br>**Case No. 1:15-mc-01404-CKK** |
| This Document Relates To:<br><br>ALL CASES | **[ORAL ARGUMENT REQUESTED]** |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF REASONABLE LITIGATION EXPENSES, AND AWARD OF FUTURE LITIGATION EXPENSES**

## TABLE OF CONTENTS

**Page**

I. INTRODUCTION ........................................................................................................ 1

II. STATEMENT OF FACTS ......................................................................................... 4

    A. American and Southwest Settlements ................................................................. 4

    B. Litigation Overview ........................................................................................... 4

III. ARGUMENT .............................................................................................................. 7

    A. The Court Should Grant Class Counsel's Request for Attorneys' Fees Because It Is Fair and Reasonable. ......................................................................................... 7

        i. The D.C. Circuit Recognizes the Common Fund Doctrine. ....................... 7

        ii. The Court Should Award Attorneys' Fees Based on the Percentage-of-the-Recovery Method. ...................................................................................... 8

        iii. An Award of Attorneys' Fees of 25 Percent of the Settlement Fund Is Fair and Reasonable. ...................................................................................... 9

            1. Size of Fund and Number of Persons Benefited ............................ 9

            2. Objections to Fees by Class Members .......................................... 11

            3. Skill and Efficiency of Class Counsel ......................................... 11

            4. Complexity and Duration of the Case........................................... 13

            5. Risk of Nonpayment and Amount of Time Devoted by Class Counsel ....................................................................................... 14

            6. Attorneys' Fee Awards in Similar Cases ..................................... 16

        iv. Other Potential Considerations .............................................................. 18

            1. The Lodestar Method Confirms the Reasonableness of the Fee Request......................................................................................... 19

            2. Public Policy Further Supports the Fee Request........................... 20

    B. The Court Should Grant Reimbursement of Reasonably Incurred Litigation Expenses. ........................................................................................................ 21

C.    The Court Should Establish a Future Litigation Fund to Assist in Further Prosecution of These Important Claims................................................................ 24

IV.    CONCLUSION................................................................................................................ 26

# TABLE OF AUTHORITIES

**Pages(s)**

## Cases

*Advoc. Health Care v. Mylan Labs. Inc.* (*In re Lorazepam & Clorazepate Antitrust Litig.*),
No. 99-0790 (TFH), 2003 U.S. Dist. LEXIS 12344 (D.D.C. June 16, 2003)................. *passim*

*In re Aetna Inc. Sec. Litig.*,
2001 U.S. Dist. LEXIS 68 (E.D. Pa. Jan. 4, 2001) .......................................................2, 15, 17

*In re Air Cargo Shipping Servs. Antitrust Litig.*,
No. 06-md-1775 (E.D.N.Y.) ................................................................................................12

*In re Air Cargo Shipping Servs. Antitrust Litig.*,
No. 06-MD-1775 (JG) (VVP), 2012 U.S. Dist. LEXIS 108299 (E.D.N.Y.
Aug. 2, 2012) ......................................................................................................................17

*In re Ampicillin Antitrust Litig.*,
526 F. Supp. 494 (D.D.C. 1981) .........................................................................................16

*In re Auto. Parts Antitrust Litig.*,
Master File No. 12-md-02311, 2016 U.S. Dist. LEXIS 98446 (E.D. Mich.
June 20, 2016)...............................................................................................................24, 25

*In re Auto. Parts Antitrust Litig.* (*Wire Harness Systems*),
Master File No. 12-md-02311, Case No. 2:12-cv-00103, ECF No. 577 (E.D.
Mich. July 10, 2017) ..........................................................................................................10

*In re Baan Co. Secs. Litig.*,
288 F. Supp. 2d 14 (D.D.C. 2003) ......................................................................................19

*Bebchick v. Wash. Metro. Area Transit Com.*,
805 F.2d 396 (D.C. Cir. 1986) ..............................................................................................8

*Behrens v. Wometco Enters., Inc.*,
118 F.R.D. 534 (S.D. Fla. 1988) .........................................................................................14

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007).............................................................................................................11

*In re Black Farmers Discrimination Litig.*,
856 F. Supp. 2d 1 (D.D.C. 2011) ...............................................................................7, 18, 19

*Boeing Co. v. Van Gemert*,
444 U.S. 472 (1980)...............................................................................................................8

*Bradburn Parent Teacher Store, Inc. v. 3M*,
    513 F. Supp. 2d 322 (E.D. Pa. 2007) ...................................................................17

*In Re Brand Name Prescription Drug Litig.*,
    No. 94 C 897, MDL No. 997 (N.D. Ill. Feb. 18, 1998) ..........................................25

*Brown v. Phillips Petroleum Co.*,
    838 F.2d 451 (10th Cir. 1988) ...............................................................................8

*In re California Micro Devices Sec. Litig.*,
    965 F. Supp. 1327 (N.D. Cal. 1997) .....................................................................25

*Camden I Condominium Ass'n v. Dunkle*,
    946 F.2d 768 (11th Cir. 1991) ...............................................................................8

*In re Capacitors Antitrust Litig.*,
    No. 14-cv-03264-JD, ECF No. 1934 (N.D. Cal. Oct. 30, 2017) ...........................10

*In re Cardinal Health Inc. Sec. Litig.*,
    528 F. Supp. 2d 752 (S.D. Ohio 2007) ..................................................................14

*In re Citigroup Inc. Sec. Litig.*,
    965 F. Supp. 2d 369 (S.D.N.Y. 2013).....................................................................2

*Cohen v. Warner Chilcott Pub. Ltd. Co.*,
    522 F. Supp. 2d 105 (D.D.C. 2007) .................................................................16, 22

*In re Compact Disc Minimum Advertised Price Antitrust Litig.*,
    216 F.R.D. 197 (D. Me. 2003)...............................................................................19

*In re Corrugated Container Antitrust Litig.*,
    No. 81-md-310, U.S. Dist. LEXIS 9687 (S.D. Tex. June 4, 1981) .......................10

*In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*,
    No. 02-md-01486 (ECF No. 1315) (N.D. Cal. Feb. 14, 2007) ..............................25

*In re First Databank Antitrust Litig.*,
    209 F. Supp. 2d 96 (D.D.C. 2002) ......................................................................7, 16

*Goldberger v. Integrated Res., Inc.*,
    209 F.3d 43 (2d Cir. 2000)....................................................................................14

*Gunter v. Ridgewood Energy Corp.*,
    223 F.3d 190 (3d Cir. 2000)..................................................................................15

*Hensley v. Eckerhart*,
    461 U.S. 424 (1983)............................................................................................7, 9

*In re Int'l Air Transp. Surcharge Antitrust Litig.*
  No. 06-md-01793 (N.D. Cal.) ............................................................................12

*In re Iowa Ready-Mix Concrete Antitrust Litig.*,
  No. 10-cv-4038, 2011 U.S. Dist. LEXIS 130180 (N.D. Iowa Nov. 9, 2011).....................2, 17

*Kifafi v. Hilton Hotels Ret. Plan*,
  999 F. Supp. 2d 88 (D.D.C. 2013) .....................................................................9, 22

*In re Linerboard Antitrust Litig.*,
  292 F. Supp. 2d 631 (E.D. Pa. 2003) ....................................................4, 10, 24, 25

*In re Linerboard Antitrust Litig.*,
  MDL No. 1261, 2004 U.S. Dist. LEXIS 10532 (E.D. Pa. June 2, 2004) ........................17, 21

*In re Lease Oil Antitrust Litig.*,
  186 F.R.D. 403 (S.D. Tex. 1999).........................................................................17

*Levine v. Am. Psychological Ass'n (In re APA Assessment Fee Litig.)*,
  311 F.R.D. 8 (D.D.C. 2015)..................................................................................2

*In re Livingsocial Mktg. & Sales Practice Litig.*,
  298 F.R.D. 1 (D.D.C. 2013)..................................................................................2

*In re Lloyd's Am. Trust Fund Litig.*,
  No. 96 Civ. 1262 (RWS), 2002 U.S. Dist. LEXIS 22663 (S.D.N.Y. Nov. 26,
  2002) ................................................................................................................8

*Maywalt v. Parker & Parsley Petroleum Co.*,
  963 F. Supp. 310 (S.D.N.Y. 1997) .......................................................................2

*Mesko v. Cabletron Sys. (In re Cabletron Sys. Sec. Litig.)*,
  239 F.R.D. 30 (D.N.H. 2006) ...............................................................................2

*In re Microcrystalline Cellulose Antitrust Litig.*,
  No. 01-cv-111 (E.D. Pa. June 15, 2005)...............................................................25

*Minn. Mining & Mfg. Co. v. New Jersey Wood Finishing Co.*,
  381 U.S. 311 (1965)...........................................................................................20

*In re Motorsports Merchandise Antitrust Litig.*,
  112 F. Supp. 2d 1329 (N.D. Ga. 2000) ............................................................4, 13

*In re Newbridge Networks Sec. Litig.*,
  No. 94-1678-LFO, 1998 U.S. Dist. LEXIS 23238 (D.D.C. Oct. 23, 1998) ...................15

*Newby v. Enron Corp.*,
  394 F.3d 296 (5th Cir. 2004) .......................................................................24, 25

*In re Packaged Ice Antitrust Litig.*,
    No. 08-md-01952, 2010 U.S. Dist. LEXIS 77645 (E.D. Mich. Aug. 2, 2010) ......................10

*In re Packaged Ice Antitrust Litig.*,
    No. 08-MDL-01952, 2011 U.S. Dist. LEXIS 150427 (E.D. Mich. Dec. 13,
    2011) ...............................................................................................................................13

*In re Packaged Ice Antitrust Litig.*,
    No. 11-md-01952, 2011 U.S. Dist. LEXIS 17255 (E.D. Mich. Feb. 22, 2011) ...............24, 25

*Paul, Johnson, Alston & Hunt v. Graulty*,
    886 F.2d 268 (9th Cir. 1989) ...............................................................................................8

*Perma Life Mufflers, Inc. v. Int'l Parts Corp.*,
    392 U.S. 134 (1968)............................................................................................................20

*Pillsbury Co. v. Conboy*,
    459 U.S. 248 (1983)............................................................................................................20

*In re Polyurethane Foam Antitrust Litig.*,
    No. 1:10 MD 2196, 2015 U.S. Dist. LEXIS 23482 (N.D. Ohio Feb. 26, 2015).....................16

*Powers v. Eichen*,
    229 F.3d 1249 (9th Cir. 2000) ............................................................................................17

*Precision Associates, Inc. et al. v. Panalpina World Transport (Holding) Ltd., et al.*,
    No. 08-cv-00042-(JG) (VVP) ..............................................................................................10

*Precision Assocs. v. Panalpina World Transp. (Holding) Ltd.*,
    No. 08-cv-00042 (E.D.N.Y.) ...............................................................................................12

*In re Pressure Sensitive Labelstock Antitrust Litig.*,
    584 F. Supp. 2d 697 (M.D. Pa. 2008) ..................................................................................24

*Reiter v. Sonotone Corp.*,
    442 U.S. 330 (1979)............................................................................................................20

*Rosenbaum v. MacAllister*,
    64 F.3d 1439 (10th Cir. 1995) ............................................................................................15

*In re S.E. Milk Antitrust Litig.*,
    No. 08-md-1000, 2013 U.S. Dist. LEXIS 70167 (E.D. Tenn. May 17, 2013) ..................2, 17

*In re Shopping Carts Antitrust Litig.*,
    No. 451-CLB, 1983 U.S. Dist. LEXIS 11555 (S.D.N.Y. Nov. 18, 1983)................................4

*Std. Iron Works v. Arcelormittal* (*In re Steel Antitrust Litig.*),
No. 08-C-5214, 2014 U.S. Dist. LEXIS 162557 (N.D. Ill. Oct. 22, 2014) ............................17

*Swedish Hosp. Corp. v. Shalala*,
1 F.3d 1261 (D.C. Cir. 1993) ...................................................................................7, 9

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
No. 07-1827 (ECF No. 2474) (N.D. Cal. Feb. 17, 2011) ......................................................25

*In re Trans Union Corp. Privacy Litig.*,
629 F.3d 741 (7th Cir. 2011) ..................................................................................14

*In re Transpacific Air Passenger Transp. Antitrust Litig.*,
MDL No. 1913, No. 07-CV-5634-CRB (N.D. Cal.) ............................................................12

*In re Transpacific Passenger Air Transp. Antitrust Litig.*,
No. C 07-05634 CRB, 2015 U.S. Dist. LEXIS 67904 (N.D. Cal. May 26,
2015) ...........................................................................................................17, 24, 25

*In re Transpacific Passenger Air Transportation Antitrust Litig.*,
No. 07-05634-CRB, ECF Nos. 968, 1009 (N.D. Cal. Dec. 14, 2014; May 26,
2015) ..............................................................................................................10

*Trombley v. Nat'l City Bank*,
826 F. Supp. 2d 179 (D.D.C. 2011) ...........................................................................19

*Vista Healthplan, Inc. v. Warner Holdings Co. III, Ltd.*,
246 F.R.D. 349 (D.D.C. 2007) .............................................................................16, 22

*In re Vitamins Antitrust Litig.*,
MDL No. 1285, 2001 U.S. Dist. LEXIS 25067 (D.D.C. July 16, 2001) ........................ *passim*

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
396 F.3d 96 (2d Cir. 2005) .....................................................................................21

*Wells v. Allstate Ins. Co.*,
557 F. Supp. 2d 1 (D.D.C. 2008) .............................................................................19

**Statutes**

Sherman Antitrust Act Sections 1 and 3 (15 U.S.C. §§ 1, 3) (2004) ...............................................1

**Rules**

Federal Rules of Civil Procedure 23(h) and 54(d)(2) ...................................................................3, 5

**Other Authorities**

Theodore Eisenberg & Geoffrey P. Miller, *Attorney Fees in Class Action Settlements: An Empirical Study* ............................................................................................17

## I.  INTRODUCTION

Plaintiffs, by and through Interim Co-Lead Class Counsel ("Class Counsel"), hereby move the Court for an award of attorneys' fees in the amount of $15 million, reimbursement of reasonably incurred litigation expenses in the amount of $1,573,192.48, and approval of a $3 million future litigation expense fund.

In mid-2015, Plaintiffs filed the first complaints against four major U.S.-based airlines— American Airlines, Inc. ("American"), Delta Air Lines, Inc. ("Delta"), Southwest Airlines Co. ("Southwest"), and United Airlines, Inc. ("United") (collectively, "Defendants")—alleging that they colluded to limit their respective capacity in a conspiracy to fix, raise, maintain, and/or stabilize prices for air passenger transportation services within the United States, its territories, and the District of Columbia in violation of Sections 1 and 3 of the Sherman Antitrust Act (15 U.S.C. §§ 1, 3) (2004)). Although the Antitrust Division of the United States Department of Justice ("DOJ") closed its investigation without charging any airline with antitrust violations, Plaintiffs have continued to vigorously litigate this case and, after three years of hard-fought litigation, have achieved $60 million in settlements ("Settlement Fund") with two of the four Defendants.

Plaintiffs' achievements in this case to date are even more notable given the intricacies of the alleged conspiracy, including the use of conduits, non-parties, and public signaling to achieve the cartel's aims. The case has been heavily litigated, requiring, among other tasks, significant motion practice and discovery management by the Special Master. In light of the substantial settlement fund created for the class, the factors guiding district courts in granting fee awards, and the significant risk faced by Plaintiffs throughout this litigation, Class Counsel's fee request for 25 percent of the Settlement Fund is fair and reasonable. *See*, *e.g.*, *Advoc. Health Care v. Mylan Labs. Inc.* (*In re Lorazepam & Clorazepate Antitrust Litig.*), No. 99-0790 (TFH), 2003 U.S. Dist. LEXIS 12344, at *28 (D.D.C. June 16, 2003) ("*Lorazepam*") (awarding 30.6 percent of $35 million

settlement fund where class action was "vigorously litigated for a protracted period of time, raised novel and complex issues, involved a substantial risk of absolute non-payment, and demonstrated the quality of Class Counsel's reputation"); *In re Aetna Inc. Sec. Litig.*, 2001 U.S. Dist. LEXIS 68, at *45, *59 (E.D. Pa. Jan. 4, 2001) ("*Aetna*") (awarding 30 percent of $82.5 million settlement fund where "the course of this litigation was prolonged, having been actively litigated for nearly three years, and involved complex issues"); *Maywalt v. Parker & Parsley Petroleum Co.*, 963 F. Supp. 310, 313 (S.D.N.Y. 1997) (awarding 33.4 percent of the common fund).

Class Counsel's request is well within the range of fee percentages granted in similar common fund cases, including those by this Court. *See, e.g.*, *Levine v. Am. Psychological Ass'n (In re APA Assessment Fee Litig.)*, 311 F.R.D. 8, 22 (D.D.C. 2015) (awarding 30 percent of settlement fund); *In re S.E. Milk Antitrust Litig.*, No. 08-md-1000, 2013 U.S. Dist. LEXIS 70167, at *31 (E.D. Tenn. May 17, 2013) ("*S.E. Milk*") (awarding one-third of $158 million settlement fund); *In re Iowa Ready-Mix Concrete Antitrust Litig.*, No. 10-cv-4038, 2011 U.S. Dist. LEXIS 130180, at *18-19 (N.D. Iowa Nov. 9, 2011) ("*Concrete*") (awarding 36 percent of $18.5 million settlement fund).

Moreover, a "lodestar crosscheck" of Class Counsel's attorney fee request confirms its reasonableness beyond question: Class Counsel's request would result in a negative multiplier, meaning that granting the fee award will not fully compensate Plaintiffs' Counsel for the time spent on the litigation thus far. *See, e.g.*, *In re Livingsocial Mktg. & Sales Practice Litig.*, 298 F.R.D. 1, 15 (D.D.C. 2013); *Mesko v. Cabletron Sys. (In re Cabletron Sys. Sec. Litig.)*, 239 F.R.D. 30, 37 (D.N.H. 2006); *In re Citigroup Inc. Sec. Litig.*, 965 F. Supp. 2d 369, 88 (S.D.N.Y. 2013). Through Class Counsel's substantial efforts, as more fully described herein, a substantial Settlement Fund has been created for the benefit of the class.

Class Counsel's requests for reimbursement of incurred litigation expenses and for a future litigation fund are also consistent with what courts have approved in other complex class actions, especially in antitrust cases. Courts routinely award litigation expenses which would ordinarily be billed to a private client, and allowing a portion of the total settlement fund to be used for future expenses is well-accepted. *See, infra*, at § III(B)-(C) (The Court Should Grant Reimbursement of Reasonably Incurred Litigation Expenses; The Court Should Establish a Future Litigation Fund to Assist in Further Prosecution of These Important Claims).

Accordingly, pursuant to Federal Rules of Civil Procedure 23(h) and 54(d)(2), Plaintiffs respectfully request: (1) an award of attorneys' fees of 25 percent ($15 million) of the Settlement Fund, (2) reimbursement of reasonable litigation expenses incurred from February 5, 2016 through June 18, 2018 (*i.e.*, the date of the Court's appointment of leadership through the date of the Court's preliminary approval of the most recent settlement, the American settlement) totaling $1,573,192.48 (exclusive of notice and claims administration expenses[2]), and (3) approval to create a $3 million future litigation fund. Fed. R. Civ. P. 23(h), 54(d)(2). Collectively, the foregoing constitutes 32.6 percent of the Settlement Fund and is fair and reasonable under the circumstances.[3]

---

[2] Under paragraph 30 of each of the Southwest and American Settlement Agreements, payment for the costs of notice and administration by the Claims Administrator is to be disbursed from the Escrow Account to the Claims administrator upon approval of the Court.  Plaintiffs will shortly file a separate proposed order seeking Court approval of disbursements from the Escrow Accounts established for each Settlement Funds for payment of notice and administration costs incurred to date.

[3] Class Counsel recognize that in matters involving partial settlements, the Court may, in its discretion, defer payment of all or a portion of any fees awarded until distribution of the settlement proceeds.

## II.   STATEMENT OF FACTS

### A.   American and Southwest Settlements

On December 20, 2017, after extensive and hard-fought negotiations, Plaintiffs and Southwest entered into a proposed settlement of $15 million, which the Court preliminarily approved on January 3, 2018 (ECF No. 197). This icebreaker settlement included cooperation provisions regarding the remaining three Defendants. On June 14, 2018, Plaintiffs and American entered into a proposed settlement of $45 million, which the Court preliminarily approved on June 18, 2018 (ECF No. 249). This second settlement also included cooperation against the remaining two Defendants. The Southwest and American settlements both provide cash benefits and valuable cooperation as Plaintiffs continue to prosecute claims against Delta and United.

On March 23, 2018 and August 2, 2018, Plaintiffs moved for approval of their settlement notice program relating to the Southwest and American settlements, respectively, which the Court granted on August 22, 2018 (ECF No. 268). The Court entered the final approval schedule relating to these settlements on September 12, 2018, setting the final approval hearing for March 22, 2019 at 10:00 a.m. (ECF No. 285).

### B.   Litigation Overview

As many commentators have noted, antitrust class actions are high stakes and inherently risky,[4] and this case is no exception. Despite settling with two of the four Defendants to date, the outcome of this case is far from certain given that many depositions, summary judgment, and class

---

[4] *See In re Linerboard Antitrust Litig.*, 292 F. Supp. 2d 631, 639 (E.D. Pa. 2003) ("*Linerboard I*") ("[a]n antitrust class action is arguably the most complex action to prosecute"); *In re Motorsports Merchandise Antitrust Litig.*, 112 F. Supp. 2d 1329, 1337 (N.D. Ga. 2000) (same) ("*Motorsports*"); *In re Shopping Carts Antitrust Litig.*, No. 451-CLB, 1983 U.S. Dist. LEXIS 11555, *17 (S.D.N.Y. Nov. 18, 1983) (noting that "antitrust price fixing actions are generally complex, expensive and lengthy").

certification are on the horizon. From the outset, Class Counsel, the Executive Committee, and all supporting firms (together, "Plaintiffs' Counsel") have advanced the claims of the proposed class by devoting long hours to this multifaceted class action. *See* Joint Declaration of Cotchett, Pitre & McCarthy, LLP ("CPM") and Hausfeld LLP ("Hausfeld") in Support of Plaintiffs' Motion for Award of Attorneys' Fees and Costs, Reimbursement of Reasonable Litigation Expenses, and Award of Future Litigation Expenses ("Joint Decl.") (attached hereto as Ex. 1) at ¶ 2. The litigation has been, and will continue to be, a huge undertaking. *Id.* Plaintiffs' Counsel's tasks have included, but are not limited to, the following:

- Extensively researching the U.S. airline industry and prior antitrust cases involving it, and conducting economic and legal analyses of how the industry operates;

- Researching and drafting the consolidated amended class action complaint, including the many statements made by Defendants' executives regarding "capacity discipline" at industry meetings or on earnings calls;

- Drafting, responding to, and ultimately prevailing on Defendants' extensive and voluminous motion to dismiss the complaint (ECF Nos. 123, 124);

- Drafting, negotiating, and submitting various protocols and stipulations with Defendants, such as: Discovery Stipulation and Order (ECF No. 160), Stipulated Protective Order Regarding Confidential and Privileged Materials (ECF No. 162), Stipulation and Order Regarding the Search for and Production of Electronically Stored Information and Hard Copy Documents (ECF No. 167), Stipulated Amended Scheduling Order Regarding Discovery and Summary Judgment (ECF No. 290), among others;

- Drafting, serving, and meeting-and-conferring over sets of written discovery propounded by Plaintiffs. Plaintiffs have served three sets of interrogatories and three sets of document requests on Defendants. This written discovery has resulted in extensive meeting-and-conferring over the scope of Defendants' significant documents productions in this case;

- Drafting and serving 42 subpoenas directed at non-parties, including dozens of subpoenas to the investment analyst community, other investors, airline industry associations, and phone companies. These subpoenas have similarly resulted in extensive meeting-and-conferring over the scope of the non-party productions, including some sessions mediated by the Special Master;

- Engaging in extensive meet-and-confer negotiations with Defendants regarding the scope of their structured data, unstructured data, document productions, including search methodologies (such as search terms and technology assisted review), data sources, and

the scope of Defendants' responses to over 45 document requests and selection of Defendants' document custodians;

- Obtaining, reviewing, analyzing, and collating millions of Defendants' documents (Defendants have collectively produced nearly eight terabytes of data (comprising more than 6.7 million documents constituting 27 million pages));

- Obtaining, reviewing, and analyzing Defendants' transactional data (Defendants have collectively produced nearly one terabyte of sales data)—data critical to Plaintiffs' expert analysis, and preparing detailed follow-up meet-and-confer correspondence with Defendants regarding their data;

- Obtaining, reviewing, and analyzing document productions from non-parties (non-parties have collectively produced over 250 gigabytes of documents and data excluding phone record productions);

- Researching, drafting, and submitting various motions to compel discovery against Defendants and non-parties as well as participating in dozens of telephone and in-person conferences and mediations with the Special Master and with Defendants regarding their discovery obligations;

- Responding to five sets of interrogatories and three sets of document requests propounded by Defendants with respect to the named Plaintiffs, including engaging in substantial meeting-and-conferring over the scope of their collection, search, and production;

- Searching for, identifying, and producing relevant documents and data from 11 named Plaintiffs;

- Conducting research and analyses to determine proposed deponents of Defendants, reviewing documents of said deponents, and preparing deposition strategies for use at their depositions;

- Completing the array of tasks critical to achieving the American and Southwest settlements, including analyzing transactional data and formulating settlement demands, engaging in extensive settlement negotiations, drafting and negotiating settlement agreements and escrow agreements, and drafting and submitting preliminary approval motions;

- Pursuing settlement cooperation from Southwest and American;

- Consulting with economists and industry experts to build econometric models based on the facts of the industry; and

- Consulting with and engaging experienced class notice experts Kinsella Media, LLC and Shannon Wheatman, PhD, to create an extensive notice program that the Court approved.

*Id.* at ¶ 3. The foregoing tasks, and many others as more fully described in the accompanying declarations, have resulted in a cumulative lodestar of $28,486,183.25. Class Counsel have unquestionably dedicated substantial time and resources to litigating this case against some of the largest airlines in the world.

## III.   ARGUMENT

### A.   The Court Should Grant Class Counsel's Request for Attorneys' Fees Because It Is Fair and Reasonable.

A court's ultimate duty when determining attorneys' fees in common fund litigation is to ensure that the request is reasonable in light of the overall facts of the case. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *Swedish Hosp. Corp. v. Shalala*, 1 F.3d 1261, 1265 (D.C. Cir. 1993) ("*Swedish Hosp.*"). Class Counsel's request for an award of 25 percent of the Settlement Fund here is less than many of the attorneys' fees awards in other antitrust and complex class actions in this District. *See, e.g., In re Vitamins Antitrust Litig.*, MDL No. 1285, 2001 U.S. Dist. LEXIS 25067, at *57 (D.D.C. July 16, 2001) ("*Vitamins*") (awarding 34.06 percent of $359 million settlement fund); *Lorazepam*, 2003 U.S. Dist. LEXIS 12344, at *28 (awarding 30.6 percent of $35 million settlement fund); *In re First Databank Antitrust Litig.*, 209 F. Supp. 2d 96, 101 (D.D.C. 2002) ("*First Databank*") (awarding 30 percent of the settlement fund).

### i.   The D.C. Circuit Recognizes the Common Fund Doctrine.

The American and Southwest settlements are common fund, non-reversionary settlements. In class actions, the common fund doctrine "allows a party who creates, preserves, or increases the value of a fund in which others have an ownership interest to be reimbursed from that fund for litigation expenses incurred, including counsel fees." *Swedish Hosp.*, 1 F.3d at 1265; *see also In re Black Farmers Discrimination Litig.*, 856 F. Supp. 2d 1, 39 (D.D.C. 2011) ("*Black Farmers*"). As the Supreme Court has recognized, the doctrine is based on the concept that "persons who

7

obtain the benefit of a lawsuit without contributing to its cost are unjustly enriched at the successful litigant's expense." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). The doctrine is "designed to spread the costs of litigation among all the beneficiaries of an identifiable fund." *Bebchick v. Wash. Metro. Area Transit Com.*, 805 F.2d 396, 402 (D.C. Cir. 1986).

### ii.    The Court Should Award Attorneys' Fees Based on the Percentage-of-the-Recovery Method.

Because the American and Southwest settlements are common fund settlements, the D.C. Circuit recommends application of the percentage-of-recovery method in awarding attorneys' fees. *Lorazepam*, 2003 U.S. Dist. LEXIS 12344, at *24-25. The clear trend among courts, especially in antitrust class action litigation, is to award attorneys' fees on a percentage-of-the-recovery method. *Vitamins*, 2001 U.S. Dist. LEXIS 25067, at *29; *see also Camden I Condominium Ass'n v. Dunkle*, 946 F.2d 768, 774 (11th Cir. 1991); *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 271 (9th Cir. 1989); *Brown v. Phillips Petroleum Co.*, 838 F.2d 451, 454 (10th Cir. 1988), *cert denied*, 488 U.S. 822 (1988). "The D.C. Circuit has joined other circuits 'in concluding that a percentage-of-the-fund method is the appropriate mechanism for determining the attorney fees award in common fund cases.'" *Vitamins*, 2001 U.S. Dist. LEXIS 25067, at *29, 33; *Lorazepam*, 2003 U.S. Dist. LEXIS 12344, at *24-25 (quoting *Swedish Hosp.*, 1 F.3d at 1271). Applying the percentage-of-the-recovery method to award fees in a common fund case "directly aligns the interests of the Class and its counsel for the efficient prosecution and early resolution of litigation, which clearly benefits both litigants and the judicial system." *Vitamins*, 2001 U.S. Dist. LEXIS 25067, at *34 (quoting *In re Am. Bank Note Holographics, Inc. Sec. Litig.,* 127 F. Supp. 2d 418, 431-32 (S.D.N.Y. 2001)). This method also most closely simulates private contingency fee arrangements. *Vitamins*, 2001 U.S. Dist. LEXIS 25067, at *68; *see also In re Lloyd's Am. Trust Fund Litig.*, No.

96 Civ. 1262 (RWS), 2002 U.S. Dist. LEXIS 22663, at *75 (S.D.N.Y. Nov. 26, 2002). The Court

should apply the percentage-of-the-recovery method here.

>    iii.    **An Award of Attorneys' Fees of 25 Percent of the Settlement Fund Is Fair and Reasonable.**

A number of considerations support the reasonableness of the fee request. This Circuit has

not established "a formal list of factors to be considered in evaluating fee requests." *Vitamins*,

2001 U.S. Dist. LEXIS 25067, at *60. Trial courts therefore enjoy "substantial discretion in

making reasonable fee determinations." *Swedish Hosp.*, 1 F.3d at 1271. In evaluating fee requests

under the percentage-of-recovery method, courts in this Circuit examine the following factors: (1)

the size of the fund created and the number of persons benefitted; (2) the presence or absence of

substantial objections by class members to the fees requested by counsel; (3) the skill and

efficiency of the attorneys involved; (4) the complexity and duration of the litigation; (5) the risk

of nonpayment; (6) the amount of time devoted to the case by class counsel; and (7) the award in

similar cases. *Kifafi v. Hilton Hotels Ret. Plan*, 999 F. Supp. 2d 88, 100-01 (D.D.C. 2013) (Kollar-

Kotelly, J.) ("*Kifafi*") (citing *Cohen v. Warner Chilcott Pub. Ltd. Co.*, 522 F. Supp. 2d 105, 122

(D.D.C. 2007) ("*Chilcott*") (Kollar-Kotelly, J.) and *Lorazepam*, 2003 U.S. Dist. LEXIS 12344, at

*6-7). Each of these factors weighs in favor of Class Counsel's fee request for the reasons set forth

below. Additional factors, as summarized below, also militate in favor of the request.

>    1.    **Size of Fund and Number of Persons Benefited**

One of the most important factors in assessing the reasonableness of a fee request is the

result achieved for the class. *Hensley*, 461 U.S. at 436 ("critical factor is the degree of success

obtained"); *Vitamins*, 2001 U.S. Dist. LEXIS 25067, at *61. Here, Class Counsel have secured

valuable benefits for settlement class members, which heavily weigh in favor of the fee request.

The $60 million recovery here is noteworthy because the DOJ neither criminally prosecuted the

airlines nor obtained monetary restitution for the victims of Defendants' alleged unlawful conduct. Consumers would not be able to obtain relief in the absence of this litigation.[5]

In addition to the $60 million recovery, Plaintiffs have secured cooperation by American and Southwest, which are required to provide fact proffers, witness interviews, documents, depositions, and trial testimony.[6] Such cooperation is recognized by courts as a valuable benefit to settlement class members. *See*, *e.g.*, *In re Packaged Ice Antitrust Litig.*, No. 08-md-01952, 2010 U.S. Dist. LEXIS 77645, at *44 (E.D. Mich. Aug. 2, 2010) ("[T]here is the potential for a significant benefit to the class in the form of cooperation on the part of the settling Defendant . . . ."); *see also Linerboard I*, 292 F. Supp. 2d at 643; *In re Corrugated Container Antitrust Litig.*, No. 81-md-310, U.S. Dist. LEXIS 9687, at *46-47 (S.D. Tex. June 4, 1981). This cooperation has

---

[5] As set forth in the Long Form Notice approved by the Court and in Plaintiffs' Motion for Final Approval of Settlement Agreements with Southwest Airlines Co. and American Airlines, Inc. concurrently filed herewith, Plaintiffs intend to distribute the settlement funds at a later date. The purpose of this deferral is to minimize the administrative expense of distribution to a large settlement class by combining the distribution of the Southwest and American settlement proceeds with any future settlement or judgment proceeds from United and Delta, thereby maximizing recovery to class members and minimizing postage costs. Such deferrals are regularly approved by courts and do not preclude final approval of settlements or an award of attorneys' fees or reimbursement of litigation expenses. *See*, *e.g.*, *In re Auto. Parts Antitrust Litig.* (*Wire Harness Systems*), Master File No. 12-md-02311, Case No. 2:12-cv-00103, ECF No. 577 at ¶ 10 (E.D. Mich. July 10, 2017) (approving a plan of allocation that contemplates paying class members at the end of the case to save expenses); *In re Transpacific Passenger Air Transportation Antitrust Litig.*, No. 07-05634-CRB, ECF Nos. 968, 1009 (N.D. Cal. Dec. 14, 2014; May 26, 2015) (Judge Breyer granting approval of plan of allocation and final approval of interim settlements, ordering payment of attorneys' fees and reimbursement of litigation expenses with claims not being paid until the end of the case); *Precision Associates, Inc. et al. v. Panalpina World Transport (Holding) Ltd., et al.*, No. 08-cv-00042-(JG) (VVP) (granting final approval of a number of interim settlements and granting attorneys' fees and expenses, with distribution to the class at the conclusion of the litigation); *In re Capacitors Antitrust Litig.*, No. 14-cv-03264-JD, ECF No. 1934 (N.D. Cal. Oct. 30, 2017) (finally approving settlements, ordering an interim attorneys' fee award, and permitting distribution to the class at the end of the case).

[6] *See* Settlement Agreement Between Plaintiffs and American Airlines, Inc. (ECF No. 248-2); Settlement Agreement Between Plaintiffs and Southwest Airlines Co. (ECF No. 196-2). The Settlements are available for class members to review on the settlement website: www.domesticairclass.com.

already assisted, and will continue to assist, Plaintiffs in the prosecution of their claims against Delta and United, providing value to the class.

### 2.     Objections to Fees by Class Members

The deadline for class members to object to the settlements or the fee and expense request is January 4, 2019 (ECF No. 285). Plaintiffs intend to respond to any objections to this Motion in a separate filing by February 22, 2019 (*i.e.*, one month before the final approval hearing).

### 3.     Skill and Efficiency of Class Counsel

The skill and efficiency of Class Counsel overwhelmingly weigh in favor of the requested fee. Class Counsel's vigorous prosecution of this case and the substantial resources they have dedicated to the case—both in the form of their time commitment and their monetary commitment—demonstrate the reasonableness of the fee request. Class Counsel faced a substantial risk of having the case dismissed on *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), grounds at the pleadings stage. Class Counsel's skill, however, in drafting comprehensive factual allegations demonstrating a plausible antitrust conspiracy, coupled with their skill in opposing Defendants' motions to dismiss, avoided this outcome.

Having prevailed on the challenges to the pleadings in full, Class Counsel turned their attention to the daunting discovery process. As this Court and the Special Master know well, that process has been long and arduous. Plaintiffs' achievements in that domain are detailed elsewhere, but Class Counsel respectfully believe that these settlements would not have been achieved but for the skill and efficiency of Plaintiffs in the discovery process. This alleged cartel is unlike many cartel cases prosecuted in this country: most notably, it does not come on the heels of a DOJ criminal prosecution or guilty pleas. As noted above, Class Counsel diligently pursued non-party discovery from a multitude of sources for the purpose of demonstrating that Defendants reached agreements to limit capacity through the use of investor-analysts, other non-parties, public

signaling, *and* direct communications. The resulting achievement of $60 million in settlements is no small feat given these complexities.

Moreover, as this Court recognized in appointing Class Counsel, both the law firms of CPM and Hausfeld have extensive experience prosecuting antitrust class actions generally and price-fixing actions involving the transportation and airline industries specifically. *See, e.g., In re Transpacific Air Passenger Transp. Antitrust Litig.*, MDL No. 1913, No. 07-CV-5634-CRB (N.D. Cal.) (case involving more than a dozen airlines); *In re Int'l Air Transp. Surcharge Antitrust Litig.* No. 06-md-01793 (N.D. Cal.) (case against two airlines that resolved in 2008 and recovered $200 million); *Precision Assocs. v. Panalpina World Transp. (Holding) Ltd.*, No. 08-cv-00042 (E.D.N.Y.) (case against the global freight forwarding industry that resolved in 2016 and recovered over $355 million); *In re Air Cargo Shipping Servs. Antitrust Litig.*, No. 06-md-1775 (E.D.N.Y.) (case against 30-plus airlines that resolved in 2018 and recovered over $1.2 billion). Class Counsel are therefore well-acquainted with this type of litigation and well-positioned to weigh the relative complexities of this case.

The performance and quality of opposing counsel likewise weigh in favor of the requested fee. Courts consider the skill and experience of counsel on both sides of the litigation in determining a reasonable fee award. *Vitamins*, 2001 U.S. Dist. LEXIS 25067, at *62; *Lorazepam*, 2003 U.S. Dist. LEXIS 12344, at *29-30 (approving fee award of 30 percent of settlement fund where class counsel were "experienced antitrust litigators" and defendants mounted an "aggressive and vigorous defense"). Here, American, Delta, Southwest, and United were primarily represented by O'Melveny & Myers LLP, Boies Schiller Flexner LLP, Vinson & Elkins L.L.P., and Crowell & Moring LLP, respectively. Each of these firms are well-known for their highly skilled and experienced attorneys, and they have brought to bear the resources of some of the largest and most

powerful law firms in the world. Throughout this litigation, defense counsel have fiercely advocated their clients' positions and fought tooth-and-nail to limit discovery of their clients, and of the legal claims. The skill and experience of counsel on both sides support the reasonableness of the fee request.

### 4.    Complexity and Duration of the Case

The complexity and duration of this case significantly weigh in favor of the requested fee. Antitrust class actions are "arguably the most complex action(s) to prosecute. The legal and factual issues involved are always numerous and uncertain in outcome." *In re Packaged Ice Antitrust Litig.*, No. 08-MDL-01952, 2011 U.S. Dist. LEXIS 150427, *76 (E.D. Mich. Dec. 13, 2011) (quoting *Linerboard I*, 292 F. Supp. 2d at 639); *Motorsports*, 112 F. Supp. 2d at 1337. In terms of complexity, this case is among the most complex of antitrust cases for several reasons. First, Defendants are sophisticated and well-resourced U.S. corporations that have previously navigated the waters of U.S. antitrust laws due to a series of mergers since 2008, which have permitted them to control 80 percent of domestic air passenger seats. Second, as noted, Plaintiffs' liability theory is more complex than classic antitrust theories involving direct price-fixing, bid-rigging, or market allocation between competitors. Third, the amount of data and document discovery from parties and dozens of non-parties in this case has been extraordinary (*see*, *supra*, at § II(B) (Litigation Overview)). In terms of duration, this case has been lengthy. Plaintiffs have been litigating this case for over three years and will have litigated this case for five years by the completion of summary judgment briefing in March 2020 (ECF No. 290).

Additionally, this is not a case where Plaintiffs settled with a defendant shortly after initiating proceedings or merely relied on parallel criminal guilty pleas. Indeed, Plaintiffs reached the first settlement in this case in December of 2017—two and a half years after the filing of the

first complaints and only after several months of arm's-length negotiations. The difficulties and length of this case support the fee request.

### 5. Risk of Nonpayment and Amount of Time Devoted by Class Counsel

The risk of nonpayment weighs in favor of the fee request. Many courts emphasize that the attorneys' risk is a "foremost factor" in determining the fee award. *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 54 (2d Cir. 2000); *Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 548 (S.D. Fla. 1988), *aff'd*, 899 F.2d 21 (11th Cir. 1990) (a contingency fee arrangement often justifies an increase in the award of attorneys' fees). As noted in the accompanying declarations, Class Counsel have prosecuted this case purely on a contingent basis. The contingent nature of the fee "stands as a proxy for the risk that attorneys will not recover compensation for the work they put into a case." *In re Cardinal Health Inc. Sec. Litig.*, 528 F. Supp. 2d 752, 766 (S.D. Ohio 2007). Indeed, "within the set of colorable legal claims, a higher risk of loss does argue for a higher fee." *In re Trans Union Corp. Privacy Litig.*, 629 F.3d 741, 746 (7th Cir. 2011).

This case presented a *bona fide* risk of nonpayment. Since the inception of the case in July 2015, Plaintiffs' Counsel have not received any compensation. Joint Decl. ¶ 6. Indeed, even if the requested fee is granted by this Court, the resulting compensation would not compensate Plaintiffs' Counsel fully for their work from inception of the case to present. *Id.* Plaintiffs' Counsel have worked 75,674.00 hours resulting in a lodestar of $28,486,183.25 and incurred over $1,573,192.48 in out-of-pocket costs from February 5, 2016 through June 18, 2018 (*i.e.*, the date of the Court's appointment of leadership through the date of the Court's preliminary approval of the most recent settlement, the American settlement). *Id.* at ¶¶ 10-11. Plaintiffs' Counsel have thus assumed an extraordinary financial risk in prosecuting this inherently complex litigation. *Id.* at ¶ 6. Plaintiffs' Counsel have handled this case on a 100-percent contingent basis, pouring thousands of hours and

14

millions of dollars into it with no guarantee of success. *Id.* Moreover, the lodestar is understated because Class Counsel have excluded hours and lodestar from case inception to appointment of leadership (*i.e.*, from July 2015 through February 4, 2016). *Id.* at ¶ 14. The lodestar is further understated as it excludes the substantial time that will be necessary to administer the settlements at the end of the case—a time-consuming process for which Class Counsel is not typically compensated. *Id.*

The amount of time devoted by Plaintiffs' Counsel weighs in favor of the fee request, particularly in light of the fact that the request constitutes significantly less than the total lodestar. *See Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 195 n.1 (3d Cir. 2000) (court should look to "amount of time devoted to the case by plaintiffs' counsel"); *Rosenbaum v. MacAllister*, 64 F.3d 1439, 1445 (10th Cir. 1995) (court should look at the "time and labor required"); *Aetna*, 2001 U.S. Dist. LEXIS 68, at *45 (awarding 30 percent of settlement fund and observing that "the course of this litigation was prolonged, having been actively litigated for nearly three years, and involved complex issues"); *see also In re Newbridge Networks Sec. Litig.*, No. 94-1678-LFO, 1998 U.S. Dist. LEXIS 23238, at *7 (D.D.C. Oct. 23, 1998) (awarding fees of 30 percent of common fund where counsel "engaged in extensive motions practice and conducted considerable discovery").

As this Court is aware, in the close to three years since the Court appointed leadership, Class Counsel have prepared for and attended more than a dozen court hearings; attended weekly case management and discovery meetings with the Special Master; researched, drafted, and argued important pleadings and motions, such as the opposition to the motions to dismiss; developed the case against Defendants by negotiating extensive search and collection protocols, including protocols involving technology assisted review ("TAR") by the Defendants; processed, organized

15

and reviewed voluminous amounts of data and documents from Defendants and non-parties; drafted and argued discovery motions to obtain key data and documents withheld by Defendants; collaborated with economic and industry experts to prepare the case for summary judgment, class certification, and trial; collected information from American and Southwest through settlement cooperation; and sought approval of the two settlements and the notice program related thereto. Joint Decl. at ¶ 4. The fee request is very reasonable when squared with the immense time and effort that Class Counsel have expended in litigating this case. Their investment in this case necessarily precluded them from working on other fee generating matters. The contingent nature of this case and the substantial risks undertaken unambiguously support the fee request.

### 6.    Attorneys' Fee Awards in Similar Cases

Fees awards in similar cases offer ample support for the fee request in this case. As this Court has previously noted, "fee awards in common fund cases may range from fifteen to forty-five percent[,]" and "the normal range of fee recovery in antitrust suits is twenty to thirty percent of the common fund." *Chilcott*, 522 F. Supp. 2d at 123. Plaintiffs' request of 25 percent of the Settlement Fund is well within the range of reasonableness for antitrust cases in this District and nationally. *See*, *e.g.*, *Vitamins*, 2001 U.S. Dist. LEXIS 25067, at *57 (awarding 34.06 percent of $359 million settlement fund); *Lorazepam*, 2003 U.S. Dist. LEXIS 12344, at *28 (awarding 30 percent of $35 million settlement fund); *First Databank*, 209 F. Supp. 2d 96, 101 (D.D.C. 2002) (awarding 30 percent of settlement fund); *Vista Healthplan, Inc. v. Warner Holdings Co. III, Ltd.*, 246 F.R.D. 349, 364 (D.D.C. 2007) (Kollar-Kotelly, J.) ("*Vista*") (awarding 26 percent of settlement fund); *In re Ampicillin Antitrust Litig.*, 526 F. Supp. 494, 498 (D.D.C. 1981) (noting that several courts have awarded more than 40 percent of the settlement fund in antitrust cases).[7]

---

[7] *See also In re Polyurethane Foam Antitrust Litig.*, No. 1:10 MD 2196, 2015 U.S. Dist. LEXIS 23482, at *21-22 (N.D. Ohio Feb. 26, 2015) (awarding 30 percent of $147.8 million settlement

These decisions reflect that courts reward counsel's skill and success with an appropriate fee in light of the inherent risks and significant investments needed to prosecute antitrust class actions vigorously. Here, Class Counsel's fee request is comparable to fees awarded in many other antitrust and complex cases, including fees awarded by this Court. Indeed, the fee request is less than the amount that many courts have awarded in antitrust class actions. *See supra* at fn. 6.

Furthermore, a 25 percent fee award is less than the practice in the private marketplace, where attorneys negotiate typical contingent arrangements far in excess of 25 percent. *Vitamins*, 2001 U.S. Dist. LEXIS 25067, at *68 ("percentage of recovery method is meant to simulate awards that would otherwise prevail in the market"). Indeed, attorneys regularly contract for contingent fees between 30 and 40 percent with their clients in non-class, commercial litigation. *Id.* (one-third is a common percentage of recovery in private contingency fee cases); *Aetna*, 2001 U.S. Dist. LEXIS 68, at *43 (plaintiffs' counsel often negotiate fees of 30 percent in private contingency fee cases). Here, the fee request is reasonable

---

fund); *In re Transpacific Passenger Air Transp. Antitrust Litig.*, No. C 07-05634 CRB, 2015 U.S. Dist. LEXIS 67904, at *18 (N.D. Cal. May 26, 2015) ("*Transpacific*") (awarding 30 percent of settlement fund due to substantial litigation); *Std. Iron Works v. Arcelormittal* (*In re Steel Antitrust Litig.*), No. 08-C-5214, 2014 U.S. Dist. LEXIS 162557, *7 (N.D. Ill. Oct. 22, 2014) (awarding 33 percent of $163.9 million settlement fund); *S.E. Milk.*, 2013 U.S. Dist. LEXIS 70167, at *11, *31 (awarding one-third of $158 million settlement fund); *In re Air Cargo Shipping Servs. Antitrust Litig.*, No. 06-MD-1775 (JG) (VVP), 2012 U.S. Dist. LEXIS 108299, *57-58 (E.D.N.Y. Aug. 2, 2012) (awarding attorneys' fees of 25 percent of $198 million fund); *Concrete*, 2011 U.S. Dist. LEXIS 130180, at *18 (awarding 36 percent of $18.5 million settlement fund); *Bradburn Parent Teacher Store, Inc. v. 3M,* 513 F. Supp. 2d 322, 340 (E.D. Pa. 2007) (awarding 35 percent of $39.74 million settlement fund); *In re Linerboard Antitrust Litig.*, MDL No. 1261, 2004 U.S. Dist. LEXIS 10532, at *1-2, 58 (E.D. Pa. June 2, 2004) ("*Linerboard II*") (awarding 30 percent of $202 million settlement fund); *Powers v. Eichen*, 229 F.3d 1249, 1256 (9th Cir. 2000) ("We have [] established twenty-five percent of the recovery as a 'benchmark' for attorneys' fees calculations under the percentage-of-recovery approach"); *In re Lease Oil Antitrust Litig.*, 186 F.R.D. 403, 448 (S.D. Tex. 1999) (awarding 25 percent of $190 million settlement fund); Theodore Eisenberg & Geoffrey P. Miller, *Attorney Fees in Class Action Settlements: An Empirical Study*, 1 J. Empirical Legal Stud. 1, 35 (2004) ("Substantial empirical evidence indicates that a one-third fee is a common benchmark in private contingency fee cases.").

because 25 percent of the Settlement Fund results in a lower award than what Class Counsel would have charged in a private contingent relationship and represents only 52.6 percent of their cumulative lodestar. *See infra* at § III(A)(iv)(1) (The Lodestar Method Confirms the Reasonableness of the Fee Request). The contingent nature of the fee also supports the request, particularly in view of the equally contingent outlay of millions of dollars in out-of-pocket costs and the fact that the risks of failure in class actions are notoriously high.

Finally, this is not a case involving a "mega fund" in which the Court should award fees on a sliding scale. When common funds become very large, courts typically award a lower percentage to ensure that class counsel does not receive a windfall in attorneys' fees in light of the effort expended or hours billed. *Black Farmers*, 856 F. Supp. 2d at 40 (describing mega fund cases as those involving common funds of $500 million or more); *Vitamins*, 2001 U.S. Dist. LEXIS 25067, at *59. Larger common funds are typically associated with smaller percentage awards because even a small percentage of a very large fund yields "a very large fee award." *Black Farmers*, 856 F. Supp. 2d at 39 (citing *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 122 (2d Cir. 2005)). Here, the American and Southwest settlements total $60 million, which falls well short of the mega fund threshold described in *Black Farmers*.

### iv.   Other Potential Considerations

In addition to the seven factors discussed above, each of which justifies Class Counsel's fee request, two other potential considerations likewise support the requested fee. Although courts in this District are not required to examine these considerations, Class Counsel respectfully believe these factors are relevant to the Court's analysis.

1.      **The Lodestar Method Confirms the Reasonableness of the Fee Request.**

As noted, the lodestar method confirms the reasonableness of the fee request by showing Class Counsel are seeking substantially less than the time recorded in this case. Many circuits that apply the percentage-of-the-recovery method have suggested that district courts "cross-check" the fee award against the lodestar method "to determine whether the percentage award roughly reflects the time and expertise the attorneys invested in the case." *Black Farmers*, 953 F. Supp. 2d at 101 (citations omitted). In this Circuit, although a lodestar cross-check is not required, district courts may apply such a cross-check at their discretion to confirm its reasonableness. *Id.*; *Trombley v. Nat'l City Bank*, 826 F. Supp. 2d 179, 205 (D.D.C. 2011) (citing *Swedish Hosp.*, 1 F.3d at 1266-67); *Wells v. Allstate Ins. Co.*, 557 F. Supp. 2d 1, 7 (D.D.C. 2008); *In re Baan Co. Secs. Litig.*, 288 F. Supp. 2d 14 (D.D.C. 2003). Some courts weigh this factor heavily in favor of awarding the requested attorneys' fees where the lodestar exceeds the common fund percentage requested. *See, e.g., In re Compact Disc Minimum Advertised Price Antitrust Litig.*, 216 F.R.D. 197, 217 (D. Me. 2003).

The requested fee award here is reasonable when analyzed in light of the lodestar cross-check. Attorneys and staff have collectively worked 75,674.00 hours from February 5, 2016 through June 18, 2018. Joint Decl. at ¶ 10. Applying the historically appropriate rates charged by attorneys and professional staff of Plaintiffs' Counsel to the hours expended yields a total lodestar of $28,486,183.25 for this same period. *Id.* Class Counsel's requested fee is $15 million, which represents 25 percent of the Settlement Fund but only 52.6 percent of the total lodestar. *Id.*

As the Court has likely noticed from the monthly *in camera* time and expense submissions, Class Counsel have devoted significant time and effort to this litigation. Since their appointment as Class Counsel, CPM and Hausfeld have together supervised the activities of Plaintiffs' Counsel

19

in prosecuting this case. *Id.* at ¶ 20. Plaintiffs' Counsel have abided by the Court's order regarding the management of Plaintiffs' fees and costs and the Court's review of the same, including the capped billable rates set forth therein (ECF No. 84). *Id.* Further, Class Counsel have decided not to seek fees for any task completed before the Court's appointment of leadership despite the fact that Plaintiffs' Counsel had performed investigative work in this early stage. *Id.*

In summary, formal discovery has been extensive and voluminous with regular motion practice before the Special Master. Cooperation discovery has been ongoing and productive. *Id.* at ¶ 5. The expert-related issues in this case, including the class certification preparation work and building impact and damages models based on Defendants' transactional and other data, have been unquestionably complex and difficult. *Id.* Class Counsel also spent several months engaged in good faith, arm's-length settlement negotiations with Southwest and American to reach this juncture. *Id.*; *see also supra* at § II.B (Litigation Overview). Given the amount of work that this complex antitrust class action necessitated, and that the fee request is less than what is normally awarded in comparable cases and significantly less than the total lodestar, the requested fee is wholly reasonable.

### 2.    Public Policy Further Supports the Fee Request.

The public policy of encouraging private antitrust enforcement strongly weighs in favor of the fee request. The Supreme Court has emphasized the importance of private actions as a means of furthering the policy goals of federal antitrust laws. *See, e.g.*, *Pillsbury Co. v. Conboy*, 459 U.S. 248, 262-63 (1983); *Reiter v. Sonotone Corp.*, 442 U.S. 330, 344 (1979) ("private suits provide a significant supplement to the limited resources available to the Department of Justice for enforcing the antitrust laws and deterring violations"); *Perma Life Mufflers, Inc. v. Int'l Parts Corp.*, 392 U.S. 134, 139 (1968); *Minn. Mining & Mfg. Co. v. New Jersey Wood Finishing Co.*, 381 U.S. 311, 318-19 (1965). Fee awards in certain cases, like this one, are necessary to provide an incentive to

counsel to bring and prosecute cases that further the goals of the antitrust laws. *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 122 (2d Cir. 2005) (emphasizing importance of "provid[ing] appropriate incentives to attorneys pursuing antitrust actions because public policy relies on private sector enforcement of the antitrust laws"); *Linerboard II*, 2004 U.S. Dist. LEXIS 10532, at *53 ("[T]he incentive for 'the private attorney general' is particularly important in the area of antitrust enforcement because public policy relies so heavily on such private action for enforcement of the antitrust laws.") (internal citation omitted).

Here, Class Counsel have sought to enforce the antitrust laws by prosecuting the four largest competing airlines in the United States for anticompetitive conduct. This case has involved both complex and novel issues, as well as real risks of non-payment and unrecoverable (and substantial) investments. Class Counsel have furthered the public policy goals of the antitrust laws by vigorously litigating this case and doing so with skill and expertise. The $60 million in settlements obtained to date serve to promote the U.S. antitrust laws, ensuring fair competition and honest business practices, especially in the airline industry.

**B.     The Court Should Grant Reimbursement of Reasonably Incurred Litigation Expenses.**

For over three years, Plaintiffs' Counsel have advanced significant expenses to litigate this case, without any guarantee of reimbursement. Having achieved the American and Southwest settlements currently before the Court on final approval, Class Counsel requests that the Court award reimbursement of certain litigation expenses totaling $1,573,192.48. Joint Decl. at ¶ 13. Such expenses include (1) $108,848.64 in expenses incurred by the individual Plaintiffs' Counsel from February 5, 2016 through June 18, 2018 and (2) $1,464,343.84 in expenses incurred through the litigation fund ("Litigation Fund") for the same period. *Id.*

The Court should award the reimbursement of these litigation expenses because they were reasonably incurred in furtherance of the prosecution of this case. "In addition to being entitled to reasonable attorneys['] fees, class counsel in common fund cases are also entitled to reasonable litigation expenses from that fund." *Kifafi*, 999 F. Supp. 2d at 104 (quoting *Wells*, 557 F. Supp. 2d at 8 and *Lorazepam*, 2003 U.S. Dist. LEXIS 12344, at *33). "Courts have routinely awarded expenses for which counsel would normally directly bill their client." *Vitamins,* 2001 U.S. Dist. LEXIS 25067, *69 (citation omitted). The case law on reimbursement of litigation expenses is uniform and dictates that such awards should be made. *See, e.g., Vista*, 246 F.R.D. at 365 ("There is no doubt that an attorney who has created a common fund for the benefit of the class is entitled to reimbursement of reasonable litigation expenses from that fund."); *Chilcott*, 522 F.Supp.2d at 123 (same).

As to expenses incurred by Plaintiffs' Counsel, the individual firm expenses reported as part of this Motion are expenses incurred separate and apart from the common expenses incurred through the Litigation Fund and include expenses for items such as attorney travel for case-related events, legal research, conference call servicing, and postage. Individual firm expenses that have been reasonably incurred in this litigation for the benefit of settlement class members are $108,848.64 from February 5, 2016 through June 18, 2018. Joint Decl.at ¶ 11.

As to expenses incurred through the Litigation Fund, a total of $1,464,343.84 in expenses were incurred by the Litigation Fund for the benefit of settlement class members from February 5, 2016 through June 18, 2018. *Id.* at ¶ 12. Such expenses include expenses for electronically-stored information ("ESI") hosting and review of millions of documents produced by Defendants and dozens of non-parties (including investors, trade associations, and telephone service providers, and webcasting companies), special master services, extensive economic and industry expert and

consulting services, hearing transcripts, and other vendors providing litigation support services. *Id.*

After the Court's appointment of leadership, Class Counsel established a Litigation Fund to pay common expenses incurred in the case. Plaintiffs' Counsel contributed to this Litigation Fund. *Id.* at ¶ 15. No outside litigation funders have contributed to, or have an interest in, this Litigation Fund. *Id.* The Hausfeld firm has been tasked with the responsibility for administering the Litigation Fund in connection with the prosecution of this case. *Id.* The expenses incurred by the Litigation Fund are reflected in the books and records of Hausfeld. *Id.* at ¶ 17. These books and records are prepared from invoices, checks, and other source materials which are regularly kept and maintained by Hausfeld and accurately reflect the expenses incurred. *Id.*

Class Counsel submit that the litigation expenses for which they are seeking reimbursement were reasonable and necessary to obtain the results achieved for the settlement class in light of the complexities of the alleged conspiracy, the number of parties and non-parties, and the various liability and expert issues raised by the case. *Id.* at ¶ 16. Furthermore, these expenses are typical expenses that counsel would generally bill to paying clients in the marketplace. *Id.* Indeed, "the fact that Class Counsel were willing to expend their own money, as an investment whose reimbursement was entirely contingent on the success of this litigation, is perhaps the best indicator that the expenditures were reasonable and necessary." *Lorazepam,* 2003 U.S. Dist. LEXIS 12344, at *33. Class Counsel notes that the litigation expenses sought exclude all expenses incurred by Plaintiffs' Counsel between the inception of the case and the Court's appointment of leadership (*i.e.*, expenses before the Court's appointment of leadership), further supporting the reasonableness of the request. Joint Decl. at ¶ 15. The Court should award a cumulative reimbursement of

$1,573,192.48 in expenses incurred by Plaintiffs' Counsel and the Litigation Fund from the Settlement Fund. *Id.* at ¶ 13.

### C.   The Court Should Establish a Future Litigation Fund to Assist in Further Prosecution of These Important Claims.

Finally, Class Counsel request that the Court permit them to apply a portion of the Settlement Fund to create a fund to pay future expenses incurred in the ongoing litigation against Delta and United. Allowing a portion of the total settlement fund to be used for future expenses is well-accepted. *See, e.g.*, *In re Auto. Parts Antitrust Litig.*, Master File No. 12-md-02311, 2016 U.S. Dist. LEXIS 98446, at *560-61 (E.D. Mich. June 20, 2016) ("*Auto Parts*"); *Transpacific*, 2015 U.S. Dist. LEXIS 67904, at *20-21; *Newby v. Enron Corp.*, 394 F.3d 296, 302-03 (5th Cir. 2004); *In re Packaged Ice Antitrust Litig.*, No. 11-md-01952, 2011 U.S. Dist. LEXIS 17255, at *63-64 (E.D. Mich. Feb. 22, 2011) ("*Packaged Ice*"); *In re Pressure Sensitive Labelstock Antitrust Litig.*, 584 F. Supp. 2d 697, 702 (M.D. Pa. 2008); *Linerboard I*, 292 F. Supp. 2d at 643 (concluding that a partial "settlement provides class plaintiffs with an immediate financial recovery that ensures funding to pursue the litigation against the non-settling defendants"); *see also* Alba Conte, 1 Attorney Fee Awards § 2:20 (3d ed. 2004) (courts have "permitted class plaintiffs who have settled with fewer than all defendants to expend class-settlement monies, or a portion thereof, for litigation expenses to prosecute the action against remaining, non-settling defendants") (collecting cases).

Here, the Court should permit Class Counsel to set aside $3 million, or five percent, of the Settlement Fund to be used to pay future litigation expenses. There remain substantial future expenses in order to successfully prosecute the case, including, but not limited to, the following: (1) substantial economic, industry, and potentially other expert fees in connection with the upcoming summary judgment and class certification schedule; (2) travel expenses and deposition reporting costs in connection with depositions around the U.S.; and (3) continued document review

24

hosting of the voluminous productions. This request is in line with the percent of settlement funds dedicated to future expenses in other antitrust cases.[8]

Although Class Counsel expects actual litigation expenses to exceed $3 million before the complete resolution of this case based on their experience litigating other antitrust and complex class actions, they are limiting their request for future litigation expenses to five percent of the Settlement Fund. Joint Decl. at ¶ 18. If actual litigation expenses do not surpass $3 million, Class Counsel will, of course, return the residual amount to the Settlement Fund for distribution to the class along with the remaining settlement proceeds. *Id.* Since June 18, 2018 (*i.e.*, the cut-off date for Plaintiffs' Counsel's request for expense reimbursement), the Litigation Fund has already incurred over $700,000 in expenses. *Id.* at ¶ 19. Setting aside future litigation expenses from the Settlement Fund would assist Plaintiffs in the continued prosecution of this case.

---

[8] *See*, *e.g.*, *Auto Parts*, 2016 U.S. Dist. LEXIS 98446, at *560-61 (approving $11.25 million, or five percent, of settlement fund for future litigation expenses); *Transpacific*, 2015 U.S. Dist. LEXIS 67904, at *20-21 (approving $3 million, or 7.5 percent, of settlement fund for future litigation expenses); *Packaged Ice*, 2011 U.S. Dist. LEXIS 17255, at *63 (approving 5.6 percent of $13.5 million settlement for future litigation expenses); *In re California Micro Devices Sec. Litig.*, 965 F. Supp. 1327, 1337 (N.D. Cal. 1997) (approving 7.9 percent of approximately $19 million settlement fund for future litigation expenses); *Newby*, 394 F.3d at 300 (affirming approval of 37.5 percent of $40 million settlement fund for future litigation expenses); *Linerboard I*, 292 F. Supp. 2d at 643 (noting that partial settlement "provides class plaintiffs with an immediate financial recovery that ensures funding to pursue the litigation against the non-settling defendants"); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. 07-1827 SI Order Granting Direct Purchaser Class Plaintiffs' Motion for the Advancement of Litigation Expenses From Settlement Funds (ECF No. 2474) (N.D. Cal. Feb. 17, 2011) (granting $3 million in future litigation expenses); *In re Dynamic Random Access Memory* (*DRAM*) *Antitrust Litig.*, No. 02-md-01486, Order Authorizing Class Counsel to Withdraw Settlement Fund for Litigation Expenses (ECF No. 1315) (N.D. Cal. Feb. 14, 2007) (granting $2 million in future litigation expenses); *In re Microcrystalline Cellulose Antitrust Litig.*, No. 01-cv-111, Final Judgment Order at ¶ 7 (E.D. Pa. June 15, 2005) (granting $2.5 million in future litigation expenses); *In Re Brand Name Prescription Drug Litig.*, No. 94 C 897, MDL No. 997 (N.D. Ill. Feb. 18, 1998) (granting $6 million disbursement "for advancement of trial preparation expenses of Class Counsel").

## IV.   CONCLUSION

For the foregoing reasons, the Court should award Class Counsel attorneys' fees of $15 million, the reimbursement of certain litigation expenses totaling $1,573,192.48, and an award of future litigation expenses of $3 million because such an award is fair and reasonable under the foregoing factors and consistent with fee and expense awards in complex class actions nationwide.

Dated: December 5, 2018                                   Respectfully Submitted,

*/s/ Adam J. Zapala*                                      */s/ Michael D. Hausfeld*
Adam J. Zapala                                           Michael D. Hausfeld
Elizabeth T. Castillo                                    Hilary K. Scherrer
Adam J. Trott                                            Jeannine Kenney
Michael A. Montano                                       HAUSFELD LLP
COTCHETT, PITRE & McCARTHY, LLP                          1700 K Street NW, Suite 650
840 Malcolm Road, Suite 200                              Washington, DC 20006
Burlingame, CA 94010                                     Telephone: (202) 540-7200
Telephone: 650-697-6000                                  mhausfeld@hausfeld.com
azapala@cpmlegal.com                                     hscherrer@hausfeld.com
ecastillo@cpmlegal.com                                   jkenney@hausfeld.com
atrott@cpmlegal.com
mmontano@cpmlegal.com
                                                         Michael P. Lehmann
                                                         Bonny E. Sweeney
Alexander E. Barnett                                     HAUSFELD, LLP
COTCHETT, PITRE & McCARTHY, LLP                          600 Montgomery Street, Suite 3200
40 Worth Street, 10th Floor                              San Francisco, CA 94111
New York, NY 10013                                       Telephone: (415) 633-1908
Telephone: 212-201-6820                                  mlehmann@hausfeld.com
abarnett@cpmlegal.com                                    bsweeney@hausfeld.com

*Interim Co-Lead Class Counsel*