UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **IN RE DOMESTIC AIRLINE TRAVEL ANTITRUST LITIGATION**<br><br>**This Document Relates To:**<br><br>**ALL CASES** | **MDL No. 2656**<br>**Case No. 1:15-mc-01404-CKK**<br><br>**[ORAL ARGUMENT REQUESTED]** |

**JOINT DECLARATION OF COTCHETT, PITRE & McCARTHY, LLP AND HAUSFELD LLP IN SUPPORT OF PLAINTIFFS' MOTION FOR AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF REASONABLE LITIGATION EXPENSES, AND AWARD OF FUTURE LITIGATION EXPENSES**

We, Adam J. Zapala and Michael D. Hausfeld, jointly declare as follows:

1. Adam J. Zapala is an attorney licensed to practice law in the State of California and a Partner at the law firm of Cotchett, Pitre & McCarthy, LLP ("CPM"). Michael D. Hausfeld is an attorney licensed to practice law in the District of Columbia and New York and a Partner at the law firm of Hausfeld LLP ("Hausfeld"). They are each admitted to practice before this Court and together are Interim Co-Lead Class Counsel ("Class Counsel") for Plaintiffs in the above-captioned case. Each declares that he has personal knowledge of the matters set forth herein and, if called upon, could and would competently testify thereto. Each makes this joint declaration ("Joint Declaration") pursuant to 28 U.S.C. § 1746 and in support of Plaintiffs' Motion for Award of Attorneys' Fees, Reimbursement of Reasonable Litigation Expenses, and Award of Future Litigation Expenses.

## **The Litigation**

2. From the outset, Class Counsel, the Executive Committee, and all supporting firms (together, "Plaintiffs' Counsel") have advanced the claims of the proposed class by devoting long hours to this multifaceted class action. The litigation has been, and will continue to be, a huge undertaking.

3. Plaintiffs' Counsel's tasks have included, but are not limited to, the following:

- Extensively researching the U.S. airline industry and prior antitrust cases involving it, and conducting economic and legal analyses of how the industry functions;

- Researching and drafting the consolidated amended class action complaint, including the many statements made by Defendants' executives regarding "capacity discipline" at industry meetings or on earnings calls;

- Drafting, responding to, and ultimately prevailing on Defendants' extensive and voluminous motion to dismiss the complaint (ECF Nos. 123, 124);

- Drafting, negotiating, and submitting various protocols and stipulations with Defendants, such as: Discovery Stipulation and Order (ECF No. 160), Stipulated Protective Order Regarding Confidential and Privileged Materials (ECF No. 162), Stipulation and Order

Regarding the Search for and Production of Electronically Stored Information and Hard Copy Documents (ECF No. 167), Stipulated Amended Scheduling Order Regarding Discovery and Summary Judgment (ECF No. 290), among others;

- Drafting, serving, and meeting-and-conferring over sets of written discovery propounded by Plaintiffs. Plaintiffs have served three sets of interrogatories and three sets of document requests on Defendants. This written discovery has resulted in extensive meeting-and-conferring over the scope of Defendants' significant document productions in this case;

- Drafting and serving 42 subpoenas directed at non-parties, including dozens of subpoenas to the investment analyst community, other investors, airline industry associations, and phone companies. These subpoenas have similarly resulted in extensive meeting-and-conferring over the scope of the non-party productions, including some sessions mediated by the Special Master;

- Engaging in extensive meet-and-confer negotiations with Defendants regarding the scope of their structured data, unstructured data, document productions, including search methodologies (such as search terms and technology assisted review), data sources, and the scope of Defendants' responses to over 45 document requests and selection of Defendants' document custodians;

- Obtaining, reviewing, analyzing, and collating millions of Defendants' documents (Defendants have collectively produced nearly eight terabytes of data (over 6.7 million documents constituting 27 million pages);

- Obtaining, reviewing, and analyzing Defendants' transactional data (Defendants have collectively produced nearly one terabyte of sales data)—data critical to Plaintiffs' expert analysis and preparing detailed follow-up meet-and-confer correspondence with Defendants regarding their data;

- Obtaining, reviewing, and analyzing document productions from non-parties (non-parties have collectively produced over 250 gigabytes of documents and data excluding phone record productions);

- Researching, drafting, and submitting various motions to compel discovery against Defendants and non-parties as well as participating in dozens of telephone and in-person conferences and mediations with the Special Master and with Defendants regarding their discovery obligations;

- Responding to five sets of interrogatories and three sets of document requests propounded by Defendants with respect to the named Plaintiffs, including engaging in substantial meeting-and-conferring over the scope of their collection, search and production;

- Searching for, identifying, and producing relevant documents and data from 11 named Plaintiffs;

- Conducting research and analyses to determine proposed deponents of Defendants, reviewing documents of said deponents, and preparing deposition strategies for use at their depositions;

- Completing the array of tasks critical to achieving the American and Southwest settlements, including analyzing transactional data and formulating settlement demands, engaging in extensive settlement negotiations, drafting and negotiating settlement agreements and escrow agreements, and drafting and submitting preliminary approval motions;

- Pursuing extensive settlement cooperation from Southwest and American;

- Consulting with economists and industry experts to build econometric models based on the facts of the industry; and

- Consulting with and engaging experienced class notice experts Kinsella Media, LLC and Shannon Wheatman, PhD, to create an extensive notice program that the Court approved.

4. In summary, in the close to three years since the Court appointed leadership, Class Counsel have prepared for and attended more than a dozen court hearings; attended weekly case management and discovery meetings with the Special Master; researched, drafted, and argued important pleadings, such as the opposition to the motions to dismiss; developed the case against Defendants by negotiating extensive search and collection protocols, including protocols involving technology assisted review ("TAR") by the Defendants; processed, organized and reviewed voluminous amounts of data and documents from Defendants and non-parties; drafted and argued numerous discovery motions to obtain key data and documents withheld by Defendants; collaborated with economic and industry experts to prepare the case for summary judgment, class certification, and trial; collected information from American and Southwest through settlement cooperation; and sought approval of the two settlements and the notice program related thereto.

5. Formal discovery has been extensive and voluminous with regular motion practice before the Special Master. Cooperation discovery has been ongoing and productive. The expert-related issues in this case, including the class certification preparation work and building impact and damages models based on Defendants' transactional and other data, have been unquestionably

4

complex and difficult. Class Counsel also spent several months engaged in good faith, arm's-length settlement negotiations with Southwest and American to reach this juncture.

6.  Plaintiffs' Counsel have not received any compensation to date. Indeed, even if the requested fee is granted by this Court, the resulting compensation would not nearly compensate Plaintiffs' Counsel fully for their work from inception of the case to present. Plaintiffs' Counsel have thus assumed an extraordinary financial risk in prosecuting this inherently complex and risky litigation. Plaintiffs' Counsel have handled this case on a 100-percent contingent basis, pouring thousands of hours and millions of dollars into it with no guarantee of success.

### Attorneys' Fees & Costs

7.  Attached hereto as **Exhibit 1** is a report summarizing Plaintiffs' Counsel's cumulative hours, lodestar, and litigation expenses from February 5, 2016 through June 18, 2018 (*i.e.*, the date of the Court's appointment of leadership through the date of the Court's preliminary approval of the most recent settlement, the American settlement). Exhibits 3-41 are declarations by Plaintiffs' Counsel's relating to their individual firm's hours, lodestar, and litigation expenses (*see*, *infra*, at ¶ 9).

8.  Attached hereto as **Exhibit 2** is a report summarizing the litigation expenses incurred by the litigation fund ("Litigation Fund") from February 5, 2016 through June 18, 2018. Exhibit 2 provides a breakdown of litigation costs by category.

9.  Attached here as **Exhibits 3-41** are 39 declarations of Plaintiffs' Counsel, including those of CPM and Hausfeld, that performed work and/or incurred expenses for the same period. Exhibit 1 is a summary report of Exhibits 3-41 (*see*, *supra*, at ¶ 7).

10. As shown in Exhibit 1 and Exhibits 3-41, attorneys and staff have collectively worked 75,674.00 hours from February 5, 2016 through June 18, 2018. Applying the rates charged

by attorneys and professional staff to the hours expended yields a lodestar totaling $$28,486,183.25 for the same period. Class Counsel's requested fee is $15 million, which represents 25 percent of the Settlement Amount but only 52.6 percent of the total lodestar.

11.    As shown in Exhibit 1 and Exhibits 3-41, Plaintiffs' Counsel have incurred litigation expenses totaling $108,848.64 from February 5, 2016 through June 18, 2018. Such expenses include expenses for electronically-stored information ("ESI") hosting and review of millions of documents produced by Defendants and dozens of non-parties (including investors, trade associations, and telephone service providers, and webcasting companies), special master services, extensive economic and industry expert and consulting services, hearing transcripts, and other vendors providing litigation support services. Such expenses are separate from the common litigation expenses incurred through the Litigation Fund in this case (*see*, *supra*, at ¶ 8).

12.    As shown in Exhibit 2, the Litigation Fund incurred litigation expenses totaling $1,464,343.84 from February 5, 2016 through June 18, 2018. Such expenses include, among other items, costs for services related to electronic discovery such as hosting for millions of electronic documents produced by Defendants and dozens of non-parties (including investors, trade associations, and telephone service providers, and webcasting companies) and the collection, search, and processing of documents produced by Plaintiffs, special master services, economic and industry expert and consulting services, cost reimbursement paid to non-parties responding to Plaintiffs' subpoenas, and court reporter fees. Such expenses are separate from the litigation expenses incurred by Plaintiffs' Counsel individually (*see*, *supra*, at ¶¶ 7, 9).

13.    Plaintiffs are seeking reimbursement of reasonably incurred litigation expenses totaling $1,573,192.48, which is the sum of litigation expenses incurred by Plaintiffs' Counsel (*see*, *supra*, at ¶ 11) and litigation expenses incurred by the Litigation Fund (*see*, *supra*, at ¶ 12).

14.     Plaintiffs' Counsel's hours, lodestar, and litigation expenses are understated because Class Counsel have excluded hours, lodestar, and litigation expenses from the inception of the case through the Court's appointment of leadership (*i.e.,* excluded time and expenses before the Court's appointment of leadership). The hours, lodestar, and litigation expenses are further understated as they exclude the substantial time that will be necessary to administer the settlements at the end of the case—a time-consuming and expensive process for which Class Counsel is not typically compensated.

15.     After the Court's appointment of leadership, Class Counsel established the Litigation Fund to pay for expenses incurred in this case. Plaintiffs' Counsel contributed to the Litigation Fund. No outside litigation funders have contributed to, or have an interest in, this Litigation Fund. The law firm of Hausfeld LLP is responsible for administering the Litigation Fund in connection with the prosecution of this case.

16.     The expenses of the Litigation Fund were reasonably and necessarily incurred in connection with the prosecution of Plaintiffs' claims and to obtain the result for the class in light of the complexities of the conspiracy, the number of parties and non-parties, and the various liability and expert issues raised by the case. Furthermore, these expenses are typical expenses that counsel would generally bill to paying clients in the marketplace.

17.     The expenses incurred by the Litigation Fund are reflected in the books and records of Hausfeld. These books and records are prepared from invoices, checks, and other source materials which are regularly kept and maintained by Hausfeld and accurately reflect the expenses incurred.

**Future Litigation Expenses**

18. Concerning future litigation expenses, although Class Counsel expect expenses to exceed $3 million before the complete resolution of this case based on their experience litigating this case and other antitrust and complex class actions, they are limiting their request for future litigation expenses to five percent of the Settlement Amount. If actual litigation expenses do not exceed $3 million, Class Counsel will return the residual amount to the settlement fund for distribution along with the remaining settlement proceeds.

19. Just since June 19, 2018 (*i.e.*, the date after the Court's preliminary approval of the most the American settlement), for example, the Litigation Fund has already incurred over $700,000 in expenses.

**Class Counsel's Supervision**

20. Since their appointment as Class Counsel, CPM and Hausfeld have supervised the activities of Plaintiffs' Counsel in prosecuting this case. Plaintiffs' Counsel have abided by the Court's order regarding the management of Plaintiffs' fees and costs and the Court's review of the same, including the billable rates set forth therein (ECF No. 84). Further, Class Counsel have decided not to seek fees for any task completed before the Court's appointment of leadership though Plaintiffs' Counsel had performed extensive investigative work in this early stage.

We declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed this 5th day of December, 2018 in Burlingame, California and Washington, D.C., respectively.

*/s/ Adam J. Zapala*  
Adam J. Zapala  
Cotchett, Pitre & McCarthy, LLP

*/s/ Michael D. Hausfeld*  
Michael D. Hausfeld  
Hausfeld LLP