**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| IN RE DOMESTIC AIRLINE TRAVEL ANTITRUST LITIGATION | NO. 1:15-mc-01404-CKK<br><br>MDL No. 2656 |
| This Document Relates To:<br><br>ALL CASES | |

**NOTICE OF LETTERS RECEIVED BY**
**CLASS COUNSEL AND COUNSEL FOR**
**SOUTHWEST AIRLINES CO. AND AMERICAN AIRLINES, INC.**

Class Counsel hereby submit the attached letters that were received by Class Counsel, counsel for Southwest Airlines Co., and/or counsel for American Airlines, Inc. ("Settling Defendants") but do not appear to have been sent to the Court.[1] Although it is unclear whether these letters were intended as formal objections to the Settlements and/or Class Counsel's motion for attorneys' fees and expenses since they were not submitted to the Court as required in the Long Form Notice (ECF Nos. 218-2, 257-2 (proposed notice); ECF No. 267 (approval of proposed notice)), Class Counsel and counsel for the Settling Defendants agreed that the Parties should notify the Court of these communications in the interest of transparency.

Class Counsel and Settling Defendants reserve their rights regarding whether these communications constitute proper objections for consideration. To the extent Class Counsel

---

[1] In the attached letters, Class Counsel has redacted dates of birth and frequent flier numbers, which they have construed to be personally identifying numbers under the Court's ECF Civil Privacy Notice. *See Civil Privacy Notice*, United States District Court for the District of Columbia, https://www.dcd.uscourts.gov/civil-privacy-notice.

believe that there are arguments therein that should be addressed, they will do so in their reply brief in support their motion for final approval of the settlements, to be filed by February 14, 2019. If after this filing Class Counsel and Settling Defendants receive any additional such communications that appear to be objections that were postmarked on or before the January 4, 2019 objection deadline but are not filed with the Court, Plaintiffs will similarly apprise the Court.

Dated: January 11, 2019

Respectfully Submitted,

By: /s/ *Michael D. Hausfeld*

Michael D. Hausfeld
Hilary K. Scherrer
Jeannine Kenney
HAUSFELD LLP
1700 K Street NW, Suite 650
Washington, DC 20006
Telephone: (202) 540-7200
mhausfeld@hausfeld.com
hscherrer@hausfeld.com
jkenney@hausfeld.com

Michael P. Lehmann
Bonny E. Sweeney
HAUSFELD, LLP
600 Montgomery Street, Suite 3200
San Francisco, CA 94111
Telephone: (415) 633- 1908
mlehmann@hausfeld.com
bsweeney@hausfeld.com

By: /s/ *Adam J. Zapala*

Adam J. Zapala
COTCHETT, PITRE & McCARTHY, LLP
840 Malcolm Road, Suite 200
Burlingame, CA 94010
Telephone: 650-697-6000
azapala@cpmlegal.com

Alexander E. Barnett
COTCHETT, PITRE & McCARTHY, LLP
40 Worth Street, 10th Floor
New York, NY  10013
Telephone: 212.201.6820
abarnett@cpmlegal.com

### *Interim Co-Lead Counsel*

Elizabeth J. Cabraser
Eric B. Fastiff
Brendan P. Glackin
LIEFF CABRASER HEIMANN &
BERNSTEIN

Warren T. Burns
Daniel H. Charest
BURNS CHAREST LLP
500 North Akard Street, Suite 2810
Dallas, TX 75201

275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Telephone: (415) 956-1000
ecabraser@lchb.com
efastiff@lchb.com
bglackin@lchb.com

Telephone: (469) 904-4550
wburns@burnscharest.com
dcharest@burnscharest.com

Robert N. Kaplan
Gregory K. Arenson
Elana Katcher
KAPLAN, FOX & KILSHEIMER LLP
850 Third Avenue, 14th Floor
New York, NY 10022
Telephone: (212) 687-1980
rkaplan@kaplanfox.com
garenson@kaplanfox.com
ekatcher@kaplanfox.com

*Plaintiffs Executive Committee*



Michael Hausfeld
Hausfeld LLP
1700 K Street NW, Suite 650
Washington DC 20006

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF VIRGINIA

In re: Domestic Airline Travel Antitrust        )    No. 1:15-mc-1404 (CKK)
Litigation                                      )         MDL No. 2656

## **OBJECTION TO CLASS CERTIFICATION AND SETTLEMENT**

Class member Michael Argie, 17055 Spanghurst Drive, Walton Hills, Ohio 44146, phone # 216-559-0249, hereby objects to the proposed settlement and settlement class certification in this case.[1] These objections apply to the entire Class, and both the Southwest and American settlements. I do not plan on attending the fairness hearing.

This case when filed had no prospect of delivering any consideration to the Class, due to the large size of the Class and the likely amount of any cash recovery. The proposed settlements confirm that there was never any possibility of a meaningful cash recovery for the Class that would make direct payment of Class members feasible. Cy pres may no longer be permitted in federal courts, depending upon the outcome of *Frank v. Gaos,* which is currently under advisement with the Supreme Court. See Transcript attached hereto. Therefore, the proposed class does not satisfy the superiority or adequacy prongs of FRCP 23(a) and (b)(3).

Direct payment of Class members is always preferable to payment to third parties or charities in the form of cy pres. That is why Justice Kavanaugh pressed the parties in *Frank v. Gaos* to explain why a lottery system could not be employed as a way of distributing a limited fund that does not permit direct payment to every class member. Here, it would be preferable to provide each Class member with a lottery ticket, and then draw, for example, 10,000 numbers from a hopper and divide the fund between the

---

[1] I purchased airline tickets from Cleveland to Puerto Rico on United Airlines in January 2017 and January 2014. See attached proofs of purchase.

holders of the winning numbers.  This would provide the entire Class, not just the winners, with a valuable benefit, since a lottery ticket has a market value as evidenced by the amount of money consumers pay for them for other common lotteries.  Therefore, a lottery is *per se* required when possible before a *cy pres* distribution may be made.

Objector also objects to the use of settlement monies to fund ongoing litigation against other defendants, when that litigation will only increase the amount of attorney's fees and amounts paid to *cy pres* recipients, but will not increase the likelihood that there will be a direct distribution of settlement monies to the Class.

Signed by: _____   Date: 01.03.2019

cc.     Michael D. Hausfeld
        Roberta Leibenberg
        Benjamin Bradshaw

A confirmation email has been sent to: MIKE@GOOEYPROMOTIONS.COM

2017  1/2

## Trip Information

Confirmation number:

# L7VCX8

Cleveland, OH, US (CLE) to San Juan, PR, US
(SJU - Luis Muñoz Marín)

## Purchase summary

| | |
|---|---|
| 2 adults (18-64) | $912.00 |
| Taxes and fees | $111.60 |

2 adults (18-64): $55.80 /person

| | |
|---|---|
| September 11th Security Fee | $5.60 |
| U.S. Passenger Facility Charge | $4.50 |
| U.S. Transportation Tax | $17.80 |
| September 11th Security Fee | $5.60 |
| U.S. Passenger Facility Charge | $4.50 |
| U.S. Transportation Tax | $17.80 |

| **Total** | **$1,023.60** |
|---|---|

Credit card payment: $1,023.60 (MasterCard-**6137)

## Trip summary

Saturday, January 07, 2017

| 7:00 am ✈ | 12:15 pm | Nonstop |
|---|---|---|
| Cleveland, OH, US (CLE) | San Juan, PR, US (SJU - Luis Muñoz Marín) | 4h 15m total |

Cleveland, OH, US (CLE) to San Juan, PR, US (SJU - Luis Muñoz Marín)
7:00 am - 12:15 pm (4h 15m)

United Economy (W)
Meals for Purchase

UA 421 | Boeing 737-800

📶 Wi-Fi     📺 DIRECTV®

8/17/2016 1:00 PM

3:00 pm ✈ 6:40 pm

Nonstop

San Juan, PR, US (SJU - Luis   Cleveland, OH, US   4h 40m total
Muñoz Marín)   (CLE)

San Juan, PR, US (SJU - Luis Muñoz Marín) to Cleveland, OH, US (CLE)   United Economy (S)
3:00 pm - 6:40 pm (4h 40m)   Meals for Purchase

■ UA 387 | Boeing 737-800

📶 Wi-Fi   📺 DIRECTV®

2/2

## Travelers

| MICHAEL ARGIE , MR. | CLE to SJU | Email address: | |
| | 31C | MIKE@GOOEYPROMOTIONS.COM | |
| | SJU to CLE | Home phone: | (216) 559-0249 |
| • | 30C | Date of birth: | ▉ 0.15 |
| | | Gender: | M |
| MARGHERITA SCALISH ARGIE , MRS. | CLE to SJU | Date of birth: | ▉951 |
| | 31D | Gender: | F |
| | SJU to CLE | | |
| | 30D | | |

## Important travel information

The U.S. government raised the security alert level and implemented extra restrictions to assure the security of air travel. Certain changes in airport procedures and restrictions on items allowed on board aircraft are detailed on the Travel Alert: Elevated Security (http://www.united.com/web/en-US/content /news/travelnoticesecurity.aspx) page.

Any changes to your flight reservations may incur additional charges.

Airlines require government issued photo identification upon check-in, such as a driver's license or passport.

Passport, visa and health requirements (http://www.united.com/web/en-US/content/travel/destination /international/passport.aspx) may apply for this itinerary. Each passenger must ensure that he or she has all required travel documents as stated in Rule 19 of the Contract of Carriage (http://www.united.com /web/en-US/content/contract.aspx) . Information on this site is provided as a courtesy and should be verified by the passenger before travel. Other resources include the consulate of the destination country and the U.S. Department of State (http://www.travel.state.gov/) .

Please read important information governing airline baggage liability limitations (http://www.united.com /web/en-US/content/travel/baggage/liability.aspx) .

You will be contacted with any changes or additional information such as schedule changes, itinerary changes, etc.

Special services are on a request basis and cannot be guaranteed.

Special meal requests must be received at least 24 hours before the departure of your flight and cannot be guaranteed.

The price displayed includes up to a 7.5% U.S. Federal Transportation Tax on the base amount of the fare on itineraries wholly within the United States. This tax also applies to certain itineraries between the United States and Canada or Mexico. You will not earn PQD or award miles for the full amount of the displayed price for these itineraries because the U.S. Federal Transportation tax is not eligible to earn PQD or miles.

Mileage accrued will vary depending on the terms and conditions of your frequent flyer program. United MileagePlus mileage accrual and other benefits of MileagePlus associated with air travel are

CRAZY-OD 11x14x 22

1.800.864.8331

UNITEDAIRLINES@UNITED.COM

RAYMOND
#QY



A STAR ALLIANCE MEMBER

Confirmation:
HREF1P
Check-In >

Issue Date: August 21, 2013

| Traveler | | | | eTicket Number | Frequent Flyer | Seats |
|---|---|---|---|---|---|---|
| ARGIE/MICHAELJMR | | | | 0162377430269 | | ---/--- |
| SCALISHARGIE/MARGHERITAMRS | | | | 0162377430270 | | ---/--- |

### FLIGHT INFORMATION

| Day, Date | Flight | Class | Departure City and Time | Arrival City and Time | Aircraft | Meal |
|---|---|---|---|---|---|---|
| Sat, 18JAN14 | UA1570Q | | CLEVELAND, OH (CLE) 8:45 AM | SAN JUAN, PR (SJU) 2:00 PM | 737-700 | Purchase |
| Sat, 25JAN14 | UA1587S | | SAN JUAN, PR (SJU) 3:00 PM | CLEVELAND, OH (CLE) 6:32 PM | 737-700 | Purchase |

### FARE INFORMATION

Fare Breakdown

| | | |
|---|---|---|
| Airfare: | 567.00USD | Form of Payment: |
| U.S. Federal Transportation Tax: | 34.40 | VISA |
| September 11th Security Fee: | 5.00 | Last Four Digits 7530 |
| U.S. Passenger Facility Charge: | 9.00 | |
| Per Person Total: | 615.40USD | |

eTicket Total:           1,230.80USD

The airfare you paid on this itinerary totals: 1,134.00 USD

The taxes, fees, and surcharges paid total: 96.80 USD

Fare Rules:     Additional charges may apply for changes in addition to any fare rules listed.

NONREF/0VALUAFTDPT/CHGFEE
Cancel reservations before the scheduled departure time or TICKET HAS NO VALUE.

To: Fine Kaplan and Black                                                    Date: 29 Nov 2018
c/o Roberta Liebenberg
One South Broad Street, Suite 2300
Philadelphia, PA 19107

From: Monica J Baietti
5202 Texana Drive, Apt 836
San Antonio, TX
78249
210-538-5311 (landline)

Subject: Notice of Intention to Appear Domestic Airline Travel Antitrust Litigation, MDL No.
2656

On November 15, 2018, I, Monica J Baietti was identified as a possible victim in this lawsuit
against these airlines. In the letter it explained I was allowed to write a letter that would be
entered into evidence as I cannot make a physical appearance. When I received this notice, I
performed a quick search in my records and depending upon how the counting is done I have at
most 14 one-way flights that should be considered toward this case, which makes me wonder
how much money I was forced to overspend?

Furthermore, this led me to wonder how much these companies are worth:

American Airlines is worth $51.4 billion (2017)
Delta Airlines $53.2 billion (2017)
Southwest Airlines $25 billion (2017)
United Airlines $21 billion (2018)
Continental Airlines $25 billion (2018)

When you see how much money these companies have made and how these companies then
further conspired to increase fares by limiting capacity on domestic flights, to make even more
money; personally, I hope this makes your blood boil, and I urge you to send a message to these
companies that is loud and clear!

As I am sure you know, transportation plays an important part in economic growth and
globalization. Additionally, transportation is important because it enables people to move about
their country with ease and the ability to experience new things. **Millions** of people depend on
this mode of transportation, so when large companies get greedy and squeeze people for more
money, I just do not understand.

In June 2015, Daniel Shurz, senior vice president of commercial for Frontier Airlines stated
"These additional fifteen routes are the latest evidence of Frontier's commitment to make air
travel more affordable across the United States. We're offering not only amazing low fares, but a
reliable and friendly service that allows customers to customize their travel experience to their
needs and budget. This empowers more people than ever to fly. This is what our Low Fares
Done Right philosophy is all about." (Frontier is worth $1.8 billion (2017))

These airlines should use Frontier as a business model to help more Americans travel and see their country, versus being insanely greedy, talk about an example of poor leadership that should be studied at the university level to understand what compels these companies to continue to advance prices without thinking of the poorest consumers, who most likely deserve traveling the most out of any person.

Why aren't these companies trying to set different standards like Frontier, instead Americans get ripped off and we always pay the money, ALWAYS. This case has the opportunity to set different industry standards. Transportation is one of the best things about a first world! you can experience other parts of your own country that before air, might have been too hard to do. The fact that these companies want to deny people their right as an American citizen to travel our great nation is abhorrent.

Thank you,

Monica J Baietti
Analyst, M.Ed.
202-297-2217 (mobile)
monica_baietti@yahoo.com

Russ Baker
1142 Gateway Road
Ottawa, ON, Canada  K2C2W9
November 10, 2018


Southwest Counsel
Roberta Liebenberg
Fine Kaplan and Black
One South Broad Street, Suite 2300
Philadelphia, PA  19107


Dear Reader:

I object to the Settlement(s) in In re Domestic Airline Travel Antitrust Litigation, MDL No. 2656. I do not plan to appear at the fairness hearing, as this is far too expensive in both time and money for me relative to the pathetic benefits on offer.  In this case, I am specifically objecting to the settlement with Southwest Airlines, though as a frequent traveler, I will also be a more significant class member if and when the cases against United or, to a lesser extent, Delta are resolved.  I never fly American.  As proof of my membership in this class, I submit a copy of one of many tickets purchased on Southwest Airlines.

My objections to the settlement boil down to one simple fact.  A $15M settlement is so miniscule that it should rightly be viewed by Southwest's attorneys and management as a joke and a great victory.  I would view this more as a minor service fee paid for the right to engage in blatant antitrust behavior and rake in profits.  In looking for evidence to back up my claim, I was unable to find an obvious statement of the amount of additional profit the court estimates was gained as a result of the price fixing these airlines were accused of – more accurately termed "the damages".  So, as a way to take an educated guess at what "the damages" may consist of, given that the complaint suggests "significant" increases to ticket prices, if I assume even a simple 1% increase in revenues during the stated timeframe, for Southwest alone, we're looking at over $150M in 2011 and increasing from there.  This would imply that the airline's gains over the stated timeframe are likely over $1B.  If you present me an opportunity to shell out $X and in return be paid 67X over 7 years, without having to acknowledge guilt, I will gladly sign up.  This is a laughable penalty.

I also object to everything else surrounding this situation, and others like it.  Everything about the structure of the process is designed to bury the individual victims in process.  Why aren't "the estimated damages" obviously stated somewhere?  Why do I have to print, sign and mail four separate letters to object?  I'm sure I'll be asked to provide proof of all of my flights over the past several years, in order to share in the "bounty" of this process.  Given that this $15M will probably be shared across millions of passenger flights in the end, it is likely that I will need to spend hours of my time in order to access a settlement of 1's to, at most, 10's of dollars.  Which, of course, is not worth my time.  Which, of course, means that most claimants won't bother.  Which, of course, probably means the airline will end up paying only a small portion of the stated settlement.  And, of course, everyone involved in the process knows this, including the court.

In the end, Southwest airlines walks away having paid very little (almost certainly single-digit millions), all the lawyers get paid, the court gets paid by the taxpayer, and the few complainants that bother to spend their time to work through the paperwork and process receive a very tiny

Southwest Counsel
November 10, 2018
Page 2

amount of money that in no way actually compensates them for the original alleged "crime". Ironically, Southwest will have almost certainly spent more money in the process of defending themselves than the settlement itself.

I would ask what the point of all this is, but I know the answer.  It's a convenient rubber stamp so that corporate interests can continue to do whatever they want, while the government and the courts pretend that they're doing something worthwhile.  You're not.  Unless and until you take away all of the benefits of a corporate crime, AND apply an additional penalty on top of that loss of illicit benefits, you're just an accessory to the crime, tasked to clean up the mess.  I assume while studying the law, members of the court intended to fill a more respectable role.  But instead, they're elbow-deep in corporate America's feces.  Perhaps the court should consider not wallowing in the stench.

Sincerely,

Russ Baker

Enclosure

Dec. 1st 2018

Kathleen Bruno
8033 Macarthur Blvd. #5425
Oakland, CA. 94605
(505) 603-7020


To Whom it may concern, In reference to the
Re-domestic Airline Travel Anti-trust Lidigation MDL#
2656 I rejet the Settelments.


I object to both Southwest and American Settelment
Unfortunatly I will be unable to attend the Fainess hearing
due to the type of work I do is to demanding.


I am a member of Southwest Rapid Rewards
# 20104180762, I am also in the Settelment Class in
which I am objecting.


I used to Fly Frequently but then had to quit
because of price gouging at the check in counters.
This included but was not limited to the weight,
size, and measurements of my luggage being checked
in. I was forsed to pay astronomically large fees for
my luggage at this time and point in addition to the
airfair. As a consequence I had to stop Flying as it
became more and more unafordable. Kathleen Bruno

December 2, 2018

Objection to *In re Domestic Airline Travel Antitrust Litigation*, MDL No. 2656

Howard Chen

1326 N Central Ave Unit 418

Phoenix AZ 85004

(520) 661-5343

I object to the Southwest and American Settlements for *In re Domestic Airline Travel Antitrust Litigation*, MDL No 2656. I do not plan to appear at the fairness hearing. As proof of membership in the class, enclosed are receipts (American, 0012387975309; Southwest, 5262136848972) that prove that I paid for a ticket during the time period between July 1, 2011 and December 20, 2017.

The specific reason why I am objecting to the settlement is because it violates for federal rule of civil procedures that a class action settlement be "fair, reasonable, and adequate."

I object to the amount of the settlement, and that it is stated that "it may not be economically practical to make a cash distribution to class members." The proposed settlements are for $45 million (American) and $15 million (Southwest).

According to https://www.bts.gov/newsroom/2017-traffic-data-us-airlines-and-foreign-airlines-us-flights (accessed December 2, 2018), there were approximately 300 million total passengers that flew on American and Southwest in 2017. Subtracting the 31 million international passengers, this leaves 269 million domestic customers. Extrapolated over the 6.5 years of the class membership period, this is approximately 1,750 million domestic passenger flights on these two airlines.

After attorneys' fees of 30%, this leaves $42 million of the $60 million remaining for the class. If every class member applied for a settlement benefit, this would provide under 4 cents per plane ticket. Even if only 10% of class members applied for a settlement benefit, this would provide a benefit of about 40 cents.

I would want further information regarding how the fixing of prices by Southwest and American would actually affect the price of a plane ticket. The airlines should settle for this amount, so the class can obtain real monetary relief.

If the amount per ticket is *de minimus*, and it is not practically feasible to provide monetary relief to class members, I object based on the possibility of donating the settlement monies to charity: https://www.wsj.com/articles/class-action-charity-racket-1540939527

Thank you,

Howard Chen



American Airlines@aa.com
E-Ticket Confirmation-RKNOBZ 10NOV
Aug 18, 2016, at 3:35:53 PM
HOWIECHEN7@GMAIL.COM

## American Airlines

# eTicket Itinerary & Receipt Confirmation

Ticket issued: Aug 18, 2016

## Howard Chen,

Thank you for choosing American Airlines / American Eagle, a member of the oneworld® Alliance. Below are your itinerary and receipt for the ticket(s) purchased. Please print and retain this document for use throughout your trip.

You may check in and obtain your boarding pass for U.S. domestic electronic tickets within 24 hours of your flight time online at AA.com by using www.aa.com/checkin or at a Self-Service Check-In machine at the airport. Check-in options may be found at www.aa.com/options. For information regarding American Airlines checked baggage policies, please visit www.aa.com/baggageinfo.

To receive updated flight status notifications, please visit www.aa.com/notifications.

**For faster check-in at the airport, scan the barcode below at any AA Self-Service machine.**

You must present a government-issued photo ID and either your boarding pass or a priority verification card at the security screening checkpoint.

You can now Manage Your Reservation on aa.com, where you can check in and purchase additional items to customize your journey. A variety of seating options are also available for purchase to enhance your travel with features such as convenient front of cabin location, extra legroom and early boarding.



EARN 25,000
AAdvantage® miles
DIRECTV    Click for details »



citi | AAdvantage
Earn 30,000 bonus miles,
plus waive your checked
bag fee
Learn more »

Up to 35% off plus 500
AAdvantage® bonus miles.
AVIS   Budget



Activate a new Sprint account
and earn up to 10,000 miles.
Sign up for the offer today at
sprint.com/AAdvantage

 Book a hotel »
Book a car »

 Remind me to Uber »
 Buy trip insurance »

Record Locator **RKNODZ** 

# Itinerary

| Carrier | Flight # | Departing | Arriving | Fare Code |
|---|---|---|---|---|
| American Airlines | 3073 | PHOENIX THU CONOV 5:55 PM | MONTEREY CA MRY 6:51 PM | N |
| | | OPERATED BY SKYWEST AIRLINES AS AMERICAN EAGLE | | |
| Howard Chen | Seat 4C | Economy | FF#: 74E16E0 GLD | |

# Receipt

| Passenger | Ticket # | Fare-USD | Taxes and Carrier-Imposed Fees | Ticket Total |
|---|---|---|---|---|
| Howard Chen | 0012387975309 | 114.42 | 22.68 | 137.10 |
| Master Care - XXXXXXXXXXXXX9531 | | | | $ 137.10 |

Baggage Information

Baggage carried on this or a connecting will be covered by American Airlines BAG ALLOWANCE -PHOENIX-No free checked bags/ American Airlines CHECKED BAG FEE REGULARLY USD9.00/ American Airlines UP TO 50 LBS/23 KG AND UP TO 62 LINEAR IN/158 LINEAR CM 2NDCHECKED BAG REGULARLY USD35.00/ American Airlines UP TO 50 LB/23 KG AND UP TO 62 LINEAR IN/158 LINEAR CM ADDITIONAL ALLOWANCES AND/OR DISCOUNTS MAY APPLY

This fare is NON-REFUNDABLE fare. This delivery must be canceled before the ticketed departure time of the first unused coupon or the ticket has no value. Prior to time of travel changes a fee may be assessed for changes and taxes fees may apply.

You may cancel and use the full value of your trip for a trip issued in your market at least 7 days prior to departure. You must cancel your trip before departure to retain a residual. To cancel your trip, login to Manage or Contact Reservations. If a non refund policy and to request a refund, go to www.aa.com/refunds.

          

Certain types of hazardous materials are forbidden and may not be carried on your person, in carry on or checked baggage. Hazardous materials can be dangerous when transported on the aircraft in carry-on and/or checked baggage. These are prohibited for everyone's safety. Some by law, generally burn, fumes or start a fire. Damage of prohibited items may result in fines and civil or criminal penalties. Please ensure these items are forbidden hazardous materials in your baggage like:

Note: Do not attempt to place or check baggage, batteries over a certain size. Explosives / Fireworks, Strike anywhere matches/ Lighter fuel - Chemical oxidizers, Aerosols, Oxygen bottles/ Liquid oxygen, Flammable liquids, Flammable gases, Radioactive Poison, Corrosive material

Some electronic devices with small quantities (up to 70 mL or total) of medicinal and toilet articles carried in your luggage. Spare lithium batteries for most self-defense, mace such as clubs or stun guns, ammunition and certain smoking materials carried on your person.

As The electronic type can be carried with you onboard the aircraft. For example, spare lithium batteries for portable electronic devices, cigarette lighters and e-cigarettes cannot be carried in checked baggage when carried in check baggage. Baggage that cannot exceed the aircraft. However, e-cigarettes may not be used on board the aircraft.

Some items in a checked or that should appear, multiple items or items has intended devices may require value the approval or be marked in the carriage unless if checked. Checking these items should require identifying the intended use of such devices.

These tickets are NOT TRANSFERABLE. Tickets with value effective fares are valid for one year from original date of issue. If you have questions regarding your flight permit please visit www.aa.com/refunds.

To change your reservation please call 1 800 433 7300 and refer to your record locator.

Check in times will vary by departure location. To avoid problems the lost time you need to check in at the airport, please visit www.aa.com/airportexpectations.

Tickets based on partner airlines and the American Eagle airline are subject to American's conditions of carriage.

NOTICE OF INCORPORATED TERMS OF CONTRACT



Southwest Airlines
Southwest Airlines Confirmation-CHEN/HOWARD K
Confirmation: AB9Z62
Jun 12, 2013 at 3:38:57 PM
JPHTHODOC@YAHOO.COM

**Southwest Airlines**

My Account | View My Itinerary Online

| Check In Online | Check Flight Status | Change Flight | Special Offers | Hotel Deals | CanDeals |

## Ready for takeoff!

Thanks for choosing Southwest for your trip! You'll find everything you need to know about your reservation below. Happy travels!

Save up to 35%

on base rates and earn up to 2,400 Rapid Rewards® points. Terms apply.

**Hertz**

Book car >

### AIR Itinerary

## AIR Confirmation: AB9Z62

Confirmation Date: 06/12/2013

| Passenger(s) | Rapid Rewards # | Ticket # | Expiration | Est. Points Earned |
|---|---|---|---|---|
| CHEN/HOWARD K | | 5262138348972 | Jun 12, 2014 | 1417 |

Rapid Rewards points earned are only estimates. Visit your MyAccount at Southwest.com or Rapid Rewards account for full current rewards totals, including Actual & A-List Preferred bonus points.

| Date | Flight | Departure/Arrival |
|---|---|---|
| Sat Nov 16 | 3152 | Depart PHOENIX AZ (PHX) on Southwest Airlines at 10:10 AM<br>Arrive in NEW ORLEANS LA (MSY) at 2:05 PM<br>Travel Time 2 hrs 55 mins<br>Wanna Get Away |
| Tue Nov 19 | 1545 | Depart NEW ORLEANS LA (MSY) on Southwest Airlines at 3:05 PM<br>Arrive in PHOENIX AZ (PHX) at 5:40 PM<br>Travel Time 3 hrs 35 mins<br>Wanna Get Away |

**What you need to know to travel:**
- **Don't forget to check in for your flight(s) 24 hours before your trip on southwest.com or your mobile device.** This will secure your boarding position on your flights.
- **Southwest Airlines does not have assigned seats, so you can choose your seat when you board the plane.** You will be assigned a boarding position based on your checkin time. The earlier you check in, within 24 hours of your flight, the earlier you get to board.

**Find a Hotel**
See ratings, photos and rates for over 40,000 hotels.

Book a Hotel

Air Cost: 257.80

Carry-on Items, 1 Bag – small personal item are free (see full details. Checked Items: First and second bags are free, size and weight limits apply.

Fare Rule(s) 5262138348972. NONREF/NONTRANSFERABLE/STANDBY REQ UPGRADE TO Y.

Valid only on Southwest Airlines. All travel involving funds from this Confirmation Number must be completed by the expiration date. Unused travel funds may only be applied toward the purchase of future travel for the individual named on the ticket. Any changes to this itinerary may result in a fare increase. Failure to cancel reservation for a Wanna Get Away fare segment at least 10 minutes prior to travel will result in the forfeiture of all remaining unused funds.

**Rent Some Wheels**
Explore your destination on the perfect set of wheels.

Rent a Car

PHX WN MSY 109.77MZNVDNR WN PHX109.77MZNVDNR 219.54 END ZPPHXMSY XFPHX4.5M SY4.5 AY5.00$PHX2.50 MSY2.50

Sign Up 'n Save

### Important Reminders:

#### Check-In
Be sure to arrive at the departure gate with your boarding pass at least 10 minutes before your scheduled departure time. Otherwise, your reserved space may be cancelled and you won't be eligible for denied booking compensation.

#### No Show Policy
If you are not planning to travel on any portion of this itinerary, please cancel your reservation at least 10 minutes prior to scheduled departure of the flight. For tickets purchased on or after May 10, 2013 for travel beginning September 13, 2013, customers

Join Rapid Rewards

who fail to cancel reservations for a Wanna Get Away fare segment at least 10 minutes prior to travel and who do not board the flight will be considered a no show, and all remaining funds on this reservation, including Anytime and Business Select fares, will be forfeited.

Go to Boarding School

Get EarlyBird
Check-In™ Details...

## Cost and Payment Summary

AIR - AB9262

| | | |
|---|---|---|
| Base Fare | $ 210.54 | |
| Excise Taxes | $ 16.45 | |
| Segment Fee | $ 7.80 | |
| Passenger Facility Charge | $ 9.00 | |
| September 11th Security Fee | $ 5.00 | |
| **Total Air Cost** | **$ 257.80** | |

**Payment Information**
Payment Type: Amer Express XXXXXXXXXXX1002
Date: Jun 12, 2013
Payment Amount: $257.80

### Flight Status Alerts

Stay on your way with flight departure or arrival status via text message or email

Subscribe Now...

### Download DING!

Get exclusive travel deals straight to your desktop or iPhone

Download DING!...

| Useful Tools | Know Before You Go | Special Travel Needs |
|---|---|---|
| Check-In Online | In the Airport | Traveling with Children |
| Early Bird Check-In | Baggage Policies | Traveling with Pets |
| View/Share Itinerary | Suggested Airport Arrival Times | Unaccompanied Minors |
| Change Air Reservation | Security Procedures | Baby on Board |
| Cancel Air Reservation | Customers of Size | Customers with Disabilities |
| Check Flight Status | In the Air | |
| Flight Status Notification | Purchasing and Refunds | |
| Book a Car | | |
| Book a Hotel | | |

## Legal Policies & Helpful Information

Privacy Policy
Notice of Incorporated Terms

Customer Service Commitment
FAQs

Contact Us

Book Air | Book Hotel | Book Car | Book Vacation Packages | See Special Offers | Manage My Account

This message was sent to you by Southwest Airlines. Please do not attempt to respond to this message. Your privacy is important to us. Please refer to our Privacy Policy.

If "Your" bookings has a Function Confirmation number must be completed by the expiration date.

Cancel, Rebook flight for a reservation subject to September 11th Security Fee.

Yes, I, Southwest Airlines Co. Notice of Incorporation
For Southwest Airlines Limit of Liability

Southwest Airlines
P.O. Box 36647 TRP
Dallas, TX 75235

Ref # 2346

© August 2013, Southwest Airlines Co. All Rights Reserved.

1326 N Central Ave #418
Phoenix AZ 85004

CERTIFIED MAIL

7018 1630 0001 9815 1315

Michael Hausfeld
Hausfeld LLP
1700 K Street NW, Suite 650
Washington DC 20006

UNITED STATES
POSTAL SERVICE

1000

20006-3826

U.S. POSTAGE
FCM LETTER
PHOENIX, AZ
85016
DEC 08 '18
AMOUNT
$3.95
R2304N-17564-

## Molly C. Kenney

**From:**          noreply@rustconsulting.com
**Sent:**          Friday, January 4, 2019 12:14 PM
**To:**            DomesticAirClass
**Subject:**       Domestic Airline Settlement - Inquiry

A response has been sent from the following website: domesticairclass.com

Name:  Richard Croft
Email:  rscroft@yahoo.com
Inquiry or Message:  If you wish to object to the Settlement(s), or anything else referenced in the Notice, you must file a written objection by January 4, 2019

hey, You seem to be worst than most legal teams in this suit. I am dealing with cancer had chemo last week and have spend what tie I have trying to find where to object. you don't seem to to make that info available.
You have everything set to just give the basic info to as many AA flyers as you can find or locate, Just enough info so that they can not do anything that may eat at the millions of dollars in settlement that the legal team and the few people named on the suit will get. Every penny that goes to a real flyer is a penny less for guys.
Is that why you state that everyone, being the names and addresses of AA awards members or people that bought tickets, give tip their right to sue the airline at a later date?
You send them that email with all the dates and deadlines clearly marked and several times tab that. then when it comes to opting out, et... you clearly state that they will be on their own and that they personally must pay all the expense. In other words, Opt out and you must pay, stay in and you can do and will get nothing.
well I live in Charlotte, NC. and US Airways now American have controlled what we must pay to fly for many years. Many, many times I could save hundreds of dollars for tickets on the same flight, say to New York, If Could or wanted to use the time to drive three hours north to the city of Raleigh, NC. pay for gas, parking, wear on my car, meals and buy the flight tickets. Then fly from the airport there, which will then fly us back to Charlotte and we will fly north back over Raleigh before getting to our destination, New York.
And this was for almost every flight. It was much less to fly out of Raleigh, NC. or Atlanta, Ga., a smaller and a larger city than to fly out of Charlotte. A city completely controlled by one airline.
I bet the people and legal team named in the suit seldom or only flew the airline once. And the cost of that flight ticket was properly deducted from their taxes as a buss trip. If so, maybe the IRS should get their share to the settlement, after all that is who really paid for the ticket, the tax payers.
While we who used our vacation savings get nothing.
SO I DO OBJECT TO THE CURRENT TERMS OF THE SETTLEMENT. I just could not find who to sent the letter to. Please forward it to the person(s) that should get it.
Richard Croft


This message (including any attachments) may contain confidential or otherwise privileged information and is intended only for the individual(s) to which it is addressed. If you are not the named addressee you should not disseminate, distribute or copy this e-mail. Please notify the sender immediately by e-mail if you have received this e-mail by mistake and delete this e-mail from your system. E-mail transmission cannot be guaranteed to be secured or error-free as information could be intercepted, corrupted, lost, destroyed, arrive late or incomplete, or contain viruses. The sender therefore does not accept liability for any errors or omissions in the contents of this message or that arise as a result of e-mail transmission. If verification is required please request a hard-copy version from the sender.

Michael Gyda
3830 Marshall Road
Drexel Hill, PA 19026
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 (T)
gg-mm@comcast.net

December 30, 2018

Clerk of the Court
United States District Court for the District of Columbia
333 Constitution Avenue
Washington, DC 20001

**OBJECTION to SETLEMENTS** *In re: Domestic Airline Travel Antitrust Litigation*,
**MDL 2656,** *Southwest & American Airlines*

To The Court:

This Plaintiff, included in the above captioned Class Action matter (see attached boarding passes and/or receipts), hereby objects to both the Southwest and American Airline Settlements as described in "6060_Domestic Airlines_LF Notice_v1" (attached), as downloaded from the website www.domesticairclass.com for the following reasons:

First, this "litigation" represents nothing more than <u>blatant extortion</u> of the airlines by the REAL criminals in this action – i.e., Class Counsel – and condoned by the Federal Court. This is a disgrace to the legal system as it was intended to operate by the Founding Fathers and The Constitution of The United States, and an egregious affront to the very meaning of justice. Moreover, Class Counsel publically admits this is in fact the case, as they baldly declare in bullet point #3 found on page (1) of the aforementioned Notice (highlighted):

"Southwest and American deny that they did anything wrong and have asserted defenses to Plaintiff's claims. They have settled to avoid the considerable cost, burden and distraction of this litigation."

Translation:

The law firms Cotchett, Pitre & McCarthy, LLP, and Hausfeld, LLP, i.e., Class Counsel, along with some undisclosed number of windfall-seeking private litigants, as well as the US District Court for the District of Columbia, have colluded to bully and extort US domestic airline companies into submitting to payment of an organized crime/"mob" tax under threat of protracted and expensive, albeit frivolous legal proceedings that could further cripple said airlines' operations.

These parasitic vultures of human society, i.e., "Class Counsel", and the US District Court should be ashamed of themselves/itself, and immediately cease and desist from further

Gyda, M                                                                                      Page 1

egregious and inexcusable criminal behavior masquerading as "justice". The lot of you wouldn't recognize "justice" if it reached out and smacked you in the head.

Furthermore, sixty million dollars ($60,000,000) is what The Court considers an "avoidance of considerable cost"? Surely you jest. Such absurdity can only be addressed by asking yet another rhetorical question – have you all lost your minds?

Secondly, who, precisely, will these so-called "settlements", and/or additional litigation, actually punish? I can assure The Court, it will NOT be the airlines, because either the cost of litigation, or settlement costs, will simply be passed onto the flying public moving forward in the form of increased fares. Thus, this "Class Action" will do nothing but cost innocent customers higher than necessary fares for years into the future, further victimizing the innocent – whom may, or may not, already have been victimized once.

Third, what evidence do the "Plaintiffs'" have that can prove collusion beyond a reasonable doubt? Unless they had a CEO wired up during the meeting where it was clear and indisputable that said activity took place, good luck with that one. You'd have better luck proving age discrimination during the hiring process than this case.

Fourth, have any of the geniuses involved in this case thus far stopped for just one moment to consider the potential collateral effects this gang-related extortion will have on airline operations? These companies are operating on, at best, razor-thin margins, and I would suspect most, if not all, may be reporting losses consistently. This is not a very comforting thought when one is seated in an aircraft flying at an altitude of 40,000 feet. That's all the innocent public needs now – not only being victimized monetarily by an out-of-control judicial system that permits this unconscionable behavior to exist and perpetrate, but a death sentence upheld by The Court, leaving the airlines little choice but to cut corners during safety checks and maintenance routines as a result of a hand-full of knuckleheads attempting to further disable these companies in order to satisfy their own personal, insatiable greed. Class Counsel – run out of ambulances to chase? Have any of you ever purchased a Boeing 777 or 737, staffed it with pilots, flight crew, mechanics, etc., maintained and serviced it, filled it with fuel repeatedly, leased airport space, purchased all of the equipment, tools and specialized vehicles needed to keep it in operation, etc? Do any of you geniuses have even a remote idea of about how much money it costs to SAFELY operate just a single aircraft on a single flight? I purchased tickets for domestic flights on these airlines during the time frame in question (see attached), and I did not notice anything unusual about the airfares. In fact, I thought I was able to get quite a decent deal. So how much could the airline have possibly "artificially" raised the ticket price IF this alleged collusion truly took place – a few dollars per ticket? It could not be much more than that, because if it were, it would have been immediately obvious. All that you greed-driven sociopaths are doing through this action and potential future litigation is creating far more turbulence within the airline industry than is necessary – or worse – may be able to handle – and as a result, you are, at the very least, indirectly levying punitive damages onto an innocent flying public, and at worst, endangering the very lives of said public. THIS nonsense is what a Federal Court should be involved in mitigating while the Bill of Rights is under attack? If you answered "yes" to that question with a straight face – forget the airlines – it's time for a major overhaul of the judicial system. There will be ONLY one victor in this fiasco, should it be permitted to proceed, and that, of course, is Class Counsel, and to a lesser extent, Defendants' Counsel.

Fifth, and that to which the two "settling" airlines should have plead – American and Southwest – what is wrong with you? Submitting to bullies in the school yard so easily? You should be ashamed of yourselves, especially so if you have done nothing wrong. Spineless, pusillanimous cowards…how dare you take the name of America in vain. If it were not for the non-settling airlines, and the concern for my safety, and the safety of my loved ones in the air, I would not waste my time or effort on either of your organizations. If said decision, however, was made per Counsels' recommendations, you should both immediately seek new counsel, and withdraw the settlement agreement based on incompetent legal advice.

Finally, let this document further represent my Notice/Reservation of Intention to Appear and be heard before The Court at the Settlement Hearing, providing circumstances permit.

When I board an aircraft – now, or anytime in the future – I do NOT want to have a single concern that, because of some ridiculous litigation instigated by a couple of unscrupulous gold-diggers, the safety of that aircraft has been compromised. This action contains every ingredient needed to whip up a public safety nightmare. By permitting it to proceed, The Court becomes the party solely responsible for that nightmare if, and when, it happens. Stop bullying the airlines, and use the Antitrust Statutes to prosecute the true offenders – beginning with Microsoft. What happened to common sense in these United States? Oh…right…much like everything else…it has been ruined by a group of sociopathic lawyers in collusion with a corrupt judicial system.


Submitted,


Michael Gyda

encs:

6060_Domestic Airlines_LF Notice_v1

AA fare receipt, February 5, 2016

US Airways boarding passes, Aug 26 & Aug 27, 2013


cc:

Michael D. Hausfeld, Hausfeld, LLP, Class Counsel, Washington, DC;

Roberta Liebenberg, Counsel for Southwest, Philadelphia, PA;

Benjamin G. Bradshaw, Counsel for American, Washington, DC.

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

# If You Bought a Domestic Airline Ticket on American, Delta, Southwest, United, Continental, or US Airways Between July 1, 2011 and June 14, 2018

## Your Rights Could Be Affected

*A Federal Court authorized this notice. This is not a solicitation from a lawyer.*

- A class action lawsuit has been filed against the four largest commercial air passenger carriers in the United States—American Airlines, Inc., Delta Air Lines, Inc., Southwest Airlines Co., and United Airlines, Inc. (collectively, "Defendants"), claiming that Defendants, along with US Airways and Continental Airlines, conspired to increase fares by limiting capacity on domestic flights.

- Southwest has agreed to pay $15 million and American has agreed to pay $45 million to settle this nationwide litigation. Southwest and American (collectively, "Settling Defendants") have also agreed, as part of the Settlements, to provide certain cooperation to Plaintiffs in this litigation.

- Southwest and American deny that they did anything wrong and have asserted defenses to Plaintiffs' claims. They have settled to avoid the considerable cost, burden, and distraction of this litigation.

- The Settlements are on behalf of persons and entities who purchased air passenger transportation services for flights within the United States and its territories and the District of Columbia from American, Delta, Southwest, United, Continental, or US Airways at any time between July 1, 2011 and December 20, 2017 for the Southwest Settlement and between July 1, 2011 and June 14, 2018 for the American Settlement.

- The lawsuits are continuing against Delta and United (collectively, "Non-Settling Defendants").

- For additional information, important documents, and case updates, visit the website www.DomesticAirClass.com.

| YOUR LEGAL RIGHTS AND OPTIONS IN THE SETTLEMENTS | |
|---|---|
| REGISTER ON THE WEBSITE | Register at www.DomesticAirClass.com to receive additional information about the litigation and the Settlements. *See* Question 21. |
| ASK TO BE EXCLUDED | You will not participate in the Settlement(s) or get monetary benefits from the Settlement(s) to the extent such monetary benefits are distributed in the future. You will keep any rights you currently have to separately sue Southwest and/or American for the conduct that is the subject of this lawsuit. *See* Questions 11-13. |
| OBJECT | If you wish to object to the Settlement(s), or anything else referenced in this Notice, you must file a written objection. *See* Questions 14-15. |
| GO TO A HEARING | You may also request to be heard at the Fairness Hearing. *See* Question 20. |
| DO NOTHING | If you do nothing, you will participate in the Settlements and will not be able to sue Southwest or American for the conduct that is the subject of this lawsuit. |

These rights and options – **and the deadlines to exercise them** – are explained in this Notice.



AA RECORD LOCATOR: ZJZQNO

Get your boarding pass faster! Scan this barcode at any American Airlines Self-Service Machine.

## Philadelphia to Nashville

2 Adults
**Wednesday** March 30, 2016 – **Tuesday** April 5, 2016

Total Paid:

**$400.60 USD**

### AA Record Locator
## ZJZQNO

Your record locator is your reservation confirmation number and will be needed to retrieve or reference your reservation.

### Reservation Name
## PHL/BNA

Status: **Ticketed** Feb 05, 2016

## Flight Information

| Flight | Depart | Arrive |
|---|---|---|
| **American Airlines** **5079** Operated by PSA Airlines As American Eagle | **Philadelphia** (PHL) March 30, 2016 10:05 AM Travel Time : 2 h 21 m Cabin Class : Economy Seat : 16A , 16C | **Nashville** (BNA) March 30, 2016 11:26 AM Booking Code : O Plane Type : CR9 |

| Flight | Depart | Arrive |
|---|---|---|
| **American Airlines** **4585** Operated by Republic Airlines As American Eagle | **Nashville** (BNA) April 5, 2016 01:53 PM Travel Time : 2 h 5 m Cabin Class : Economy Seat : 18F , 18D | **Philadelphia** (PHL) April 5, 2016 04:58 PM Booking Code : O Plane Type : E75 |

**Fare Amount**

Adult
2 × $139.54 USD      $279.08 USD

**Trip Options**

Main Cabin Extra      $44.20 USD

**Taxes & Carrier-Imposed Fees**

Taxes      $77.32 USD

Carrier-Imposed Fees      $0.00 USD

**Flight Subtotal**

**$400.60 USD**

## Receipt

| PASSENGER | TICKET NUMBER | FREQUENT FLYER NUMBER | FARE | Tax/Fee/Charge | TICKET TOTAL |
|---|---|---|---|---|---|
| HO,SUSAN | 0012321163012 | | $139.54 USD | 38.66 | 178.20 |
| GYDA,MICHAEL | 0012321163013 | | $139.54 USD | 38.66 | 178.20 |
| **Payment Type:** | VISA  *********1797 | | | Total | $356.40 USD |

| PASSENGER | SEAT NUMBER(S) | PRICE | Tax/Fee/Charge | SEAT TOTAL |
|---|---|---|---|---|
| HO, SUSAN | 16A | 20.56 USD | 1.54 USD | 22.10 USD |
| GYDA, MICHAEL | 16C | 20.56 USD | 1.54 USD | 22.10 USD |
| | | | Total | 44.20 USD |

## Endorsements/Restrictions
NONREF/SVCCHGPLUSFAREDIF/CXL BY FLT TIME OR NOVALUE

## Terms and conditions:
If you've already begun travel, this receipt may only show portions of your trip not flown.

If your ticket involves travel outside the U.S., Canada, U.S. Virgin Islands or Puerto Rico and has been reissued, your ticket total may not include all taxes. Please contact Reservations for the correct total.

A summary of all the terms and conditions that apply to your travel are available on aa.com/conditionsofcarriage.

# U·S AIRWAYS



GYDA/MICHAEL

US  FLIGHT: 1860  27AUG

SEAT: 21C

RALEIGH DURHAM

PHILADELPHIA

CBEZZK/US

E-TICKET

SEQ 37

## ZONE    3



**GYDA/MICHAEL**

Conf:      CBEZZK/US     ZONE  3
FFD:       JNU49200 UA

RALEIGH DURHAM
**PHILADELPHIA**

| Flight | Departs | Date |
|--------|---------|------|
| 1860 | 555P | 27AUG |

| GATE | BOARDING TIME | SEAT |
|------|---------------|------|
| D11 | 525P | 21C |

EXTENDED **WEATHER FORECAST** for Philadelphia


Tue, Aug 27
**86°F / 69°F**
Precip. 46%


Wed, Aug 28
**85°F / 74°F**
Precip. 46%


Thu, Aug 29
**84°F / 71°F**
Precip. 25%

ATTRACTIONS in Philadelphia

**Walnut Street**                                    215.599.0776
Walnut Street, Philadelphia, PA 19104

**Liberty Bell Center**                             215.925.6101
500 Market St, Philadelphia, PA 19106

**Independence Hall**                               215.925.6101
500 Chestnut St, Philadelphia, PA 19106

**Elfreth's Alley**                                 215.574.0560
124-126 Elfreth's Alley, Philadelphia, PA 19106

U·S AIRWAYS     Up to **40,000** bonus miles with
                your qualifying transactions.

# US AIRWAYS



GYDA/MICHAEL

US  FLIGHT: 3347  26AUG

PHILADELPHIA
RALEIGH DURHAM

SEAT: 19C

CBEZZK/US

E-TICKET    SEQ 31

## ZONE    3



GYDA/MICHAEL

Conf:    CBEZZK/US    ZONE3
FFD:     JNU49200 UA
PHILADELPHIA
RALEIGH DURHAM

Flight    Departs    Date
3347      1129A      26AUG

GATE BOARDING TIME  SEAT
C26   1059A    19C

---

**EXTENDED WEATHER FORECAST** for Durham



| | Mon, Aug 26 | Tue, Aug 27 | Wed, Aug 28 |
|---|---|---|---|
| | **82°F / 57°F** | **88°F / 61°F** | **87°F / 68°F** |
| | Precip. 1% | Precip. 2% | Precip. 16% |

**ATTRACTIONS** in Durham

**North Carolina Museum of History**          919.807.7900
5 East Edenton St, Raleigh, NC 27601

**North Carolina Museum of Art**              919.839.6262
2110 Blue Ridge Road, Raleigh, NC 27607

**Moore Square**                              919.834.5900
200 South Blount St, Raleigh, NC 27601

**Brightleaf Square**                         919.682.9229
905 West Main St, Durham, NC 27701

 **US AIRWAYS**   Up to 40,000 bonus miles with
your qualifying transactions.



**Michael Gyda**
3830 Marshall Rd.
Drexel Hill, PA  19026-2825

Roberta Liebenberg
Fine Kaplan and Black
One South Broad Street, Suite 2300
Philadelphia, PA 19107





The Wilkins Law Firm, PLLC
3300 N. Central Ave.
Ste. 2600
Phoenix, AZ 85012

20000630026 C071

Michael D. Hausfeld
Hausfeld, LLP
1700 K Street NW, Suite 650
Washington, DC 20006



## UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

| | |
|---|---|
| **IN RE DOMESTIC AIRLINE TRAVEL ANTITRUST LITIGATION** | **MDL Docket No. 2656**<br>**Misc. No. 15-1404 (CKK)** |
| **This Document Relates To:**<br>**ALL CASES** | |

## OBJECTION TO SETTLEMENT AGREEMENTS

### I.   Background and Statement of Objection to Settlement Agreements With Southwest and American Airlines

My name is Jason Liebich. My address is c/o The Wilkins Law Firm, PLLC, 3300 N. Central Ave., Ste. 2600, Phoenix, AZ 85012, and my phone number is 602-795-0789. My counsel, Amy M. Wilkins, is applying for admission to the United States District Court for the District of Columbia and will file a Notice of Appearance on my behalf once admitted.

I object to the proposed settlement agreements with Southwest and American Airlines.

### II.   Intention to Appear

I intend to appear at the Fairness Hearing through my counsel, Amy M. Wilkins, who is applying for admission in this Court.

1

### III.    Proof of Membership

I purchased air passenger transportation services between July 1, 2011 and

December 20, 2017, on Southwest Airlines, and I purchased air passenger transportation

services between July 1, 2011 and June 14, 2018 on American Airlines. Specifically, on

October 6, 2014, I purchased a roundtrip ticket on Southwest Airlines for travel between

Phoenix and Seattle, departing October 29, 2014 on flight 4395, and returning November

3, 201,4, on flight 2425. My confirmation number was FYAMLO. On December 21,

2016, I purchased a roundtrip ticket from Phoenix to Portland on American Airlines,

departing December 23, 2016 on flight 307, returning December 29, 2016, on flight 1347.

My confirmation number was QKIHDS.

### IV.    Specific Reasons for Objections

Each Settlement provides for distribution of attorneys' fees and payment of

administrative costs, but leaves the remedy for the Class to be determined at some point

in the future. As such, a class member cannot determine whether the value received in

each Settlement is worth what the class member is giving up in the release.

The settlement with Southwest Airlines (the "Southwest Settlement") provides

that that Southwest shall pay $15,000,000 into escrow to settle the claims.  It further

provides that plaintiffs' counsel's fee shall be paid from the Escrow Account (Southwest

Settlement ¶ 42), and administration costs shall also be paid from the Escrow Account.

(*Id.* ¶ 30.) The Southwest Settlement is clear that Class Members will be releasing their

claims against Southwest in exchange for the relief in the Settlement. (*Id.* ¶¶ 32-36.) The

Southwest Settlement does not, in contrast, explain what Class Members receive in

2

exchange for this release. The Southwest Settlement implies that Class Members will get some monetary benefit from the Settlement Fund at some point in the future, *after* an allocation plan is approved:

> The allocation of the Settlement Fund among the Settlement Class shall be subject to a plan of allocation to be proposed by Plaintiffs' Counsel and approved by the Court. Southwest will take no position with respect to such proposed plan of allocation or such plan as may be approved by the Court. Southwest also will have no involvement in the claims process.

(*Id.* ¶ 40.)

The settlement with American Airlines (the "American Settlement") contains similar, if not identical, terms, with the main difference being that American agreed to pay $45,000,000 into escrow to settle the claims. Otherwise, it provides for payment of administrative and lawyer fees (American Settlement ¶¶ 30, 42). It provides that Class Members will be releasing their claims against American in exchange for the relief in the Settlements. (*Id.* ¶¶ 32-36.) It, like the Southwest Settlement, fails to explain what Class Members receive in exchange for this release, and implies that Class Members will get some monetary benefit from the Settlement Fund at some point in the future, after an allocation plan is approved. (*Id.* ¶ 40.)

In contrast to the vague promises of future relief in the Southwest and American Settlement Agreements, the Class Notice makes plain that Class Members get exactly nothing in exchange for these releases—only funding for Class Counsel to pursue additional claims, and presumably additional attorney's fees:

Southwest has paid $15 million and American has paid $45 million to settle the lawsuit in exchange for releases of claims against them. Additionally, the Settlements will help Class Counsel pursue claims against the Non-Settling Defendants. Southwest and American have agreed to provide certain cooperation to the Plaintiffs in their ongoing litigation against the Non-Settling Defendants. In addition, a portion of the Settlement Funds may be used to pay Class Counsel, to pay expenses they have incurred in the litigation, and to help pay expenses they may incur as they pursue claims against the Non-Settling Defendants.

Class Notice ¶ 7. Out of $60 million dollars, counsel cannot tell the Class even a portion that might be available for Class relief—but have earmarked administrative costs and attorneys' fees that will get paid. This is not fair or reasonable for the Class.

### A. The Settlement Agreements Should Not Be Approved, Because No Relief Is Provided to Class Members in Exchange for Their Relief

The Settlement Agreements should not be approved; the only beneficiaries are Class Counsel, who receive money to fund the litigation against the remaining Defendants. Class Members must release their claims and yet receive nothing other than an empty reassurance that Class Counsel is, for a fee, pursuing justice against other airlines.

The Settlements ask the Class to release their claims in exchange for no consideration. Counsel will no doubt explain that the Class is getting broader relief: that class counsel has obtained Southwest and American's cooperation in providing the secrets of the airline industry, which will in fact lead to a bigger and better settlement (perhaps) with the airlines who have not settled. This relief, however, is speculative and not before the Class. The Class is being asked now to release its claims against Southwest

4

and American, in exchange for a benefit that may never come. *See Acosta v. Trans Union, LLC*, 243 F.R.D. 377, 388 (C.D. Cal. 2007) (criticizing a settlement that released claims of class members while providing no economic benefits to them).

This Settlement asks the Class to release their claims—claims conceded to be valuable—to allow plaintiffs' counsel to pursue other defendants, but this arrangement does not give value to the Class. Instead, it risks the Class's instant recovery to allow class counsel to minimize their outlay and risk for the balance of the case. If Class counsel is allowed to minimize its risk, then its fees for the remainder of the case must also be adjusted—a lesser risk should mean a reduced fee award.

If counsel does not wish to do a partial distribution due to the size of the Class, the better solution would be to set forth the allocation plan now—so that the Class can see what it is agreeing to get in exchange for a release—and suspend distribution. This way, class members know what they will get and the distribution can occur when most cost-effective. In the alternative, the Court should permit a second opt-opt after settlement benefits are established. If this second opt-out cannot be done because fees were distributed early, then fees should not be distributed.

## B. The Settlement Agreements Should Not Be Approved Because It Provides for Cy Pres Relief Rather Than Distribution to Class Members

The Class Notice (but not the Settlement Agreements) provides that there may be no cash benefit to Class members at all:

> At this time, it is unknown how much each eligible Settlement Class Member will receive. Given the number of Settlement Class Members, it may not be economically practical to make a direct cash distribution to Class Members until additional

5

settlements or judgments are achieved. It is possible that after deductions for any attorneys' fees, litigation expenses, settlement administration expenses, and class representative incentive awards approved by the Court, the remaining amount will be distributed to charities, governmental entities, or other beneficiaries approved by the Court. No money will be returned to the Settling Defendants once the Court approves the Settlements. A distribution plan will be prepared later or at the conclusion of the litigation based on other settlements or a judgment.

Class Notice ¶ 8. The Settlements, which conflict with the Notice, are insufficient to convey to the Class the possibility that they will receive exactly noting from the future "plan of allocation" that has not yet been proposed to the Court. As noted above, counsel should set forth a plan of allocation that describes what will happen, such as direct distribution, distribution when cost-effective to do so, and that makes plan that only when it is impossible to get monies to the class would relief be cy pres. Class members should be allowed to assess the likelihood of distribution. Instead, as it stands now, Class Counsel will get fees, but any remainder may be distributed cy pres. This has been expressly criticized by federal courts:

> In recent years, federal district courts have disposed of unclaimed class action settlement funds after distributions to the class by making "*cy pres* distributions." Such distributions "have been controversial in the courts of appeals." *Powell v. Ga.–Pac. Corp.*, 119 F.3d 703, 706 (8th Cir.1997). Indeed, many of our sister circuits have criticized and severely restricted the practice. *See, e.g., Ira Holtzman, C.P.A. v. Turza*, 728 F.3d 682, 689–90 (7th Cir.2013); *In re Baby Prods. Antitrust Litig.*, 708 F.3d 163, 172–73 (3d Cir.2013); *In re Lupron*, 677 F.3d at 29–33; *Nachshin*, 663 F.3d at 1038–40; *Klier v. Elf Atochem N. Am., Inc.*, 658 F.3d 468, 473–82 (5th Cir. 2011); *In re Katrina Canal Breaches Litig.*, 628 F.3d 185, 196 (5th Cir.2010); *Masters v. Wilhelmina Model Agency, Inc.*, 473 F.3d 423, 434–36 (2d

Cir.2007); *Wilson v. Sw. Airlines, Inc.*, 880 F.2d 807, 816 (5th Cir.1989).

*In re BankAmerica Corp. Sec. Litig.*, 775 F.3d 1060, 1063 (8th Cir. 2015). The court continued, "Recently, echoing these views, Chief Justice Roberts noted 'fundamental concerns surrounding the use of such remedies in class action litigation.'" *Id.* (*citing Marek v. Lane*, —— U.S. ——, 134 S.Ct. 8, 9, 187 L.Ed.2d 392 (2013)).

This is not an appropriate class action for a cy pres settlement, because the individual class members may be identified by Defendants' own records. The American Law Institute ("ALI") does not recommend cy pres remedy in this instance:

> A court may approve a settlement that proposes a cy pres remedy.... The court must apply the following criteria in determining whether a cy pres award is appropriate:
>
> (a) If individual class members can be identified through reasonable effort, and the distributions are sufficiently large to make individual distributions economically viable, settlement proceeds should be distributed directly to individual class members.

AMERICAN LAW INSTITUTE, PRINCIPLES OF THE LAW OF AGGREGATE LITIGATION § 3.07 (2010). The ALI acknowledges that cy pres distribution may be appropriate if remaining amounts are so small that distributions are not economically viable, but the parties have made no such showing here:

> (b) If the settlement involves individual distributions to class members and funds remain after distributions (because some class members could not be identified or chose not to participate), the settlement should presumptively provide for further distributions to participating class members unless the amounts involved are too small to make individual distributions economically viable or other specific reasons

exist that would make such further distributions impossible or unfair.

The Court should not approve a Settlement Agreement that proposes a vague "plan of allocation" to be determined in the future that includes a possible cy pres distribution, when here, the class members can be identified, there is $60 million in the escrow fund, and counsel has made no effort to explain why it would not be economically viable to distribute damages to class members directly.

## V.   Conclusion

I object to the Settlements and ask the Court not to approve them.

Dated: January 4, 2019                         By:   /s/ Jason Liebich
                                                     Jason Liebich

## CERTIFICATE OF SERVICE

I hereby certify that on January 4, 2019, I filed the following with the Clerk of the

Court, United Stated District Court for the District of Columbia, via hand-delivery, and

mailed copies to the following:

Clerk of the Court
United States District Court for the District of Columbia
333 Constitution Avenue,
Washington, DC 20001

Michael D. Hausfeld
Hausfeld, LLP
1700 K Street NW, Suite 650
Washington, DC 20006
Counsel for the Class

Roberta Liebenberg
Fine Kaplan and Black
One South Broad Street, Suite 2300
Philadelphia, PA 19107
Counsel for Southwest

Benjamin G. Bradshaw
O'Melveny & Myers LLP
1625 Eye Street, NW
Washington, DC 20006
Counsel for American

/s/ Amy M. Wilkins
Amy M. Wilkins

Shinshon Wexler
1856 Berkeley Mews
Atlanta GA 30329




## FIRST CLASS MAIL

Michael D Hausfeld
Hausfeld, LLP
1700 K Street NW, Ste 650
Washington, DC 20006

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF COLUMBIA

IN RE DOMESTIC AIRLINE TRAVEL
ANTITRUST LITIGATION

NO. 1:15-mc-01404-CKK

MDL No. 2656

## SHIMSHON WEXLER'S OBJECTION TO FINAL APPROVAL OF SETTLEMENT AGREEMENTS WITH SOUTHWEST AIRLINES CO. AND AMERICAN AIRLINES, INC.

1. My name is Shimshon Wexler and I am over the age of 18 years. My address is 1856 Berkeley Mews, Atlanta, Georgia 30329. My phone number is 212-760-2400.
2. I am a member of both the Southwest Airlines and the American Airlines classes. See attached proof. I can provide additional proof at the Court's request.
3. I object to each settlement. I plan to appear at the Fairness Hearing.
4. In paragraph 8 of the Long Form Notice titled "How much money will I receive?" it states:
    "....Given the number of Settlement Class Members, it may not be economically practical to make a direct cash distribution to Class Members until additional settlements or judgments are achieved. It is possible that after deductions for any attorneys' fees, litigation expenses, settlement administration expenses, and class representative incentive awards approved by the Court, the remaining amount will be distributed to charities......"
5. In paragraph 9 of the Long Form Notice titled "When will I receive my payment?" it states: "As noted above, no money is being distributed at this time..."
6. The settlement is not fair, reasonable or adequate because it provides no compensation to the class but only compensation for the attorneys.
7. The settlement provides zero compensation for class members at this point in the litigation. Further, the settlement provides a strong potential of zero compensation for class members in the future gleaned from the papers which argue that this litigation is very risky.
8. Presumably this lawsuit was brought on behalf of class members to obtain compensation for class members. By that measure the lawsuit has not accomplished its goal.
9. The lawyers for the class should not be compensated now while the class does not get compensated now.
10. The lawyers should only be compensated based on the compensation obtained for its clients which at this point is zero.
11. This settlement does not provide any analysis for the feasibility of distributing money to the class.
12. The cooperation agreement obtained by the attorneys making it potentially more likely that liability may be assessed against the remaining defendants should be considered a potential benefit for the class and the attorneys should not be compensated for obtaining a potential benefit.
13. For the above reasons, I object to the settlement and ask that the Court not approve it.

Dated Jan 7, 2019     Signature _____

 Gmail

**Shimshon Wexler <swexleresq@gmail.com>**

# UPDATED flight reservation (H5ROUT) | 04NOV15 | ATL-LGA | Wexler/Shimshon
1 message

Southwest Airlines <SouthwestAirlines@luv.southwest.com>                          Fri, Oct 23, 2015 at 8:29 PM
Reply-To: Southwest Airlines <no-reply@luv.southwest.com>
To: SWEXLERESQ@gmail.com

Thanks for choosing Southwest® for your trip.

## Southwest ✈                                                    👤 Log in | View my itinerary

### Ready for takeoff!

Thanks for choosing Southwest® for your trip. You'll find everything you need to know
about your reservation below. Happy travels!

**Upcoming Trip:** 11/04/15 - New York

**AIR Confirmation:** H5ROUT                          Confirmation Date: 10/23/2015

🚗 **Save up to 35%**

on base rates and earn up
to 2,400 Rapid Rewards®
points. Terms apply.

**Hertz**

Book car >

| Passenger(s) | Rapid Rewards # | Ticket # | Expiration | Est. Points Earned |
|---|---|---|---|---|
| WEXLER/SHIMSHON | | 5262153783425 | Aug 5, 2016 | 195 |

**EarlyBird Check-In**

**Let us take care of check-in for you.**

Get it now

| Date | Flight | Departure/Arrival |
|---|---|---|
| Wed Nov 4 | 3018 | Depart **ATLANTA, GA** (ATL) on Southwest Airlines at **12:20 PM** Arrive in **NEW YORK (LAGUARDIA), NY** (LGA) at **2:35 PM** Travel Time 2 hrs 15 mins Wanna Get Away |

✓ **Check in for your flight(s):** 24 hours before your trip on Southwest.com or
your mobile device to secure your boarding position. You'll be assigned a
boarding position based on your check-in time. The earlier you check in
within 24 hours of your flight, the earlier you get to board.

🧳 **Bags fly free®:** First and second checked bags. Weight and size limits
apply. One small bag and one personal item are permitted as carryon
items, free of charge.

🕐 **30 minutes before departure:** We encourage you to arrive in the gate
area no later than 30 minutes prior to your flight's scheduled departure as
we may begin boarding as early as 30 minutes before your flight.

🕐 **10 minutes before departure:** You must obtain your boarding pass(es)

🏨 Add a hotel

✓ Earn Rapid Rewards points
✓ Discount guarantee
✓ Free cancellation

**Book a hotel >**

12/26/2018

Gmail - UPDATED flight reservation (H5ROUT) | 04NOV15 | ATL-LGA | Wexler/Shimshon

and be in the gate area for boarding at least 10 minutes prior to your flight's scheduled departure time. If not, Southwest may cancel your reserved space and you will not be eligible for denied boarding compensation.

 **If you do not plan to travel on your flight**: In accordance with Southwest's No Show Policy, you must notify Southwest at least 10 minutes prior to your flight's scheduled departure if you do not plan to travel on the flight. If not, Southwest will cancel your reservation and all funds will be forfeited.

Air Cost: 48.98

Fare Rule(s) 5262153783425: NONREF/NONTRANSFERABLE/STANDBY REQ UPGRADE TO Y

Valid only on Southwest Airlines. All travel involving funds from this Confirmation Number must be completed by the expiration date. Unused travel funds may only be applied toward the purchase of future travel for the individual named on the ticket. Any changes to this itinerary may result in a fare increase. Failure to cancel reservations for a Wanna Get Away fare segment at least 10 minutes prior to travel will result in the forfeiture of all remaining unused funds.

Learn about our boarding process ➚

Learn about inflight WiFi & entertainment ➚

## Cost and Payment Summary

✕ AIR - H5ROUT

| | | |
|---|---|---|
| Base Fare | $ | 32.45 |
| | | |
| | | |
| | | |
| | | 3.60 |
| Total Air Cost | $ | 48.98 |

**Payment Information**

**Exchange Detail**





## Useful Tools

## Know Before You Go

## Special Travel Needs

Legal Policies & Helpful Information

2/28/2018                    Gmail - UPDATED flight reservation (H5ROUT) | 04NOV15 | ATL-LGA | Wexler/Shimshon

Press, vilely                 Customer Service Center ces          Contact Us
Queried Blueprintsal Jrom      Fees

Book Air (Evia, Hotel) | Book Car | Book Vacation Packages | See Special Offers | Manage My Account

This is a post-only mailing from Southwest Airlines. Please do not attempt to respond to this message. Your
privacy is important to us. Please read our Privacy Policy.

¹ All travel involving funds from this Confirmation Number must be completed by the expiration date.
² Security Fee is the government-imposed September 11th Security Fee.

See Southwest Airlines Co. Notice of Incorporation
See Southwest Airlines Limit of Liability

Southwest Airlines
P.O. Box 36647-1CR
Dallas, TX 75235

Contact Us

Copyright 2015 Southwest Airlines Co. All Rights Reserved.

 Gmail

**Shimshon Wexler <swexleresq@gmail.com>**

## Your trip confirmation-EZXCVN 24AUG

1 message

**American Airlines@aa.com** <notify@aa.globalnotifications.com>
To: "SWEXLERESQ@GMAIL.COM" <SWEXLERESQ@gmail.com>

Wed, Aug 16, 2017 at 2:18 PM

American Airlines 

Hello Shimshon Wexler!

Issued: Aug 16, 2017

## Record locator: **EZXCVN**

View your trip

## Thursday, August 24, 2017

ATL
**6:00** AM
Atlanta

PHL,
**8:01** AM
Philadelphia

Seats: --
Class: Economy (Q)
Meals:

American Airlines 1731

PHL
**8:40** PM
Philadelphia

ATL
**10:51** PM
Atlanta

Seats: --
Class: Economy (Q)
Meals:

American Airlines 719

Shimshon Wexler

## Earn miles with this trip.

Join AAdvantage »

Ticket # 0012144059525

# Your trip receipt

 Visa XXXXXXXXXXXXX7798

### *Shimshon Wexler*

| | |
|---|---|
| FARE-USD | $ 187.90 |
| TAXES AND CARRIER-IMPOSED FEES | $ 42.49 |
| **TICKET TOTAL** | **$ 230.39** |



Book a hotel »



Book a car »



Buy trip insurance »

  Budget

 Earn miles while you sleep.



Contact us | Privacy policy

Get the American Airlines app

 

12/26/2018                                    Gmail - Your trip confirmation-EZXCVN 24AUG

### Baggage Information

Baggage charges for your itinerary will be governed by American Airlines BAG ALLOWANCE -ATLPHL-
No free checked bags/ American Airlines BAG ALLOWANCE -PHLATL-No free checked bags/ American
Airlines 1STCHECKED BAG FEE-ATLPHL-USD25.00/ American Airlines /UP TO 50 LB/23 KG AND UP
TO 62 LINEAR IN/158 LINEAR CM 1STCHECKED BAG FEE-PHLATL-USD25.00/ American Airlines
/UP TO 50 LB/23 KG AND UP TO 62 LINEAR IN/158 LINEAR CM 2NDCHECKED BAG FEE-ATLPHL-
USD35.00/ American Airlines /UP TO 50 LB/23 KG AND UP TO 62 LINEAR IN/158 LINEAR CM
2NDCHECKED BAG FEE-PHLATL-USD35.00/ American Airlines /UP TO 50 LB/23 KG AND UP TO 62
LINEAR IN/158 LINEAR CM ADDITIONAL ALLOWANCES AND/OR DISCOUNTS MAY APPLY

You have purchased a NON-REFUNDABLE fare. The itinerary must be canceled before the ticketed
departure time of the first unused coupon or the ticket has no value. If the fare allows changes, a fee
may be assessed for changes and restrictions may apply.

You have up to 24 hours from the time of ticket purchase to receive a full refund if you booked at least 2
days before departure. You must log in on aa.com or Contact Reservations to cancel. Once cancelled,
your refund will be processed automatically.Refund Policy>>.

**Some American Airlines check-in counters do not accept cash as a form of payment. For more
information, visit our** Airport Information **page.**



Some everyday products, like e-cigarettes and aerosol spray starch, can be dangerous when
transported on the aircraft in carry-on and/or checked baggage. Changes in temperature or pressure
can cause some items to leak, generate toxic fumes or start a fire. Carriage of prohibited items may
result in fines or in certain cases imprisonment. Please ensure there are no forbidden hazardous
materials in your baggage like:

Some Lithium batteries (e.g. spares in checked baggage, batteries over a certain size), Explosives /
Fireworks, Strike anywhere matches/ Lighter fluid, Compressed gases / Aerosols Oxygen bottles/
Liquid oxygen, Flammable liquids, Pesticides/ Poison, Corrosive material.

There are special exceptions for small quantities (up to 70 ounces total) of medicinal and toilet articles
carried in your luggage, spare lithium batteries for most consumer electronic devices in carry-on
baggage, and certain smoking materials carried on your person.

Certain items are required to be carried with you onboard the aircraft. For example, spare lithium
batteries for portable electronic devices, cigarette lighters and e-cigarettes must be removed from
checked or gate-checked baggage and carried onboard the aircraft. However, e-cigarettes may not be
used on-board the aircraft.

Traveling with medical oxygen, liquid oxygen, mobility aids and other assistive devices may require
airline pre-approval or be restricted from carriage entirely. Passengers requiring these items should
contact the airline operator for information on use of such devices.

To change your reservation, please call 1-800-433-7300 and refer to your record locator.

### NOTICE OF INCORPORATED TERMS OF CONTRACT

Air Transportation, whether it is domestic or international (including domestic portions of international
journeys), is subject to the individual terms of the transporting air carriers, which are herein incorporated
by reference and made part of the contract of carriage. Other carriers on which you may be ticketed
may have different conditions of carriage. International air transportation, including the carrier's liability,
may also be governed by applicable tariffs on file with the U.S. and other governments and by the
Warsaw Convention, as amended, or by the Montreal Convention. Incorporated terms may include, but
are not restricted to: 1. Rules and limits on liability for personal injury or death, 2. Rules and limits on
liability for baggage, including fragile or perishable goods. and availability of excess valuation charges,
3. Claim restrictions, including time periods in which passengers must file a claim or bring an action
against the air carrier, 4. Rights on the air carrier to change terms of the contract, 5. Rules on
reconfirmation of reservations, check-in times and refusal to carry, 6. Rights of the air carrier and limits
on liability for delay or failure to perform service, including schedule changes, substitution of alternate air
carriers or aircraft and rerouting.

You can obtain additional information on items 1 through 6 above at any U.S. location where the
transporting air carrier's tickets are sold. You have the right to inspect the full text of each transporting

air carrier's terms at its airport and city ticket offices. You also have the right, upon request, to receive (free of charge) the full text of the applicable terms incorporated by reference from each of the transporting air carriers. Information on ordering the full text of each air carrier's terms is available at any U.S. location where the air carrier's tickets are sold or you can click on the Conditions of Carriage button below.

Air transportation on American Airlines and the American Eagle carriers® is subject to American's conditions of carriage..

NOTICE: This email and any information, files or attachments are for the exclusive and confidential use of the intended recipient(s). This message contains confidential and proprietary information of American Airlines (such as customer and business data) that may not be read, searched, distributed or otherwise used by anyone other than the intended recipient. If you are not an intended recipient, please do not read, distribute, or take action in reliance upon this message. If you suspect you have received this email in error, please notify the sender and promptly delete this message and its attachments from your computer.

NRID: 1566641362541613173559000



062S0009619556

$1.210
US POSTAGE
FIRST-CLASS
FROM 43215
JAN 03 2019
stamps.com

YAZDANI LAW, LLC
175 S THIRD STREET
SUITE 1010
COLUMBUS OH 43215-5194

Michael D. Hausfeld
Hausfeld, LLP
1700 K Street NW, Suite 650
Washington DC 20006-3826

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| IN RE DOMESTIC AIRLINE TRAVEL ANTITRUST LITIGATION | NO. 1:15-mc-01404-CKK |
| | MDL No. 2656 |
| This Document Relates To: | |
| ALL CASES | |

## CLASS MEMBER OBJECTION TO THE SETTLEMENTS AND THE FEE AND EXPENSE REQUEST

This objection is submitted pursuant to Federal Rules of Civil Procedure 23(e)(5), setting forth that:

1.    I am a member of the class.

2.    My address is 175 S 3rd St., STE 1010, Columbus, Ohio 43215.

3.    My telephone number is 614-961-4414.

4.    I submit this objection on my own behalf, filed in *In re Domestic Airline Travel Antitrust Litigation, MDL No. 2656.*

5.    I submit this objection to the settlement agreements between Plaintiffs and Defendants Southwest Airlines Co. ("Southwest") and American Airlines, Inc. ("American"), and in objection to attorneys' fee and expense request submitted by Plaintiffs' attorneys or class counsel.

6.    I do not plan to personally appear at the fairness hearing.

7.    I have routinely traveled on American and Southwest flights during the period of time that is the subject of this action. As an example, between December 25, 2016 to December 25, 2018, I flew on or purchased 19 flight tickets in my own name from American and in 2017 I purchased 6 tickets in my own name from Southwest. Evidence of membership in the class is

1

attached as Exhibit A.

8.      I have also purchased and paid for flights from American and Southwest for my family members.

9.      I have personally witnessed unfair price fixing practices by American and Southwest. These included appearances of price fixing, where similar segments were similarly priced by American and Southwest, and where changes in price, in particular an increase, by one airline would be immediately followed by another.

10.     As a result of these practices, I was forced to pay a higher price for flights which could otherwise cost less.

11.     I have directly suffered a financial loss as a result of the practices which are the subject of this action by Defendants American and Southwest.

12.     The proposed settlement is unfair, unreasonable, inadequate, speculative, and does not prevent future harm.

## A.  GROUNDS FOR OBJECTION

### I.     The settlement is unfair and unreasonable.

13.     The settlement is unfair because it stands to provide no benefit to class members while it provides a significant windfall for class counsel.

14.     While the settlement amount between the Settling Class and Defendants American and Southwest is a total of $60 million (US Dollars), pursuant to the information contained in the Settlement Notice, the class members stand to receive nothing. Therefore, although class counsel can receive up to $18 million in fees plus over $1.5 million in expenses, the settlement can yield nothing for the settling class.

15.     The settlement also does not appear to contain any injunctive relief preventing Southwest and American from continuing to engage in similar conduct now or in the future. As a

2

result, the Settling Class stand to be subject to harm again in the future, as Southwest and American may continue their unfair and unlawful practices at the expense of the class members.

16.     It therefore appears that the settlement is only an attempt to collect attorneys' fees, rather than to benefit the members of the class or the Settling Class. While on the memorandum of law in support of Plaintiffs' motion for final approval of settlement agreement, and on the motion for award of attorneys' fees and reimbursement of expenses, the class counsel goes to length to list the number of documents or size of data transmitted or turned over during discovery, class counsels fails to describe, what, if anything, would be disbursed to class members, or if any methods are designed or negotiated that would benefit the members. This is remarkable, as the purpose of the class action should be to provide relief or benefit to the aggrieved parties, not their counsel.

17.     As a class member, the undersigned believes that the settlement is fundamentally unfair to him and unreasonable, as he stands to receive no benefit, while he has suffered a loss as a result of the defendant's actions.

## II.     The settlement is inadequate and any benefits from the settlement is speculative.

18.     The settlement is inadequate and any benefits from it would be speculative, because it is unclear whether any money would be disbursed to class members, or whether they would receive anything at all. In fact, the notice of settlement suggests that the settlement amount will not be disbursed to class members.

19.     The settlement also does not prevent future harm to class members because it does not include an injunctive relief, or any method to deter Southwest and American from participating in similar conducts in the future. The proposed settlement does not appear to even contain any promise by the named defendants to refrain from participating in conducts that may harm the class members or the Settling Class in the future.

3

20.     Because the Settling Class may not receive any benefits from the settlement, and because class members can be harmed again by Southwest and American, with little to no remedy, and because the named defendants can engage in similar practices again in future with no liability, the settlement is inadequate.

21.     Although class attorneys argue that the settlement will allow Plaintiffs to pursue claims against other defendants, there is no guarantee about the outcome of other claims, and any future benefit would be speculative.

22.     It is difficult to support that a $60 million settlement at this juncture is now necessary to continue the claim and support litigation against the additional defendants, while the counsel has set forth that only $1.57 million was expended during the 3-year litigation.

23.     Although the total amount of settlement may be a substantial sum, $60 million is insignificant compared to hundreds of millions of dollars that defendants American and Southwest potentially earned as a result of their unlawful and unfair practices.

24.     Although the settlement amount may appear to be substantial, it is inadequate if it is not large enough to allow any disbursement to class members. The notice of settlement states that given the number of Settlement Class Members, it may not be "economically practical" to make a direct cash distribution to Class Members, supporting that the settlement is inadequate.

25.     It is easy to provide a direct benefit to class members as the expense of an online disbursement system that can be set up and paid for by Southwest and American as part of the settlement can be insignificant with today's available technology. The expense of an online airfare coupon system set up as part of the settlement by Southwest and American can also be insignificant and such benefit can be practical to achieve. While the class counsel is aware of the cost savings of technology as it made use of technology to reduce litigation expenses when Settlement Notice was emailed to class members, his claim that any direct disbursement may not

4

be economically practical supports the inadequacy of the settlement.

## III.   The settlement notice is inadequate as confusing.

26.    The Settlement Notice emailed to class members contained a link to the class action website. The detailed notice found on the website indicates in one section that "[i]n order to receive a payment, you will need to file a valid claim form before the claims period ends." This suggests that there will be a payment to class members. The notice also states in all capital letters that "[the claims period has not yet begun.]" Suggesting that it will begin in the future and class members will be able to take advantage of it and receive some form of payment or benefit. The notice states in a different section that "[a]t this time, it is unknown how much each eligible Settlement Class Member will receive," again, suggesting that there will be some form of payment in the future. However, while the noted statements suggest that there will ultimately be a "payment" to settling class, the Settlement Notice goes on to say that after payment of fees and expenses, it is possible that any "remaining amount will be distributed to charities, governmental entities, or other beneficiaries approved by the Court," suggesting that class members will likely receive nothing. This is confusing to average class member, and as a result, the Settlement Notice is inadequate.

## B.  COCLUSION

27.    Class counsel involved in this matter should be dully compensated for its time and efforts through a reasonable accounting of fees after a reasonable settlement is achieved or a favorable judgement is entered. If the proposed settlement provides no benefit to the class, regardless of its size, the efforts of counsel in settling the matter is wasted, and the settlement is fundamentally unfair and inadequate and should be avoided. Class counsel should reasonably assure that class members will receive a benefit from the settlement before entering into a final settlement.

28.     Accordingly, the undersign objects to the proposed settlement as described, and objects to the request for attorneys' fees and reimbursement of expenses.

Respectfully Submitted: January 3, 2019

Payam Yazdani

Thanks for choosing Southwest® for your trip.

# Southwest's

Check In Online    Check Flight Status    Change Flight    Special Offers    Hotel Offers    Car Offers

## Ready for takeoff!



Thanks for choosing Southwest® for your trip. You'll find everything you need to know about your reservation below. Happy travels!

 Air itinerary

## AIR Confirmation: K4PRER

Confirmation Date: 06/20/2017

| Passenger(s) | Rapid Rewards # | Ticket # | Expiration | Est. Points Earned |
|---|---|---|---|---|
| YAZDANI/PAYAM | | 5268535287674 | Jun 21, 2018 | 1606 |

| Date | Flight | Departure/Arrival |
|---|---|---|
| Fri Aug 4 | 988 | Depart **COLUMBUS, OH** (CMH) on Southwest Airlines at **10:00 AM**<br>Arrive in **DALLAS (LOVE FIELD), TX** (DAL) at **11:25 AM**<br>Travel Time 2 hrs 25 mins<br>Wanna Get Away |

| Date | Flight | Departure/Arrival |
|---|---|---|
| Mon Aug 7 | 1922 | Depart **DALLAS (LOVE FIELD), TX** (DAL) on Southwest Airlines at **07:30 PM**<br>Arrive in **COLUMBUS, OH** (CMH) at **10:50 PM**<br>Travel Time 2 hrs 20 mins<br>Wanna Get Away |

✓ **Check in for your flight(s):** 24 hours before your trip on Southwest.com or your mobile device to secure your boarding position. You'll be assigned a boarding position based on your check-in time. The earlier you check in within 24 hours of your flight, the earlier you get to board.



Exhibit A

 **American Airlines**

Home    Hello, PAYAM ▼     🇺🇸 English ▼    | Search aa.com    🔍

Plan Travel    Travel Information   AAdvantage   

# Your activity

« Back to your account

## PAYAM YAZDANI

Award miles: 36,586   •   Million Miler℠ balance: 41,674

*Member since Jun 5, 2014*

Your miles



| What do you want to do? ▼ |
| --- |

### Activity date range

( • Required)

From •         To •

| Oct ▼ | 14 ▼ | 201 ▼ | Oct ▼ | 17 ▼ | 201 ▼ |

**Search**

AAdvantage program updates »

| | Description | Elite Qualifying | | Award miles | | | |
| --- | --- | --- | --- | --- | --- | --- | --- |
| | | Miles (EQMs) | Segments (EQSs) | Dollars (EQDs) | Base miles | Bonus miles | Total |
| Oct 13 2017 | CMH - DFW Ticket # 0012151343059 ⊙ Flight details | 1,852 | 2 | 411 | 2,055 | -- | 2,055 |

Transactions may take up to 2 weeks to post.             Showing 1 of 1

| Help | About American | Extras |
| --- | --- | --- |

## CERTIFICATE OF SERVICE

I hereby certify that I served a copy of the foregoing objection and supporting exhibit via first class mail through USPS on January 3, 2019 to:

Michael D. Hausfeld
Hausfeld, LLP
1700 K Street NW, Suite 650
Washington, DC 20006

Roberta Liebenberg
Fine Kaplan and Black
One South Broad Street, Suite 2300
Philadelphia, PA 19107

Benjamin G. Bradshaw
O'Melveny & Myers LLP
1625 Eye Street, NW
Washington, DC 20006

Respectfully Submitted,

Payam Yazdani