# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

*Let this be filed — Kollar-Kotelly*
*Judge CKK Jan. 11, 2019*

| |
|---|
| In re DOMESTIC AIRLINE TRAVEL ANTITRUST LITIGATION |

MDL No. 2656
Case No. 1:15-mc-01404-CKK

[ORAL ARGUMENT REQUESTED]

| |
|---|
| This document relates to: |
| ALL CASES |

---

## NOTICE OF CORRECTED FILING

---

The Declaration of M. Frank Bednarz (Dkt. 307-3) in support of the Objection of Theodore H. Frank and M. Frank Bednarz contained an inadvertent typographical error. An attached Corrected Declaration corrects the error and is not substantively different.

Dated: January 4, 2019

Respectfully submitted,

/s/ Theodore H. Frank
Theodore H. Frank (DC Bar No. 450318)
CENTER FOR CLASS ACTION FAIRNESS
1629 K Street, NW, Suite 300
Washington, DC 20006
Telephone: (703) 203-3848
Email: tedfrank@gmail.com

*Attorneys for Objectors*
Theodore H. Frank and M. Frank Bednarz



RECEIVED
Mail Room

JAN - 8 2019

Angela D. Caesar, Clerk of Court
U.S. District Court, District of Columbia

---

Notice of Corrected Filing
No. 1:15-mc-01404-CKK, MDL No. 2656          1

## Certificate of Service

I certify that on January 4, 2019, I served a copy of the above on all counsel of record registered for electronic filing by filing a copy via the CM/ECF system.

In addition, in accordance with the Class Notice, I caused a copy of the foregoing to be sent by first-class mail to the following persons at the following addresses:

| | |
|---|---|
| **Clerk of the Court**<br>United States District Court for the District of Columbia<br>333 Constitution Avenue<br>Washington, DC 20001 | **Michael D. Hausfeld**<br>Hausfeld, LLP<br>1700 K Street NW, Suite 650<br>Washington, DC 20006 |
| **Roberta Liebenberg**<br>Fine Kaplan and Black<br>One South Broad Street, Suite 2300<br>Philadelphia, PA 19107 | **Benjamin G. Bradshaw**<br>O'Melveny & Myers LLP<br>1625 Eye Street, NW<br>Washington, DC 20006 |

Dated: January 4, 2019

_/s/ Theodore H. Frank_
Theodore H. Frank

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

In re DOMESTIC AIRLINE TRAVEL
ANTITRUST LITIGATION

This document relates to:

ALL CASES

MDL No. 2656
Case No. 1:15-mc-01404-CKK

[ORAL ARGUMENT REQUESTED]

## CORRECTED DECLARATION OF M. FRANK BEDNARZ



RECEIVED
Mail Room

JAN - 8 2019

Angela D. Caesar, Clerk of Court
U.S. District Court, District of Columbia

I, M. Frank Bednarz, declare as follows:

1.      I have personal knowledge of the facts set forth herein and, if called as a witness, could and would testify competently thereto.

1.      My address is 1145 E. Hyde Park Blvd. Apt 3A, Chicago, IL 60615. My telephone number is 202-448-8742. My email address frank.bednarz@gmail.org. I am a United States citizen and resident, currently domiciled in Chicago, Illinois.

2.      I am an attorney with the Center for Class Action Fairness ("CCAF"), a 501(c)(3) non-profit public-interest law firm based out of Washington D.C., founded in 2009. In 2015, CCAF merged into the non-profit Competitive Enterprise Institute ("CEI") in Washington, D.C and became a division within their law and litigation unit. Shortly, CCAF will be moved to the Hamilton Lincoln Law Institute, and my employment will move with it. I am a member of the state bars of Illinois and Massachusetts.

2.      I am represented in this objection by several other CCAF attorneys, including Theodore H. Frank. I object to both the Southwest and American Settlements and the accompanying Rule 23(h) request in *In re Domestic Airline Travel Antitrust Litigation*, MDL No. 2656, on behalf of the entire class, for the reasons stated in the Objection of Theodore H. Frank and M. Frank Bednarz. Dkt. 307. I expect that Theodore H. Frank will appear at the Fairness Hearing and object on my behalf.

### My class membership

3.      Between July 1, 2011, and December 20, 2017, I purchased thousands of dollars of tickets from defendant Southwest Airlines for personal use. I estimate that I have flown over 100 flights with Southwest over this time period as it is by far my favorite carrier. In fact, I find myself saddened by the passing of Southwest founder and long-time Chairman Herb Kelleher, and I wish condolences to anyone involved in this litigation that might have known him.

4.      Among the numerous flights taken over the class period, on February 11, 2017, I paid $158.94 (with unused travel funds) for a ticket from Chicago (Midway) to Salt Lake City, confirmation number 5FN9K2, to attend to the funeral arrangements for my late brother Phillip. A true and correct copy of my receipt is attached as Exhibit 1.

5.      Although Southwest has possessed one of my email addresses for many years, and even though Southwest regularly sends me both promotional emails and reservation confirmations to this address (as shown in Exhibit 1), I received no email notice of this settlement. It does not appear the settlement administrator sent notice to the address Southwest should have on file for me, which is associated with my Southwest Rapid Rewards account. I would not have known about this settlement if I didn't work for CCAF.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on January 4, 2019, in Chicago, IL.

M. Frank Bednarz

# Bednarz Decl.

# EXHIBIT 1

 **Gmail**

Frank Bednarz <frank.bednarz@gmail.com>

---

## Flight reservation (5FN9K2) | 14FEB17 | MDW-SLC | Bednarz/Michael Frank
1 message

**Southwest Airlines** <SouthwestAirlines@luv.southwest.com>
Reply-To: Southwest Airlines <reply@wnco.com>
To: bednarz@uchicago.edu

Sat, Feb 11, 2017 at 10:57 PM

Thanks for choosing Southwest® for your trip.

**Southwest** 🔹

👤 Log in | View my itinerary

| Check In Online | Check Flight Status | Change Flight | Special Offers | Hotel Offers | Car Offers |

### Ready for takeoff!

 Thanks for choosing Southwest® for your trip. You'll find everything you need to know about your reservation below. Happy travels!

**Upcoming Trip:** Brothers Birthday

 Air itinerary

### AIR Confirmation: 5FN9K2

Confirmation Date: 02/11/2017


**Save up to 35%** on base rates and earn up to 2,400 Rapid Rewards® points. Terms apply.
**Hertz**
Book car >

| Passenger(s) | Rapid Rewards # | Ticket # | Expiration | Est. Points Earned |
|---|---|---|---|---|
| BEDNARZ/MICHAEL FRANK | | 5262487067731 | Aug 15, 2017 | 808 |

Rapid Rewards points earned are only estimates. Visit your (MySouthwest, Southwest.com or Rapid Rewards) account for the most accurate totals - including A-List & A-List Preferred bonus points.

| Date | Flight | Departure/Arrival |
|---|---|---|
| Tue Feb 14 | 1410 | Depart **CHICAGO (MIDWAY), IL** (MDW) on Southwest Airlines at **8:05 PM**<br>Arrive in **SALT LAKE CITY, UT** (SLC) at **10:40 PM**<br>Travel Time 3 hrs 35 mins<br>Wanna Get Away |


**EarlyBird Check-In®**
Let us take care of check-in for you.
**Get it now**

✅ **Check in for your flight(s):** 24 hours before your trip on Southwest.com or your mobile device to secure your boarding position. You'll be assigned a boarding position based on your check-in time. The earlier you check in within 24 hours of your flight, the earlier you get to board.

 **Bags fly free®:** First and second checked bags. Weight and size limits apply. One small bag and one personal item are permitted as carryon items, free of charge.

 **30 minutes before departure:** We encourage you to arrive in the gate area no later than 30 minutes prior to your flight's scheduled departure as

Earn up to 10,000 Rapid Rewards™ points per night.
Select your room >

we may begin boarding as early as 30 minutes before your flight.

**10 minutes before departure:** You must obtain your boarding pass(es) and be in the gate area for boarding at least 10 minutes prior to your flight's scheduled departure time. If not, Southwest may cancel your reserved space and you will not be eligible for denied boarding compensation.

**If you do not plan to travel on your flight:** In accordance with Southwest's No Show Policy, you must notify Southwest at least 10 minutes prior to your flight's scheduled departure if you do not plan to travel on the flight. If not, Southwest will cancel your reservation and all funds will be forfeited.

Air Cost: 158.94

Fare Rule(s): 5262487067731: NONREF/NONTRANSFERABLE/STANDBY REQ UPGRADE TO Y.
Valid only on Southwest Airlines. All travel involving funds from this Confirmation Number must be completed by the expiration date. Unused travel funds may only be applied toward the purchase of future travel for the individual named on the ticket. Any changes to this itinerary may result in a fare increase. Failure to cancel reservations for a Wanna Get Away fare segment at least 10 minutes prior to travel will result in the forfeiture of all remaining unused funds.

CHI WN SLC134.64OLN0WNR 134.64 END ZPMDW XFMDW4.5 AY5.60$MDW5.60

 Learn about our boarding process

 Learn about inflight WiFi & entertainment

## Cost and Payment Summary

### AIR - 5FN9K2

| | | Payment Information |
|---|---|---|
| Base Fare | $ 134.64 | |
| Excise Taxes | $ 10.10 | Tkls funds applied from Conf# BB486H |
| Segment Fee | $ 4.10 | ($0.00 remaining) $87.98 |
| Passenger Facility Charge | $ 4.50 | |
| September 11th Security Fee | $ 5.60 | Tkls funds applied from Conf# BC7F8S |
| **Total Air Cost** | **$ 158.94** | ($0.00 remaining) $38.98 |
| | | Tkls funds applied from Conf# B76MV7 |
| | | ($17.00 remaining) $31.98 |

Add a rental car

✓ Earn Rapid Rewards' points
✓ Guaranteed low rates
✓ Free cancellation

Book a car >

**Travel more for less.**

Exclusive deals for your favorite destinations.

Sign up and save >

**Southwest**
**Rapid Rewards**

✓ Unlimited reward seats
✓ No blackout dates
✓ Redeem for International flights and more

Enroll now >

## Useful Tools

Check In Online
Early Bird Check-In
View/Share Itinerary
Change Air Reservation
Cancel Air Reservation
Check Flight Status
Flight Status Notification
Book a Car
Book a Hotel

## Know Before You Go

In the Airport
Baggage Policies
Suggested Airport Arrival Times
Security Procedures
Customers of Size
In the Air
Purchasing and Refunds

## Special Travel Needs

Traveling with Children
Traveling with Pets
Unaccompanied Minors
Baby on Board
Customers with Disabilities

## Legal Policies & Helpful Information

Privacy Policy     Customer Service Commitment     Contact Us

Notice of Incorporated Terms     FAQs

Book Air | Book Hotel | Book Car | Book Vacation Packages | See Special Offers | Manage My Account

This is a post-only mailing from Southwest Airlines. Please do not attempt to respond to this message. Your privacy is important to us. Please read our Privacy Policy.

[1] All travel involving funds from this Confirmation Number must be completed by the expiration date.

[2] Security Fee is the government-imposed September 11th Security Fee.

See Southwest Airlines Co. Notice of Incorporation
See Southwest Airlines Limit of Liability

Southwest Airlines
P.O. Box 36647-1CR
Dallas, TX 75235

Contact Us

Copyright 2017 Southwest Airlines Co. All Rights Reserved.

UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

*Let this be filed
Judge C Kollar-Kotelly
Jan. 11, 2019*

| | |
|---|---|
| IN RE DOMESTIC AIRLINE TRAVEL ANTITRUST LITIGATION | MDL Docket No. 2656 Misc. No. 15-1404 (CKK) |

This Document Relates To:

ALL CASES

## OBJECTION TO SETTLEMENT AGREEMENTS

### I.    Background and Statement of Objection to Settlement Agreements With Southwest and American Airlines

My name is Jason Liebich. My address is c/o The Wilkins Law Firm, PLLC, 3300

N. Central Ave., Ste. 2600, Phoenix, AZ 85012, and my phone number is 602-795-0789.

My counsel, Amy M. Wilkins, is applying for admission to the United States District

Court for the District of Columbia and will file a Notice of Appearance on my behalf

once admitted.

I object to the proposed settlement agreements with Southwest and American

Airlines.

### II.    Intention to Appear

I intend to appear at the Fairness Hearing through my counsel, Amy M. Wilkins,

who is applying for admission in this Court.

**RECEIVED**

**JAN - 4 2019**

Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

1

### III.   Proof of Membership

I purchased air passenger transportation services between July 1, 2011 and December 20, 2017, on Southwest Airlines, and I purchased air passenger transportation services between July 1, 2011 and June 14, 2018 on American Airlines. Specifically, on October 6, 2014, I purchased a roundtrip ticket on Southwest Airlines for travel between Phoenix and Seattle, departing October 29, 2014 on flight 4395, and returning November 3, 201,4, on flight 2425. My confirmation number was FYAMLO. On December 21, 2016, I purchased a roundtrip ticket from Phoenix to Portland on American Airlines, departing December 23, 2016 on flight 307, returning December 29, 2016, on flight 1347. My confirmation number was QKIHDS.

### IV.   Specific Reasons for Objections

Each Settlement provides for distribution of attorneys' fees and payment of administrative costs, but leaves the remedy for the Class to be determined at some point in the future. As such, a class member cannot determine whether the value received in each Settlement is worth what the class member is giving up in the release.

The settlement with Southwest Airlines (the "Southwest Settlement") provides that that Southwest shall pay $15,000,000 into escrow to settle the claims. It further provides that plaintiffs' counsel's fee shall be paid from the Escrow Account (Southwest Settlement ¶ 42), and administration costs shall also be paid from the Escrow Account. (*Id.* ¶ 30.) The Southwest Settlement is clear that Class Members will be releasing their claims against Southwest in exchange for the relief in the Settlement. (*Id.* ¶¶ 32-36.) The Southwest Settlement does not, in contrast, explain what Class Members receive in

2

exchange for this release. The Southwest Settlement implies that Class Members will get some monetary benefit from the Settlement Fund at some point in the future, *after* an allocation plan is approved:

> The allocation of the Settlement Fund among the Settlement Class shall be subject to a plan of allocation to be proposed by Plaintiffs' Counsel and approved by the Court. Southwest will take no position with respect to such proposed plan of allocation or such plan as may be approved by the Court. Southwest also will have no involvement in the claims process.

(*Id.* ¶ 40.)

The settlement with American Airlines (the "American Settlement") contains similar, if not identical, terms, with the main difference being that American agreed to pay $45,000,000 into escrow to settle the claims. Otherwise, it provides for payment of administrative and lawyer fees (American Settlement ¶¶ 30, 42). It provides that Class Members will be releasing their claims against American in exchange for the relief in the Settlements. (*Id.* ¶¶ 32-36.) It, like the Southwest Settlement, fails to explain what Class Members receive in exchange for this release, and implies that Class Members will get some monetary benefit from the Settlement Fund at some point in the future, after an allocation plan is approved. (*Id.* ¶ 40.)

In contrast to the vague promises of future relief in the Southwest and American Settlement Agreements, the Class Notice makes plain that Class Members get exactly nothing in exchange for these releases—only funding for Class Counsel to pursue additional claims, and presumably additional attorney's fees:

3

> Southwest has paid $15 million and American has paid $45
> million to settle the lawsuit in exchange for releases of claims
> against them. Additionally, the Settlements will help Class
> Counsel pursue claims against the Non-Settling Defendants.
> Southwest and American have agreed to provide certain
> cooperation to the Plaintiffs in their ongoing litigation against
> the Non-Settling Defendants. In addition, a portion of the
> Settlement Funds may be used to pay Class Counsel, to pay
> expenses they have incurred in the litigation, and to help pay
> expenses they may incur as they pursue claims against the
> Non-Settling Defendants.

Class Notice ¶ 7. Out of $60 million dollars, counsel cannot tell the Class even a portion

that might be available for Class relief—but have earmarked administrative costs and

attorneys' fees that will get paid. This is not fair or reasonable for the Class.

## A. The Settlement Agreements Should Not Be Approved, Because No Relief Is Provided to Class Members in Exchange for Their Relief

The Settlement Agreements should not be approved; the only beneficiaries are

Class Counsel, who receive money to fund the litigation against the remaining

Defendants. Class Members must release their claims and yet receive nothing other than

an empty reassurance that Class Counsel is, for a fee, pursuing justice against other

airlines.

The Settlements ask the Class to release their claims in exchange for no

consideration. Counsel will no doubt explain that the Class is getting broader relief: that

class counsel has obtained Southwest and American's cooperation in providing the

secrets of the airline industry, which will in fact lead to a bigger and better settlement

(perhaps) with the airlines who have not settled. This relief, however, is speculative and

not before the Class. The Class is being asked now to release its claims against Southwest

4

and American, in exchange for a benefit that may never come. *See Acosta v. Trans Union, LLC*, 243 F.R.D. 377, 388 (C.D. Cal. 2007) (criticizing a settlement that released claims of class members while providing no economic benefits to them).

This Settlement asks the Class to release their claims—claims conceded to be valuable—to allow plaintiffs' counsel to pursue other defendants, but this arrangement does not give value to the Class. Instead, it risks the Class's instant recovery to allow class counsel to minimize their outlay and risk for the balance of the case. If Class counsel is allowed to minimize its risk, then its fees for the remainder of the case must also be adjusted—a lesser risk should mean a reduced fee award.

If counsel does not wish to do a partial distribution due to the size of the Class, the better solution would be to set forth the allocation plan now—so that the Class can see what it is agreeing to get in exchange for a release—and suspend distribution. This way, class members know what they will get and the distribution can occur when most cost-effective. In the alternative, the Court should permit a second opt-opt after settlement benefits are established. If this second opt-out cannot be done because fees were distributed early, then fees should not be distributed.

**B. The Settlement Agreements Should Not Be Approved Because It Provides for Cy Pres Relief Rather Than Distribution to Class Members**

The Class Notice (but not the Settlement Agreements) provides that there may be no cash benefit to Class members at all:

> At this time, it is unknown how much each eligible Settlement Class Member will receive. Given the number of Settlement Class Members, it may not be economically practical to make a direct cash distribution to Class Members until additional

5

settlements or judgments are achieved. It is possible that after
deductions for any attorneys' fees, litigation expenses, settlement
administration expenses, and class representative incentive
awards approved by the Court, the remaining amount will be
distributed to charities, governmental entities, or other
beneficiaries approved by the Court. No money will be returned
to the Settling Defendants once the Court approves the
Settlements. A distribution plan will be prepared later or at the
conclusion of the litigation based on other settlements or a
judgment.

Class Notice ¶ 8. The Settlements, which conflict with the Notice, are insufficient to

convey to the Class the possibility that they will receive exactly noting from the future

"plan of allocation" that has not yet been proposed to the Court. As noted above, counsel

should set forth a plan of allocation that describes what will happen, such as direct

distribution, distribution when cost-effective to do so, and that makes plan that only when

it is impossible to get monies to the class would relief be cy pres. Class members should

be allowed to assess the likelihood of distribution. Instead, as it stands now, Class

Counsel will get fees, but any remainder may be distributed cy pres. This has been

expressly criticized by federal courts:

> In recent years, federal district courts have disposed of
> unclaimed class action settlement funds after distributions to
> the class by making "*cy pres* distributions." Such distributions
> "have been controversial in the courts of appeals." *Powell v.
> Ga.–Pac. Corp.,* 119 F.3d 703, 706 (8th Cir.1997). Indeed,
> many of our sister circuits have criticized and severely
> restricted the practice. *See, e.g., Ira Holtzman, C.P.A. v.
> Turza,* 728 F.3d 682, 689–90 (7th Cir.2013); *In re Baby
> Prods. Antitrust Litig.,* 708 F.3d 163, 172–73 (3d
> Cir.2013); *In re Lupron,* 677 F.3d at 29–33; *Nachshin,* 663
> F.3d at 1038–40; *Klier v. Elf Atochem N. Am., Inc.,* 658 F.3d
> 468, 473–82 (5th Cir. 2011); *In re Katrina Canal Breaches
> Litig.,* 628 F.3d 185, 196 (5th Cir.2010); *Masters v.
> Wilhelmina Model Agency, Inc.,* 473 F.3d 423, 434–36 (2d

Cir.2007); *Wilson v. Sw. Airlines, Inc.,* 880 F.2d 807, 816 (5th Cir.1989).

*In re BankAmerica Corp. Sec. Litig.,* 775 F.3d 1060, 1063 (8th Cir. 2015). The court

continued, "Recently, echoing these views, Chief Justice Roberts noted 'fundamental

concerns surrounding the use of such remedies in class action litigation.'" *Id. (citing*

*Marek v. Lane,* —— U.S. ——, 134 S.Ct. 8, 9, 187 L.Ed.2d 392 (2013)).

This is not an appropriate class action for a cy pres settlement, because the

individual class members may be identified by Defendants' own records. The American

Law Institute ("ALI") does not recommend cy pres remedy in this instance:

> A court may approve a settlement that proposes a cy pres
> remedy.... The court must apply the following criteria in
> determining whether a cy pres award is appropriate:
>
> (a) If individual class members can be identified through
> reasonable effort, and the distributions are sufficiently large
> to make individual distributions economically viable,
> settlement proceeds should be distributed directly to
> individual class members.

AMERICAN LAW INSTITUTE, PRINCIPLES OF THE LAW OF AGGREGATE LITIGATION § 3.07

(2010). The ALI acknowledges that cy pres distribution may be appropriate if remaining

amounts are so small that distributions are not economically viable, but the parties have

made no such showing here:

> (b) If the settlement involves individual distributions to class
> members and funds remain after distributions (because some
> class members could not be identified or chose not to
> participate), the settlement should presumptively provide for
> further distributions to participating class members unless the
> amounts involved are too small to make individual
> distributions economically viable or other specific reasons

7

exist that would make such further distributions impossible or unfair.

The Court should not approve a Settlement Agreement that proposes a vague "plan of allocation" to be determined in the future that includes a possible cy pres distribution, when here, the class members can be identified, there is $60 million in the escrow fund, and counsel has made no effort to explain why it would not be economically viable to distribute damages to class members directly.

## V.   Conclusion

I object to the Settlements and ask the Court not to approve them.

Dated: January 4, 2019        By:    /s/ Jason Liebich
                                             Jason Liebich

## CERTIFICATE OF SERVICE

I hereby certify that on January 4, 2019, I filed the following with the Clerk of the

Court, United Stated District Court for the District of Columbia, via hand-delivery, and

mailed copies to the following:

Clerk of the Court
United States District Court for the District of Columbia
333 Constitution Avenue.
Washington. DC 20001

Michael D. Hausfeld
Hausfeld, LLP
1700 K Street NW, Suite 650
Washington. DC 20006
Counsel for the Class

Roberta Liebenberg
Fine Kaplan and Black
One South Broad Street, Suite 2300
Philadelphia, PA 19107
Counsel for Southwest

Benjamin G. Bradshaw
O'Melveny & Myers LLP
1625 Eye Street, NW
Washington. DC 20006
Counsel for American

/s/ Amy M. Wilkins
Amy M. Wilkins

9



*Let this be filed*
*Judge CKoller-Kotelly*
*Jan. 11, 2019*

December 31, 2018

Clerk of the Court
United States District Court for the District of Columbia
333 Constitution Avenue
Washington, DC 20001

Re:  In re Domestic Airline Travel Antitrust Litigation, MDL No. 2656

## JANIS JOHNSON'S OBJECTION TO PROPOSED SETTLEMENT

I Janis Johnson, files this Objection to both the Proposed Settlement with

Southwest Airlines and American Airlines and to Attorneys' Fees.  I received an

email notice of the Notice of Proposed Class Action Settlement

**From:** Domestic Airline Settlement Administrator [mailto:administrator@qgemail.com]
**Sent:** Thursday, November 08, 2018 12:24 PM
**To:** janisj@gourmetcatalog.com
**Subject:** Airline Settlements

n

Dear Class Member:

Our records show you may have purchased a domestic airline ticket from American, Delta, Southwest, United, Continental Airlines, or US Airways between July 1, 2011 and June 14, 2018.  Southwest and American Airlines (the "Settling Defendants") have agreed to settle nationwide litigation by passengers who claim the four largest U.S. carriers along with Continental Airlines and US Airways conspired to increase fares on domestic flights.  The Settling Defendants deny that they did anything wrong, have asserted defenses to the claims, and have settled to avoid the burden and expense of litigation.

### Are you included?

The Settlement Classes include persons and entities who purchased air passenger transportation services for flights within the United States and its territories and the District of Columbia from American, Delta, Southwest, United, Continental, or US Airways at any time between July 1, 2011 and December 20, 2017 for the Southwest settlement and between July 1, 2011 and June 14, 2018 for the American settlement.

### What do the Settlements provide?

Southwest has agreed to pay $15 million and American has agreed to pay $45 million. The Settling Defendants have agreed to provide certain cooperation in the ongoing litigation against the Non-Settling Defendants.

### How can I get a payment?

At this time, it is unknown how much you may receive. A distribution plan will be prepared later or at the conclusion of the litigation. Given the number of Settlement Class Members, it may not be economically practical to distribute money until additional settlements or judgments are achieved. If you want to receive a notice about the claims process or future settlements, you should register at the website below. Class Counsel will pursue the lawsuit against the Non-Settling Defendants, and these Settlements may help pay expenses for Class Counsel to do so. If no additional settlements or judgments are achieved, money may be distributed to a charitable, government, or non-profit organization(s) as ordered by the Court.

### What are my rights?

Even if you do nothing you can participate in the Settlements and will also be bound by their terms. If you want to keep your right to sue Southwest and/or American yourself, you must exclude yourself from the Settlements by **January 4, 2019**. If you stay in the Settlements, you may object to them but only if you do so before **January 4, 2019**.

The Court will hold a hearing on **March 22, 2019** to consider whether to approve the Settlements and a request for attorneys' fees up to 30% of the Settlement Funds, plus reimbursement of costs and expenses incurred as Class Counsel pursues claims against the other Defendants. You or your own lawyer may appear and speak at the hearing at your own expense.

**For more information, visit www.DomesticAirClass.com or call 1-866-459-3634.**

**Para obtener un aviso en español, visite nuestro sitio web.**

**Pour obtenir une notice en français, veuillez consulter notre site internet.**


I received the notice at my place of business:

>Gourmet Catalog, Inc.
>GC Buying Group
>3311 Oak Lawn Ave.
>Suite 350
>Dallas, TX 75219
>214-855-0005

I do not plan to appear at the hearing, but I would request that I and other members of the class be allowed to listen by telephone.

I do not think class counsel are representing the class fairly and I request the Court to carefully review the settlement.

The only people that appear to be getting anything out of this settlement are the lawyers and I object to that and to the amount of fees they are requesting. This

settlement is just not fair, reasonable or adequate.  I also object that the attorneys will get their money at the time the Court approves the settlement, which I ask the Court not to do.  They should have to wait to the end of the case.

I object to the *cy pres* component of the settlement.  I know the Supreme Court recently heard an appeal regarding *cy pres* in class action cases.  The Court should wait for that decision.  I further object that the *cy pres* recipients are not named. The class should have an active role in selecting the recipients, not just the attorneys.

Janis Johnson

Copies:
Michael D. Hausfeld
Hausfeld, LLP
1700 K Street NW, Suite 650
Washington, DC 20006

Roberta Liebenberg
Fine Kaplan and Black
One South Broad Street, Suite 2300
Philadelphia, PA 19107

Benjamin G. Bradshaw
O'Melveny & Myers LLP 1
625 Eye Street, NW
Washington, DC 20006



FOREVER

8000  5682310002
NORTH TEXAS TX P&DC
DALLAS TX 750
31 DEC 2018 PM 11 L

20001-289999

Clerk of the Court
United States District Court for the
District of Columbia
333 Constitution Avenue,
Washington, DC 20001

Michael Gyda
3830 Marshall Road
Drexel Hill, PA 19026
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 (T)
gg-mm@comcast.net



December 30, 2018

Clerk of the Court
United States District Court for the District of Columbia
333 Constitution Avenue
Washington, DC 20001

**OBJECTION to SETLEMENTS**    *In re: Domestic Airline Travel Antitrust Litigation,*
*MDL 2656, Southwest & American Airlines*

To The Court:

This Plaintiff, included in the above captioned Class Action matter (see attached boarding passes and/or receipts), hereby objects to both the Southwest and American Airline Settlements as described in "6060_Domestic Airlines_LF Notice_v1" (attached), as downloaded from the website www.domesticairclass.com for the following reasons:

First, this "litigation" represents nothing more than <u>blatant extortion</u> of the airlines by the REAL criminals in this action – i.e., Class Counsel – and condoned by the Federal Court. This is a disgrace to the legal system as it was intended to operate by the Founding Fathers and The Constitution of The United States, and an egregious affront to the very meaning of justice. Moreover, Class Counsel publically admits this is in fact the case, as they baldly declare in bullet point #3 found on page (1) of the aforementioned Notice (highlighted):

> "Southwest and American deny that they did anything wrong and have asserted defenses to Plaintiff's claims. They have settled to avoid the considerable cost, burden and distraction of this litigation."

Translation:

> The law firms Cotchett, Pitre & McCarthy, LLP, and Hausfeld, LLP, i.e., Class Counsel, along with some undisclosed number of windfall-seeking private litigants, as well as the US District Court for the District of Columbia, have colluded to bully and extort US domestic airline companies into submitting to payment of an organized crime/"mob" tax under threat of protracted and expensive, albeit frivolous legal proceedings that could further cripple said airlines' operations.

These parasitic vultures of human society, i.e., "Class Counsel", and the US District Court should be ashamed of themselves/itself, and immediately cease and desist from further

---

egregious and inexcusable criminal behavior masquerading as "justice". The lot of you wouldn't recognize "justice" if it reached out and smacked you in the head.

Furthermore, sixty million dollars ($60,000,000) is what The Court considers an "avoidance of considerable cost"? Surely you jest. Such absurdity can only be addressed by asking yet another rhetorical question – have you all lost your minds?

Secondly, who, precisely, will these so-called "settlements", and/or additional litigation, actually punish? I can assure The Court, it will NOT be the airlines, because either the cost of litigation, or settlement costs, will simply be passed onto the flying public moving forward in the form of increased fares. Thus, this "Class Action" will do nothing but cost innocent customers higher than necessary fares for years into the future, further victimizing the innocent – whom may, or may not, already have been victimized once.

Third, what evidence do the "Plaintiffs'" have that can prove collusion beyond a reasonable doubt? Unless they had a CEO wired up during the meeting where it was clear and indisputable that said activity took place, good luck with that one. You'd have better luck proving age discrimination during the hiring process than this case.

Fourth, have any of the geniuses involved in this case thus far stopped for just one moment to consider the potential collateral effects this gang-related extortion will have on airline operations? These companies are operating on, at best, razor-thin margins, and I would suspect most, if not all, may be reporting losses consistently. This is not a very comforting thought when one is seated in an aircraft flying at an altitude of 40,000 feet. That's all the innocent public needs now – not only being victimized monetarily by an out-of-control judicial system that permits this unconscionable behavior to exist and perpetrate, but a death sentence upheld by The Court, leaving the airlines little choice but to cut corners during safety checks and maintenance routines as a result of a hand-full of knuckleheads attempting to further disable these companies in order to satisfy their own personal, insatiable greed. Class Counsel – run out of ambulances to chase? Have any of you ever purchased a Boeing 777 or 737, staffed it with pilots, flight crew, mechanics, etc., maintained and serviced it, filled it with fuel repeatedly, leased airport space, purchased all of the equipment, tools and specialized vehicles needed to keep it in operation, etc? Do any of you geniuses have even a remote idea of about how much money it costs to SAFELY operate just a single aircraft on a single flight? I purchased tickets for domestic flights on these airlines during the time frame in question (see attached), and I did not notice anything unusual about the airfares. In fact, I thought I was able to get quite a decent deal. So how much could the airline have possibly "artificially" raised the ticket price IF this alleged collusion truly took place – a few dollars per ticket? It could not be much more than that, because if it were, it would have been immediately obvious. All that you greed-driven sociopaths are doing through this action and potential future litigation is creating far more turbulence within the airline industry than is necessary – or worse – may be able to handle – and as a result, you are, at the very least, indirectly levying punitive damages onto an innocent flying public, and at worst, endangering the very lives of said public. THIS nonsense is what a Federal Court should be involved in mitigating while the Bill of Rights is under attack? If you answered "yes" to that question with a straight face – forget the airlines – it's time for a major overhaul of the judicial system. There will be ONLY one victor in this fiasco, should it be permitted to proceed, and that, of course, is Class Counsel, and to a lesser extent, Defendants' Counsel.

Fifth, and that to which the two "settling" airlines should have plead – American and Southwest – what is wrong with you? Submitting to bullies in the school yard so easily? You should be ashamed of yourselves, especially so if you have done nothing wrong. Spineless, pusillanimous cowards…how dare you take the name of America in vain. If it were not for the non-settling airlines, and the concern for my safety, and the safety of my loved ones in the air, I would not waste my time or effort on either of your organizations. If said decision, however, was made per Counsels' recommendations, you should both immediately seek new counsel, and withdraw the settlement agreement based on incompetent legal advice.

Finally, let this document further represent my Notice/Reservation of Intention to Appear and be heard before The Court at the Settlement Hearing, providing circumstances permit.

When I board an aircraft – now, or anytime in the future – I do NOT want to have a single concern that, because of some ridiculous litigation instigated by a couple of unscrupulous gold-diggers, the safety of that aircraft has been compromised. This action contains every ingredient needed to whip up a public safety nightmare. By permitting it to proceed, The Court becomes the party solely responsible for that nightmare if, and when, it happens. Stop bullying the airlines, and use the Antitrust Statutes to prosecute the true offenders – beginning with Microsoft. What happened to common sense in these United States? Oh…right…much like everything else…it has been ruined by a group of sociopathic lawyers in collusion with a corrupt judicial system.

Submitted,

Michael Gyda

encs:

6060_Domestic Airlines_LF Notice_v1

AA fare receipt, February 5, 2016

US Airways boarding passes, Aug 26 & Aug 27, 2013

cc:

Michael D. Hausfeld, Hausfeld, LLP, Class Counsel, Washington, DC;

Roberta Liebenberg, Counsel for Southwest, Philadelphia, PA;

Benjamin G. Bradshaw, Counsel for American, Washington, DC.

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

# If You Bought a Domestic Airline Ticket on American, Delta, Southwest, United, Continental, or US Airways Between July 1, 2011 and June 14, 2018

## Your Rights Could Be Affected

*A Federal Court authorized this notice. This is not a solicitation from a lawyer.*

- A class action lawsuit has been filed against the four largest commercial air passenger carriers in the United States—American Airlines, Inc., Delta Air Lines, Inc., Southwest Airlines Co., and United Airlines, Inc. (collectively, "Defendants"), claiming that Defendants, along with US Airways and Continental Airlines, conspired to increase fares by limiting capacity on domestic flights.

- Southwest has agreed to pay $15 million and American has agreed to pay $45 million to settle this nationwide litigation. Southwest and American (collectively, "Settling Defendants") have also agreed, as part of the Settlements, to provide certain cooperation to Plaintiffs in this litigation.

- Southwest and American deny that they did anything wrong and have asserted defenses to Plaintiffs' claims. They have settled to avoid the considerable cost, burden, and distraction of this litigation.

- The Settlements are on behalf of persons and entities who purchased air passenger transportation services for flights within the United States and its territories and the District of Columbia from American, Delta, Southwest, United, Continental, or US Airways at any time between July 1, 2011 and December 20, 2017 for the Southwest Settlement and between July 1, 2011 and June 14, 2018 for the American Settlement.

- The lawsuits are continuing against Delta and United (collectively, "Non-Settling Defendants").

- For additional information, important documents, and case updates, visit the website www.DomesticAirClass.com.

| YOUR LEGAL RIGHTS AND OPTIONS IN THE SETTLEMENTS | |
|---|---|
| **REGISTER ON THE WEBSITE** | Register at www.DomesticAirClass.com to receive additional information about the litigation and the Settlements. *See* Question 21. |
| **ASK TO BE EXCLUDED** | You will not participate in the Settlement(s) or get monetary benefits from the Settlement(s) to the extent such monetary benefits are distributed in the future. You will keep any rights you currently have to separately sue Southwest and/or American for the conduct that is the subject of this lawsuit. *See* Questions 11-13. |
| **OBJECT** | If you wish to object to the Settlement(s), or anything else referenced in this Notice, you must file a written objection. *See* Questions 14-15. |
| **GO TO A HEARING** | You may also request to be heard at the Fairness Hearing. *See* Question 20. |
| **DO NOTHING** | If you do nothing, you will participate in the Settlements and will not be able to sue Southwest or American for the conduct that is the subject of this lawsuit. |

These rights and options – **and the deadlines to exercise them** – are explained in this Notice.

CALL TOLL FREE 1-866-459-3634 OR VISIT WWW.DOMESTICAIRCLASS.COM
PARA OBTENER UN AVISO EN ESPAÑOL, VISITE NUESTRO SITIO WEB.

**AmericanAirlines**

AA RECORD LOCATOR: ZJZQNO



Get your boarding pass
faster! Scan this barcode
at any American Airlines
Self-Service Machine.

## Philadelphia to Nashville
2 Adults
**Wednesday March 30, 2016 – Tuesday April 5, 2016**

Total Paid:

**$400.60 USD**

### AA Record Locator
**ZJZQNO**

Your record locator is your reservation confirmation
number and will be needed to retrieve or reference your
reservation.

### Reservation Name
**PHL/BNA**

Status: Ticketed Feb 05, 2016

## Flight Information

| Flight | Depart | Arrive | Fare Amount | |
|---|---|---|---|---|
| **American Airlines** **5079** Operated by PSA Airlines As American Eagle | **Philadelphia (PHL)** March 30, 2016 10:05 AM Travel Time : 2 h 21 m Cabin Class : Economy Seat : 16A , 16C | **Nashville (BNA)** March 30, 2016 11:26 AM Booking Code : O Plane Type : CR9 | **Adult** 2 × $139.54 USD | $279.08 USD |
| | | | **Trip Options** | |
| | | | Main Cabin Extra | $44.20 USD |
| **American Airlines** **4585** Operated by Republic Airlines As American Eagle | **Nashville (BNA)** April 5, 2016 01:53 PM Travel Time : 2 h 5 m Cabin Class : Economy Seat : 18F , 18D | **Philadelphia (PHL)** April 5, 2016 04:58 PM Booking Code : O Plane Type : E75 | **Taxes & Carrier-Imposed Fees** | |
| | | | Taxes | $77.32 USD |
| | | | Carrier-Imposed Fees | $0.00 USD |

**Flight Subtotal**

**$400.60 USD**

## Receipt

| PASSENGER | TICKET NUMBER | FREQUENT FLYER NUMBER | FARE | Tax/Fee/Charge | TICKET TOTAL |
|---|---|---|---|---|---|
| HO.SUSAN | 0012321163012 | | $139.54 USD | 38.66 | 178.20 |
| GYDA,MICHAEL | 0012321163013 | | $139.54 USD | 38.66 | 178.20 |
| **Payment Type:** | VISA *********1797 | | | **Total** | **$356.40 USD** |

| PASSENGER | SEAT NUMBER(S) | PRICE | Tax/Fee/Charge | SEAT TOTAL |
|---|---|---|---|---|
| HO, SUSAN | 16A | 20.56 USD | 1.54 USD | 22.10 USD |
| GYDA, MICHAEL | 16C | 20.56 USD | 1.54 USD | 22.10 USD |
| | | | **Total** | 44.20 USD |

## Endorsements/Restrictions
NONREF/SVCCHGPLUSFAREDIF/CXL BY FLT TIME OR NOVALUE

## Terms and conditions:
If you've already begun travel, this receipt may only show portions of your trip not flown.

If your ticket involves travel outside the U.S., Canada, U.S. Virgin Islands or Puerto Rico and has been reissued, your ticket total may not include all taxes. Please contact Reservations for the correct total.

A summary of all the terms and conditions that apply to your travel are available on aa.com/conditionsofcarriage.

# U·S AIRWAYS

GYDA/MICHAEL

US   FLIGHT: 3347   26AUG

SEAT:   19C

PHILADELPHIA
RALEIGH DURHAM

CBEZZK/US

E-TICKET   SEQ 31

ZONE   3





GYDA/MICHAEL

Conf:   CBEZZK/US
FFD:   JNU49200 UA
PHILADELPHIA
RALEIGH DURHAM

Flight   Departs   Date
3347   1129A   26AUG

GATE BOARDING TIME SEAT
C26   1059A   19C

---

**EXTENDED WEATHER FORECAST** for Durham

| Mon, Aug 26 | Tue, Aug 27 | Wed, Aug 28 |
|---|---|---|
| 82°F / 57°F | 88°F / 61°F | 87°F / 68°F |
| Precip. 1% | Precip. 2% | Precip. 16% |

**ATTRACTIONS** in Durham

**North Carolina Museum of History**   919.807.7900
5 East Edenton St, Raleigh, NC 27601

**North Carolina Museum of Art**   919.839.6262
2110 Blue Ridge Road, Raleigh, NC 27607

**Moore Square**   919.834.5900
200 South Blount St, Raleigh, NC 27601

**Brightleaf Square**   919.682.9229
905 West Main St, Durham, NC 27701

≡ U·S AIRWAYS   Up to 40,000 bonus miles with
your qualifying transactions.

# U·S AIRWAYS



GYDA/MICHAEL

US  FLIGHT: 1860  27AUG

RALEIGH DURHAM

PHILADELPHIA

SEAT: 21C

CBEZZK/US

E-TICKET

SEQ  37

ZONE    3

GYDA/MICHAEL

Conf.     CBEZZK/US     ZONE  3
FFD:      JNU49200 UA

RALEIGH DURHAM
PHILADELPHIA

Flight    Departs       Date
1860      555P          27AUG

GATE      BOARDING TIME  SEAT
D11       525P           21C

EXTENDED WEATHER FORECAST for Philadelphia


Tue, Aug 27
86°F / 69°F
Precip. 46%


Wed, Aug 28
85°F / 74°F
Precip. 46%

Thu, Aug 29
84°F / 71°F
Precip. 25%

ATTRACTIONS in Philadelphia

Walnut Street                                      215.599.0776
Walnut Street, Philadelphia, PA 19104

Liberty Bell Center                                215.925.6101
500 Market St, Philadelphia, PA 19106

Independence Hall                                  215.925.6101
500 Chestnut St, Philadelphia, PA 19106

Elfreth's Alley                                    215.574.0560
124-126 Elfreth's Alley, Philadelphia, PA 19106

U·S AIRWAYS    Up to 40,000 bonus miles with
your qualifying transactions.



**Michael Gyda**
3830 Marshall Rd.
Drexel Hill, PA  19026-2825



Clerk of the Court
United States District Court for the District of Columbia
333 Constitution Avenue
Washington, DC 20001

*Let this be filed*
*Judge CKollen-Kotelly*
*Jan. 11, 2019*

January 3, 2019

Domestic Air Settlements
Exclusions
P.O. Box 44
Minneapolis, MN 55440-0044

Dear Settlement Administrator:

I, William G. Beck, hereby request to be excluded from both of the proposed settlement classes for Southwest and American Airlines in the *In re Domestic Airlines Travel Antitrust Litigation, MDL No. 2656.*

Very truly yours,

By: *William G. Beck*

William G. Beck
**10925 Southern Highlands Parkway**
**Apartment 1034**
**Las Vegas, NV 89141**
816-728-8061

cc to the following:

Clerk of the Court
United States District Court for the District of Columbia
333 Constitution Avenue
Washington, DC 20001

Michael D. Hausfeld
Hausfeld, LLP
1700 K Street NW, Suite 650
Washington, DC 20006

Roberta Liebenberg
Fine Kaplan and Black
One South Broad Street, Suite 2300
Philadelphia, PA 19107

Benjamin G. Bradshaw
O'Melveny & Myers LLP
1625 Eye Street, NW
Washington, DC 20006



RECEIVED
Mail Room

JAN - 7 2019

Angela D. Caesar, Clerk of Court
U.S. District Court, District of Columbia

Clerk of the Court
US District Court
District of Columbia
333 Constitution Ave
Washington, DC 20001

200001-289999

KANSAS CITY
MO 64140
04 JAN '19
PM 6 L

ZIP 64108
02 1W
0001398642 JAN 04 2019

U.S. POSTAGE $ 000.47°
087 PITNEY BOWES

*Let this be filed*
*Judge C Kollar-Kotelly*
*Jan. 11, 2019*

Clerk of the Court
United States District Court for the District of Columbia
333 Constitution Avenue
Washington, DC 20001

In re Domestic Airline Travel Antitrust Litigation, MDL No. 2656

I received an email on November 13, 2018 from administrator@qgemail.com
advising me of the settlement which was very vague and provided little useful
information. To find out more about the settlement you were required to go to
www.DomesticAirClass.com or call 1-866-459-3634. The email I received cause
me concern and I therefore object to the settlement because of the following:

1. It benefits only the attorneys
2. The attorney fees are too high
3. I and other class members receive nothing.
4. Unnamed organizations may receive the money
5. The class has no say in selecting the organizations and I may disagree
   with the organization selected.

Paige Nash
2706 Oak Lawn Ave.
Dallas, TX 75219
972-349-6181



RECEIVED
Mail Room

JAN − 7 2019

Angela D. Caesar, Clerk of Court
U.S. District Court, District of Columbia



20001-269999

Clerk of the Court
United States District Court for the District of Columbia
333 Constitution Avenue
Washington, DC 20001

N TEXAS
DALLAS 750
02 JAN '19
JAN 05

$0.47 0
US POSTAGE
FIRST-CLASS
2S00743668
75219
037.20

Let this be filed
Judge CMolla-Kotl
Jan. 11, 2019

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

IN RE DOMESTIC AIRLINE            )
TRAVEL ANTITRUST LITIGATION       )
                                  )         MDL No. 2656
This Document Relates to:         )         Case No. 1:15-mc-01404-CKK
                                  )
ALL CASES                         )
                                  )
                                  )         [ORAL ARGUMENT REQUESTED]
                                  )
                                  )
                                  )

## OBJECTION OF PAUL DEMOTT TO PLAINTIFFS' MOTIONS FOR FINAL
## APPROVAL OF SETTLEMENT AGREEMENTS AND FOR ATTORNEYS' FEES

### I.    INTRODUCTION.

After just over three years of litigation, Interim Co-Lead Class Counsel ("Class

Counsel") and Defendants Southwest Airlines Co. ("Southwest"), and American

Airlines, Inc. ("American") have arrived at a pair of settlements (the "Proposed

Settlements") that would together create a settlement fund of sixty million dollars.

Although that number is impressive in the abstract, it pales to insignificance when

compared with the size of the proposed settlement class and the damages likely

suffered by its members.  Despite this, Class Counsel has requested an exorbitant fee

award of one-quarter of the gross settlement fund.  Neither the Proposed Settlements

nor the requested fee award comports with D.C. Circuit precedent, and both should be

rejected for the reasons set forth below.

[ 1 ]



RECEIVED
Mail Room

JAN − 8 2019

Angela D. Caesar, Clerk of Court
U.S. District Court, District of Columbia

II.   **ARGUMENT.**

A.   <u>The Amount of the Proposed Settlements is Inadequately Supported and Likely Insufficient.</u>

The Proposed Settlements would create a settlement fund of $60 million, to be split among the Settlement Administrator, Plaintiffs' counsel, and 84 to 153 million class members.  Memorandum Opinion, ECF No. 268, at p. 10 ("the class here is estimated to be between 84.7 million and 153.8 million.").  These settlements, apart from likely representing only a miniscule percentage of the damages suffered by the class, are also unsupported by any form of damages estimate provided by either Class Counsel or the Settling Defendants.  The Court should therefore disapprove the settlement and instruct Class Counsel to provide the damages estimate necessary for a reasoned evaluation of the terms of the settlement against the strength of Plaintiffs' case.

1.   *Class Counsel has failed to provide sufficient information to evaluate the proposed settlements.*

In its briefing regarding approval of the proposed settlements and its request for attorney fees, Class Counsel has assiduously avoided giving any indication of its views about the potential damages to which the proposed settlement class is entitled.  *See, e.g.,* Plaintiffs' Motion for Preliminary Approval, ECF No. 248, at p. 9 ("The value of these actions cannot be quantified"); Plaintiffs' Motion for Final Approval, ECF No. 299 (failing to mention the value of the class's claims); Plaintiffs' Motion for Award of Attorneys' Fees, ECF No. 300 (same).  That reticence is understandable in light of the likely disparity between the amounts of the proposed settlements and any reasonable estimate of the class's damages.

[ 2 ]

It is unfortunate, however, because the primary task of a court in determining whether a settlement is fair and reasonable "is to evaluate the terms of the settlement in relation to the strength of the plaintiffs' case." *Thomas v. Albright*, 139 F.3d 227, 231 (D.C. Cir. 1998); *see also In re Fed. Nat'l Mortg. Ass'n Sec., Derivative, & "ERISA" Litig.*, 4 F. Supp. 3d 94, 103 (D.D.C. 2013) ("Next, the Court compares the terms of the settlement with the likely recovery plaintiffs would attain if the case proceeded to trial."). Without even an order-of-magnitude estimation of the damages the class stands to receive at trial, the Court has no basis for performing such an analysis. Class Counsel almost certainly possesses such an estimate, given that courts have found failing to form an estimate to be grounds for settlement disapproval. *See, e.g., Richardson v. L'Oreal United States, Inc.*, 991 F. Supp. 2d 181, 205–06 (D.D.C. 2013) ("this argument rests on the accuracy of the assessment of the class-wide damages claims, and the Court cannot determine on this record whether counsel's assessment is accurate."); *Reynolds v. Beneficial Nat'l Bank*, 260 F. Supp. 2d 680, 689 (N.D. Ill. 2003) (denying approval where class counsel failed to obtain sufficient discovery to form an estimate); *Oladapo v. Smart One Energy, LLC*, No. 14-cv-7117, 2017 U.S. Dist. LEXIS 187299, at *35 (S.D.N.Y. Nov. 9, 2017) (denying preliminary approval in part because, "[n]or is there any sign that counsel took steps, with or without expert assistance, to estimate the damages to which the proposed Class could be entitled."). The Court should therefore order Class Counsel to provide at least a rough estimate of the potential damages to which the class could be entitled before considering approval of the Proposed Settlements.

[ 3 ]

2. *The proposed settlements likely have no relation to the class's damages.*

The proposed class of between 84 and 153 million individuals likely spent a combined total of between $29.87 billion and $54.41 billion dollars on their qualifying purchases.[1] Assuming, as the Zajac Objectors conservatively suggest, that an average of 1% of the price of each qualifying ticket is attributable to the alleged antitrust violations, the class is entitled to damages of between $896 million and $1.63 billion.[2] Objection to Class Action Settlements and Notice of Intent to Appear, ECF No. 301, at p. 3. The proposed settlements, therefore, represent between 6.7% and 3.7% of that estimate.[3] Even assuming that Class Counsel eventually secures settlements with the remaining Defendants on the same terms it secured from American, the total settlement fund of $150 million would still represent only between 16.8% and 9.2% of one rough estimate—likely a gross underestimate—of the value of the class's claims.[4]

This low percentage recovery compares unfavorably with the settlement achieved in the gold-standard for airline antitrust actions, *In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297, 305–06, 317 (N.D. Ga. 1993) (*"Domestic Air Transp."*), where, despite facing very similar hurdles with regard to liability and damages, class counsel managed to secure a cash fund of $50 million and vouchers with an economic value of between $254 and $356 million for a class that numbered between 12 and 50

---

[1] 84,000,000 * $355.67 (the lowest average itinerary fare during the class period, Bureau of Transportation Statistics, "Average Domestic Airline Itinerary Fares," (Oct. 16, 2018), *available at* https://www.transtats.bts.gov/AverageFare) = $29,876,280,000. 153,000,000 * $355.67 = $54,417,510,000.
[2] $29,876,280,000 * .01 * 3 = $896,288,400. $54,417,510,000 * .01 * 3 = $1,632,525,300.
[3] $60,000,000 / $896,288,400 = 0.069. $60,000,000 / $1,632,525,300 = 0.037.
[4] $150,000,000 / $896,288,400 = 0.168. $150,000,000/ $1,632,525,300 = 0.092.

[ 4 ]

million.  The far lower recovery here could only be justified if the class faced a similarly lower chance of success on the merits.  *See Ceccone v. Equifax Info Servs. LLC,* 2016 U.S. Dist LEXIS 127942, at *22 (D.D.C. Aug. 29, 2016) (finding reasonableness because the settlement guaranteed a per-member recovery within the FCRA's range of statutory damages).  The claims in this case have survived beyond the motion to dismiss stage, however, and, given the tenor of this Court's decision at that stage, seem to have a very real chance to succeed.

The Court should therefore disapprove the proposed settlements if the rough damages estimate provided in Section II(A)(1), *supra,* is a fair approximation of the class's potential damages because the settlements do not rise to the level of "fair and reasonable."  The Court should instead order Class Counsel to go back to the drawing board and either obtain a larger cash settlement, or else negotiate for a substantial voucher settlement like those achieved in successful airline antitrust actions such as *Domestic Air Transp.*  Such a voucher settlement would have the added benefit of increasing the administrative feasibility of any eventual distribution by permitting a significant proportion of distribution to occur via email, and it would therefore assuage any concerns about the potential necessity to distribute all funds to *cy pres* beneficiaries if the settlement fund is not sufficiently augmented to make monetary distributions to the enormous plaintiff class feasible.

[ 5 ]

**B.**     Class Counsel's Request for Attorneys' Fees is Excessive.

Class Counsel's fee request is excessive because it would represent a substantial

upward departure from the norm for fee awards in similarly-sized class actions that is

not justified by any of the factors commonly considered by courts in this circuit, and

because the public policy considerations favoring large awards are absent or attenuated

in this case.  Moreover, even if the Court accepts Class Counsel's 25% figure, the

baseline for calculating Class Counsel's fee award should be the net settlement amount

rather than the amount of the gross settlement.

In considering petitions for attorneys' fees in class action settlements, "courts

have a duty to ensure that claims for attorneys' fees are reasonable." *Swedish Hosp.*

*Corp. v. Shalala*, 1 F.3d 1261, 1265 (D.D.C. 1993).  Although the D.C. Circuit has not yet

promulgated a formal list of factors to consider in evaluating the reasonableness of fee

requests, "courts in this circuit have often considered seven factors:  '(1) the size of the

fund created and the number of persons benefitted; (2) the presence or absence of

substantial objections by members of the class to the settlement terms and/or fees

requested by counsel; (3) the skill and efficiency of the attorneys involved; (4) the

complexity and duration of the litigation; (5) the risk of nonpayment; (6) the amount of

time devoted to the case by plaintiffs' counsel; and (7) the awards in similar cases.' "

*Ceccone v. Equifax Info. Servs. LLC*, No. 13-cv-1314, 2016 U.S. Dist. LEXIS 127942, at *27–

28 (D.D.C. Aug 29, 2016) (quoting *In re Lorazepam & Clorazepate Antitrust Litig.*, No.

99MS276(TFH), 2003 U.S. Dist. LEXIS 12344, at *27 (D.D.C. June 16, 2003)).

[ 6 ]

### 1. *Size of the fund created and number of persons benefited.*

Although the $60 million fund created by the Proposed Settlements is substantial in absolute terms, it is, as discussed in Section II(A)(2), *supra*, insignificant when one considers the estimated number of class members and the potential value of those class members' claims. Meanwhile the cooperation promised by the Settling Defendants, although obviously useful, is limited in scope and primarily valuable because it reduces the discovery burden on Class Counsel. Neither of the Proposed Settlements waives any privilege possessed by the Settling Defendants, and the information they propose to provide will only be useful to the class if it is relevant and therefore discoverable. This factor therefore cannot weigh in favor of a substantial fee award.

### 2. *The presence or absence of substantial objections.*

Even without considering the instant objection and the other objections submitted through counsel likely to appear roughly simultaneously with this filing, this Court has already received a significant number of well-reasoned objections from class members. *See* Notice of Objections Regarding Settlement, ECF No. 301. It would strain credulity to argue that there are so few substantial objections in this case as to justify an upward departure in Class Counsel's fees, given that many settlements receive no objections at all. *See, e.g., In re Vitamins Antitrust Litig.*, No. 99-197 (TFH), 2001 U.S. Dist. LEXIS 25067, at *20, 65 (D.D.C. July 13, 2001) ("*Vitamins*") (noting the absence of class member objections to settlement or fee); *In re Lorazepam & Clorazepate Antitrust Litig.*, No. 99-ms-276, 2003 U.S. Dist. LEXIS 12344, at *1 (D.D.C. June 16, 2003) ("*Lorazepam II*") ("having received no objections to the settlement by any class members . . .").

[ 7 ]

### 3. *The skill and efficiency of Class Counsel.*

The forty-five firms requesting fee awards in this action include some of the most prestigious and capable plaintiffs' firms in the country, and their skill is not in question. Joint Declaration, ECF No. 300-3, at Exhibit 1. But in its four-paragraph analysis of this factor, Class Counsel mentions efficiency only twice—once in the header, and once in the statement that "these settlements would not have been achieved but for the skill and efficiency of Plaintiffs in the discovery process." Plaintiffs' Motion for Award of Attorneys' Fees, ECF No. 300, at p. 11. In reality, greater efficiency would cause Plaintiffs' lodestar to rise more slowly and thereby decrease Defendants' sense of urgency regarding settlement. Fortunately, at least from the perspective of driving a quick cash-grab settlement, the staffing in this case has been anything but efficient.

Lean staffing and low hours expended can cause this factor to weigh in favor of an award of attorney fees. *Kifafi v. Hilton Hotels Ret. Plan*, 999 F. Supp. 2d 88, 101–02 (D.D.C. 2013). In contrast, inefficient handling of a case favors a lower award. *Fresh Kist Produce, L.L.C. v. Choi Corp.*, 362 F. Supp. 2d 118, 129 (D.D.C. 2005). Here, forty-five firms have performed substantial work on this case, with contributions ranging from 145 to nearly 5,000 hours, and nine firms have submitted lodestars of more than $1 million. Joint Declaration, ECF No. 300-3, at Exhibit 1. At least nineteen firms separately employed or contracted dedicated document reviewers, despite the efficiency gains available from centralized management of document review.[5]

---

[5] ECF Nos. 300-5, -8, -9, -11, -13, -14, -15, -17, -18, -20, -22, -23, -27, -28, -29, -33, -37, -39, -43, and possibly - 12 (the abbreviation "CA" is undefined).

[ 8 ]

Of course, such inefficiency is part-and-parcel of a large multidistrict litigation wherein dozens of law firms initially raced to the courthouse in a bid to represent the class, but that does not excuse Class Counsel's failure to centralize document review, and it does not excuse the insistence of more than forty law firms on retaining a finger in what each no doubt hopes will be a very substantial pie.  To grant the requested fee here would be to reward such behavior.

### 4.  *The complexity and duration of the litigation.*

The present case is, at best, typical of other major class action settlements in terms of complexity, and its duration of barely three years militates against awarding an unusually large fee.  This is not, for instance, a case where Class Counsel pursued an entirely new theory of liability. *Wells v. Allstate Ins. Col.*, 557 F. Supp. 2d 1, 7 (D.D.C. 2008) (holding that pursuing a novel theory of liability in part justified an upward departure in fees).  Nor is it a case with a particularly long duration.  *See, e.g., In re Fannie Mae Sec., Derivative, and ERISA Litig.*, 4 F. Supp. 3d 94, 110 n. 17 (D.D.C. 2013) (finding exceptional duration where the case spanned eight years); *Greenberg v. Colvin*, No. 13-1837, 2015 U.S. Dist. LEXIS 85478, at *30 (D.D.C. July 1, 2015) (finding an unusually short duration where the case spanned one and a half years); *Fresh Kist Produce, L.L.C. v. Choi Corp.*, 362 F. Supp. 2d 118, 130 (D.D.C. 2005) ("an overall four-year period of litigation . . . is not significant enough to weigh in Fresh Kist's favor.").  Because this case does not present exceptional circumstances in either complexity or duration, this factor does not justify the requested upward deviation in fees.

[ 9 ]

#### 5. *The risk of nonpayment.*

The risk of nonpayment is present in nearly every class action, and this case is no exception. The risk of nonpayment, however, is relevant primarily because "[t]he greater the risk of walking away empty-handed, the higher the award must be to attract competent and energetic counsel." *Silverman v. Motorola Solutions, Inc.*, 739 F.3d 956, 958 (7th Cir. 2013). Here, where more than one hundred actions were filed, in districts with wildly varying standards for awarding attorney fees, and where at least forty-five law firms continue to participate in the litigation of this matter, it is clear that the risk of nonpayment was never sufficient to create difficulties in attracting competent and energetic counsel. It therefore makes little sense to grant Class Counsel's fee award on the basis of this factor.

#### 6. *The amount of time devoted to the case by plaintiffs' counsel.*

In its discussion of the lodestar cross-check, Class Counsel contends that Plaintiffs' counsel have collectively devoted 75,674.00 hours to this case. Plaintiffs' Motion for Award of Attorneys' Fees, ECF No. 300, at p. 19. Working from this fact, Class Counsel arrives at the argument that its requested fee award is only 52.6% of its total lodestar. *Id.* Unfortunately, it appears that Class Counsel has included work relevant to all Defendants, and even work relevant only to the non-settling Defendants, in its calculation. Certainly nothing in Class Counsel's argument dispels that impression.

Assuming that such is indeed the case, it seems inappropriate for Class Counsel to request more than half of its lodestar in fees out of the fund created by the Proposed Settlements, one of which Class Counsel itself describes as merely an "ice-breaker" to excuse its unimpressive size. Plaintiffs' Motion for Final Approval, ECF No. 299, at p. 17. Moreover, Class Counsel's lodestar has been badly inflated by the inefficiency in staffing and hours noted in Section II(B)(4), *supra*. The amount of time devoted to the case by plaintiffs' counsel thus does not weigh in favor of the requested fee award.

   7. *The awards in similar cases.*

Attorney fee awards for antitrust class actions in this circuit generally fall between twenty and thirty percent of the common fund. *Lorazepam II*, 2003 U.S. Dist. LEXIS 12344, at *25. Here, an award of 20% is appropriate because none of the factors commonly analyzed by courts in this district favor an upward deviation from that baseline, and several, including the size of the fund and number of persons benefitted, Section II(B)(1), *supra*, the efficiency of counsel, Section II(B)(3), *supra*, and the risk of nonpayment, Section II(B)(5), *supra*, favor an award at or below the low end of the range. *See Fresh Kist Produce, L.L.C. v. Choi Corp.*, 362 F. Supp. 2d 118, 131 (D.D.C. 2003) ("Fresh Kist's attorneys will be awarded 20% . . . There are no extraordinary circumstances that would require an adjustment of the 20% figure.").

Class Counsel points to several antitrust class actions where courts in this circuit have awarded more than 25% of the fund in fees. In all but one of these cases, however, the recovery for the class was exemplary. *See, e.g., Vitamins*, 2001 U.S. Dist. LEXIS 25067, at *61–62 ("counsel in the instant Settlement have obtained for a class comprised

[ 11 ]

of nearly 4,000 members one of the highest percentage recoveries recorded, in one of the largest antitrust settlements on record."); *Lorazepam II*, 2003 U.S. Dist. LEXIS 12344, at *10–12 ("One gains a complete sense of the terms of the $35,000,000 settlement in relation to the strength of Plaintiffs' case by realizing that the total amount Defendants will have paid . . . far exceeds the initial prayer in the FTC's complaint."); *In re First Databank Antitrust Litig.*, 209 F. Supp. 2d 96, 99–100 (D.D.C. 2002) (approving a 30% fee award where even with the much higher fee requested by class counsel, the remaining funds would "more than suffice to make all [class members] entirely whole."); *Vista Healthplan, Inc. v. Warner Holdings Co. III, Ltd.*, 246 F.R.D. 349, 361–62 (D.D.C. 2007) (approving a 26% fee award where class counsel secured a settlement worth $3 million, where the class possibly suffered negligible damages, and where fees did not come from the common fund). The final case, *In re Ampicillin Antitrust Litigation*, 526 F. Supp. 494 (D.D.C. 1981), predates much of the modern methodology for determining attorney fees in class actions, and the court there stated that "in other antitrust actions, the Court finds that the bulk of the fee awards are less than 25% of the settlement . . ." *Id.* at 498.

In other cases, especially where class counsel's recovery for the class was less impressive, courts in this circuit have awarded less than 25% of the settlement fund as a fee. *See, e.g., Cohen v. Warner Chilcott Pub. Ltd. Co.*, 522 F. Supp. 2d 105, 122–24 (D.D.C. 2007) (awarding 23% of an $8 million fund benefitting 2 million consumers); *In re Black Farmers Discrimination Litig.*, 953 F. Supp. 2d 82, 98 (D.D.C. 2013) (awarding 7.4% of a $1.25 billion fund where much of the fund was created by others). Here, however, the recovery for the class is, at least so far, paltry, as explained in Section II(A)(2), *supra.*

Additionally, all other factors being equal, the percentage of the fund awarded generally falls as the size of the fund increases. *In re Black Farmers Discrimination Litig.,* 953 F. Supp. 2d 82, 98 (D.D.C. 2013). "In cases regarded as 'mega-fund' cases that is, recoveries of $100,000,000 or more-fees of fifteen percent are common." *Lorazepam II,* 2003 U.S. Dist. LEXIS 12344, at *25-26. Here, unless Class Counsel fails to make use of the cooperation provided by the Settling Defendants, the eventual settlement fund total should easily clear the $100 million threshold for mega-fund consideration.[6]

Of the cases cited by Class Counsel for their position that 25% is a reasonable fee for a settlement fund of such size, only *Vitamins* involved a settlement that exceeded — or even approached — the value of the Proposed Settlements or the value of the Proposed Settlements combined with any future settlements. And as explained above, *Vitamins* involved an exceptional recovery for the class, and the court explicitly relied on that fact in choosing to ignore the normal mega-fund fee cut. *Vitamins,* 2001 U.S. Dist. LEXIS 25067, at *59, 62 ("Courts have regarded exceptional benefits to a large class as grounds for a higher fee award.").

Moreover, to grant Class Counsel a non-mega-fund percentage fee because only two of four probable settlements are before the Court would create an incentive for counsel to future classes to break out as many individual settlements as possible in order to remain below that $100 million threshold. Of course, the Court cannot assume

---

[6] Class Counsel also characterizes *Black Farmers*, 856 F. Supp. 2d at 40, as defining mega-fund cases as those where the fund exceeds $500 million. The court in *Black Farmers* made no such pronouncement, it simply cited to cases involving settlements larger than $500 million because of the large size of the settlement in that case.

that additional settlements will ever be reached.  But thanks to Class Counsel's recent decision to request deferral of any ruling on its request for fees until distribution of the settlement fund becomes possible, Motion to Hold in Abeyance, ECF No. 305, and thanks to Class Counsel's expressed intent not to distribute the fund until further settlements are achieved or the case otherwise ends, Plaintiffs' Motion for Award of Attorneys' Fees, ECF No. 300, at p. 10 n. 5, the Court now has the option to consolidate Class Counsel's pending motion for fees with any future such motions regarding additional settlements and to treat the entire settlement fund as a mega-fund if such treatment proves applicable.

        *8.  Public policy.*

        Class Counsel correctly notes that fee awards in antitrust class actions create incentives for private attorneys general to further the policy goals of federal antitrust laws.  That does not mean, however, that the fee award should be adjusted upward simply because this is an antitrust action.  Indeed, as noted in the discussion of risk at Section II(B)(5), *supra,* no likelihood of an unusually high fee percentage was required to secure a plethora of private attorneys general in this instance.  Additionally, it is worth noting that a $15 million settlement, or even a $45 million settlement, will be little more than a rounding error on the relevant quarterly profit statement for each of the Settling Defendants.  A slap on the wrist does not further the public policy goals of the antitrust laws sufficiently to justify an upward deviation in the fee award.

### 9. *Basis for fee calculation.*

In recent years, courts around the country have begun to switch from calculating class counsel fees as a percentage of the gross settlement fund to calculating them as a percentage of the net settlement fund. *In re Initial Pub. Offering Sec. Litig.*, 671 F. Supp. 2d 467, 514 (S.D.N.Y. 2009) ("there is simply no reason why plaintiffs' counsel should be awarded a percentage of their expenses in addition to being reimbursed for those . . . expenses."); *In re Nuvelo Sec. Litig.*, No. C 07-04056, 2011 U.S. Dist. LEXIS 72260, at *4 n. 1 (N.D. Cal. July 6, 2011); *In re Cardinal Health Inc. Sec. Litigs.*, 528 F. Supp. 2d 752, 770-71 (S.D. Ohio 2007); *Leung v. XPO Logistics, Inc.*, 326 F.R.D. 185, 200 (N.D. Ill. 2018).

In context, the net settlement fund is the gross settlement fund less administration expenses and, in most cases, litigation expenses. Indeed, at least one court in this circuit has deducted both administration and litigation expenses before calculating class counsel's fees, where such was requested by the parties. *In re Fannie Mae Sec. Derivative, and ERISA Litig.*, 4 F. Supp. 3d 94, 113 (D.D.C. 2013). Calculating class counsel's fees from the net settlement has the obvious benefit of creating an incentive for class counsel to remain conscious of expenses, while still allowing courts to reimburse counsel for those expenses reasonably incurred. *See Pearson v. NBTY, Inc.*, 772 F.3d 778, 780-81 (7th Cir. 2014) (Posner, J.). Here, this means that Class Counsel's fees should be calculated as a percentage of the net settlement fund of $55.43 million less whatever expenses have been incurred by the Settlement Administrator.[7]

---

[7] $60 million (gross settlement fund) - $1.57 million (requested expenses) - $3 million (litigation fund) = $55.43 million (net settlement fund before administration expenses).

## III.   CONCLUSION.

The Court should deny Plaintiffs' Motion for Final Approval and, upon its becoming ripe for consideration, the Court should reduce Plaintiffs' requested fee award to twenty percent of the net settlement fund.

Dated: January 4, 2019

By:  s/ Geoffrey Parker

Geoffrey Parker (0096049)
HILTON PARKER LLC
10400 Blacklick-Eastern Rd NW, Suite 110
Pickerington, OH 43147
Tel: (614) 992-2277
Fax: (614) 427-5557
gparker@hiltonparker.com

# Exhibit 1
## Declaration of Paul DeMott.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

IN RE DOMESTIC AIRLINE )
TRAVEL ANTITRUST LITIGATION )
) MDL No. 2656
This Document Relates to: ) Case No. 1:15-mc-01404-CKK
)
ALL CASES )
) [ORAL ARGUMENT REQUESTED]
)
)
)
)

### DECLARATION OF PAUL DEMOTT

I, Paul DeMott, state as follows:

1.      I am over the age of 18 and have personal knowledge of the facts asserted in this declaration unless otherwise indicated.  If called upon to testify to these facts, I would competently do so.

2.      I may be contacted, care of my attorney, by mail at 10400 Blacklick-Eastern Rd. NW, Suite 110, Pickerington, OH 43147 and by telephone at (614) 992-2277.

3.      I object to the proposed settlements with both American and Southwest.

4.      I object to the proposed settlements on the grounds that I believe they are inadequate in size given the number of persons affected; that they do not seem likely to inconvenience the settling airlines; and that they seem designed to benefit only the lawyers and not the class.

5.      I plan to appear at the Fairness Hearing through my attorney.

[1]



RECEIVED
Mail Room

JAN - 8 2019

Angela D. Cresar, Clerk of Court
U.S. District Court, District of Columbia

6.      Attached as Exhibit 2 is a true and correct copy of an email I received from the Settlement Administrator on October 30, 2018.

7.      I have purchased at least one plane ticket during the class period from one of the named defendants.

8.      For instance, I purchased tickets to fly on July 20, 2013 from Cincinnati, Ohio to Dallas, Texas on what I believe to have been an American Airlines flight.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated:  January 4, 2019

By:  _____
         Paul DeMott

# Exhibit 2

Class Notice Received by Paul Demott.

1/4/2019                          Hilton Parker LLC Mail - Fwd: Fw: Airline Settlements

                                    **Geoffrey Parker <gparker@hiltonparker.com>**

## Fwd: Fw: Airline Settlements

**Jonathan Hilton** <kindlycoach@gmail.com>                          Wed, Oct 31, 2018 at 8:13 AM
To: gparker@hiltonparker.com

---------- Forwarded message ----------
**From:** DeMott Paul <paul_d_demott@yahoo.com>
**Date:** Wed, Oct 31, 2018, 5:41 AM
**Subject:** Fw: Airline Settlements
**To:** Jonathan Hilton <kindlycoach@gmail.com>



Jonathan:

Janet and I are both members of this class. It.seems to me that the settlement benefits.only the lawyers and I may be
interested in objecting. Give me a call if this is something you would.be interested in undertaking.

Sent from Yahoo Mail on Android

----- Forwarded Message -----
**From:** "Domestic Airline Settlement Administrator" <administrator@qgemail.com>
**To:** "paul_d_demott@yahoo.com" <paul_d_demott@yahoo.com>
**Sent:** Tue, Oct 30, 2018 at 11:00 PM
**Subject:** Airline Settlements

Dear Class Member:
Our records show you may have purchased a domestic airline ticket from American, Delta, Southwest, United,
Continental Airlines, or US Airways between July 1, 2011 and June 14, 2018.  Southwest and American Airlines
(the "Settling Defendants") have agreed to settle nationwide litigation by passengers who claim the four largest
U.S. carriers along with Continental Airlines and US Airways conspired to increase fares on domestic flights.
The Settling Defendants deny that they did anything wrong, have asserted defenses to the claims, and have
settled to avoid the burden and expense of litigation.
### Are you included?
The Settlement Classes include persons and entities who purchased air passenger transportation services for
flights within the United States and its territories and the District of Columbia from American, Delta, Southwest,
United, Continental, or US Airways at any time between July 1, 2011 and December 20, 2017 for the Southwest
settlement and between July 1, 2011 and June 14, 2018 for the American settlement.
### What do the Settlements provide?
Southwest has agreed to pay $15 million and American has agreed to pay $45 million.  The Settling Defendants
have agreed to provide certain cooperation in the ongoing litigation against the Non-Settling Defendants.
### How can I get a payment?
At this time, it is unknown how much you may receive.  A distribution plan will be prepared later or at the
conclusion of the litigation.  Given the number of Settlement Class Members, it may not be economically practical
to distribute money until additional settlements or judgments are achieved.  If you want to receive a notice about
the claims process or future settlements, you should register at the website below.  Class Counsel will pursue the
lawsuit against the Non-Settling Defendants, and these Settlements may help pay expenses for Class Counsel to
do so.  If no additional settlements or judgments are achieved, money may be distributed to a charitable,
government, or non-profit organization(s) as ordered by the Court.
### What are my rights?
Even if you do nothing you can participate in the Settlements and will also be bound by their terms.  If you want
to keep your right to sue Southwest and/or American yourself, you must exclude yourself from the Settlements
by **January 4, 2019**.  If you stay in the Settlements, you may object to them but only if you do so before **January
4, 2019**.
The Court will hold a hearing on **March 22, 2019** to consider whether to approve the Settlements and a request
for attorneys' fees up to 30% of the Settlement Funds, plus reimbursement of costs and expenses incurred as
Class Counsel pursues claims against the other Defendants.  You or your own lawyer may appear and speak at
the hearing at your own expense.

1/4/2019                    Hilton Parker LLC Mail - Fwd: Fw: Airline Settlements

**For more information, visit www.DomesticAirClass.com or call 1-866-459-3634.**
**Para obtener un aviso en español, visite nuestro sitio web.**
**Pour obtenir une notice en français, veuillez consulter notre site internet.**
Unsubscribe

📎 **Untitled**
7K



U.S. POSTAGE
$2.05
FCM LG ENV
43147
Date of sale
01/04/19
06   25
11438191

USPS FIRST-CLASS MAIL®

5.90 oz

C003

SHIP
TO:

333 CONSTITUTION AVE
NW
WASHINGTON DC 20001-2802

(420) 20001

Clerk of the Court
United States District Court
for the District of Columbia
333 Constitution Avenue,
Washington, DC 20001



OH 43109-9998
JAN -5 2019
USPS

Suite 110
Pickerington, OH 43147