# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| In re DOMESTIC AIRLINE TRAVEL ANTITRUST LITIGATION | MDL No. 2656<br>Case No. 1:15-mc-01404-CKK<br><br>[ORAL ARGUMENT REQUESTED] |
| This document relates to:<br><br>ALL CASES | |

## OBJECTION OF THEODORE H. FRANK AND M. FRANK BEDNARZ
## TO SETTLEMENTS AND ATTORNEY FEE REQUEST

Theodore H. Frank (DC Bar No. 450318)
CENTER FOR CLASS ACTION FAIRNESS
1629 K Street, NW, Suite 300
Washington, DC 20006
Telephone: (703) 203-3848
Email:  tedfrank@gmail.com

*Attorneys for Objectors*
   *Theodore H. Frank and M. Frank Bednarz*

### Introduction

Class members Theodore H. Frank and M. Frank Bednarz object to the approval of the settlement and the attorney-fee request and reserve the right to object to the settlement class certification. The notice to the class fails to disclose critical details about the process that will be used to decide how to distribute settlement funds, and leaves open the possibility that funds will be entirely distributed to as-yet-undisclosed *cy pres* recipients without any further notice to the class or opportunity to object. (Indeed, neither the motion for settlement approval nor approval of Rule 23(h) fees mentions the words "*cy pres*" nor makes any attempt to justify this clause of the settlement agreement. Dkt. 299, 300. Neither does the Motion to Hold in Abeyance (Dkt. 305).) Frank and Bednarz are forced to object now, lest, as plaintiffs' Motion to Hold in Abeyance suggests, class counsel will argue that class members missed the objection deadline if class counsel attempts such a bait-and-switch in the absence of objections. A settlement that leaves open the possibility of the attorneys receiving tens of millions while the class receives no direct benefit is unfair; so is the potential for abusive *cy pres* distributions where class counsel is incentivized to use the settlement fund as a slush fund.

The problem is more than hypothetical here. Lead class counsel, in a previous antitrust class action, diverted $5.1 million of settlement money away from the class, to fund the development of future litigation, while accomplishing a sizable donations to his *alma mater*—an abuse so egregious it was cited in the merits brief in the pending Supreme Court case *Frank v. Gaos* as an example of why Rule 23 should not permit all-*cy pres* settlements. *Frank v. Gaos* Brief for Petitioners 29, No. 17-961 (filed July 9, 2018) (citing Ashley Roberts, *Law School Gets $5.1 Million to Fund New Center*, GW Hatchet (Dec. 3, 2007)).

### I.     Frank and Bednarz are class members.

As documented by their attached declarations, Theodore H. Frank and M. Frank Bednarz are class members in both the Southwest and American Airlines settlements and have registered with the settlement administrator. They object on behalf of the entire settlement class in both settlements, and

can be reached through their counsel Frank at his business address and phone number. They intend to appear at the fairness hearing through counsel.

Frank founded the Center for Class Action Fairness in 2009, which has won over $200 million for class members through dozens of successful objections in the last decade; Frank is an experienced appellate attorney who argued *Frank v. Gaos* in the Supreme Court this October. Bednarz is also an attorney with the Center for Class Action Fairness. (The Center became part of the Competitive Enterprise Institute in 2015, and will move to the new non-profit public interest law firm Hamilton Lincoln Law Institute later this month.) While the Center is using its own attorneys as objectors here for convenience, many class members and a number of government officials reached out to the Center when they received notice of this settlement. Many more class members would likely have done so but never learned of the settlement, because the settlement administrator used methods of e-mail distribution that resulted in countless class members' email systems filtering the notice as spam. The percentage and number of class members who object will be very low, but the Court should not use that as a reason to disregard objections; there is even less incentive to object to a class action settlement of pennies per class member than there is to participate in an individual antitrust suit, which is why this case is proceeding as a class action to begin with. It is "naïve" to view the lack of objections as acquiescence, much less support for a settlement. *Redman v. RadioShack Corp.*, 768 F.3d 622, 628 (7th Cir. 2014); *accord Richardson v. L'Oreal USA, Inc.*, 991 F. Supp. 2d 181, 205 (D.D.C. 2013) (low objection rate "proves little").

Frank and Bednarz join in full the objections of any state attorney general or the Department of Justice, and join the meritorious objections of any class members that are not inconsistent with this one. On information and belief, a group of state attorneys general agreed at the last minute not to file objections or a statement of interest with the court in exchange for plaintiffs filing the Motion to Hold in Abeyance; Frank and Bednarz intended to rely upon those filings. Unfortunately, class counsel's motion does not resolve the problems with the settlements and notice.

**II.     The Settlements contains loopholes that violate Rule 23, and notice is deficient.**

The settlement and settlement notice leave open the possibility that the entire net settlement fund after a Rule 23(h) award (which if granted, would be over 40% of the fund) will go to *cy pres* recipients; they provide no procedures for additional notice to the class or additional opportunities to object; they provide no notice of how the decision to distribute the fund will be made; they provide no information about the identity of *cy pres* recipients. All of this is a violation of Rule 23(e) and of Rule 23(h)'s notice procedure. *See generally Ross v. Lockheed Martin Corp.*, 267 F. Supp. 3d 174, 203 (D.D.C. 2017).  If the intent of the settlement is to divert the entire fund to *cy pres*, as seems likely if the case is so meritless that defendants will repeatedly engage in only nuisance settlements for less than $1/class member or avoid liability altogether, then there are class certification problems under Rule 23(a)(4) and Rule 23(g).

*First*, the settlement and notice explicitly leave open the possibility that the entire fund will go to *cy pres*. Southwest Settlement ¶ 40 (leaving plan of allocation undisclosed); American Settlement ¶ 40 (same); Class Notice 4-5. Meanwhile class counsel's Rule 23(h) request seeks tens of millions of dollars, while class members may receive no direct benefit, nor have any opportunity to object to a misallocation. *Cy pres* should not be counted as a benefit to the class. *Pearson v. NBTY, Inc.*, 772 F.3d 778, 784 (7th Cir. 2014). And a settlement that proposes to pay class counsel so disproportionately to the class is fundamentally unfair under Rule 23(e). *Id.* at 781 (rejecting settlement with much better ratio of known class payment to attorney payment) (quoting *Redman*, 768 F.3d at 630).

*Second*, Frank and Bednarz object to the settlement to the extent it leaves open any possibility that material amounts of money will go to charity instead of class members. "There is no indirect benefit to the class from the defendant's giving the money to someone else." *Mirfasihi v. Fleet Mortg. Corp.*, 356 F.3d 781, 784 (7th Cir. 2004). "[S]ettlement-fund proceeds, having been generated by the value of the class members' claims, belong solely to the class members." *Klier v. Elf Atochem N. Am., Inc.*, 658 F.3d 468, 474 (5th Cir. 2011). "Class members are not indifferent to whether funds are

distributed to them or *cy pres* recipients, and class counsel should not be either." *In re Baby Prods. Antitrust Litig.*, 708 F.3d 163, 178 (3d Cir. 2013).

Even if claims rates were so high such that it would be prohibitively expensive to distribute money to every claimant (much less every class member), random lottery distribution to a percentage of claiming class members would successfully distribute the fund. Shay Lavie, *Reverse Sampling: Holding Lotteries to Allocate the Proceeds of Small-Claims Class Actions*, 79 Geo. Wash. L. Rev. 1065 (2011). As arbitrary as that sounds, it is less arbitrary to distribute $40 million of settlement money to 400,000 or 4,000,000 class members than nothing to class members and $40 million to third-party charities affiliated with class counsel, and no more arbitrary than the typical claims-made settlement that leaves over 99% of the class uncompensated.

*Third*, Frank and Bednarz object to the Rule 23(h) request because it proposes to pay attorneys regardless of whether the settlement fund goes to class members or to the attorneys' favorite charities. "*Cy pres* distributions also present a potential conflict of interest between class counsel and their clients because the inclusion of a *cy pres* distribution may increase a settlement fund, and with it attorneys' fees, without increasing the direct benefit to the class." *In re Baby Prods. Antitrust Litig.*, 708 F.3d 163, 173 (3d Cir. 2013). And if class counsel gets paid the same either way, they have no incentive to do the extra work to move money to their anonymous clients, rather than to their favorite charities. But class attorneys have no more authority to divert their clients' moneys to preferred charities than attorneys for individual clients do. For this reason, Frank and Bednarz object to any payment going to class counsel before class members are paid. This controversy is live because class counsel's motion to hold in abeyance may not be granted, and there are no guarantees that any money will ever go to the class.

*Fourth*, the notice to the class is deficient in multiple ways.

- The Allocation Plan is "an integral part of effectuating the proposed settlement[s]," and the failure to include it in either the settlement or the notice means the parties have not "met their Rule 23(e)(3) burden to identify the terms of the settlement." *In re Toyota Motor*

*Corp. Unintended Acceleration Mktg.*, 2013 WL 3224585, at *5 (C.D. Cal. June 17, 2013). A notice should include, *inter alia*, "the essential terms of the proposed settlement," "any special benefits provided to the class representatives," "the procedures for allocating and distributing settlement funds, and, if the settlement provides different kinds of relief for different categories of class members, clearly set forth those variations," "the basis for valuation of nonmonetary benefits"; and should "provide information that will enable class members to calculate or at least estimate their individual recoveries, including estimates of the size of the class and any subclasses." *Manual for Complex Litigation* § 21.312 (4th ed.). "To constitute adequate notice, the postcard and e-mail to be distributed to class members must provide them with a way of comparing their anticipated recoveries with those of other class members and of forming opinions about whether the proposed settlement is fair, reasonable, and adequate." *O&R Constr. v. Dun & Bradstreet Credibility Corp.*, 2017 WL 1788410, at *2 (W.D. Wash. May 5, 2017). In a sentence, the plan of allocation is a material detail of the settlement (*see, e.g. In re Fed. Nat'l Mortg. Ass'n Secs., Derivative and ERISA Litig.*, 4 F. Supp. 3d 94, 108-09 (D.D.C. 2013)) and class members are entitled to make their decision whether to object, opt out, or participate willingly with that information at hand. At a minimum, there needs to be notice of what standard the parties propose to use to determine whether class distributions will be feasible. *See Haggart v. Woodley*, 809 F.3d 1336, 1348-49 (Fed. Cir. 2016).

- While the Notice suggests money may go to charity instead of the class, there is no disclosure what charities are being considered, much less what conflicts exist between the class representatives, class counsel, and the possible recipients. This is deficient when there is no established procedure for notice to the class or opportunity to object to the recipients. *Dennis v. Kellogg Co.*, 697 F.3d 858 (9th Cir. 2012). Moreover, when charitable recipients are not designated until the opt-out deadline has passed, class members have no way to distance themselves from the subsidy, and thus it constitutes compelled speech in

violation of the First Amendment. "[E]xcept perhaps in the rarest of circumstances, no person in this country may be compelled to subsidize speech by a third party that he or she does not wish to support." *Harris v. Quinn*, 134 S. Ct. 2618, 2644 (2014).

- Rule 23(h) requires notice to the class of the basis for attorneys' fees, but, because of the lack of a plan of allocation, the class does not know whether any money is going to the class, the most important basis for fees, yet is expected to object by a deadline well before they get that knowledge. This violates the rule. *Redman*, 768 F.3d at 637-38; *In re Mercury Interactive Corp. Securities Litigation,* 618 F.3d 988, 993-95 (9th Cir. 2010). The request for $3 million in "future" expenses that cannot be vetted similarly violates Rule 23(h).

*Fifth*, Frank and Bednarz object to the proposal to pay class counsel for unsupervised future expenses. Courts routinely reject such unsupported fund requests for "future" use. *See Ferrick v. Spotify USA, Inc.*, 2018 WL 2324076, at *11 (S.D.N.Y. May 22, 2018) (denying fund for future expert expenses); *In re Domestic Drywall Antitrust Litig.*, 2016 WL 1457917, at *2 (E.D. Pa. Apr. 16, 2016) (denying future expenses without prejudice until plaintiffs could "account[] for the money they have expended and and/or expenses incurred"); *7-Eleven, Inc. v. Etwa Enter.*, 2013 WL 2947112, at *5 (D. Md. Jun. 12, 2013); *St. Hilaire v. Indus. Roofing Co.*, 346 F. Supp. 2d 212, 215 (D. Me. 2004) ("[T]he Court is not prepared to accept Plaintiff's bald projection of reasonable future fees without corroborating support in the record."). Expenses can only be granted upon a showing of clear and demonstrable benefit, accompanied by proper documentation. *Dyer v. Wells Fargo Bank, N.A.*, 303 F.R.D. 326, 334 (N.D. Cal. 2014) (expenses require documentation); *Wolph v. Acer Am. Corp.*, 2013 U.S. Dist. LEXIS 151180, at *18 (N.D. Cal. Oct. 21, 2013) (expenses must be "clear"); *Davis v. Cole Haan, Inc.*, 2013 U.S. Dist. LEXIS 151813, at *10 (N.D. Cal. Oct. 21, 2013) (expenses must be sufficiently described). "[W]ithout knowing the ultimate attorneys' fees, other expenses of claims administration, or total value of recovery to the class" it is not possible to "carry out the required 'thorough judicial review' of these costs." *In re Mushroom Direct Purchaser Antitrust Litig.*, 2018 WL

6603868, at *9 (E.D. Pa. Dec. 17, 2018) (quoting *Halley v. Honeywell Int'l Inc.*, 861 F.3d 481, 497 (3d Cir. 2017)).

While some courts permit a fund for future expenses, a number did so in situations with protections for the class such as the fact that they (1) were suggested by a court-appointed mediator and required court approval for any expenditure, *Newby v. Enron Corp.*, 394 F.3d 296, 302 (5th Cir. 2004), or (2) required court approval for payments and were overseen by sophisticated, "institutional investor[]" plaintiffs and counsel who, "in striking contrast to the common circumstance of attorneys choosing their clients in class actions," had been actively selected by the plaintiffs and requested fees amounting to only 10 percent of the recovery, *In re Cal. Micro Devices Secs. Litig.*, 965 F. Supp. 1327, 1330, 1332, 1337 (N.D. Cal. 1997). No such safeguards exist here, and orders rubber-stamping unopposed requests for future expenses should not be viewed as dispositive here—especially where the settlement and class certification may have fatal problems.

*Sixth*, Frank and Bednarz note that these are nuisance settlements for less than 1% of alleged damages, and perhaps even less than the cost of the defendants fully litigating the case. While there is nothing inherently wrong with a class settlement for a nuisance amount (*but see Murray v. GMAC Mortg. Corp.*, 434 F.3d 948, 954 (7th Cir. 2006)), here there is a substantial chance that class counsel has harbored the intent all along to create a *cy pres* slush fund and fees for counsel's use with nothing for the class. If so, this is an abuse of the class action system that should preclude class certification and settlement approval. *E.g., In re Subway Footlong Sandwich Mktg. Litig.*, 869 F.3d 551, 557 (7th Cir. 2017). The opacity of the allocation and *cy pres* process unfortunately creates problems here. Because this objection reveals to class counsel that class members are paying attention, class counsel can safely disclaim any bad-faith intent, as we will never know what they would have attempted had there been no detailed objections filed. While the objectors have no direct evidence of bad faith here, and are unlikely to obtain any in the absence of a whistleblower or discovery, class counsel's track record in a previous D.D.C. antitrust settlement discussed above permits an adverse inference.

## Conclusion

For the above reasons, the settlement and Rule 23(h) request should not be approved, and the court should consider whether class certification is appropriate at all.

Dated:  January 4, 2019                                       Respectfully submitted,

/s/ Theodore H. Frank
Theodore H. Frank (DC Bar No. 450318)
CENTER FOR CLASS ACTION FAIRNESS
1629 K Street, NW, Suite 300
Washington, DC 20006
Telephone: (703) 203-3848
Email:  tedfrank@gmail.com

*Attorneys for Objectors*
*Theodore H. Frank and M. Frank Bednarz*

## Certificate of Service

I certify that on January 4, 2019, I served a copy of the above on all counsel of record registered for electronic filing by filing a copy via the CM/ECF system.

In addition, in accordance with the Class Notice, I caused a copy of the foregoing to be sent by first-class mail to the following persons at the following addresses:

| | |
|---|---|
| **Clerk of the Court** <br> United States District Court for the District of Columbia <br> 333 Constitution Avenue <br> Washington, DC 20001 | **Michael D. Hausfeld** <br> Hausfeld, LLP <br> 1700 K Street NW, Suite 650 <br> Washington, DC 20006 |
| **Roberta Liebenberg** <br> Fine Kaplan and Black <br> One South Broad Street, Suite 2300 <br> Philadelphia, PA 19107 | **Benjamin G. Bradshaw** <br> O'Melveny & Myers LLP <br> 1625 Eye Street, NW <br> Washington, DC 20006 |

Dated: January 4, 2019

*/s/ Theodore H. Frank*
Theodore H. Frank