## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| |
|---|
| IN RE DOMESTIC AIRLINE TRAVEL ANTITRUST LITIGATION |
| This Document Relates to: ALL CASES. |

**MDL Docket No. 2656**
**Misc. No. 15-1404 (CKK)**

### REPORT AND RECOMMENDATION No. 6
### REGARDING DEFENDANTS' MOTION TO COMPEL ANSWERS TO FIFTH SET OF INTERROGATORIES
(March 22, 2019)

Before the Special Master is the motion of Defendants United Airlines, Inc. and Delta Airlines, Inc. to Compel Answers to Defendants' Fifth Set of Interrogatories. The parties have fully briefed the issues and the Special Master heard oral argument on the Motion. The issues are ripe for decision. The primary issues in dispute are the timing, appropriateness, and manner of responding to 25 contention interrogatories propounded by Defendants.[1]

The Special Master recommends the Court grant Defendants' motion. The overarching reason for this recommendation is that, after two years of supervising discovery in this case, the Special Master believes that narrative answers to these interrogatories at this juncture will identify and narrow the issues in dispute in this sprawling and voluminous litigation. As the Special Master found nine months ago in Amended R&R No. 4, Plaintiffs' answers to Interrogatory Nos. 8-10 were "likely to aid all the parties in assessing the strengths and weaknesses of their cases." [*See* ECF No. 247 (*In re Domestic Airline Travel Antitrust*

---

[1] The Court's Discovery Stipulation and Order (ECF No. 160) allows 25 contention interrogatories. The interrogatories at issue constitute the totality of contention interrogatories allowed Defendants.

*Litigation*, 2018 WL 4381070 *4 (D.D.C. June 15, 2018)].  That answers to the original interrogatories (8-11) have not yet been supplied by Plaintiff and that Defendants waited almost seven months to apprise the Special Master of this deficiency, underscore the need in this litigation to have "intermediate milestones . . . to keep discovery and, indeed, the case as a whole on track."  (*Id.*).

## Background

### 1. Amended Report & Recommendation No. 4

This Motion to Compel is, in key respects, a reprisal of the Motion to Compel that the Special Master addressed nine months ago in Amended R&R No. 4. (*Id.*).  To fully understand the Special Master's recommendation on the instant Motion, it is appropriate to review the matters at issue in Amended R&R No. 4.

Amended R&R No. 4 involved three interrogatories (Nos. 8-10)[2] to which Plaintiffs, among other grounds, objected as "premature" "contention" interrogatories that were "simply

---

[2]  Interrogatory Nos. 8-10 asked:

Interrogatory No. 8—Identify each agreement (including any understanding, contract, combination, or conspiracy) among the Defendants for which You seek relief in this case and the documents and evidence substantiating your answer.

Interrogatory No. 9—Identify all meetings and communications, direct or indirect, between or among Defendants, related to the alleged conspiracy, and for each identify the persons participating in the meeting or communication, the date of the meeting or communication, and the location and describe the meetings and communications.

Interrogatory No. 10—Describe in detail the facts supporting Your allegation that that Defendants agreed to 'fix, raise, maintain, and/or stabilize prices for air passenger transportation services' by 'colluding to limit capacity on their respective airlines' (Complaint ¶ 1), including each capacity-related action that resulted from the alleged agreement; each flight, city-pair and segment affected by the alleged agreement; the capacity that would have been provided or available but-for the alleged agreement; the price(s) actually charged; and the price(s) that would have been charged but for the alleged agreement.

unrealistic and a waste of party resources."  Plaintiffs asserted that such interrogatories "should

be answered, if at all, at or near the end of the discovery process."  (Pls. May 31, 2018 Opp. at 7,

9).  In hindsight, Plaintiffs' Opposition to the earlier motion foreshadowed one of the key issues

presented now – the time when the case is quite near the end of the fact discovery process.  In its

May 31 Opposition Plaintiffs argued that, "[h]aving established that the Interrogatories are

contention interrogatories, the question becomes the timing of a *substantive* response."  [*Id.* at

8)(emphasis supplied)].

In opposing the earlier motion with respect to Interrogatory Nos. 8-10, Plaintiffs asserted

that "[d]iscovery of the facts underlying the cartel will largely come – as it routinely does – from

Defendants' own records, records to which the Defendants have access.  Defendants are not

therefore, deprived of any facts or information they may need to fashion their defense."  (Pls.

May 31, 2018 Opp. at 9).  This assertion misses the point. The critical issue in June 2018 was for

Plaintiffs to answer Defendants' interrogatories to make clear Plaintiffs' positions. Indeed, the

Special Master expressly rejected any belief that Plaintiffs could "answer" interrogatories with

mere lists of document noting that: "the purpose of interrogatories is not merely to gather

information and evidence; *it is also a tool to require a party to state its positions on an issue in*

*writing and under oath.  See Covad Comm. v. Revonet, Inc.*, 258 F.R.D. 17, 20 (D.D.C. 2009)."

[2018 WL 4381070 at *3 n. 3 (emphasis added)].

In the June 2018 recommendation that Plaintiffs be ordered to answer Interrogatory Nos.

8-10, the Special Master, without deciding whether the interrogatories at issue there were or were

not contention interrogatories, recognized that the interrogatories went to central issues of this

case and, as such, that narrative answers to them "have a high probability of focusing the issues

and establishing the significant facts relevant and pertinent to Plaintiffs' claims and allegations."

(2018 WL 4381070 at *4).  The Special Master also noted in June 2018, that, where "the cases

were filed over two-and-a-half years ago, where counsel has conducted 15 months of discovery,

and where core document discovery is complete, this case will benefit from Plaintiffs answering Interrogatories 8, 9 and part of 10." (*Id.* at *3). The Special Master concluded that "[a]nswers to these interrogatories are likely to aid all the parties in assessing the strengths and weaknesses of their cases[;]" and that "moving from pleading allegations to identifying evidence can serve as a helpful reality check." (*Id.* at *4).

The Court adopted Amended R&R No. 4 and ordered Plaintiffs to answer Interrogatory Nos. 8-10 by July 23, 2018. [*See* ECF 254 (*In re Domestic Airline Travel Antitrust Litigation*, 326 F.R.D. 43 (D.D.C. 2018))]. When the Court adopted Amended R & R No. 4, it noted that "Plaintiffs filed no objections to Report and Recommendation No. 4." (326 F.R.D. at 44).

## 2. Plaintiffs' Responses to Interrogatory Nos. 8-10

Plaintiffs served supplemental responses[3] to Interrogatory Nos. 8-10 on July 23, 2018. (Damron Decl., Exh. 1). Plaintiffs' primary responses to Defendants' Interrogatory Nos. 8-10, however, were not substantive narratives under oath; indeed, nothing was submitted under oath.[4] (*See* Pls. May 31, 2018 Opp. at 8). Instead, Plaintiffs essentially quoted from and referred to their Consolidated Amended Class Action Complaint (ECF No. 91) and provided three lists of documents, with each document identified only by beginning Bates number. The documents listed had been provided to Plaintiffs by Defendants or third-parties. The lists totaled 123 pages and identified more than 2,000 documents. (*See* Defs. Motion, Damron Decl. ¶ 3). The lists were attached to the Supplemental Responses as Appendices A-C corresponding to Interrogatory Nos. 8-10, respectively; the list in Appendix D applied to all three interrogatories. (*See id*. Exh. 1).

---

[3] Plaintiffs labeled their July 23 submission as supplemental responses to Interrogatories even though no original response had been filed to those interrogatories.

[4] The Rules requires "[e]ach interrogatory . . . to[] be answered separately and fully under oath." [Fed. R. Civ. P. 32(b)(3)]. (*See also,* 2018 WL 4381070 at *3 n. 3).

In responding to Interrogatory No. 8, Plaintiffs stated:

> To the extent the response to Defendant's Interrogatory No. 8 may be ascertained from Defendants' own business records and the business records of subpoenaed non-parties, and the burden of ascertaining the answer is substantially the same for Defendants as it is for Plaintiffs, pursuant to Federal Rule of Civil Procedure 33(d)(1), Plaintiffs identify the documents listed in Appendix A, attached hereto.

(Damron Decl., Exh. 1 at 9).

As to Interrogatory No. 9, Plaintiffs stated:

> The answer to Defendant's Interrogatory No. 9 may be ascertained from Defendants' own business records and the business records of subpoenaed non-parties, and the burden of ascertaining the answer is substantially the same for Defendants as it is for Plaintiffs. Therefore, pursuant to Federal Rule of Civil Procedure 33(d)(1), Plaintiffs identify the documents listed in Appendix B, attached hereto.

(Damron Decl., Exh. 1 at 10). Plaintiffs' response to Interrogatory No. 10 was virtually identical to that of Interrogatory No. 9.

### 3. Plaintiffs' Supplemental Responses to Interrogatories No. 11-12

On September 13, 2018, Plaintiffs served supplemental responses to Interrogatory Nos. 11-12. (Damron Decl. ¶ 4, Exh. 2). These supplemental responses, like the July 23 supplemental responses, attached a list (53 pages) of documents designated as Appendix E and identified by Bates number. The supplemental responses contained language identical to that noted above with respect to the supplemental response to Interrogatory No. 9.

### 4. Defendants' Inaction

Despite the Special Master's findings and conclusions in Amended R&R No. 4 n.3 rejecting Plaintiffs' reliance on use of documents produced by Defendants as responsive rather than having Plaintiffs provide "answer[s] fully in writing and under oath," Defendants elected not to move to compel when Plaintiffs' supplemental responses essentially relied upon lists of Defendant and third-party produced documents instead of written answers under oath. Defendants chose to wait until the final day under the Court's case management order to serve

interrogatories on September 30, 2018.  These interrogatories were expressly characterized as "contention interrogatories."  (Defs. Fifth Set of Interrogatories).[5]

While Defendants' decision to not challenge the supplemental responses did not violate any Rule or order of the Court, had Defendants challenged Plaintiffs' reliance on lists of Bates-numbered documents in the supplemental responses to Interrogatory Nos. 8-10 and 11-12, the use of and reliance on these lists could have been resolved months ago – before this practice was again used in response to the interrogatories now at issue.[6]

### 5.  Defendants' Fifth Set of Interrogatories

This case involves allegations of illegal conspiracy and agreements to take anticompetitive actions to limit capacity.  It is within this framework that the Fifth Set of Interrogatories should be examined.  In brief, the interrogatories at issue ask Plaintiffs to state in writing and under oath information about:

> Interrogatory No. 19 – each meeting where Defendants "agreed to restrict capacity or fix prices"

> Interrogatory No. 20 – conferences, etc. where Plaintiffs contend an agreement was reached – fix prices or restrict capacity

> Interrogatory No. 21 –agreements between Defendants – agreed to restrict capacity or fix prices

> Interrogatory No. 22 –agreements between Defendants on prices not involving form of capacity discipline referenced in Plaintiffs' supplemental response to Interrogatory No. 8

---

[5] Notwithstanding filing weekly written status reports with the Special Master and near weekly status conferences with him, Defendants did not alert the Special Master that there was any issue about whether Plaintiffs' July 23 supplemental responses complied with Amended R&R No. 4 and Federal Rule of Civil Procedure 33.  The Special Master first learned of Plaintiffs' alleged deficiencies when Defendants filed the instant Motion.  [*See* Defs. Motion to Compel filed Feb. 6, 2019 (ECF No.  331)].

[6]  In opposing the Motion to Compel here, Plaintiffs note that Defendants failed to raise any concerns about Plaintiffs' supplemental responses.  (Pls. Opp. at 2).

Interrogatory Nos. 24-27 –communications between Defendants and non-Defendants about restricting capacity or fixing prices or use of conduits in a conspiracy

Interrogatory No. 28 –communications that, alone, constitutes an unlawful agreement

Interrogatory No. 29 – for communications in interrogatories 24-28, set out identifying information

Interrogatory No. 30 –events marking the beginning and end of the conspiracy

Interrogatory Nos. 31-32 –illustrating Plaintiffs' supplemental answers to Interrogatory Nos. 8, 11

Interrogatory Nos. 33-35 –non-expert evidence reflecting any fixed price or restriction of capacity in furtherance of the conspiracy

Interrogatory No. 36 – non-expert evidence of complaint by one Defendant to another about any action inconsistent with alleged conspiracy

Interrogatory No. 37 –information related to Plaintiffs' supplemental response to Interrogatory No. 11

Interrogatory No. 38 –action by any Defendant in furtherance of alleged conspiracy that Plaintiffs claim was contrary to that Defendant's independent economic interest.

In response to the September 30 contention interrogatories, Plaintiffs' responses did little more than incorporate their July 23 and September 13 supplemental responses – supplemental responses that cited back to the lists of Defendant-produced documents.

### 6. Defendants' Motion to Compel – 5th Set of Interrogatories

On February 6, 2019, Defendants filed the instant motion to compel Plaintiffs' to answer "separately and fully in writing" 25 interrogatories "as Rule 33 requires." (Defs. Motion at 1). Defendants argue, among other things, that narrative answers from Plaintiffs are necessary at this point to "narrow and sharpen the issues" in this litigation (*id*.), and that a party is not permitted to use the other party's documents to respond to contention interrogatories. (*Id*. at 5-8). In addition, Defendants request Plaintiffs be given 21 days to "provide full and separate answers" to

the contention interrogatories because Defendants want the answers before depositions of their witnesses begin, (*id.* at 12), which depositions are scheduled to begin in April 2019.

### 7. Plaintiffs' Opposition to Motion to Compel

Making five arguments, Plaintiffs ask the Court to exercise its discretion under Rule 33(a)(2) to deny Defendants' Motion to Compel. (*See* Pls. Opp. at 1). First, Plaintiffs contend that the 5th Set of Interrogatories constitute an abuse of discovery because the interrogatories ask Plaintiffs "to identify virtually every potential fact bearing on the conspiracy" and because the interrogatories at issue "are subsets of other Interrogatories to which Plaintiffs already provided a response." (*Id.* at 1 and 2-4).[7] Second, Plaintiffs argue that answering these interrogatories now is premature, unreasonably burdensome, and will not narrow issues with several months of discovery still on-going. (*Id.* at 1 and 4-6). Third, Plaintiffs argue that they properly relied upon Federal Rule of Civil Procedure 33(d) to answer Defendants' interrogatories "because the interrogatories seek not legal contentions but a recitation of evidence and facts, which can *only* come from Defendants' (and third party) productions." [*Id.* (emphasis in original)]. Fourth, Plaintiff's assert that their responses are sufficient given Plaintiffs' current knowledge. (*Id.*). Fifth, Plaintiffs contend that several interrogatories seek expert testimony, which is premature because expert discovery does not end until December 2019. (*Id.* at 6-10).

### Discussion

### *1. Abuse of Discovery*

In asserting Defendants' contention interrogatories constitute an abuse of discretion Plaintiffs rely primarily upon three cases: *Lucero v. Valdez*, 240 F.R.D. 591, 594 (D.N.M. 2007); *Hiskett v. Wal-Mart Stores, Inc.*, 180 F.R.D. 403, 405 (D. Kan. 1998); *In re Convergent Techs.*

---

[7] This is a reference to Plaintiffs' July 23 and September 13 Supplemental Responses to Interrogatory Nos. 8-12.

*Sec. Litig.*, 108 F.R.D. 328, 337-38 (N.D. Cal. 1985).  The Special Master does not find that these cases warrant denial of the motion to compel.

In *Lucero*, the court did not condemn the use of contention interrogatories.  The court there criticized the use of interrogatories seeking "each and every fact" of a plaintiff's case, but also noted the benefits derived from contention interrogatories.  The *Lucero* court stressed the value of looking at the timing of the contention interrogatories in each case.  (*See* 240 F.R.D. at 594).

In *Hiskett* the court was confronted with an interrogatory asking plaintiff to "'state all facts and identify each and witness and document that supports [plaintiff's] allegation.'" (180 F.R.D. at 404).  While such an interrogatory could be overly broad, the *Hiskett* court indicated that interrogatories seeking "principal or material facts" or underlying facts – related to material allegations – would likely be acceptable.  "Interrogatories which do not encompass every allegation or a significant number of allegations, of the Complaint, reasonably places upon the answering party 'the duty to answer them by setting forth the material or principal facts.'"  [*Id.* at 405 (citation omitted)].

In *In re Convergent* the court outlined the benefit of contention interrogatories while examining the timing of them as a factor in assessing the permissibility of such interrogatories at different stages of cases.  (*See* 108 F.R.D. at 337-38).

In the present case, where the interrogatories at issue, as noted above, are focused on specific issues relating to the allegations made by Plaintiffs and come at a time when discovery has been on-going for two years, the Special Master reads the cases relied upon by Plaintiffs as justifying the granting of the instant motion.  Importantly, the overbreadth of the interrogatories at issue in some of the cases relied upon by Plaintiffs is not present here.

Looking at the breadth of Plaintiffs' allegations in the Corrected Amended Complaint (ECF No. 184) and the wording of the interrogatories at issue, the Special Master finds that the

use of contention interrogatories at this time is reasonable and appropriate since they will serve to identify and narrow the issues in dispute.

Plaintiffs also assert that the 5th Set of Interrogatories at issue here are abusive because they are redundant of nothing more than Interrogatory Nos. 8-11.   Plaintiffs complain that the current interrogatories are now broken into sub-parts of Interrogatory Nos. 8-11 and that Plaintiffs have already answered in the July 23 and September 13 supplemental responses. Indeed, Plaintiffs attach to their Opposition Appendix A, in which they illustrate the relationship between the interrogatories at issue here and those in Interrogatory Nos. 8-11.

While Plaintiffs are correct that Interrogatory Nos. 19-22 and 24-38  overlap the subject matter in Interrogatory Nos. 8-11, the Special Master views the 5th Set of Interrogatories as a more focused and specific effort to obtain the facts underlying Plaintiffs' allegations.[8] Moreover, for reasons set out below, the Special Master recommends that the Court reject Plaintiffs' argument that the provision of lists of documents by Bates numbers, where the documents were provided to Plaintiffs by Defendants and third parties, constitutes compliance with Federal Rule of Civil Procedure 33(b)(3).   Given that Plaintiffs' supplemental responses relying on Rule 33(d) were improper, Plaintiffs should be ordered to provide answers to the whole 5th Set of Interrogatories by providing narrative answers separately and under oath.   Reliance by Plaintiffs on documents supplied by Defendants as the sources of information to answer Interrogatory Nos. 19-22 and 24-38, but reliance on a mere list of approximately 2000 documents by Bates number is not.

---

[8]   Defendants served interrogatory Nos. 8-11 in March 2017, shortly after discovery began. (*See* 2018 WL 4381070 at *1).   Defendants' Fifth Set of Interrogatories, served almost two years later, are more nuanced and specific.

### 2. Premature and Burdensome

#### (a) Timing

Plaintiffs argue that it is premature to require them to respond to contention interrogatories and that such interrogatories now will not sharpen the issues in the case. (Pls. Opp. at 4-5). Plaintiffs urge the Court to exercise its discretion to "defer responses to contention interrogatories until after the close of fact discovery." (*Id.* at 5). The Special Master disagrees.

There can be no dispute that a court may elect to defer responses to contention interrogatories until the end of discovery. The exercise of such discretion requires a court to examine the timing and status of discovery in each case, the nature of the allegations and claims in the case and to examine the nature of the interrogatories at issue. In each of the cases relied upon by Plaintiffs,[9] the courts examined these factors and made case-specific decisions.

Here, where the litigation was consolidated before this Court in October 2015, where fact discovery began in January 2017, where Plaintiffs have subpoenaed documents from nearly 40 third parties, where the core document productions were completed on April 30, 2018, and where two of the four defendants have settled, use of contention interrogatories is not premature.

Plaintiffs, after two years of discovery, should have a good grasp of how they intend to prove the allegations they have made. Although Defendants presumably know what is in the documents they produced to Plaintiffs, only the Plaintiffs know what portions and specific pieces of evidence in those documents likely will be used to support Plaintiffs' claims and to defend against arguments to be made by Defendants. As the Special Master noted in Amended R&R4, in a complex case such as this one, "intermediate milestones" such as narrative answers to

---

[9] *Everett v. USAir Group, Inc.* 165 F.R.D. 1, 3 (D.D.C. 1995); *English v. Wash. Metro. Area Transit Auth.*, 323 F.R.D. 1, 19 (D.D.C. 2017); *Zubrod v. Hoch*, No. C15-2065, 2016 WL 1752770 (N.D. Iowa, May 2, 2016); *Megdal Assocs., LLC v. La-Z-Boy, Inc.*, No. 14-cv-81476, 2016 WL 4503337, at *6 (S.D. Fla. Feb. 1, 2016).

interrogatories "are likely to aid all the parties in assessing the strengths and weaknesses of their cases. (2018 WL 4381070 *4). "Moving from pleading allegation to identifying evidence can serve as a helpful reality check." (*Id*.).

As to a number of interrogatories (Nos. 19-22, 24-38), Plaintiffs object that each "is overbroad, unduly burdensome, and not proportional to the needs of the case, Plaintiffs' resources, and the importance of discovery in resolving the issues." (Damron Decl., Exh. 6 at 6, 8-9, 10-13, 16, 18, 20, 22-23, 26-27, 29, 31, 33, 35, 37,39, 42, 44).

The Special Master reads the Fifth Set of Interrogatories to be focused--not overbroad. Plaintiffs provide nothing in the record as to how answering the Fifth Set relates to their resources. The Special Master believes that the answers to the Fifth Set of Interrogatories are very important in the use of discovery to establish evidence for prosecuting Plaintiffs' allegations and also for defending against them. In sum, the Special Master finds that the Fifth Set and the information sought by them are proportional and necessary to preparing these cases for both a dispositive motion and for trial.

(b) Alleged Burden

On their claim of undue burden Plaintiffs state (Pls. Opp. at 1-2) that, at the time of briefing and decision on the matters in Amended R&R No. 4, "neither Plaintiffs nor the Court knew that Defendants' voluminous productions comprised more than 3 million *non-responsive* documents" or that the burden in examining those documents for evidence which would justify a Court-ordered six-month extension of discovery. (*See* ECF No. 286).

At the time Amended R&R No. 4 issued in June 2018 document review was ongoing, with the core documents produced by April 30, 2018. In recognition of the status of document review, the Special Master in June 2018 noted that "Plaintiffs should answer these interrogatories based on their knowledge as of the time they answer the interrogatories." (2018 WL 4381070 at *4). The Special Master recommended that, if "Plaintiffs have not yet identified evidence to

support their allegations, they may so indicate" and that answering "these interrogatories at this time does not limit Plaintiffs only to what they now say [--] Plaintiffs may amend and/or supplement their interrogatory responses as more evidence is discovered." (*Id*.).

Plaintiffs' reference to the volume of documents needed to be reviewed and the resulting extension of discovery do not support their opposition here. Plaintiffs have not drawn any convincing connection between the need to review the documents which formed the basis for the extension and the responses they provided on July 23 and September 13 – responses that relied on documents already in their possession and unrelated to the extension request. Moreover, beyond an assertion by counsel in the Opposition, Plaintiffs have not demonstrated how many of the "more than 3 million non-responsive documents" that formed the basis for the June 2018 discovery extension request remain unreviewed or would need to be reviewed to answer Interrogatory Nos. 19-22 and 24-38 at this time. Thus, the Special Master finds that Plaintiffs have not presented a sufficient or persuasive showing of undue burden.

In arguing against being compelled to answer the contention interrogatories here, Plaintiffs acknowledge the Court's earlier ruling in Amended R&R No. 4 but, nevertheless, go on to state that "[w]hile the Court previously found that responses to Interrogatories 8-10 may help sharpen the issues in this case, Plaintiffs have responded to those queries. . . ." (Pls. Opp. at 4). The responses to which Plaintiffs refer were the lists of documents by Bates number previously provided to Plaintiffs by Defendants or third parties. Plaintiffs' conduct was the precise practice rejected in Amended R&R No. 4.[10] Inasmuch as the Special Master finds and

---

[10] In Amended R&R No. 4 the Special Master found that Rule 33(d) "do[es] not allow the responding party to rely on production of another party's documents to satisfy its obligations under Rule 33." (2018 WL 4381070 at *3 n.3). As noted, Plaintiffs made no objections to Amended R&R No. 4. Thus ruling in Amended R&R No. 4 adopted by the Court arguably bars Plaintiffs here from relying upon Rule 33(d)(1) under the "law of the case" doctrine. [*See, LaShawn v. Barry,* 87 F.3d 1389, 1393 (D.C. Cir. 1996)(*en banc*); *Berryman-Turner v. District of Columbia*, 233 F. Supp.3d 26, 35 (D.D.C. 2017)(Moss, J.)]. In their Opposition, Plaintiffs

concludes that responding to interrogatories by supplying lists of documents provided by the party issuing the interrogatories does not constitute a permissible response under Rule 33(b)(3) and (d), the Special Master does not agree that Plaintiffs "responded to [the] queries" set out in Interrogatory Nos. 8-10.

In opposing Defendants' current Motion, Plaintiffs argue that:

> Requiring responses to Defendants new (and largely duplicative) interrogatories *now* will unnecessarily and prejudicially delay and disrupt Plaintiffs' ongoing efforts to develop their case and prepare for depositions, requiring months to assemble the conspiracy evidence demanded, disaggregate that evidence into the subsets of Defendants' liking, and transform that evidence into an impermissible running narrative of the case. (Pls. Opp. at 4).

The Special Master does not find Plaintiffs' arguments persuasive. First, Plaintiffs contend that the Fifth Set of Interrogatories "are merely Interrogatories 8-11 in different clothing: they seek the same evidence and facts encompassed in Defendants' prior interrogatories, now merely broken down into subparts . . . ." (Pls. Opp. at 3 and Appendix A). The Special Master finds the current interrogatories are directed and specific. To argue that they are duplicative of earlier propounded interrogatories does not avail Plaintiffs given that they failed to answer those the earlier interrogatories in compliance with Rule 33.

Second, Plaintiffs make reference to the need to develop their case and a months-long period to "assemble the conspiracy evidence," (Pls. Opp. at 4). Answering the Fifth Set does not

---

here acknowledge the Special Master's earlier finding, but they assert "that issue was not fully briefed or litigated at the time." (Pls. Opp. at 6 n. 6). In opposing the motion that led to Amended R&R No. 4, Plaintiffs argued that "[d]iscovery of the facts underlying the cartel will largely come – as it routinely does – from Defendants' own records, records to which the Defendants have access. Defendants are not therefore, deprived of any facts or information they may need to fashion their defense." (Pls. May 31, 2018 Opp. at 9). Rather than rely on the "law of the case" doctrine as a prudential bar to dispose of Plaintiffs' argument on Rule 33(d), however, the Special Master looks to the merits of Plaintiffs' position and finds them insufficient.

require Plaintiffs to assemble evidence for Defendants. Answering the Fifth Set does require Plaintiffs to review the evidence they have and respond in a manner compliant with Rule 33(b)(3). What Plaintiffs see as questions in "subsets of Defendants' liking" to the Special Master are specific, fact-driven questions to understand the contentions made by Plaintiffs and the evidence supporting them.

Third, Plaintiffs believe that they answered the Interrogatory Nos. 8-11 by means of supplying a list of document by Bates numbers by referencing and incorporating Appendices A-E.  In Plaintiffs' "responses" to the Fifth Set of Interrogatories, Plaintiffs did little more than incorporate their prior answers to Interrogatory Nos. 8-11, which prior answers essentially were only lists of documents.  As noted below, the Special Master finds that submitting a list of document numbers does not comply with Rule 33(b)(3)'s requirement for a separate, full answer "in writing under oath."  Plaintiffs' responses to the Fifth Set of Interrogatories do not comply with Rule 33.

Fourth, the Special Master views the Fifth Set of Interrogatories as directed at specific allegations and assertions made by Plaintiffs and not seeking either "all facts" or a "running narrative of the case."

3. *Plaintiffs' Reliance on Fed. R. Civ. P. 33(d)*

In responding to the Interrogatories at issue here, Plaintiffs seek to rely upon Rule 33(d) to justify providing Defendants only with lists of document Bates numbers produced by Defendants or third parties, but not providing them substantive answers in writing under oath. Neither Rule 33, the commentary to the Rule nor the case primarily relied upon by Plaintiffs support Plaintiffs' argument.

The key purposes of contention interrogatories under Rule 33 are:

- "narrow[] and sharpen[] the issues" [*Barnes v. District of Columbia,* 270 F.R.D. 21, 24 (D.D.C. 2010)];

- clarify and narrow the issues.  [*See* Amended R & R No. 4, 2018 WL 4381070 at * 3 adopted 326 F.R.D. 43; *In re Convergent Technologies Securities Litig.*, 108 F.R.D. 328, 338 (N.D. Calif. 1985)];

- "to require one's opponent to state its position on an issue in controversy in writing and under oath." [*Covad Communications Co. v. Revonet, Inc.*, 258 F.R.D. 17, 20 (D.D.C. 2009)].

To advance those purposes, Rule 33(b)(3) is clear that interrogatory answers must be answered "separately" and "fully in writing under oath." Rule 33(d) provides the option to produce business records in response to an interrogatory by stating that:

> If the answer to an interrogatory may be determined by examining . . . *a party's business records* . . . and if the burden of deriving or ascertaining the answer will be substantially the same for either party, the responding party may answer by: (1) specifying the records that must be reviewed, in sufficient detail to enable the interrogating party to locate and identify them as readily as the responding party could . . . .

(Emphasis supplied).  The Advisory Committee Notes to the 1970 Amendments to the predecessor version of what is now Rule 33(d) state "this is a new subdivision, . . . [relates] to interrogatories which require a party to engage in burdensome or expensive research *into his own business records* in order to give an answer."  (Emphasis supplied).  The Advisory Committee Notes to the 1980 Amendments provide that:

> The Committee is advised that parties upon whom interrogatories are served
> have occasionally responded by directing the interrogating party to a mass
> of business records or by offering to make all of their records available,
> justifying the response by the option provided by this subdivision.  Such
> practices are an abuse of the option . . . . The final sentence[*] is added to
> make it clear that a responding party has the duty to specify, by category
> and location, the records from which answers to interrogatories can be
> derived.

In the instant case, no plausible argument can be made that examining Defendant-produced documents identified by Plaintiffs in their responses will enlighten Defendants as to what information in any individual document Plaintiffs are relying upon.  Contrary to what Rule 33(d)(1) contemplates and requires, there is no realistic way that Defendants can identify what Plaintiffs rely upon in any portions of or statements in documents listed by Plaintiffs as responsive to Defendants' interrogatories.  To be sure, information viewed as innocuous by Defendants might be viewed as crucial to Plaintiffs' case but, without some indication that a particular fact relied upon by Plaintiffs is significant, Defendants will have no way of intuiting this.  Such a situation is avoided where a responding party extracts evidence from documents produced by the opposing party and provides a statement in writing and under oath that sets out the facts and contentions of the responding party.

In this case, answers to Defendants interrogatories cannot be divined from 176-page lists of documents by Bates numbers with no other information or guidance.  The form of responses here are inappropriate and non-compliant with respect to contention interrogatories. To support the way they responded to the Fifth Set of Interrogatories, Plaintiffs, rely upon *A. R. v. Dudek*, 2015 WL 11143084 at *5 (S.D. Fl. Oct. 9, 2015), and argue that Rule 33(d) refers to "a party's" documents, not just the answering party's production.  (Pls. Opp. at 6).  A full reading of

---

[*] The final sentence was: "<u>A specification shall be in sufficient detail to permit the interrogating party to locate and to identify, as readily as can the party served, the records from which the answer may be ascertained.</u>"  [85 F.R.D. 521, 531 (1980)(emphasis in original)].

*Dudek*, however, suggests an outcome in the instant case unfavorable to Plaintiffs.  In *Dudek* the Magistrate Judge found that the producing party had submitted a spreadsheet and documents that were quite plaintiff fact-specific and contained "detailed narrative answers . . . [and] summarizing its position for each child.  The answers were more than a restatement *in haec verba* of the allegations in the complaint and were relevant to the essential elements of the United States' ADA claim."  (*Id.* at *4).[11]

The Special Master believes that a better reasoned examination of Rule 33(d) is found in a case similar to that presented here. There, Judge Cooper in *U.S. ex rel. Landis v. Tailwind Sports Corp.*, 317 F.R.D. 592, 594-595 (D.D.C. 2016) analyzed Rule 33(d) as follows:

> "[C]ourts have consistently held that [Rule 33(d)] cannot be used with respect to contention interrogatories," like those at issue here. [citation omitted].  This is because "documents normally reveal evidence, not a party's contentions or statement of facts which a party contends supports the complaint." [citation omitted].  "'[T]he legal contentions of a party are not contained in old business records, and so must be explained by counsel.' " [citation omitted].  "'[O]nly [the plaintiff] knows what facts and information it has relied upon to support the allegations made in its complaint.'" [citation omitted].
>
> . . .
>
> [The producing party] has not described the relevant documents "in sufficient detail to enable [the government] to locate and identify them as readily as [he] could." Id. 33(d)(1).  When employing Rule 33(d), a responding party must "specifically identify the documents that contain the answers."  "[M]aking only a general reference to a mass of documents or records" is an abuse of Rule 33(d)(citation omitted).
>
> . . .
>
> Rule 33(d) cannot be used for documents other than "business records." Fed. R. Civ. P. 33(d).  It goes on to list hundreds of other documents by Bates number only.  The Court has no way of knowing whether these

---

[11] In reviewing *Dudek*, the Special Master here looked to the 1970 Advisory Committee Notes which, while referring to the predecessor numbering of the rule but the same language, made clear that the rule applied to the responding party's "own business records."  Nothing in subsequent amendments to Rule 33(d) detracts from this direct guidance of the rule drafters as to what was intended.

faceless materials are business records eligible for <u>Rule 33(d)</u> treatment.[12]

. . .

Finally, "courts and commentators have long agreed that <u>Rule 33(d)</u> applies 'only where the answers to the interrogatories may be found in the business records of the party upon whom the interrogatories have been served.' " *McSwiggin v. Limousine*, No. 2:14–cv–02172–JCM–NJK, 2016 WL 1030053, at *6 (D. Nev. Mar. 10, 2016) (quoting *Calhoun v. Liberty NW. Ins. Corp.*, 789 F. Supp. 1540, 1549–50 (W.D.Wash.1992)); *see also* 1970 Advisory Comm. Note to Fed. R. Civ. P. 33(c) (now 33(d)) ("This is a new subdivision ... relating especially to interrogatories which require a party to engage in burdensome or expensive research into *his own* business records in order to give an answer." (emphasis added)).

Plaintiffs seek to distinguish *Covad Communications*, cited by the Special Master in Amended R&R No. 4, by noting that *Covad* was a commercial dispute in contrast to an antitrust case as here where information will be found in documents.  (Pls. Opp. at 6).  This attempted distinction is not persuasive. Compliance with Rule 33(d) is not defined by the type of case and Plaintiffs have presented no authority to support an argument that Rule 33(d) should be applied differently in a commercial dispute as opposed to an antitrust suit.

Assuming *arguendo* that Plaintiffs may be correct that "facts and evidence of cartelists' misconduct" may be found in "the documents of others" (*id.*), this declaration does not advance the inquiry as to what facts and evidence Plaintiffs are, at this point, relying upon to support their allegations of anti-competitive conduct.  Plaintiffs should know what statements in the documents they are relying upon from documents produced by Defendants to support specific allegations advanced by Plaintiffs – in which case Plaintiffs must identify them.

Responding to the contention interrogatories here does not require Plaintiffs to identify every document in their possession. A Rule 33 compliant response requires Plaintiffs to state clearly and separately under oath the facts that respond to the contention interrogatories. Such a

---

[12] Defendants assert that some of the documents referenced by Plaintiffs as "responsive documents … [are] press releases, SEC filings and trip schedules . . . ." (Defs. Motion at 7). Plaintiffs do not take exception to this assertion.

response may be based upon information derived from documents produced to Plaintiffs by Defendants or third-parties, but the response cannot be a listing of the documents produced by Defendants.

Indeed, requiring Plaintiffs to identify the evidence upon which they rely to support their allegations furthers the purpose of Rule 33.  For example, documents produced by Defendants showing a meeting between two individuals from Defendants' perspective might have been a totally innocent meeting.  From Plaintiffs' perspective, in contrast, that same meeting might be the fulcrum upon which Plaintiffs' theory of anticompetitive behavior pivots. Requiring Plaintiffs to identify the meeting, reflected in documents produced by Defendants, as support for their allegations narrows and focuses the issues in dispute and will make depositions more efficient and focused.

The Special Master does not accept Plaintiffs' argument that providing a list of approximately two thousand documents listed by Bates numbers constitutes "specific[] identif[ication] [of] the documents that contain the answers."  (Pls. Opp. at 7).

Rule 33 does not ask for a list of documents; it asks for answers – separate, clear, written answers. Plaintiffs also assert that "Defendants complain that certain of the documents that Plaintiffs identified in their Appendices, *in [Defendants] view,* do not support the existence of the conspiracy . . . ." [Pls. Opp. at 7)(emphasis in original)].  The issue here is not whether Defendants agree or disagree with evidence Plaintiffs believe support their complaint; rather, it is an issue of what evidence do Plaintiffs rely upon.

The Special Master finds and concludes that Plaintiffs' reliance on Rule 33(d) to justify their use of lists of document produced by Defendants or third-parties without supplying narratives is not consistent with or warranted by Rule 33(d). Whether or not Plaintiffs could point to a part of a specific document which, beyond doubt, provides the answer to a particular

interrogatory is an issue not presented on the briefing here where the issue focused only on a list of approximately two thousand documents.

### 4. Plaintiffs' Incomplete Knowledge

Plaintiffs also argue that their responses are sufficient given Plaintiffs' current knowledge.  Insofar as Plaintiffs' responses are little more than a recitation of document numbers, rather than the full answers in writing under oath required by Rule 33(b)(3), their responses are insufficient and do not reflect any positions of Plaintiffs or facts upon which Plaintiffs rely that can serve to narrow or focus the issues.

The recommendation here that Plaintiffs comply with Rule 33(b)(3), rather than provide only a list of documents, is by definition a requirement that Plaintiffs answer based on their current knowledge.  If Plaintiffs do not have information responsive to any of the Fifth Set of Interrogatories, they may so state in a Rule 33(b)(3) compliant narrative.

To require Plaintiffs to answer the Fifth Set of Interrogatories does not limit Plaintiffs use of evidence discovered in the future.  The Plaintiffs must answer the Fifth Set of Interrogatories based upon the knowledge they have possessed for many months—knowledge which allowed them to create Appendices A-E plus any additional knowledge acquired up until the time the interrogatories are answered.  Should Plaintiffs discover additional responsive evidence after answering the Fifth Set of Interrogatories, they can/must amend or supplement based on the new evidence in compliance with Federal Rule of Civil Procedure 26(e) and its ongoing duty to supplement.[13]

---

[13]  Notably, the Special Master made this same instruction in Amended R&R 4. (*See* 2018 WL 4381070* 4).

*5. Premature Expert Evidence/Testimony[14]*

Plaintiffs object to a number of the interrogatories arguing that they prematurely seek expert opinions or testimony.  (*See* Nos. 22,[15] 29,[16] 30,[17] 33,[18] 34,[19] 35[20] and 38[21]).  The Special Master, however, reads these interrogatories as seeking facts, not expert testimony.  If Plaintiffs do not have any non-expert facts with which to answer these interrogatories, Plaintiffs may so state in a manner compliant with Rule 33(b)(3).

---

[14]  In the face of this objection of Plaintiffs, Defendants in the instant Motion are not pursuing an answer to Interrogatory No. 23.

[15]  Interrogatory No. 22 - Identify each agreement among Defendants "to fix, raise, maintain and/or stabilize prices for air passenger transportation" that did not involve any form of "capacity discipline," as referenced by Your use of the term "*inter alia*" in the first sentence of the third paragraph of Plaintiffs' Supplemental Response to Interrogatory No. 8.

[16]  Interrogatory No. 29 - For each Communication identified in response to Interrogatories 24-28 above, identify each airline route by origin and destination that was a subject of the Communication, the Amount of any Capacity Restriction or Fixed Price on the route(s) that was conveyed in the Communication, and the duration of any Capacity Restriction or Fixed Price on the route(s) that was conveyed in the Communication.

[17]  Interrogatory No. 30 - When did the conspiracy You allege begin and end, and what events marked the beginning and the end of the conspiracy?

[18]  Interrogatory No. 33 - Identify all non-expert evidence that You contend reflects any Capacity Restriction by any Defendant in furtherance or as a result of the alleged conspiracy.

[19]  Interrogatory No. 34 - Identify all non-expert evidence that You contend reflects any Fixed Price by any Defendant in furtherance or as a result of the alleged conspiracy.

[20]  Interrogatory No. 35 - Identify all non-expert evidence that You contend reflects any instruction by any executive of a Defendant to that Defendant's employees to Restrict Capacity or Fix Prices of their company in furtherance of the alleged conspiracy.

[21]  Interrogatory No. 38 - Identify each action taken by any Defendant in furtherance or as a result of the alleged conspiracy that You contend was contrary to that Defendant's independent economic interest, and explain why it was contrary to that Defendant's independent economic interest.

## Plaintiffs' Responses and Objections

In responding to the Fifth Set of Interrogatories, Plaintiffs assert General Responses, General Objections and interrogatory-specific objections.  (Defs. Mot., Damron Decl. Exh. 6). Presumably because of limitations on the length of briefs, not all of Plaintiffs' objections were addressed in their Opposition. The Special Master believes it appropriate to address the objections presented by Plaintiffs in their responses to the Fifth Set of Interrogatories even though some objections were not contained in the text of Plaintiffs' Opposition.

### Definitional Objections

Plaintiffs object to definitions of the following terms used in certain interrogatories (Nos. 19, 20, 21, 22, 24, 25, 26, 27, 28, 29, 31, 32, 33, 34, 35, 36, 37) as vague and ambiguous:

> identify, restrict capacity, capacity restriction, fix prices, fixed price, meet, agreed, agreement, social outing, reached, communication, told, investor, investment analyst, obtain, told, conduit, pursuant, entities, individuals, route, respects, at, participated, reflect, executive, employees, and instruction.

With one exception noted below, the Special Master does not find the words and phrases to which Plaintiffs object to be vague or ambiguous.  The words challenged by Plaintiffs must be examined in the context of the definitions supplied by Defendants, the common meaning of such words and the fact that the case brought by Plaintiffs is an airline travel antitrust case alleging anticompetitive conduct by Defendants in restricting capacity.

As to Plaintiffs' objections to "identify" in Interrogatory Nos. 19-22, 24-29, 32-36, the definitions accompanying the interrogatories separately define "identify" "with respect to" an "agreement," a "communication," and a "meeting, conference, dinner or social outing." (Damron Decl. Exh. 6 Definitions ¶¶ I.10-I.12).  When "identify" is used in the interrogatories noted above to which Plaintiffs raise a vagueness or ambiguity objection, the Special Master finds that the word is not vague or ambiguous when examined in the context of the definitions accompanying the interrogatories.  With respect to "communication," that term is further defined

(*Id.* at Definitions ¶ I.4).  The combined definitions in ¶¶ I.4 and I.11 eliminate any claimed

vagueness or ambiguity.

Plaintiffs object to the terms "restrict capacity," "capacity restriction," "fix prices," and

"fixed price" in Interrogatory Nos. 19-21, 25, 29, 32-35.  These terms are defined in Definitions

¶¶ I.3, I.8-9 and I.16.  When those definitions are applied to the interrogatories at issue, the

Special Master finds and concludes that they are neither vague nor ambiguous.

Plaintiffs object to the term "communication" in Interrogatory Nos. 24-29.  The Special

Master finds that when the term "communication" as used in these interrogatories is read in the

context of the definitions of "communication," "document," and " 'identify' when used with

respect to a 'communication,' (Definitions ¶¶ I.4, I.6 and I.11), the term "communication" is not

vague or ambiguous.

Plaintiffs object to the following terms in Interrogatory Nos. 19-23 and 25 as vague:

"agreed," "social outing," "agreement," "reached," "meeting."  The definitions accompanying

the Interrogatories define "identify" with respect to an "agreement" and a "meeting . . . or social

outing. . . ."  (Definitions ¶¶ I.10 & I.12).  In each instance, the definitions go on to set out other

examples or criteria applicable to such term.  In these circumstances, along with the fact that

"reached" is not a word of technical meaning and is properly defined by its common meaning,

the Special Master finds that the use of these terms is not vague or ambiguous.

Plaintiffs also object to the following terms used in Interrogatory Nos. 23, 25-27, 29, and

31-34 as vague and ambiguous: "airline," "route," "origin," "destination," "told," "investor,"

"investment analyst," "obtain," "pursuant," "respects," "at," "participated," "reflect" and

"instructions."  The Special Master does not agree with Plaintiffs' objection as to these terms.

There is no reason to apply anything other than the common meaning of these terms to their use

in these interrogatories.  Indeed, Plaintiffs' objections to the terms airline, route, origin and

destination are not persuasive, particularly in light of the nature of the instant lawsuit.

As to Interrogatory Nos. 26-27, 31, and 37, Plaintiffs object to the term "conduit" as vague and ambiguous.  As a general matter, the term "conduit" needs to be considered in the context of the definitions of "communication" and "identify when used with respect to a communication."  (Definitions ¶¶ I.4 and I.11).  When considered with those definitions and the common meaning of that term, the term "conduit" is neither vague nor ambiguous.

Moreover, as used in Interrogatory Nos. 31 and 37, those interrogatories ask for more information about two of Plaintiffs' supplemental responses in which Plaintiffs themselves used the term "conduit."  (*See* July 23 Supplemental Response to Interrogatory No. 8 and September 13 Supplemental Response to Interrogatory 11).

Plaintiffs object to the terms "entities" and "individuals" in Interrogatory No. 28.  Both of these terms are defined by Defendants in their Definitions ¶¶ I.7 & I.14.  With those definitions, the Special Master does not find either term vague or ambiguous.

As to Interrogatory Nos. 35-36, Plaintiffs object to the terms "executive" and "employees" as vague.  The Special Master also does not find the term "employees" to be vague. The Special Master does, however, find the term "executive" to be vague.  Within five calendar days of an order of the Court adopting this Report and Recommendation Defendants must specify to Plaintiffs the corporate level at which "executive" begins.

*Intent to Harass*

Plaintiffs object to Interrogatory Nos. 19-22, 26-29, 31-36-38 arguing they are "intended to harass Plaintiffs by diverting their resources from document review and case development."[22] The Special Master has reviewed each of these interrogatories and finds the text of these interrogatories does not support Plaintiff's assertions.  The interrogatories properly seek

---

[22] Damron Decl., Exh. 6 at 7, 9, 11, 13, 21-22, 24, 26, 29, 31, 33, 35, 37, 39, 42, 44.

information as to the bases for the allegations made by Plaintiffs.  Moreover, Plaintiffs have

presented no evidence to support these assertions of harassment.

*Interrogatories Seek Information/Documents in Defendants' Possession*

Plaintiffs object to certain interrogatories (Nos. 19-22, 25-29, 31-37)[23] contending that

they seek "production of documents and/or information that is already within Defendants'

possession or that can be obtained by Defendants from another source that is more convenient,

less burdensome and/or less expensive.*"* (Pls. Opp. at 1).

While the considerations noted by Plaintiffs are important, in this case, Plaintiffs'

responses to the interrogatories (lists of document Bates numbers) detract from the validity of the

responses/objections here.  Although Plaintiffs presumably are correct that the documents

produced by Defendants provide the bases for answering the interrogatories, the manner in which

Plaintiffs chose to use those documents by supplying Bates numbers rather than full, separate

statements under oath was not warranted or permitted by the Rules.

Rule 33(b)(3) requires that each interrogatory be "answered separately and fully in

writing under oath."  For all practical purposes, this was not done by Plaintiffs in response to the

Fifth Set of Interrogatories.

Admittedly, Rule 33(d) provides a responding party to produce business records:

> if the answer may be determined by examining . . . a party's business
> records . . . and if the burden of deriving or ascertaining the answer will be
> substantially the same for either party, the responding party may answer by:
> (1)  Specifying the records that must be reviewed, in sufficient detail to
> enable the interrogating party to locate and identify them as readily as the
> responding party could . . . .

In this case, as set out above, Plaintiffs' reliance on and use of Rule 33(d) does little more

than give Defendants back in response a list of Defendants' documents listed by Bates Number

---

[23] Damron Decl., Exh. 6 at 6-7, 9, 10-11, 13, 18, 22, 26, 29, 31, 33, 34, 37, 39, 42-43, 44.

(Appendices A-E) and does not comply with Rule 33(d). To say that Defendants have access to the same information without telling Defendants how the information answers Defendants' interrogatories is a misuse of Rule 33(d) and not otherwise compliant with the requirements of Rule 33(b)(3).

### Information Already Provided to Defendants

Plaintiffs object to most of the interrogatories (Nos. 19, 20, 21, 22, 24, 25, 26, 27, 28, 29, 30, 31, 31, 33, 34, 35, 36, 37, 38)[24] by asserting that the interrogatories are "duplicative because [they] seek information that has already been provided by Plaintiffs in response to Defendants' Interrogatory Nos. 8-11."

For the reasons set forth above, the Special Master recommends that the Court overrule this objection. Inasmuch as Plaintiffs' responses to Interrogatory Nos. 8-11 are nothing more than a list of Bates numbers for documents produced to Plaintiffs by Defendants or third-parties, Plaintiffs' actions are not compliant with Rule 33(b)(3) or Rule 33(d).

### Numerical Limit on Interrogatories

Plaintiffs object that a number of the interrogatories in the Fifth Set (Nos. 29, 30, 37 and 38) contain multiple subparts which, under Federal Rule of Civil Procedure 33(a)(1), should each be counted as a separate interrogatory. In the Court's Discovery Stipulation and Order each side was authorized to propound "no more than twenty-five (25) . . . contention interrogatories." (ECF No. 160 ¶ III).[25]

---

[24] Damron Decl., Exh. 6 at 8, 9, 11, 13, 16-29, 32, 34-40, 42-44.

[25] Defendants withdrew Interrogatory No. 39 in response to Plaintiffs argument they had exceeded the 25 limit. (*See* Defs. Motion at 4-5).

Federal Rule of Civil Procedure 33(a)(1) expressly recognizes a numerical limit of permitted written interrogatories is complicated by "discrete subparts." In adopting the 1993 change to Rule 33, the Rules Advisory Committee was clear that:

> [p]arties cannot evade this presumptive limitation through the device of joining as "subparts" questions that seek information about discrete separate subjects. However, a question asking about communications of a particular type should be treated as a single interrogatory even though it requests that the time, place, persons present, and contents be stated separately for each such communication.

Implementation and application of the numerical limit in the Rule does not lend itself to a bright-line test. In examining the question of the proper counting of subparts of interrogatories, Judge Facciola ruled that a reviewing court should "look at the way lawyers draft interrogatories and see if their typical approaches threaten the purpose of the rule by putting together in a single question distinct areas of inquiry that should be kept separate." *Banks v. Office of the Senate Sergeant-at-Arms*, 222 F.R.D. 7, 10 (D.D.C. 2004). Another approach he commended was to see "whether each question is subsumed and related to another or whether each question can stand alone and be answered irrespective of the answer to the others. (citation omitted)." (*Id.*). In another matter, Judge Facciola examined interrogatory subparts to see if "a subpart of an interrogatory introduces a line of inquiry that is separate and distinct from the inquiry made by the portion of the interrogatory that precedes it." *Willingham v. Ashcroft*, 226 F.R.D. 57, 59 (D.D.C. 2005).

In *Banks* (222 F.R.D. at 10) Judge Facciola gave an example which provides a useful demonstration on the analysis of interrogatory subparts:

> Lawyers, sensitive to the numerical restriction, also subdivide interrogatories so that after they introduce a topic, they demand to know in detail all the particulars about it, frequently introducing their specific demands with the phrase "including but not limited to." Thus, they may ask their opponent to state whether a particular product was tested and then demand to know when the tests occurred, who performed them, how and where they were conducted and the result. In such a situation, all the questions relate to a single topic, testing, and it would unfair and draconian

to view each of the demands as a separate interrogatory.  This approach ends, however, the moment the interrogatory introduces a new topic that is in a distinct field of inquiry.  Thus, in the "testing" example, asking how the results of the tests were used in any advertising about the product's fitness for a particular purpose would have to be viewed as a separate interrogatory.

Using the guidance outlined by Judge Facciola, the Special Master reviews those interrogatories in the Fifth Set to which Plaintiffs object that counting the subparts causes the total contention interrogatories to exceed the 25 permitted by the Court, i.e., Nos. 29, 30, 37 and 38.

Interrogatory No. 29 - For each Communication identified in response to Interrogatories 24-28 above, identify each airline route by origin and destination that was a subject of the Communication, the Amount of any Capacity Restriction or Fixed Price on the route(s) that was conveyed in the Communication, and the duration of any Capacity Restriction or Fixed Price on the route(s) that was conveyed in the Communication.

Interrogatory Nos. 24-28 sought identification of certain communications.  Interrogatory No. 29, with its subparts, seeks additional information about communications identified earlier.  As such, the Special Master does not find that any new topics have been raised by the subparts of Interrogatory No. 29.  Thus, Interrogatory No. 29 with its subparts should be counted as a single interrogatory.

Interrogatory No. 30 - When did the conspiracy You allege begin and end, and what events marked the beginning and the end of the conspiracy?

All parts of Interrogatory No. 30 deal with the same subject and are properly counted as a single interrogatory.

Interrogatory No. 37 - Explain when and how the following Entities (and which Individuals at these Entities) had knowledge of a conspiracy between Defendants, served as an instrumentality of a conspiracy between Defendants, and/or served as a conduit of a conspiracy between Defendants, as You contend in the fifth paragraph of Plaintiffs' Supplemental Response to Interrogatory No. 11: (a) Air Transportation of America Inc.; (b) Capital Research Global Investors; (c) Capital Research Group; (d) Conquistadores del Cielo; (e) Deutsche Bank Trust Company Americas; and (f) any further Entity identified by You in a supplemental response to Interrogatory No. 11 as having knowledge of a conspiracy between Defendants, serving as an

instrumentality of a conspiracy between Defendants, and/or serving as a
conduit of a conspiracy between Defendants.

Although Interrogatory No. 37 contains several entities about which questions are posed,

this Interrogatory is directed to and based upon Plaintiffs' supplemental responses to

Interrogatory No. 11.  In such circumstances where the Interrogatory at issue seeks additional

information on a single topic albeit directed to several entities identified by Plaintiffs themselves,

the Special Master finds that the numerical limitation in Rule 33(a)(1) is not violated.

> <u>Interrogatory No. 38</u> - Identify each action taken by any Defendant in
> furtherance or as a result of the alleged conspiracy that You contend was
> contrary to that Defendant's independent economic interest, and explain
> why it was contrary to that Defendant's independent economic interest.

This Interrogatory is directed toward actions in which Plaintiffs allege Defendants

engaged and then Plaintiffs' understanding of the impact of any identified action.  The Special

Master finds that this also deals with a single topic and is properly counted as a single

interrogatory.

*Interrogatories Seeking Expert Opinion or Testimony*

Plaintiffs object to a number of the interrogatories arguing that they prematurely seek expert opinions or testimony. [26]  (See Nos. 22,[27] 29,[28] 30,[29] 33,[30] 34,[31] 35[32] and 38[33]).  The Special Master, however, reads these interrogatories as seeking facts, not expert testimony.  If Plaintiffs do not have any non-expert facts with which to answer these interrogatories, Plaintiffs may so state in a manner compliant with Rule 33(b)(3).

---

[26]  In response to Plaintiffs' objection, Defendants in the instant Motion are not pursuing an answer to Interrogatory No. 23.

[27]  Interrogatory No. 22 - Identify each agreement among Defendants "to fix, raise, maintain and/or stabilize prices for air passenger transportation" that did not involve any form of "capacity discipline," as referenced by Your use of the term "*inter alia*" in the first sentence of the third paragraph of Plaintiffs' Supplemental Response to Interrogatory No. 8.

[28]  Interrogatory No. 29 - For each Communication identified in response to Interrogatories 24-28 above, identify each airline route by origin and destination that was a subject of the Communication, the Amount of any Capacity Restriction or Fixed Price on the route(s) that was conveyed in the Communication, and the duration of any Capacity Restriction or Fixed Price on the route(s) that was conveyed in the Communication.

[29]  Interrogatory No. 30 - When did the conspiracy You allege begin and end, and what events marked the beginning and the end of the conspiracy?

[30]  Interrogatory No. 33 - Identify all non-expert evidence that You contend reflects any Capacity Restriction by any Defendant in furtherance or as a result of the alleged conspiracy.

[31]  Interrogatory No. 34 - Identify all non-expert evidence that You contend reflects any Fixed Price by any Defendant in furtherance or as a result of the alleged conspiracy.

[32]  Interrogatory No. 35 - Identify all non-expert evidence that You contend reflects any instruction by any executive of a Defendant to that Defendant's employees to Restrict Capacity or Fix Prices of their company in furtherance of the alleged conspiracy.

[33]  Interrogatory No. 38 - Identify each action taken by any Defendant in furtherance or as a result of the alleged conspiracy that You contend was contrary to that Defendant's independent economic interest, and explain why it was contrary to that Defendant's independent economic interest.

**Conclusion**

For the foregoing reasons, the Special Master recommends the Court grant Defendants'

Motion to Compel Fifth Set of Interrogatories and order Plaintiffs to provide written, narrative

answers under oath to Defendants' Fifth Set of Interrogatories.   The Special Master recommends

these answers be served on Defendants, as well as the Special Master, within 30 calendar days of

a Court order adopting this R&R No. 6


/s/

Date: <u>March 22, 2019</u>
                  _____
                  Hon. Richard A. Levie (Ret.)
                  Special Master