# EXHIBIT A

# UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

| | |
|---|---|
| **IN RE DOMESTIC AIRLINE TRAVEL ANTITRUST LITIGATION** | **MDL Docket No. 2656** <br> **Misc. No. 15-1404 (CKK)** |
| **This Document Relates To:** <br><br> **ALL CASES** | |

## SETTLEMENT AGREEMENT BETWEEN
## PLAINTIFFS AND SOUTHWEST AIRLINES CO.

This Settlement Agreement ("Agreement") is made and entered into as of this 20th day of December 2017 (the "Execution Date") by and between Southwest Airlines Co. ("Southwest") and Plaintiffs (as defined herein at Paragraph 12), both individually and on behalf of a Settlement Class (as defined herein at Paragraph 22) of purchasers of domestic air passenger transportation services.

WHEREAS, Plaintiffs are prosecuting the above-captioned action currently pending and consolidated in the District Court for the District of Columbia, and including all actions transferred for coordination, and all actions currently pending such transfer (including, but not limited to, "tag-along" actions) on their own behalf and on behalf of the Settlement Class against certain Defendant air carriers, including Southwest (the "Action");

WHEREAS, Plaintiffs allege that Southwest participated in an unlawful conspiracy to fix, raise, maintain, and/or stabilize prices for domestic air passenger transportation services within the United States, its territories and the District of Columbia in violation of Sections 1 and 3 of the Sherman Antitrust Act (15 U.S.C. §§ 1, 3), by, *inter alia*, colluding with certain Defendant air carriers to limit capacity on their respective airlines;

WHEREAS, Plaintiffs contend that they and the Settlement Class suffered monetary damages as a result of Southwest's (and the other Defendants') alleged conduct;

WHEREAS, Southwest denies any and all wrongdoing in connection with the claims that have been or could have been alleged against it in the Action and has asserted a number of defenses to Plaintiffs' claims;

WHEREAS, Southwest has agreed to enter into this Agreement solely to avoid

1

the further expense, inconvenience and distraction of burdensome and protracted litigation, and to thereby put to rest with finality this controversy with Plaintiffs and the Settlement Class;

WHEREAS, Plaintiffs' Counsel and Southwest's Counsel have engaged in good faith arm's-length settlement negotiations, and this Agreement has been reached as a result of these negotiations;

WHEREAS, Plaintiffs have concluded that settlement with Southwest on the terms set forth below is the best that is practically attainable, that it is in the best interests of the Settlement Class to enter into this Agreement, and that the Agreement is fair, reasonable, and adequate, and beneficial to and in the best interests of Plaintiffs and the Settlement Class; and,

WHEREAS, the Parties expressly acknowledge that nothing in this Agreement, including payment of the Settlement Amount (as defined herein at paragraph 37), constitutes an admission of liability by Southwest;

NOW, THEREFORE, in consideration of the covenants, agreements, and releases set forth herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, it is agreed by and among the undersigned that the Action be settled, compromised and dismissed on the merits with prejudice as to Southwest only, without costs as to Plaintiffs, the Settlement Class, or Southwest, and subject to the approval of the Court, on the following terms and conditions:

**A.**     **Definitions**

The following terms, as used in this Agreement, have the following meanings:

1.    "Claims Administrator" shall mean the entity engaged by Plaintiffs' Counsel and approved by the Court to disseminate notice and to receive, review, and process claims for payment from the Settlement Fund.

2.    "Class Member" or "Class" shall mean each member of the Settlement Class, as defined in Paragraph 22 of this Agreement, who does not timely elect to be excluded from the Settlement Class, and includes, but is not limited to, Plaintiffs.

3.    "Class Period" shall mean the period from and including July 1, 2011 up to and including the Execution Date.

4.    "Court" shall mean the United States District Court for the District of Columbia.

5.    "Defendants" shall refer to Southwest, American Airlines, Inc., Delta Air Lines, Inc., and United Airlines, Inc.

6.    "Effective Date" shall have the meaning set forth in Paragraph 26 of this Agreement.

7.    "Escrow Account" means the account with the Escrow Agent that holds the Settlement Fund.

8.    "Escrow Agent" means the bank into which the Settlement Fund shall be deposited and maintained as set forth in Paragraph 37 of this Agreement.

9.    "Fairness Hearing" means a hearing on the settlement proposed in this Agreement held by the Court to determine whether the proposed settlement is fair, reasonable, and adequate, and whether it should be finally approved by the Court.

10.    "Non-Settling Defendants" shall refer to Defendants other than Southwest.

11.    "Parties" means Southwest and Plaintiffs.

3

12.   "Plaintiffs" shall mean each of the following proposed named Class representatives:  Boston Amateur Basketball Club; Katherine Rose Warnock; Cherokii Verdozco; Kumar Patel; Samantha White; Seth Lyons; Howard-Sloan Koller Group Inc.; Breanna Jackson; Stephanie Jung; Elizabeth Cumming; and Steven Yeninas.

13.   "Plaintiffs' Counsel" shall refer to the law firms of Hausfeld LLP, 1700 K Street NW, Suite 650, Washington, DC 20006; and Cotchett Pitre & McCarthy LLP, 840 Malcolm Road, Suite 200, Burlingame, CA 94010.

14.   "Releasors" shall have the meaning set forth in Paragraph 32 below.

15.   "Released Parties" shall have the meaning set forth in Paragraph 32 below.

16.   "Released Claims" shall have the meaning set forth in Paragraph 32 below.

17.    "Settlement Neutral" means Nancy Lesser of Pax ADR LLC.

18.   "Settlement Amount" shall have the meaning set forth in Paragraph 37 below.

19.   "Settlement Class" shall have the meaning set forth in Paragraph 22 below.

20.   "Settlement Fund" shall refer to the funds deposited into and accrued in the Escrow Account established in accordance with Paragraph 37 below.

21.   "Southwest's Counsel" shall refer to the law firms of Fine Kaplan and Black, One South Broad Street, Suite 2300, Philadelphia, PA 19107;  Freedman Boyd Hollander Goldberg Urias & Ward P.A., 20 First Plaza, Suite 700, Albuquerque, NM 87102; and Vinson & Elkins L.L.P., 2200 Pennsylvania Avenue, NW, Suite 500 West Washington, DC 20037.

**B.    Settlement Class Certification**

22.   The Parties to this Agreement hereby stipulate for purposes of settlement

only that the requirements of Rules 23(a) and 23(b)(3) of the Federal Rules of Civil

Procedure are satisfied, and, subject to Court approval, the following Settlement Class

shall be certified for settlement purposes as to Southwest only (with the understanding

that, by stipulating to the proposed Settlement Class, Southwest does not agree that Rule

23 requirements are met for purposes of a litigation class):

> All persons and entities that purchased air passenger transportation services
> for flights within the United States and its territories and the District of
> Columbia from Defendants or any predecessor, subsidiary or affiliate thereof,
> at any time between July 1, 2011 and the Execution Date of the Settlement
> with Southwest. Excluded from the class are governmental entities,
> Defendants, any parent, subsidiary or affiliate thereof, Defendants' officers,
> directors, employees, and immediate families, and any judges or justices
> assigned to hear any aspect of this action.

**C.     Approval of this Agreement, Stay of Case Deadlines, and Dismissal of Claims**

23.     Southwest shall cooperate to the extent reasonably necessary in connection

with Plaintiffs' Counsel's motions for preliminary and final approval of the settlement and

related documents necessary to effectuate and implement the terms and conditions of this

Agreement.  Prior to submission of the motions for preliminary approval, notice to the

class and final approval of the settlement and any related documents, Plaintiffs' Counsel

will provide drafts to Southwest for its comments and approval, including the opportunity

to review and comment on the proposed class notice and plan of notice.  Plaintiffs'

Counsel will, in good faith, consider Southwest's comments.

24.     At the time of filing the motion for preliminary approval, or sooner as may

be agreed between the Parties, the Parties shall move the Court to stay all case deadlines

currently applicable to Southwest in the Action, including discovery deadlines.

25.     Plaintiffs shall, following entry by the Court of an Order granting

preliminary approval ("Preliminary Approval") of this Settlement and dissemination of

notice to the Settlement Class, seek entry of an order granting final approval and entering

final judgment in a form to be agreed upon by the Parties which shall:

      a.     approve finally this Agreement and its terms as being a fair, reasonable, and adequate settlement as to the Settlement Class Members within the meaning of Rule 23 of the Federal Rules of Civil Procedure and directing its consummation according to its terms;

      b.     determine that the Class Notice constituted, under the circumstances, the most effective and best practicable notice of this Agreement and of the Fairness Hearing, and constituted due and sufficient notice for all other purposes to all persons entitled to receive notice;

      c.     confirm the appointment of Plaintiffs as class representatives and Plaintiffs' Counsel as Settlement Class Counsel;

      d.     direct that, as to Southwest, the Action be dismissed with prejudice and, except as explicitly provided for in this Agreement, without costs;

      e.     reserve to the United States District Court for the District of Columbia exclusive jurisdiction over the settlement and this Agreement, including the administration and consummation of this settlement;

      f.     determine under Federal Rule of Civil Procedure 54(b) that there is no just reason for delay, and directing that the final judgment of dismissal as to Southwest shall be entered; and

      g.     require Plaintiffs' Counsel to file with the Clerk of the Court a record with the names and addresses of Class Members who timely exclude themselves from the Settlement Class, and provide a copy of the record to Southwest's Counsel.

26.    This Agreement shall become final only upon the expiration of the time for

appeal or to seek permission to appeal from the Court's final approval of this Agreement

and entry of the final judgment or, if an appeal from a final approval and final judgment

is taken, the affirmance of such final judgment in its entirety, without modification, by

the court of last resort to which an appeal of such final judgment may be taken (the

"Effective Date"). It is agreed that neither the provisions of Rule 60 of the Federal Rules

of Civil Procedure nor the All Writs Act, 28 U.S.C. § 1651, shall be taken into account in

determining if the Effective Date has occurred.  The Agreement shall not be rescinded except in accordance with Paragraphs 56-58 of this Agreement.

27.    This Agreement is contingent upon preliminary approval by the Court within forty five (45) days of filing of the motion for preliminary approval.  Absent preliminary approval, the settlement and the Memorandum of Understanding ("MOU") executed between the Parties on November 20, 2017 are null and void and any and all amounts constituting the Escrow Account (including, but not limited to, any fees, costs, and/or expenses advanced to Class Counsel with the exception of the reasonable costs of notice approved by the Court) shall be returned forthwith to Southwest, plus accrued interest.

**D.    Notice of Settlement to Class Members**

28.    Plaintiffs' Counsel shall take all necessary and appropriate steps to ensure that notice of this Settlement Agreement and the date of the hearing scheduled by the Court to consider the fairness, adequacy, and reasonableness of this Agreement are provided in accordance with the Federal Rules of Civil Procedure and any Court orders. Notice will be issued after preliminary approval by the Court and subject to any Court orders regarding the content and means of dissemination of notice.

29.    For purposes of effectuating notice, Southwest has provided in its transactional data email addresses of its customers to the extent it maintains email addresses in the ordinary course of business.  Plaintiffs shall use the email addresses for notice (or claims allocation) and for no other purpose.

30.    Subject to Court approval, disbursements for any payments and expenses incurred in connection with the costs of notice and administration of the Agreement by

the Claims Administrator shall be made from the Escrow Account upon written notice to the Escrow Agent by Plaintiffs' Counsel of such payments and expenses.

31.    If notice of the Agreement is combined with dissemination of notice of other settlement agreements, the costs of the combined notice and settlement administration shall be apportioned by Plaintiffs' Counsel subject to approval of the Court.

### E.    Release and Discharge

32.    Upon the Effective Date, all members of the Settlement Class, on behalf of themselves and their respective past, present, direct and indirect parents, subsidiaries, affiliates, predecessors and successors, and their past and present officers, directors, employees, agents, insurers, attorneys, shareholders, joint venturers, partners, and representatives, as well as the predecessors, successors, heirs, executors, administrators, and assigns of each of the foregoing ("Releasors") shall be deemed to have, and by operation of the Final Order and Judgment, shall have, fully, finally and forever, released and discharged Southwest, its past and present, direct and indirect parents, subsidiaries, affiliates, predecessors and successors, and their past and present officers, directors, employees, agents, insurers, attorneys, shareholders, joint venturers, partners and representatives, as well as the predecessors, successors, heirs, executors, administrators, and assigns of each of the foregoing ("Released Parties") from all claims, actions, causes of action, lawsuits, damages, liabilities, costs, expenses, whether class or individual in nature, whether known or unknown, foreseen or unforeseen, existing in the past, existing in the present or arising in the future, that were or could have been alleged in this Action ("Released Claims").  To avoid any ambiguity, the Parties agree that the release of claims

shall be to the fullest extent allowed by law, limited only by the identical factual

predicate doctrine.  Each Releasor hereby covenants and agrees that he, she, or it shall

not, hereafter, assert a claim or otherwise seek to establish liability against any Released

Party based in whole or in part on any Released Claims.

33.     In addition, each Releasor hereby expressly waives and releases, upon this

Settlement Agreement becoming final, any and all provisions, rights, or benefits

conferred by section 1542 of the California Civil Code, which provides:

> A general release does not extend to claims which the creditor does not
> know or suspect to exist in his or her favor at the time of executing the
> release, which if known by him or her must have materially affected his or
> her settlement with the debtor

and any law of any state or territory of the United States, or principle of common law,

which is similar, comparable or equivalent to section 1542 of the California Civil Code.

Each member of the Settlement Class may hereafter discover facts other than or different

from those which he, she or it knows or believes to be true with respect to the Released

Claims.  Nevertheless, each member of the Settlement Class hereby expressly waives and

fully, finally and forever settles and releases, upon this settlement becoming final, the

Released Claims, whether any Released Claim is known or unknown, suspected or

unsuspected, contingent or non-contingent, concealed or hidden, without regard to the

subsequent discovery or existence of such different or additional facts.  Each Releasor

further forever waives and relinquishes any and all rights and benefits existing under any

law or principle of law in any jurisdiction that would limit or restrict the effect or scope

of the provisions of the release set forth above without regard to the subsequent discovery

or existence of other or different facts.

34.     The Releases set forth herein shall not release any claims, whether

pending or not, whether known or unknown, for product liability, personal injury, breach

of warranty, breach of contract, violation of the Uniform Commercial Code or any other

claims that were not or could not have been alleged in the Action whatsoever that are not

related to the subject matter of the Complaint.

35.     Each Plaintiff and each Settlement Class Member who submits a claim to

participate in the distribution of the Settlement Fund shall represent and warrant that his,

her or its portion of the Released Claims is his, her or its property and he, she or it has not

assigned or transferred to any person or entity any right to recovery for any claim or

potential claim that would otherwise be released under this Agreement. Each Plaintiff

and each Settlement Class Member who submits a claim to participate in the distribution

of the Settlement Fund shall further represent and warrant that each of them has a valid

and existing right to release such claims and is releasing such claims pursuant to his, her

or its membersip in the Settlement Class.

36.     Upon the Effective Date, Southwest shall release Plaintiffs, Settlement

Class members, and their counsel from any claims relating to the institution, prosecution

or settlement of the pending Action except for claims arising out of breach or

enforcement of this Agreement.

**F.      Payment**

37.     Southwest shall pay or cause to be paid fifteen million dollars

($15,000,000) (the "Settlement Amount") in settlement of the Action. The Settlement

Amount shall be wire transferred by Southwest or its designee to the Bank designated as

Escrow Agent by Plaintiffs' Counsel within ten (10) business days of entry of an order

by the Court granting preliminary approval of the settlement.

38.     The Parties expressly agree that under no circumstances whatsoever shall Southwest be responsible for paying any monies, benefits, costs, administrative costs, expenses, or attorneys' fees in settlement of this Action other than as expressly provided for by this Agreement, nor will Southwest be required to take any action or incur any liability except as expressly provided by this Agreement.

39.     Each Settlement Class Member shall look solely to the Settlement Fund for settlement and satisfaction, as provided herein, of all claims released by the Releasors pursuant to this Agreement.

## G.     Allocation of Settlement Fund

40.     The allocation of the Settlement Fund among the Settlement Class shall be subject to a plan of allocation to be proposed by Plaintiffs' Counsel and approved by the Court. Southwest will take no position with respect to such proposed plan of allocation or such plan as may be approved by the Court. Southwest also will have no involvement in the claims process.

41.     Southwest shall not have any responsibility, financial obligation, or liability whatsoever with respect to the investment, distribution, use or administration of the Escrow Account, including, but not limited to, the costs and expenses of such investment, distribution, use, or administration.

## H.     Plaintiffs' Counsel's Fees and Expenses

42.     Plaintiffs' Counsel's attorneys' fees and expenses, as awarded by the District Court, shall be paid from the Escrow Account, immediately upon the entry of the order by the District Court awarding such amounts ("Fee and Expense Award"), notwithstanding the existence of any timely filed objections thereto, or potential for

11

appeal therefrom, or collateral attack on the settlement or any part thereof, subject to

Plaintiffs' Counsel's joint and several obligation to repay those amounts to the Escrow

Account, plus accrued interest at the same net rate as is earned by the Escrow Account,

and subject to an appropriate undertaking, if and when, as a result of any appeal and

further proceedings on remand, or successful collateral attack, the Fee and Expense

Award is reduced or reversed, or return of the Escrow Account is required.

43.    If there is any payment of attorneys' fees or reimbursement of expenses

advanced by Plaintiffs' Counsel prior to the Effective Date, any attorneys, individuals or

firms receiving payment shall provide letters of credit from nationally chartered banks

payable to Southwest sufficient to secure any repayment obligations of those attorneys,

individuals or firms.  In the event the Fee and Expense Award is reduced or reversed or

return of the Escrow Account is otherwise required, Plaintiffs' Counsel shall, within ten

(10) business days from the event which requires repayment of the Fee and Expense

Award, refund to the Escrow Account the Fee and Expense Award paid to them, plus

accrued interest at the same net rate as is earned by the Escrow Account.

44.    Southwest will take no position on Plaintiffs' Counsel's request for

attorneys' fees and expenses, the appropriateness of any such award by the Court, or the

timing of payment to Plaintiffs' Counsel.  Plaintiffs' Counsel may, at a time approved by

the Court, seek an award of attorneys' fees and reasonable litigation expenses and

incentive awards for class representatives approved by the Court, to be paid out of the

Escrow Account after the final approval of the Agreement.

**I.     Cooperation**

45.    Southwest shall provide cooperation in accordance with the terms and

provisions of this Agreement.

46.  Applicable Protections

a.  Nothing in this Agreement shall impose on Southwest an obligation to produce or provide any materials or information protected from disclosure by the attorney-client privilege, attorney work-product doctrine, common interest doctrine, joint defense privilege, and/or any other applicable privilege or protection.  No materials or information protected by the joint defense privilege will be produced or provided pursuant to this Agreement.  In addition, any documents or other information provided by Southwest pursuant to its cooperation obligations shall be governed by the operative Protective Order entered in the Action.

b.  Any proffers, counsel inquiries, or witness interviews provided prior to the Effective Date shall be treated as confidential Rule 408 settlement communications unless otherwise ordered by the Court.

c.  Southwest's cooperation obligations shall apply only to Releasors who act with, by or through Plaintiffs' Counsel pursuant to this Agreement in this Action.

47.  Industry Background

a.  Within ten (10) business days of entry of an order granting preliminary approval of the settlement, or by an alternative date agreed to by the Parties, Southwest's Counsel shall facilitate an informational meeting or meetings between Plaintiffs' Counsel and an industry expert

regarding the domestic air transportation industry, including issues related to market conditions, competition, capacity, pricing, costs, data, revenue management, and other business operations. Southwest will pay for up to sixteen (16) hours of the industry expert's time. Within ten (10) business days of the meetings described in this paragraph, or by an alternative date agreed to by the Parties, Southwest's Counsel will meet with Plaintiffs' Counsel at a mutually agreeable time and place to supplement the information provided by the industry expert.

b. Southwest may, upon reasonable request by Plaintiffs' Counsel after the meeting(s) with the industry expert, make available for an informational meeting or meetings with Plaintiffs' Counsel an employee or employees of Southwest with expertise in the topics set forth in Paragraph 47 (a) to provide information regarding those topics. Such meeting(s) shall not count against the witness interviews provided for in Paragraph 52.

48. Proffers

a. As soon as possible after preliminary approval of this Agreement but no later than ten (10) business days after such approval, or at an alternative date agreed to by the Parties, Southwest's Counsel will meet with Plaintiffs' Counsel at a mutually agreeable time and place to provide a full account of facts then known to Southwest that are relevant to the claims asserted in the Action, including, but not limited

to, facts related to the alleged conduct, the specific locations and dates

of and participants in meetings and communications relating to the

alleged conduct, the alleged conduct's effect on pricing and

profitability in the domestic air transportation industry, the identities of

persons that have knowledge of facts related to the alleged conduct,

including current and former employees of Southwest, the other

Defendants, and third parties, and the role of institutional investors

and analysts in the domestic air transportation industry.

b.  Southwest's Counsel will supplement this proffer session with an

additional session or sessions as they may gain more information.

49.  Counsel Inquiries:  Southwest's Counsel will use good faith best efforts to

respond to reasonable follow-up inquiries of Plaintiffs' Counsel throughout the duration

of this Action related to the subjects of the industry background set forth in Paragraph

47(a) above and proffers set forth in Paragraph 48 above, including to produce further

information relating thereto and a reasonable number of documents responsive to targeted

requests relating thereto.

50.  Transactional Data

a.  The Parties recognize and agree that Southwest has already produced

voluminous transactional data (customer-level data concerning flights

and prices).  If Plaintiffs identify any missing transactional data from

this production, Southwest will use good faith best efforts to produce

relevant and reasonably accessible responsive transactional data;

b.  Southwest shall use its good faith best efforts to produce, in native

format, reports containing information as in

SWA_MDL_DOJ_868158 for each month during the period January

1, 2006 through December 31, 2016, to the extent available; and

c. Southwest shall use its good faith best efforts to make available, by

phone, videoconference, or in person in Dallas, Texas, its current

personnel or in-house experts at reasonable times, to assist Plaintiffs'

Counsel in understanding Southwest's transactional data.

51. <u>Documents</u>

a. Within a reasonable amount of time following the request, Southwest

shall produce documents as set forth in Paragraph 50 above;

b. Within ten (10) business days of the applicable proffer(s) and witness

interview(s), unless otherwise agreed by the Parties, Southwest shall

produce reasonably accessible specific documents identified or relied

upon in the proffers described in Paragraph 48 above and the witness

interviews described in Paragraph 52 below.   For purposes of clarity,

the term "document" is defined to be synonymous in meaning and

equal in scope to the usage of the term "documents or electronically

stored information" in Fed. R. Civ. P. 34(a)(1)(A);  and

c. As applicable and upon request, Southwest shall use its good faith best

efforts to produce a business record and authenticity declaration as to

documents produced by Southwest pursuant to its prior discovery

obligations, this Settlement Agreement, or any other process.

52. <u>Interviews, Depositions, Declarations, and Affidavits</u>

a. Southwest shall make current employees of Southwest and former employees of Southwest represented by Southwest's Counsel available by phone, videoconference, or in person in Dallas, Texas, at Plaintiffs' Counsel's discretion, for interviews, depositions, declarations, and affidavits as follows:

   i. At Southwest's expense, Southwest shall use its good faith best efforts to make available for interviews with Plaintiffs' Counsel and/or their experts up to seven (7) current Southwest employees at the Vice President level or lower or former Southwest employees at the Vice President level or lower represented by Southwest's Counsel, as designated by Plaintiffs' Counsel. To the extent a former employee refuses to participate in any such interview, notwithstanding Southwest's good faith best efforts to secure participation, that individual shall not count against Plaintiffs' total of seven (7) interviewees.  Any interviews conducted pursuant to this subsection shall be limited to five (5) hours of interview time (excluding breaks).

   ii. Southwest shall use its good faith best efforts to make available up to three (3) current Southwest employees at the Vice President level or lower or former Southwest employees at the Vice President level or lower represented by Southwest's Counsel, as designated by Plaintiffs' Counsel, to provide deposition testimony in the Action. Any depositions conducted pursuant to this subsection shall be

limited to a single day of seven (7) hours of testimony, inclusive of examination by any parties other than Plaintiffs.

iii.   Southwest shall use its good faith best efforts to make available up to two (2) current Southwest employees at the Vice President level or lower or former Southwest employees at the Vice President level or lower represented by Southwest's Counsel, as designated by Plaintiffs' Counsel, to provide a declaration or affidavit.

iv.   With respect to senior executive management (above Vice-President level), Southwest, at a time mutually agreeable to the parties but in all events prior to the close of fact discovery, will provide information gathered from those senior executives through an attorney proffer session(s).  At a later date, and upon Plaintiffs' request, Southwest will undertake good faith best efforts to provide information in an admissible evidentiary format (via affidavit/declaration or otherwise) in response to a reasonable number of targeted, specific requests for particular information.

v.   At Plaintiffs' Counsel's request, and for good cause, Southwest will meet and confer regarding additional interviews, depositions, declarations, and/or affidavits.

vi.   To the extent Plaintiffs otherwise interview or take the deposition of any former Southwest employee that is represented by Southwest's Counsel (excluding former employees currently employed by another Defendant in the Action), any such interview or deposition

shall count against the interview, deposition, declaration, and affidavit limits set forth above.

b. Southwest will use its good faith best efforts to make current Southwest employees and former Southwest employees represented by Southwest's Counsel available to provide declarations, certifications, or affidavits regarding the authentication of documents, including their certification as records of a regularly conducted activity pursuant to Fed. R. Evid. 803(6) (such declarations, certifications, and/or affidavits shall not count towards those permitted pursuant to (a) above).

53.   Testimony at Trial: Southwest shall use its good faith best efforts to make available for testimony at trial in the Action one (1) then-current Southwest employee at the Vice President level or lower designated by Plaintiffs' Counsel who possesses information, based on Plaintiffs' Counsel's good faith belief, that would assist Class Plaintiffs in the trial of the Class Plaintiffs' claims as alleged in the Action.

54.   Continuation, Scope, and Termination of Southwest's Cooperation Obligations: Southwest's obligations to cooperate under this Agreement shall terminate upon the earlier of: (a) the date on which an order by the Court denying preliminary approval of the settlement is entered; (b) the date on which an order by the District Court denying final approval of the settlement is entered; (c) the date when final judgment has been rendered, with no remaining rights of appeal, in the Action against all Defendants; and (d) seven (7) years after the Court enters the preliminary approval order. If the Court does not grant final approval of the Settlement Agreement and either party files an appeal from such an Order, the parties shall both cooperate on the appeal to seek approval of the

Settlement Agreement by the Court of Appeals.

55.   Dispute Resolution:  In the event of a disagreement between Southwest and Plaintiffs' Counsel with respect to any cooperation obligation, the Parties will seek resolution from the Settlement Neutral, if necessary.  Any decision by the Settlement Neutral shall be binding on the Parties.

**J.      Rescission**

56.   If the Court refuses to give final approval to this Agreement or if such approval is modified or set aside on appeal, or if the Court does not enter the final judgment provided for in Paragraph 25 of this Agreement, or if the Court enters the final judgment and appellate review is sought, and on such review, such final judgment is not affirmed, then Southwest and Plaintiffs shall each, in their sole discretion, have the option to rescind this Agreement in its entirety within ten (10) business days of the action giving rise to such option.  If this Agreement is rescinded, within ten (10) business days of the later of the written notice of rescission to Plaintiffs' Counsel and the Escrow Agent and Southwest's written instructions to the Escrow Agent, the $15 million Settlement Fund and any accrued interest, less only the cost of notice authorized pursuant to this Agreement and Court Order, shall be wire transferred to Southwest, pursuant to its instructions.

57.   If this Agreement does not become final as provided for in paragraph 26, , Plaintiffs' Counsel and Southwest agree that this Agreement, including its exhibits, and any and all negotiations, documents, information, and discussions associated with it shall be without prejudice to the rights of Southwest or Plaintiffs, shall not be deemed or construed to be an admission or denial, or evidence or lack of evidence of any violation

of any statute or law or of any liability or wrongdoing, or of the truth or falsity of any of the claims or allegations made in this Action in any pleading, and shall not be used directly or indirectly, in any way, whether in this Action or in any other proceeding. The Parties specifically agree that Southwest's stipulation to a Settlement Class shall not be used or relied upon by Plaintiffs in support of certification of a litigation class. Plaintiffs reserve their rights to use any documents or depositions that Southwest provided pursuant to its cooperation obligations under this Agreement, but only if both parties agree that such documents or depositions would have been obtainable by separate and independent discovery served on Southwest under the Federal Rules of Civil Procedure.

58.    Plaintiffs' Counsel further agree that, in the event of rescission, the originals and all copies of any notes, memos or records related to the cooperation obligations pursuant to paragraphs 45-54 shall be returned to Southwest at Southwest's expense or destroyed by Plaintiffs' Counsel at their own expense, provided however that such attorney notes, memoranda or records may be destroyed rather than returned if an affidavit of such destruction is promptly provided by Plaintiffs' Counsel to Southwest's Counsel.

**K.    Dispute Resolution**

59.    Any dispute arising out of the finalization of the settlement documentation (or this Settlement Agreement) will be resolved by the Settlement Neutral. Any decision by the Settlement Neutral shall be binding on the Parties.

**L.    Taxes**

60.    Plaintiffs' Counsel shall be solely responsible for directing the Claims Administrator to file all informational and other tax returns necessary to report any

taxable and/or net taxable income earned by the Settlement Fund.  Further, Plaintiffs'
Counsel shall be solely responsible for directing the Escrow Agent to make any tax
payments, including interest and penalties due, on income earned by the Settlement
Fund ("Tax Expenses").  Plaintiffs' Counsel shall be entitled to direct the Escrow Agent
in writing to pay customary and reasonable Tax Expenses, including reasonable
professional fees and expenses incurred in connection with carrying out their
responsibilities as set forth in this Paragraph, from the applicable Settlement Fund by
notifying the Escrow Agent in writing.  Southwest shall have no responsibility to make
any tax filings or tax payments relating to this Agreement or the Settlement Fund.

61.     For the purpose of § 468B of the Internal Revenue Code of 1986, as
amended, and the regulations promulgated thereunder, the "Administrator" of the
Settlement Amount shall be the Claims Administrator, who shall timely and properly
file or cause to be filed on a timely basis, all tax returns necessary or advisable with
respect to the Settlement Fund (including, without limitation, all income tax returns, all
informational returns, and all returns described in Treas. Reg. § 1.468B 2(1)).

62.     The Parties to this Agreement and their Counsel shall treat, and shall cause
the Claims Administrator to treat, the Settlement Fund as being at all times a "qualified
settlement fund" within the meaning of Treas. Reg. § 1.468B 1.  In addition, the Claims
Administrator and, as required, the parties, shall timely make such elections as necessary
or advisable to carry out the provisions of this Paragraph, including the "relation-back
election" (as defined in Treas. Reg. § 1.468B 1(j)) back to the earliest permitted date.
Such elections shall be made in compliance with the procedures and requirements
contained in such regulations.  It shall be the responsibility of the Claims Administrator

22

to timely and properly prepare and deliver the necessary documentation for signature by all necessary parties and thereafter to cause the appropriate filing to occur. All provisions of this Agreement shall be interpreted in a manner that is consistent with the Settlement Fund being a "qualified settlement fund" within the meaning of Treas. Reg. § 1.468B 1.

**M.    Miscellaneous**

63.    This Agreement does not settle or compromise any claim by Plaintiffs or any Settlement Class Member asserted in the Action against any Non-Settling Defendant or any potential defendant other than the Released Parties. All rights of any Class Member against Non-Settling Defendants or any other person or entity other than the Released Parties are specifically reserved by Plaintiffs and the Settlement Class Members. The sales of domestic air passenger transportation services by Southwest to Class Members shall remain in the case against the Non-Settling Defendants in the Action as a basis for damage claims and shall be part of any joint and several liability claims against Non-Settling Defendants in the Action or other persons or entities other than the Released Parties.

64.    The United States District Court for the District of Columbia shall retain jurisdiction over the implementation, enforcement, and performance of this Agreement, and shall have exclusive jurisdiction over any suit, action, proceeding, or dispute arising out of or relating to this Agreement or the applicability of this Agreement, subject to the dispute resolution provisions set forth above in paragraphs 55 and 59. This Agreement shall be governed by and interpreted according to the substantive laws of the District of Columbia without regard to its choice of law or conflict of laws principles. Southwest

23

submits to the jurisdiction of the District of Columbia only for the purposes of adjudicating the implementation, enforcement, and performance of this Agreement. Southwest otherwise retains all defenses to the Court's exercise of personal jurisdiction over Southwest.

65.     This Agreement constitutes the entire agreement among Plaintiffs (and the other Releasors) and Southwest (and the other Released Parties) pertaining to the settlement of the Action against Southwest only, and supersedes any and all prior and contemporaneous undertakings of Plaintiffs and Southwest in connection therewith, including the MOU executed on November 20, 2017.  In entering into this Agreement, Plaintiffs and Southwest have not relied upon any representation or promise made by Plaintiffs or Southwest not contained in this Agreement.  This Agreement may be modified or amended only by a writing executed by Plaintiffs and Southwest and approved by the Court.

66.     This Agreement shall be binding upon, and inure to the benefit of, the successors and assigns of Releasors and Released Parties.  Without limiting the generality of the foregoing:  (a) each and every covenant and agreement made herein by Plaintiffs or Plaintiffs' Counsel shall be binding upon all Settlement Class Members and Releasors; and (b) each and every covenant and agreement made herein by Released Parties shall be binding upon all Released Parties.

67.     This Agreement may be executed in counterparts by Plaintiffs' Counsel and Southwest's Counsel, and an electronically-scanned (in either .pdf or .tiff format) signature will be considered an original signature for purposes of execution of this Agreement.

68.     The headings in this Agreement are included for convenience only and shall not be deemed to constitute part of this Agreement or to affect its construction.

69.     In the event this Agreement is not approved, or in the event that the Order and final judgment approving the settlement is entered but is reversed, modified, or vacated, the pre-settlement status of this Action (including, without limitation, any applicable tolling of all statutes of limitations) shall be restored, and the Agreement shall have no effect on the rights of Plaintiffs or Southwest to prosecute or defend the pending Action in any respect, including the right to litigate fully the issues related to class certification, raise personal jurisdictional defenses, or any other defenses, which rights are specifically and expressly retained by Southwest.

70.     Neither Southwest nor Plaintiffs, nor any of them, shall be considered to be the drafter of this Agreement or any of its provisions for the purpose of any statute, case law, or rule of interpretation or construction that would or might cause any provision to be construed against the drafter of this Agreement.

71.     Nothing expressed or implied in this Agreement is intended to or shall be construed to confer upon or give any person or entity other than Class Members, Releasors, Southwest, and Released Parties any right or remedy under or by reason of this Agreement.

72.     Any putative Class Member that does not opt out of the Settlement Class created pursuant to the Agreement may remain in the Class without prejudice to the right of such putative Class Member to opt out of any future settlement class or certified litigation class in the Action.

73.     Where this Agreement requires any party to provide notice or any other

communication or document to any other party, such notice, communication, or

document shall be provided by electronic mail or overnight delivery to:

<u>For the Settlement Class</u>:
Michael Hausfeld
Hausfeld LLP
1700 K Street NW, Suite 650
Washington, DC 20006
mhausfeld@hausfeld.com

<u>For Southwest</u>:
Roberta Liebenberg
Fine Kaplan and Black
One South Broad Street, Suite 2300
Philadelphia, PA 19107
rliebenberg@finekaplan.com

74.   Each of the undersigned attorneys represents that he or she is fully

authorized to enter into the terms and conditions of, and to execute, this Agreement,

subject to Court approval.

Dated: December 2017

By: _____

Michael D. Hausfeld
Hilary K. Scherrer
Jeannine M. Kenney
**HAUSFELD, LLP**
1700 K Street NW, Suite 650
Washington, DC 20006
Telephone: (202) 540-7200

By: _____

Steven N. Williams
Adam J. Zapala
Joyce Chang
**COTCHETT, PITRE & McCARTHY, LLP**
840 Malcolm Road, Suite 200
Burlingame, CA 94010
Telephone: (650) 697-6000

*Plaintiffs' Counsel*

By: _____

Roberta D. Liebenberg
Matthew Duncan
**FINE KAPLAN AND
BLACK**
One South Broad Street, Suite 2300
Philadelphia, PA 19107
Telephone: (215) 567-6565

By: _____

Joseph Goldberg
**FREEDMAN BOYD HOLLANDER
GOLDBERG URIAS & WARD P.A.**
20 First Plaza, Suite 700
Albuquerque, NM 87102
Telephone: (505) 842-9960

*Counsel for Southwest Airlines Co.*

Dated:  December ___, 2017

By: _____

Michael D. Hausfeld
Hilary K. Scherrer
Jeannine M. Kenney
**HAUSFELD, LLP**
1700 K Street NW, Suite 650
Washington, DC 20006
Telephone: (202) 540-7200

By: _____

Steven N. Williams
Adam J. Zapala
Joyce Chang
**COTCHETT, PITRE & McCARTHY, LLP**
840 Malcolm Road, Suite 200
Burlingame, CA 94010
Telephone: (650) 697-6000

*Plaintiffs' Counsel*

By: _____

Roberta D. Liebenberg
Matthew Duncan
**FINE KAPLAN AND BLACK**
One South Broad Street, Suite 2300
Philadelphia, PA 19107
Telephone: (215) 567-6565

By: _____

Joseph Goldberg
**FREEDMAN BOYD HOLLANDER
GOLDBERG URIAS & WARD P.A.**
20 First Plaza, Suite 700
Albuquerque, NM 87102
Telephone: (505) 842-9960

*Counsel for Southwest Airlines Co.*

# EXHIBIT
# B

UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | |
|---|---|
| IN RE DOMESTIC AIRLINE TRAVEL ANTITRUST LITIGATION | MDL Docket No. 2656 Misc. No. 15-1404 (CKK) |
| This Document Relates To: ALL CASES | |

SETTLEMENT AGREEMENT BETWEEN
PLAINTIFFS AND AMERICAN AIRLINES, INC.

This Settlement Agreement ("Agreement") is made and entered into as of this 14th day of June 2018 (the "Execution Date") by and between American Airlines, Inc. ("American") and Plaintiffs (as defined herein at Paragraph 12), both individually and on behalf of a Settlement Class (as defined herein at Paragraph 22) of purchasers of domestic air passenger transportation services.

WHEREAS, Plaintiffs are prosecuting the above-captioned action currently pending and consolidated in the District Court for the District of Columbia, and including all actions transferred for coordination, and all actions currently pending such transfer (including, but not limited to, "tag-along" actions) on their own behalf and on behalf of the Settlement Class against certain Defendant air carriers, including American (the "Action");

WHEREAS, Plaintiffs allege that American participated in an unlawful conspiracy to fix, raise, maintain, and/or stabilize prices for domestic air passenger transportation services within the United States, its territories and the District of Columbia in violation of Sections 1 and 3 of the Sherman Antitrust Act (15 U.S.C. §§ 1, 3), by, *inter alia*, colluding with certain Defendant air carriers to limit capacity on their respective airlines;

WHEREAS, Plaintiffs contend that they and the Settlement Class suffered monetary damages as a result of American's (and the other Defendants') alleged conduct;

WHEREAS, American denies any and all wrongdoing in connection with the claims that have been or could have been alleged against it in the Action and has asserted a number of defenses to Plaintiffs' claims;

WHEREAS, American has agreed to enter into this Agreement solely to avoid the further expense, inconvenience, and distraction of burdensome and protracted litigation, and to thereby put to rest with finality this controversy with Plaintiffs and the Settlement Class;

WHEREAS, Plaintiffs' Counsel and American's Counsel have engaged in good faith arm's-length settlement negotiations, and this Agreement has been reached as a result of these negotiations;

WHEREAS, Plaintiffs have concluded that settlement with American on the terms set forth below is the best that is practically attainable, that it is in the best interests of the Settlement Class to enter into this Agreement, and that the Agreement is fair, reasonable, and adequate, and beneficial to and in the best interests of Plaintiffs and the Settlement Class; and,

WHEREAS, the Parties expressly acknowledge that nothing in this Agreement, including payment of the Settlement Amount (as defined herein at paragraph 37), constitutes an admission of liability by American;

NOW, THEREFORE, in consideration of the covenants, agreements, and releases set forth herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, it is agreed by and among the undersigned that the Action be settled, compromised, and dismissed on the merits with prejudice as to American only, without costs as to Plaintiffs, the Settlement Class, or American, and subject to the approval of the Court, on the following terms and conditions:

**A.    Definitions**

The following terms, as used in this Agreement, have the following meanings:

1.    "Claims Administrator" shall mean the entity engaged by Plaintiffs' Counsel and approved by the Court to disseminate notice and to receive, review, and process claims for payment from the Settlement Fund.

2.    "Class Member" or "Class" shall mean each member of the Settlement Class, as

defined in Paragraph 22 of this Agreement, who does not timely elect to be excluded from the

Settlement Class, and includes, but is not limited to, Plaintiffs.

3.    "Class Period" shall mean the period from and including July 1, 2011 up to and

including the Execution Date.

4.    "Court" shall mean the United States District Court for the District of Columbia.

5.    "Defendants" shall refer to American, Southwest Airlines Co., Delta Air Lines, Inc.,

and United Airlines, Inc.

6.    "Effective Date" shall have the meaning set forth in Paragraph 26 of this

Agreement.

7.    "Escrow Account" means the account with the Escrow Agent that holds the

Settlement Fund.

8.    "Escrow Agent" means the bank into which the Settlement Fund shall be deposited

and maintained as set forth in Paragraph 37 of this Agreement.

9.    "Fairness Hearing" means a hearing on the settlement proposed in this Agreement

held by the Court to determine whether the proposed settlement is fair, reasonable, and adequate,

and whether it should be finally approved by the Court.

10.    "Non-Settling Defendants" shall refer to Delta Air Lines, Inc. and United Airlines,

Inc.

11.    "Parties" means American and Plaintiffs.

12.    "Plaintiffs" shall mean each of the following proposed named Class representatives:

Boston Amateur Basketball Club; Katherine Rose Warnock; Cherokii Verdozco; Kumar Patel;

Samantha White; Seth Lyons; Howard-Sloan Koller Group Inc.; Breanna Jackson; Stephanie

Jung; Elizabeth Cumming; and Steven Yeninas.

13.    "Plaintiffs' Counsel" shall refer to the law firms of Hausfeld LLP, 1700 K Street

NW, Suite 650, Washington, DC 20006; and Cotchett Pitre & McCarthy LLP, 840 Malcolm

Road, Suite 200, Burlingame, CA 94010.

14.    "Releasors" shall have the meaning set forth in Paragraph 32 below.

15.    "Released Parties" shall have the meaning set forth in Paragraph 32 below.

16.    "Released Claims" shall have the meaning set forth in Paragraph 32 below.

17.    "Settlement Neutral" means Nancy Lesser of Pax ADR LLC.

18.    "Settlement Amount" shall have the meaning set forth in Paragraph 37 below.

19.    "Settlement Class" shall have the meaning set forth in Paragraph 22 below.

20.    "Settlement Fund" shall refer to the funds deposited into and accrued in the Escrow

Account established in accordance with Paragraph 37 below.

21.    "American's Counsel" shall refer to the law firms of O'Melveny & Myers LLP,

1625 Eye Street, NW, Washington, D.C. 20006; and Gibson, Dunn & Crutcher LLP, 1050

Connecticut Avenue, NW, Washington, D.C. 20036.

**B.    Settlement Class Certification**

22.    The Parties to this Agreement hereby stipulate for purposes of settlement only that

the requirements of Rules 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure are

satisfied, and, subject to Court approval, the following Settlement Class shall be certified for

settlement purposes as to American only (with the understanding that, by stipulating to the

proposed Settlement Class, American does not agree that Rule 23 requirements are met for

purposes of a litigation class):

4

All persons and entities that purchased air passenger transportation services for flights within the United States and the District of Columbia from Defendants or any predecessor, subsidiary or affiliate thereof, at any time between July 1, 2011 and the Execution Date of the Settlement with American. Excluded from the class are governmental entities, Defendants, any parent, subsidiary or affiliate thereof, Defendants' officers, directors, employees, and immediate families, and any judges or justices assigned to hear any aspect of this action.

**C.    Approval of this Agreement, Stay of Case Deadlines, and Dismissal of Claims**

23.    American shall cooperate to the extent reasonably necessary in connection with Plaintiffs' Counsel's motions for preliminary and final approval of the settlement and related documents necessary to effectuate and implement the terms and conditions of this Agreement. Prior to submission of the motions for preliminary approval, notice to the class and final approval of the settlement and any related documents, Plaintiffs' Counsel will provide drafts to American for its review and comments, including the opportunity to review and comment on the proposed class notice and plan of notice.  Plaintiffs' Counsel will, in good faith, consider American's comments.

24.    At the time of filing the motion for preliminary approval, or sooner as may be agreed between the Parties, the Parties shall move the Court to stay all case deadlines currently applicable to American in the Action, including discovery deadlines.

25.    Plaintiffs shall, following entry by the Court of an Order granting preliminary approval ("Preliminary Approval") of this Settlement and dissemination of notice to the Settlement Class, seek entry of an order granting final approval and entering final judgment in a form to be agreed upon by the Parties which shall:

a.    approve finally this Agreement and its terms as being a fair, reasonable, and adequate settlement as to the Settlement Class Members within the meaning of Rule 23 of the Federal Rules of Civil Procedure and directing its consummation according to its terms;

b.    determine that the Class Notice constituted, under the circumstances, the most effective and best practicable notice of this Agreement and of the Fairness

5

Hearing, and constituted due and sufficient notice for all other purposes to all persons entitled to receive notice;

    c.    confirm the appointment of Plaintiffs as class representatives and Plaintiffs' Counsel as Settlement Class Counsel;

    d.    direct that, as to American, the Action be dismissed with prejudice and, except as explicitly provided for in this Agreement, without costs;

    e.    reserve to the United States District Court for the District of Columbia exclusive jurisdiction over the settlement and this Agreement, including the administration and consummation of this settlement;

    f.    determine under Federal Rule of Civil Procedure 54(b) that there is no just reason for delay, and directing that the final judgment of dismissal as to American shall be entered; and

    g.    require Plaintiffs' Counsel to file with the Clerk of the Court a record with the names and addresses of Class Members who timely exclude themselves from the Settlement Class, and provide a copy of the record to American's Counsel.

26.    This Agreement shall become final only upon the expiration of the time for appeal or to seek permission to appeal from the Court's final approval of this Agreement and entry of the final judgment or, if an appeal from a final approval and final judgment is taken, the affirmance of such final judgment in its entirety, without modification, by the court of last resort to which an appeal of such final judgment may be taken (the "Effective Date"). It is agreed that neither the provisions of Rule 60 of the Federal Rules of Civil Procedure nor the All Writs Act, 28 U.S.C. § 1651, shall be taken into account in determining if the Effective Date has occurred. The Agreement shall not be rescinded except in accordance with Paragraphs 51-53 of this Agreement.

27.    This Agreement is contingent upon preliminary approval by the Court within thirty (30) days of filing of the motion for preliminary approval. Absent preliminary approval, the Agreement is null and void and any and all amounts constituting the Escrow Account (including, but not limited to, any fees, costs, and/or expenses advanced to Class Counsel with the exception

of the reasonable costs of notice approved by the Court) shall be returned forthwith to American, plus accrued interest.

**D.      Notice of Settlement to Class Members**

28.      Plaintiffs' Counsel shall take all necessary and appropriate steps to ensure that notice of this Settlement Agreement and the date of the hearing scheduled by the Court to consider the fairness, adequacy, and reasonableness of this Agreement are provided in accordance with the Federal Rules of Civil Procedure and any Court orders.  Notice will be issued after preliminary approval by the Court and subject to any Court orders regarding the content and means of dissemination of notice.

29.      For purposes of effectuating notice, American shall comply with the Court's direction, including the production of any data or information, in connection with the notice program for approval of the settlement with Southwest Airlines Co. ("Southwest").  To the extent required by the Court in connection with the notice program for the settlement with Southwest, American shall provide reasonably available email addresses of its customers. Plaintiffs shall use the email addresses for notice (or claims allocation) and for no other purpose.

30.      Subject to Court approval, disbursements for any payments and expenses incurred in connection with the costs of notice and administration of the Agreement by the Claims Administrator shall be made from the Escrow Account upon written notice to the Escrow Agent by Plaintiffs' Counsel of such payments and expenses.

31.      If notice of the Agreement is combined with dissemination of notice of other settlement agreements, the costs of the combined notice and settlement administration shall be apportioned by Plaintiffs' Counsel in proportion to the respective settlement amounts, subject to approval of the Court.

E.      **Release and Discharge**

32.     Upon the Effective Date, all members of the Settlement Class, on behalf of

themselves and their respective past, present, direct and indirect parents, subsidiaries, affiliates,

predecessors and successors, and their past and present officers, directors, employees, agents,

insurers, attorneys, shareholders, joint venturers, partners, and representatives, as well as the

predecessors, successors, heirs, executors, administrators, and assigns of each of the foregoing

("Releasors") shall be deemed to have, and by operation of the Final Order and Judgment, shall

have, fully, finally and forever, released and discharged American, its past and present, direct

and indirect parents, subsidiaries, affiliates, predecessors and successors, and their past and

present officers, directors, employees, agents, insurers, attorneys, shareholders, joint venturers,

partners and representatives, as well as the predecessors, successors, heirs, executors,

administrators, and assigns of each of the foregoing ("Released Parties") from all claims,

demands, actions, suits, causes of action, lawsuits, damages, liabilities, costs, attorneys' fees,

expenses, whether class or individual in nature, whether known or unknown, foreseen or

unforeseen, suspected or unsuspected, existing in the past, existing in the present or arising in the

future, that were or could have been alleged or asserted in this Action ("Released Claims").  To

avoid any ambiguity, the Parties agree that the release of claims shall be to the fullest extent

allowed by law, limited only by the identical factual predicate doctrine.  Each Releasor hereby

covenants and agrees that he, she, or it shall not, hereafter, assert a claim or otherwise seek to

establish liability against any Released Party based in whole or in part on any Released Claims.

33.     In addition, each Releasor hereby expressly waives and releases, upon this

Settlement Agreement becoming final, any and all provisions, rights, or benefits conferred by

section 1542 of the California Civil Code, which provides:

8

> A general release does not extend to claims which the creditor does not know or
> suspect to exist in his or her favor at the time of executing the release, which if
> known by him or her must have materially affected his or her settlement with the
> debtor

and any law of any state or territory of the United States, or principle of common law, which is

similar, comparable or equivalent to section 1542 of the California Civil Code.  Each member of

the Settlement Class may hereafter discover facts other than or different from those which he,

she, or it knows or believes to be true with respect to the Released Claims.  Nevertheless, each

member of the Settlement Class hereby expressly waives and fully, finally and forever settles

and releases, upon this settlement becoming final, the Released Claims, whether any Released

Claim is known or unknown, suspected or unsuspected, contingent or non-contingent, concealed

or hidden, without regard to the subsequent discovery or existence of such different or additional

facts.  Each Releasor further forever waives and relinquishes any and all rights and benefits

existing under any law or principle of law in any jurisdiction that would limit or restrict the

effect or scope of the provisions of the release set forth above without regard to the subsequent

discovery or existence of other or different facts.

34.    The Releases set forth herein shall not release any claims, whether pending or not,

whether known or unknown, for product liability, personal injury, breach of warranty, breach of

contract, violation of the Uniform Commercial Code or any other claims that were not or could

not have been alleged in the Action whatsoever that are not related to the subject matter of the

Complaint.

35.    Each Plaintiff and each Settlement Class Member who submits a claim to

participate in the distribution of the Settlement Fund shall represent and warrant that his, her or

its portion of the Released Claims is his, her, or its property and he, she, or it has not assigned or

transferred to any person or entity any right to recovery for any claim or potential claim that

would otherwise be released under this Agreement.  Each Plaintiff and each Settlement Class

Member who submits a claim to participate in the distribution of the Settlement Fund shall

further represent and warrant that each of them has a valid and existing right to release such

claims and is releasing such claims pursuant to his, her, or its membership in the Settlement

Class.

36.     Upon the Effective Date, American shall release Plaintiffs, Settlement Class

members, and their counsel from any claims relating to the institution, prosecution or settlement

of the pending Action except for claims arising out of breach or enforcement of this Agreement.

**F.     Payment**

37.     American shall pay or cause to be paid forty-five million dollars ($45,000,000)

(the "Settlement Amount") in settlement of the Action.  The Settlement Amount shall be wire

transferred by American or its designee to the Bank designated as Escrow Agent by Plaintiffs'

Counsel within ten (10) business days of entry of an order by the Court granting preliminary

approval of the settlement.

38.     The Parties expressly agree that under no circumstances whatsoever shall

American be responsible for paying any monies, benefits, costs, administrative costs, expenses,

or attorneys' fees in settlement of this Action other than as expressly provided for by this

Agreement, nor will American be required to take any action or incur any liability except as

expressly provided by this Agreement.

39.     Each Settlement Class Member shall look solely to the Settlement Fund for

settlement and satisfaction, as provided herein, of all claims released by the Releasors pursuant

to this Agreement.

**G.     Allocation of Settlement Fund**

40.     The allocation of the Settlement Fund among the Settlement Class shall be subject to a plan of allocation to be proposed by Plaintiffs' Counsel and approved by the Court. American will take no position with respect to such proposed plan of allocation or such plan as may be approved by the Court.  American also will have no involvement in the claims process.

41.     American shall not have any responsibility, financial obligation, or liability whatsoever with respect to the investment, distribution, use or administration of the Escrow Account, including, but not limited to, the costs and expenses of such investment, distribution, use, or administration.

## H.     Plaintiffs' Counsel's Fees and Expenses

42.     Plaintiffs' Counsel's attorneys' fees and expenses, as awarded by the District Court, shall be paid from the Escrow Account, immediately upon the entry of the order by the District Court awarding such amounts ("Fee and Expense Award"), notwithstanding the existence of any timely filed objections thereto, or potential for appeal therefrom, or collateral attack on the settlement or any part thereof, subject to Plaintiffs' Counsel's joint and several obligation to repay those amounts to the Escrow Account, plus accrued interest at the same net rate as is earned by the Escrow Account, and subject to an appropriate undertaking, if and when, as a result of any appeal and further proceedings on remand, or successful collateral attack, the Fee and Expense Award is reduced or reversed, or return of the Escrow Account is required.

43.     If there is any payment of attorneys' fees or reimbursement of expenses advanced by Plaintiffs' Counsel prior to the Effective Date, any attorneys, individuals or firms receiving payment shall provide letters of credit from nationally chartered banks payable to American sufficient to secure any repayment obligations of those attorneys, individuals or firms.  In the event the Fee and Expense Award is reduced or reversed or return of the Escrow Account is

otherwise required, Plaintiffs' Counsel shall, within ten (10) business days from the event which

requires repayment of the Fee and Expense Award, refund to the Escrow Account the Fee and

Expense Award paid to them, plus accrued interest at the same net rate as is earned by the

Escrow Account.

44.     American will take no position on Plaintiffs' Counsel's request for attorneys' fees

and expenses, the appropriateness of any such award by the Court, or the timing of payment to

Plaintiffs' Counsel.  Plaintiffs' Counsel may, at a time approved by the Court, seek an award of

attorneys' fees and reasonable litigation expenses and incentive awards for class representatives

approved by the Court, to be paid out of the Escrow Account after the final approval of the

Agreement.

I.      **Plaintiffs' Ongoing Prosecution of the Action**

45.     American shall undertake the following in accordance with the terms and provisions

of this Agreement.

46.     <u>Applicable Protections</u>

a.  Nothing in this Agreement shall impose on American an obligation to produce

or provide any materials or information protected from disclosure by the

attorney-client privilege, attorney work-product doctrine, common interest

doctrine, joint defense privilege, and/or any other applicable privilege or

protection.  In addition, any documents or other information provided by

American pursuant to this Agreement shall be governed by the operative

Protective Order entered in the Action.

b.  Any materials or information (with the exception of depositions, declarations,

and affidavits) provided prior to the Effective Date shall be treated as

confidential Rule 408 settlement communications unless otherwise ordered by the Court.

    c.  American's obligations shall apply only to Releasors who act with, by or through Plaintiffs' Counsel pursuant to this Agreement in this Action.

47.  <u>Transactional Data</u>

    a.  The Parties recognize and agree that American has already produced voluminous transactional data (customer-level data concerning flights and prices).  If Plaintiffs identify any missing transactional data from this production based on American's prior commitments to Plaintiffs to produce such data, American will use good faith best efforts to produce relevant and reasonably accessible responsive transactional data; and

    b.  American shall use its good faith best efforts to respond to reasonable questions or inquiries from Plaintiffs regarding the fields, designations, or construction of American's transactional data.

48.  <u>Documents</u>

    a.  The Parties recognize that under the Court's case schedule, American was to complete its core document production by April 30, 2018.  Nothing contained in this Agreement shall be seen to have altered that deadline and to the extent it has not already done so, American shall produce such documents consistent with the agreements it has already reached with Plaintiffs, including but not limited to any agreements concerning custodians, search terms, sources to be searched, and the scope of such productions.

    b.  American's Counsel will use good faith best efforts to respond to reasonable

follow-up inquiries of Plaintiffs' Counsel regarding American's document production as described in Paragraph 48(a).

c. As applicable and upon reasonable request, American shall use its good faith best efforts to produce a business record and authenticity declaration as to documents produced by American pursuant to its prior discovery obligations, this Agreement, or any other process.

49.   Depositions, Declarations, and Affidavits

a. American shall use its good faith best efforts to make available up to three (3) current American employees or former American employees represented by American's Counsel, as designated by Plaintiffs' Counsel, to provide deposition testimony in the Action.  Any depositions conducted pursuant to this subsection shall be limited to a single day of seven (7) hours of testimony, inclusive of examination by any parties other than Plaintiffs.

b. At Plaintiffs' Counsel's request, and for good cause, American will meet and confer regarding additional depositions, declarations, and/or affidavits.

c. To the extent Plaintiffs take the deposition of, or submit a declaration or affidavit from any former American employee that is not represented by American's Counsel, any such deposition, declaration, or affidavit shall not count against the limits set forth above.

d. American will use its good faith best efforts to make current American employees and former American employees represented by American's Counsel available to provide declarations, certifications, or affidavits regarding

the authentication of documents, including their certification as records of a

regularly conducted activity pursuant to Fed. R. Evid. 803(6).

50.   Continuation, Scope, and Termination of American's Obligations under this

Agreement: American's obligations under this Agreement shall terminate upon the earlier of:

(a) the date on which an order by the Court denying preliminary approval of the Settlement

Agreement is entered; (b) the date on which an order by the District Court denying final approval

of the Settlement Agreement is entered; (c) the date when final judgment has been rendered, with

no remaining rights of appeal, in the Action against all Defendants; or (d) seven (7) years after

the Court enters the preliminary approval order. If the Court does not grant final approval of the

Settlement Agreement and either party files an appeal from such an Order, the parties shall both

cooperate on the appeal to seek approval of the Settlement Agreement by the Court of Appeals.

**J.     Rescission**

51.   If the Court refuses to give final approval to this Agreement or if such approval is

modified or set aside on appeal, or if the Court does not enter the final judgment provided for in

Paragraph 25 of this Agreement, or if the Court enters the final judgment and appellate review is

sought, and on such review, such final judgment is not affirmed, then American and Plaintiffs

shall each, in their sole discretion, have the option to rescind this Agreement in its entirety within

ten (10) business days of the action giving rise to such option.  If this Agreement is rescinded,

within ten (10) business days of the later of the written notice of rescission to Plaintiffs' Counsel

and the Escrow Agent and American's written instructions to the Escrow Agent, the $45 million

Settlement Fund and any accrued interest, less only the cost of notice authorized pursuant to this

Agreement and Court Order, shall be wire transferred to American, pursuant to its instructions.

52.    If this Agreement does not become final as provided for in paragraph 26, Plaintiffs'

Counsel and American agree that this Agreement, including its exhibits, and any and all

negotiations, documents, information, and discussions associated with it shall be without

prejudice to the rights of American or Plaintiffs, shall not be deemed or construed to be an

admission or denial, or evidence or lack of evidence of any violation of any statute or law or of

any liability or wrongdoing, or of the truth or falsity of any of the claims or allegations made in

this Action in any pleading, and shall not be used directly or indirectly, in any way, whether in

this Action or in any other proceeding.  The Parties specifically agree that American's stipulation

to a Settlement Class shall not be used or relied upon by Plaintiffs in support of certification of a

litigation class.  Plaintiffs reserve their rights to use any documents or depositions that American

provided pursuant to its obligations under this Agreement, but only if both parties agree that such

documents or depositions would have been obtainable by separate and independent discovery

served on American under the Federal Rules of Civil Procedure.

53.    Plaintiffs' Counsel further agree that, in the event of rescission, the originals and all

copies of any notes, memos or records related to the obligations pursuant to paragraphs 45-50

shall be returned to American at American's expense or destroyed by Plaintiffs' Counsel at their

own expense, provided however that such attorney notes, memoranda or records may be

destroyed rather than returned if an affidavit of such destruction is promptly provided by

Plaintiffs' Counsel to American's Counsel.

**K.      Dispute Resolution**

54.    In the event of a dispute arising out of the Settlement Agreement, interpretation of

the Settlement Agreement, or compliance with the Settlement Agreement, including paragraphs

45-50, the Parties will seek resolution from the Settlement Neutral, if necessary. Any decision by the Settlement Neutral shall be binding on the Parties.

**L.  Taxes**

60.  Plaintiffs' Counsel shall be solely responsible for directing the Claims Administrator to file all informational and other tax returns necessary to report any taxable and/or net taxable income earned by the Settlement Fund. Further, Plaintiffs' Counsel shall be solely responsible for directing the Escrow Agent to make any tax payments, including interest and penalties due, on income earned by the Settlement Fund ("Tax Expenses"). Plaintiffs' Counsel shall be entitled to direct the Escrow Agent in writing to pay customary and reasonable Tax Expenses, including reasonable professional fees and expenses incurred in connection with carrying out their responsibilities as set forth in this Paragraph, from the applicable Settlement Fund by notifying the Escrow Agent in writing. American shall have no responsibility to make any tax filings or tax payments relating to this Agreement or the Settlement Fund.

61.  For the purpose of § 468B of the Internal Revenue Code of 1986, as amended, and the regulations promulgated thereunder, the "Administrator" of the Settlement Amount shall be the Claims Administrator, who shall timely and properly file or cause to be filed on a timely basis, all tax returns necessary or advisable with respect to the Settlement Fund (including, without limitation, all income tax returns, all informational returns, and all returns described in Treas. Reg. § 1.468B 2(1)).

62.  The Parties to this Agreement and their Counsel shall treat, and shall cause the Claims Administrator to treat, the Settlement Fund as being at all times a "qualified settlement fund" within the meaning of Treas. Reg. § 1.468B 1. In addition, the Claims Administrator and, as required, the parties, shall timely make such elections as necessary or advisable to carry out

the provisions of this Paragraph, including the "relation-back election" (as defined in Treas. Reg. § 1.468B 1(j)) back to the earliest permitted date. Such elections shall be made in compliance with the procedures and requirements contained in such regulations. It shall be the responsibility of the Claims Administrator to timely and properly prepare and deliver the necessary documentation for signature by all necessary parties and thereafter to cause the appropriate filing to occur. All provisions of this Agreement shall be interpreted in a manner that is consistent with the Settlement Fund being a "qualified settlement fund" within the meaning of Treas. Reg. § 1.468B 1.

**M.   Miscellaneous**

63.   This Agreement does not settle or compromise any claim by Plaintiffs or any Settlement Class Member asserted in the Action against any Non-Settling Defendant or any potential defendant other than the Released Parties. All rights of any Class Member against Non-Settling Defendants or any other person or entity other than the Released Parties are specifically reserved by Plaintiffs and the Settlement Class Members. The sales of domestic air passenger transportation services by American to Class Members shall remain in the case against the Non-Settling Defendants in the Action as a basis for damage claims and shall be part of any joint and several liability claims against Non-Settling Defendants in the Action or other persons or entities other than the Released Parties.

64.   The United States District Court for the District of Columbia shall retain jurisdiction over the implementation, enforcement, and performance of this Agreement, and shall have exclusive jurisdiction over any suit, action, proceeding, or dispute arising out of or relating to this Agreement or the applicability of this Agreement, subject to the dispute resolution provisions set forth above in paragraph 54. This Agreement shall be governed by and

18

interpreted according to the substantive laws of the District of Columbia without regard to its choice of law or conflict of laws principles. American submits to the jurisdiction of the District of Columbia only for the purposes of adjudicating the implementation, enforcement, and performance of this Agreement. American otherwise retains all defenses to the Court's exercise of personal jurisdiction over American.

65.     This Agreement constitutes the entire agreement among Plaintiffs (and the other Releasors) and American (and the other Released Parties) pertaining to the settlement of the Action against American only, and supersedes any and all prior and contemporaneous undertakings of Plaintiffs and American in connection therewith. In entering into this Agreement, Plaintiffs and American have not relied upon any representation or promise made by Plaintiffs or American not contained in this Agreement. This Agreement may be modified or amended only by a writing executed by Plaintiffs and American and approved by the Court.

66.     This Agreement shall be binding upon, and inure to the benefit of, the successors and assigns of Releasors and Released Parties. Without limiting the generality of the foregoing: (a) each and every covenant and agreement made herein by Plaintiffs or Plaintiffs' Counsel shall be binding upon all Settlement Class Members and Releasors; and (b) each and every covenant and agreement made herein by Released Parties shall be binding upon all Released Parties.

67.     This Agreement may be executed in counterparts by Plaintiffs' Counsel and American's Counsel, and an electronically-scanned (in either .pdf or .tiff format) signature will be considered an original signature for purposes of execution of this Agreement.

68.     The headings in this Agreement are included for convenience only and shall not be deemed to constitute part of this Agreement or to affect its construction.

69.     In the event this Agreement is not approved, or in the event that the Order and

final judgment approving the settlement is entered but is reversed, modified, or vacated, the pre-settlement status of this Action (including, without limitation, any applicable tolling of all statutes of limitations) shall be restored, and the Agreement shall have no effect on the rights of Plaintiffs or American to prosecute or defend the pending Action in any respect, including the right to litigate fully the issues related to class certification, raise personal jurisdictional defenses, or any other defenses, which rights are specifically and expressly retained by American.

70.    Neither American nor Plaintiffs, nor any of them, shall be considered to be the drafter of this Agreement or any of its provisions for the purpose of any statute, case law, or rule of interpretation or construction that would or might cause any provision to be construed against the drafter of this Agreement.

71.    Nothing expressed or implied in this Agreement is intended to or shall be construed to confer upon or give any person or entity other than Class Members, Releasors, American, and Released Parties any right or remedy under or by reason of this Agreement.

72.    Any putative Class Member that does not opt out of the Settlement Class created pursuant to the Agreement may remain in the Class without prejudice to the right of such putative Class Member to opt out of any future settlement class or certified litigation class in the Action.

73.    Where this Agreement requires any party to provide notice or any other communication or document to any other party, such notice, communication, or document shall be provided by electronic mail or overnight delivery to:

For the Settlement Class:
Michael Hausfeld
Hausfeld LLP
1700 K Street NW, Suite 650
Washington, DC 20006
mhausfeld@hausfeld.com

20

For American:
Richard G. Parker
Gibson, Dunn & Crutcher LLP
1050 Connecticut Avenue, NW
Washington, D.C. 20036
rparker@gibsondunn.com

Benjamin G. Bradshaw
O'Melveny & Myers LLP
1625 Eye Street, NW
Washington, D.C. 20006
bbradshaw@omm.com

74.     Each of the undersigned attorneys represents that he or she is fully authorized to

enter into the terms and conditions of, and to execute, this Agreement, subject to Court approval.

Dated: June 14, 2018

By: _HKScherrer_

Michael D. Hausfeld
Hilary K. Scherrer
Jeannine M. Kenney
**HAUSFELD LLP**
1700 K Street NW, Suite 650
Washington, DC 20006
Telephone: (202) 540-7200

By: _____

Adam J. Zapala
**COTCHETT, PITRE & McCARTHY, LLP**
840 Malcolm Road, Suite 200
Burlingame, CA 94010
Telephone: (650) 697-6000

Alexander E. Barnett
**COTCHETT, PITRE & McCARTHY, LLP**
40 Worth Street, 10th Floor
New York, NY 10013
Telephone: (212) 201-6820

*Plaintiffs' Counsel*

By: _____

Richard G. Parker
**GIBSON, DUNN & CRUTCHER LLP**
1050 Connecticut Avenue, NW
Washington, D.C. 20036
Telephone: (202) 955-8500

Benjamin G. Bradshaw
Katrina M. Robson
**O'MELVENY & MYERS LLP**
1625 Eye Street, NW
Washington, D.C. 20006
Telephone: (202) 383-5300

Jeffrey A. N. Kopczynski
**O'MELVENY & MYERS LLP**
Times Square Tower
7 Times Square
New York, New York 10036
Telephone: (212) 326-2000

*Counsel for American Airlines, Inc.*

# EXHIBIT C

**LIST OF REQUESTS FOR EXCLUSION**

| | Date Received or Postmark Date (if received after 01/04/19) | Name | City | State | Exclusion from American Settlement | Exclusion from Southwest Settlement |
|---|---|---|---|---|---|---|
| 1 | 10/29/18 | DAVID OUTLAW | SUMMERVILLE | SC | X | X |
| 2 | 10/29/18 | JOANNE M MEKAL | TROY | MI | X | X |
| 3 | 10/29/18 | JULIE TROUTWINE | GRANBURY | TX | X | X |
| 4 | 10/29/18 | SHARON MCKEEVER | VALLIANT | OK | X | X |
| 5 | 10/30/18 | WILLIAM BARRETT | LAS VEGAS | NV | X | X |
| 6 | 11/01/18 | STEVEN M COLLOTON | DES MOINES | IA | X | X |
| 7 | 11/02/18 | DAVID WOOD | BRUSSELS BELGIUM | | X | X |
| 8 | 11/02/18 | M SCOTT BAYLINE | PORT ALLEGANY | PA | X | X |
| 9 | 11/02/18 | SARAH PETERS KERNAN | OSWEGO | IL | X | X |
| 10 | 11/05/18 | EDWARD PROKOP | LOS ANGELES | CA | X | X |
| 11 | 11/05/18 | FRANKLYN E CHRISTIE JR | HAWTHORNE | NJ | X | X |
| 12 | 11/05/18 | HILLARY PROKOP | LOS ANGELES | CA | X | X |
| 13 | 11/05/18 | JAIME OROZCO | FOLSOM | CA | X | X |
| 14 | 11/05/18 | LAWRENCE K PARKER JR | ALEDO | TX | X | X |
| 15 | 11/05/18 | ROBERT MICHELUCCI | ORLANDO | FL | X | X |
| 16 | 11/05/18 | STEPHEN FOLEY | NORTH ATTLEBORO | MA | X | X |
| 17 | 11/06/18 | AUDREY FREUDBURG | LOS ANGELES | CA | X | X |
| 18 | 11/07/18 | ETHAN HOSTETTER | DONGOLA | IL | X | X |
| 19 | 11/09/18 | ANDREW ANDREWS | NEW YORK | NY | X | X |
| 20 | 11/09/18 | DAVID CONWAY | MADISON | WI | X | X |
| 21 | 11/13/18 | AARON NEVILLE | ALISO VIEJO | CA | X | X |
| 22 | 11/13/18 | MIKE COONEY | HOWARD | WI | X | X |
| 23 | 11/13/18 | TIERNEY LUSZCZYNSKI | GROVE CITY | OH | X | X |
| 24 | 11/16/18 | MICHAEL MOORE | DALLAS | TX | X | X |
| 25 | 11/16/18 | SHERRY J GHORMLEY-MOORE | DALLAS | TX | X | X |
| 26 | 11/16/18 | TERESA CHUPP | WILLS POINT | TX | X | X |
| 27 | 11/19/18 | BELEN SORIANO | NEW BRAUNFELS | TX | X | X |
| 28 | 11/19/18 | BEN TAKIZAWA SOPER | MAPLEWOOD | NJ | X | X |
| 29 | 11/19/18 | DOUGLAS JOHNSON | DAVIDSON | NC | X | X |
| 30 | 11/19/18 | ELLEN SAPP JOHNSON | DAVIDSON | NC | X | X |
| 31 | 11/19/18 | HANNAH HART | FRANKLIN | WI | X | X |
| 32 | 11/19/18 | JAMES LAUDUCCI | ALEXANDRIA | VA | X | X |
| 33 | 11/19/18 | JENNIFER SORIANO | SEATTLE | WA | X | X |
| 34 | 11/19/18 | JOHANNA ESSENWANGER | TYLER | TX | X | X |
| 35 | 11/19/18 | KYUNGHE KIM | SAN FRANCISCO | CA | X | X |
| 36 | 11/19/18 | LANDYA MCCAFFERTY | PORTSMOUTH | NH | X | X |
| 37 | 11/19/18 | MARGARET SHIPMAN | LOS ANGELES | CA | X | X |
| 38 | 11/19/18 | MELINDA MORRELL | BILOXI | MS | X | X |
| 39 | 11/19/18 | MELISSA TAKIZAWA SOPER | MAPLEWOOD | NJ | X | X |
| 40 | 11/19/18 | STEVEN BIRNEY | MIDDLETOWN | DE | X | X |
| 41 | 11/20/18 | AARON MULVEY | DALLAS | TX | X | X |
| 42 | 11/20/18 | AVA VARNER | RED WING | MN | X | X |

**LIST OF REQUESTS FOR EXCLUSION**

| | | | | | |
|---|---|---|---|---|---|
| 43 | 11/20/18 | CAROLYN MULVEY | DALLAS | TX | X | X |
| 44 | 11/20/18 | DEANNA FOREMAN | DENVER | CA | X | X |
| 45 | 11/20/18 | LAWRENCE LAPORTA | HARWOOD HEIGHTS | IL | X | X |
| 46 | 11/20/18 | LEONARD COX | SEABROOK | TX | X | X |
| 47 | 11/20/18 | RUBEN MARTINEZ | FORT COLLINS | CO | X | X |
| 48 | 11/21/18 | BRANDON EICKHOFF | SAN JOSE | CA | X | X |
| 49 | 11/21/18 | CONSTANCE KILGORE | ORLAND PARK | IL | X | X |
| 50 | 11/21/18 | DOUGLAS BRENN | MURRIETA | CA | X | X |
| 51 | 11/21/18 | FRANCINE WALKER | AUSTIN | TX | X | X |
| 52 | 11/21/18 | SHANNON BROWN | CLARKS SUMMIT | PA | X | X |
| 53 | 11/21/18 | TANIA GOLDSZMIDT | | | X | X |
| 54 | 11/21/18 | TIM BEATTY | | | X | X |
| 55 | 11/21/18 | MICHELE PADALINO | | | X | X |
| 56 | 11/21/18 | SCOTT LALIBERTE | | | X | X |
| 57 | 11/21/18 | WILLIAM MORRAN | | | X | X |
| 58 | 11/21/18 | WILLIAM FRUIT | | | X | X |
| 59 | 11/21/18 | JEREMY CALTON | COLUMBIA | MO | X | X |
| 60 | 11/21/18 | LUIS MANUEL RAMIIEZ PERCHES | | | X | X |
| 61 | 11/21/18 | JACOB SIEGEL | | | X | X |
| 62 | 11/26/18 | CHRISTIAN RASMUSSEN | ARVADA | CO | X | X |
| 63 | 11/26/18 | LOREN ROBERTS | SANTA MONICA | CA | X | X |
| 64 | 11/26/18 | MARK MCCORMICK | WOODSTOCK | IL | X | X |
| 65 | 11/26/18 | MICHAEL FLEISCHER | TENAFLY | NJ | X | X |
| 66 | 11/26/18 | MOLLY K HRITZO AHYE | HIGHLAND | MD | X | X |
| 67 | 11/26/18 | RUSSELL E MADESEN | GAITHERSBURG | MD | X | X |
| 68 | 11/26/18 | SCOTT VAUGHAN | COLUMBUS | OH | X | X |
| 69 | 11/26/18 | SUZANA MIJAT | SUNNYSIDE | NY | X | X |
| 70 | 11/27/18 | FRANCESCO CLAVELLI | SURPRISE | AZ | X | X |
| 71 | 11/27/18 | GREG SUPPES | MILL VALLEY | CA | X | X |
| 72 | 11/28/18 | THOMAS THURHNEER | SWITZERLAND | | X | X |
| 73 | 11/29/18 | ANDREW BUXTON | CROTON ON HUDSON | NY | X | X |
| 74 | 11/29/18 | JACQUELINE BUXTON | CROTON ON HUDSON | NY | X | X |
| 75 | 11/29/18 | STEPHEN AUERBACH | HARTSDALE | NY | X | X |
| 76 | 11/30/18 | CARLOS SALICRUP | | | X | X |
| 77 | 11/30/18 | DOUGLAS VAUGHAN | FOREST | VA | X | X |
| 78 | 11/30/18 | EDWINA HOULMIERE | COLORADO SPRINGS | CO | X | X |
| 79 | 11/30/18 | FRAUKE FEILDER VAARTJES | | | X | X |
| 80 | 11/30/18 | JOE RAO | HIGHETT VIC 3190 AUSTRALIA | | X | X |
| 81 | 11/30/18 | MICHELLE BISNO | PITTSBURGH | PA | X | X |
| 82 | 11/30/18 | NATHANIEL OBRIEN | SCOTTS VALLEY | CA | X | X |
| 83 | 11/30/18 | RICHARD ARNO | COLORADO SPRINGS | CO | X | X |
| 84 | 11/30/18 | RUTH ANN VAUGHAN | FOREST | VA | X | X |
| 85 | 12/03/18 | ANDY JOO | DALLAS | TX | X | X |
| 86 | 12/03/18 | BONNIE CADWELL | GRAND JUNCTION | CO | X | X |
| 87 | 12/03/18 | CONSTANCE G DIAZ | SPOKANE | WA | X | X |
| 88 | 12/03/18 | DIANA HEFFNER | ELLICOTT CITY | MD | X | X |
| 89 | 12/03/18 | GERRY GAMAN | HOUSTON | TX | X | X |
| 90 | 12/03/18 | MARIAN KAY GREENE | STATESVILLE | NC | X | X |
| 91 | 12/03/18 | MICHAEL DUTY | ELLICOTT CITY | MD | X | X |
| 92 | 12/03/18 | RICHARD R POPLE | LA HABRA HGTS | CA | X | X |

2

**LIST OF REQUESTS FOR EXCLUSION**

| | | | | | | |
|---|---|---|---|---|---|---|
| 93 | 12/03/18 | ROBERT B CLAYTON | ROCKVILLE | MD | X | X |
| 94 | 12/03/18 | STEVEN SOARES | HENDERSON | NV | X | X |
| 95 | 12/04/18 | BERNADETTE WILLIAMSON | PRESTON | MD | X | X |
| 96 | 12/04/18 | JANE NETTESHEIM | REDWOOD CITY | CA | X | X |
| 97 | 12/04/18 | WILLIAM STREBY | REDWOOD CITY | CA | X | X |
| 98 | 12/06/18 | CECILY SESTER | ERIE | PA | X | X |
| 99 | 12/06/18 | CHRISTINE VOISINET | DALLAS | TX | X | X |
| 100 | 12/06/18 | RODERICK MACLEAN JR | WICHITA | KS | X | X |
| 101 | 12/07/18 | JOYCE L FOSTER | CROSWELL | MI | X | X |
| 102 | 12/07/18 | LARRY BLANKENSHIP | EVANSVILLE | IN | X | X |
| 103 | 12/07/18 | MARCIA BLANKENSHIP | EVANSVILLE | IN | X | X |
| 104 | 12/07/18 | SUSANNE FENGLER | BOSTON | MA | X | X |
| 105 | 12/10/18 | DENISE LUKO | STUDIO CITY | CA | X | X |
| 106 | 12/10/18 | EILEEN LUKO | STUDIO CITY | CA | X | X |
| 107 | 12/10/18 | JOEL GINGERICH | MINERVA | OH | X | X |
| 108 | 12/10/18 | JOESPH DRENNAN | LUBBOCK | TX | | X |
| 109 | 12/10/18 | THOMAS CZERWINSKI | DPO | AE | X | X |
| 110 | 12/11/18 | LINDA R LEE | SAN DIEGO | CA | X | X |
| 111 | 12/11/18 | NATALIE BOELK | BELGIUM | | X | X |
| 112 | 12/11/18 | PATRICIA M WALKER | PEARL RIVER | NY | X | X |
| 113 | 12/11/18 | VICTOR N WALKER | PEARL RIVER | NY | X | X |
| 114 | 12/12/18 | MICHAEL TKACIK | NACOGDOCHES | TX | X | X |
| 115 | 12/13/18 | KOVACS INA ALEXA | MEITINGEN GERMANY | | X | X |
| 116 | 12/14/18 | BOBETTE BECTON | PHOENIX | AZ | X | X |
| 117 | 12/14/18 | HOLLY BECTON | FLORISSANT | MO | X | X |
| 118 | 12/17/18 | ALAN JARRIN | UNION CITY | NJ | X | X |
| 119 | 12/17/18 | ETSEHIWOT TAYE | FRESNO | CA | X | X |
| 120 | 12/17/18 | MARTHA TACKETT | | | X | X |
| 121 | 12/17/18 | REBECCA CORTEZ | MADISONVILLE | LA | X | X |
| 122 | 12/18/18 | DAVE JOHNSON | CENTENNIAL | CO | X | X |
| 123 | 12/18/18 | PAUL MURRAY | | | X | X |
| 124 | 12/20/18 | GILLES HOFFMANN | CHICAGO | IL | X | X |
| 125 | 12/20/18 | STACI BILLINGS | SAINT CHARLES | IL | X | X |
| 126 | 12/21/18 | CAMILLE CAPON | SWITZERLAND | | X | X |
| 127 | 12/21/18 | MARK GRAYBILL | COLFAX | CA | X | X |
| 128 | 12/21/18 | TONI GRAYBILL | COLFAX | CA | X | X |
| 129 | 12/26/18 | CORINE DIBY | AUSTIN | TX | X | X |
| 130 | 12/26/18 | DAVID GRAHAM | TORONTO ONTARIO CANADA | | X | X |
| 131 | 12/26/18 | DINAH HYDEN | LAKEVILLE | MN | X | X |
| 132 | 12/26/18 | EVAN BAYLIS | WOODBRIDGE | VA | X | X |
| 133 | 12/26/18 | LISA SCHNEIDER | TABINGEN GERMANY | | X | X |
| 134 | 12/26/18 | MISTY QUINT | MESA | AZ | X | X |
| 135 | 12/26/18 | SYLVIA W BAYLIS | WOODBRIDGE | VA | X | X |
| 136 | 12/27/18 | ISSAM KELLOW | BROOMFIELD | CO | X | X |
| 137 | 12/27/18 | JANA MOLLMANN | DAMME GERMANY | | X | X |
| 138 | 12/28/18 | ANN C WESTERMEYER | ELK RIVER | MN | X | X |

**LIST OF REQUESTS FOR EXCLUSION**

| | | | | | | |
|---|---|---|---|---|---|---|
| 139 | 12/29/18 | JOHANNA GRAUSAM | MAINZ GERMANY | | X | X |
| 140 | 12/31/18 | BOBBY S CHA | CEDAR PARK | TX | X | X |
| 141 | 12/31/18 | GLENN SCOTT | RENO | NV | X | X |
| 142 | 12/31/18 | IDA G TURNER | SAINT LOUIS | MO | X | X |
| 143 | 12/31/18 | SARA NAKAZAWA | JAPAN | | X | X |
| 144 | 12/31/18 | SEAN OTOOLE | TRUCKEE | CA | X | X |
| 145 | 12/31/18 | STEVEN OUANDJI | SANDY | TX | X | X |
| 146 | 12/31/18 | BEN FRANKLIN DAVIS III | FORNEY | TX | X | X |
| 147 | 12/31/18 | BRENDA KAY DAVIS | DESOTO | TX | X | X |
| 148 | 12/31/18 | CAROLYN FJORD | WINTERS | CA | X | X |
| 149 | 12/31/18 | CHRISTINE WHALEN | NEW ORLEANS | LA | X | X |
| 150 | 12/31/18 | CLYDE STENSRUD | KIRKLAND | WA | X | X |
| 151 | 12/31/18 | CYNTHIA PROSTERMAN | SAN RAFAEL | CA | X | X |
| 152 | 12/31/18 | DANA L ROBINSON | WEST PALM BEACH | FL | X | X |
| 153 | 12/31/18 | DEBORAH M PULFER | SIDNEY | OH | X | X |
| 154 | 12/31/18 | DIANA L ULTICAN | EASTSOUND | WA | X | X |
| 155 | 12/31/18 | DON FRY | TUCSON | AZ | X | X |
| 156 | 12/31/18 | DONNA FRY | TUCSON | AZ | X | X |
| 157 | 12/31/18 | GABRIEL GARAVANIAN | NORTH CHELMSFORD | MA | X | X |
| 158 | 12/31/18 | GAIL S KOSACH | RENO | NV | X | X |
| 159 | 12/31/18 | GARY TALWESKY | SHARON | MA | X | X |
| 160 | 12/31/18 | HARRY GARAVANIAN | NORTH CHELMSFORD | MA | X | X |
| 161 | 12/31/18 | JAN MARIE BROWN | CARSON CITY | NV | X | X |
| 162 | 12/31/18 | JOHN MICHAEL WALKER | GRASS VALLEY | CA | X | X |
| 163 | 12/31/18 | JOSE M BRITO | RENO | NV | X | X |
| 164 | 12/31/18 | JUDITH A BRAY | COLORADO SPRINGS | CO | X | X |
| 165 | 12/31/18 | JUNE STANSBURY | RENO | NV | X | X |
| 166 | 12/31/18 | KATHERINE ARCELL | NEW ORLEANS | LA | X | X |
| 167 | 12/31/18 | KEITH DEAN BRADT | RENO | NV | X | X |
| 168 | 12/31/18 | LENNY MARAZZO | RENO | NV | X | X |
| 169 | 12/31/18 | LISA MCCARTHY | NAPLES | FL | X | X |
| 170 | 12/31/18 | MARCY L DUNLAP | YANTIS | TX | X | X |
| 171 | 12/31/18 | MICHAEL C MALANEY | GRANDVILLE | MI | X | X |
| 172 | 12/31/18 | PAMELA G FAUST | LOVELAND | OH | X | X |
| 173 | 12/31/18 | PAMELA S WARD | BRADENTON BEACH | FL | X | X |
| 174 | 12/31/18 | PATRICIA MEEUWSEN | KALAMAZOO | MI | X | X |
| 175 | 12/31/18 | PAUL TIPPETTS | SALEM | UT | X | X |
| 176 | 12/31/18 | ROBERT A ROSENTHAL | CIMARRON HILLS | CO | X | X |
| 177 | 12/31/18 | ROBERT D CONWAY | LAS VEGAS | NV | X | X |
| 178 | 12/31/18 | ROSEMARY D'AUGUSTA | MILLBRAE | CA | X | X |
| 179 | 12/31/18 | SANDRA K RUSSELL | WACO | TX | X | X |
| 180 | 12/31/18 | STEVEN PULFER | SIDNEY | OH | X | X |
| 181 | 12/31/18 | SYVIA N SPARKS | CARSON CITY | NV | X | X |
| 182 | 12/31/18 | THOMAS D'AUGUSTA | MILLBRAE | CA | X | X |
| 183 | 12/31/18 | VALARIE ANN JOLLY | ENCHANTED OAK | TX | X | X |
| 184 | 12/31/18 | WAYNE TALEFF | CINCINNATI | OH | X | X |
| 185 | 12/31/18 | YVONNE J GARDNER | COLORADO SPRINGS | CO | X | X |
| 186 | 12/31/18 | LANA MARAZZO | RENO | NV | X | X |
| 187 | 12/31/18 | LEE M GENTRY | HAMILTON | OH | X | X |
| 188 | 12/31/18 | LEE MCCARTHY | NAPLES | FL | X | X |
| 189 | 01/02/19 | SANDRA BIRRELL | | | X | X |

LIST OF REQUESTS FOR EXCLUSION

| | | | | | | |
|---|---|---|---|---|---|---|
| 190 | 01/02/19 | STEVEN BIRRELL | | | X | X |
| 191 | 01/02/19 | JOSEPH R PATANE | SAN LUIS OBISPO | CA | X | X |
| 192 | 01/02/19 | KEYAUNA JONES | CEDAR HILL | TX | X | X |
| 193 | 01/02/19 | SATOMI G SEKINE | TAMUNING | GU | X | X |
| 194 | 01/03/19 | RANDALL HART | MELBOURNE | FL | X | X |
| 195 | 01/03/19 | MICROSOFT | WASHINGTON | DC | X | X |
| 196 | 01/03/19 | SEAN STEVENSON | PHOENIX | AZ | X | X |
| 197 | 01/04/19 | PATRICIA SHAUGHNESSY | JACKSON | MI | X | X |
| 198 | 01/04/19 | ALEXANDRIA MARDAUS | AUSTRIA | | X | X |
| 199 | 01/04/19 | DAN BOUDREAUX | BATON ROUGE | LA | X | X |
| 200 | 01/04/19 | ROBERT MADAY JR | KANSAS CITY | MO | X | X |
| 201 | 01/04/19 | CANDICE SO | WASHINGTON | DC | X | X |
| 202 | 01/04/19 | EDITH NEULEN | MAINZ GERMANY | | X | X |
| 203 | 01/04/19 | LARA HASSELBUSCH | LANDESBERGEN GERMANY | | X | X |
| 204 | 01/05/19 | SCOTT BIDNICK | SAN DIEGO | CA | X | X |
| 205 | 01/07/19 | WILLIAM BECK | | | X | X |
| 206 | 01/07/19 | BARBARA BROWN | BELLFLOWER | CA | | X |
| 207 | 01/29/19 | CLAUDINE STADELMANN | ALISO VIEJO | CA | X | X |
| 208 | UNCLEAR | SONJA WELSER | LAMERDINGEN BAVARIA GERMANY | | X | X |