| | |
|---|---|
| IN RE DOMESTIC AIRLINE TRAVEL ANTITRUST LITIGATION<br><br>This Document Relates To:<br><br>ALL CASES | MDL Docket No. 2656<br>Misc. No. 15-1404 (CKK) |

# MEMORANDUM OPINION
(November 6, 2019)

Pending before this Court is the Special Master's [411] Report and Recommendation No. 9 Regarding Plaintiffs' Motion to Compel Defendant Delta Air Lines to Produce Certain Data. Plaintiffs filed under seal their [417] unredacted Objections to Report and Recommendation No. 9;[1] Defendant Delta Air Lines, Inc. ('Delta") filed its [416] Response to Plaintiffs' Objections; and Plaintiffs filed their [419-1] Reply to Delta's Response. Accordingly, Plaintiffs' Objections are ripe for review by this Court. In considering Plaintiffs' Objections, this Court not only reviewed the briefing with regard to Plaintiffs' Objections but also reviewed the materials which were presented to the Special Master.[2] The Court understands the Special Master's Report and

---

[1] The unredacted version of Pls' Objections was sealed because it discussed some materials designated as Confidential. A redacted version was filed at ECF No. 14. Because the Court is not citing to the Confidential materials, this Memorandum Opinion is not sealed.

[2] In connection with this Memorandum Opinion, in addition to the aforementioned documents, the Court considered the following documents: Plaintiffs' Motion to Compel and accompanying exhibits 1-15; Delta's Opposition to the Motion to Compel and exhibits A-K; Plaintiffs' Reply to Delta's Opposition and exhibit 16; Transcript of the July 2, 2019 telephonic oral argument before the Special Master; July 22, 2019 email correspondence from the Parties providing the Special Master with additional information; and July 25, 2019 email correspondence with information requested by the Special Master. These materials were provided *in camera* to the Court.

Recommendation in light of the briefing initially made by Plaintiffs regarding their motion to compel, which has since been clarified and refined through briefing on Plaintiffs' Objections. For the reasons explained herein, the Court ADOPTS IN PART, OVERRULES IN PART, and REMANDS IN PART to the Special Master Report and Recommendation No. 9.

The two contested issues before this Court involve the production of Delta's fuel costs data, and production of Delta's hurdle rates. Beginning with fuel costs data, this Court notes that Plaintiffs issued document requests ("RFPs") seeking documents sufficient to show:

- [Delta's] costs . . . by category and the components of such costs . . . (RFP No. 13(c))
- the costs [Delta] paid for jet fuel, including any hedging of fuel prices, pre-hedge or post-hedge price. . .(RFP No. 28) and
- a detailed breakdown of all cost components. . . including but not limited to fuel costs. . . (RFP No. 36)

Plaintiffs assert that Delta responded to their requests by producing "a single line item that aggregated all of Delta's costs related to fuel - that is, by cost category, not by cost component." Pls.' Objections, ECF No. 417, at 8. Plaintiff notes that the cost components include the cost of jet fuel purchased, cost of services to transport jet fuel from storage to plane, fuel taxes, costs paid to enter into fuel hedges, and losses (or gains) resulting from the variance between actual and hedged fuel prices. *Id.*

The Report and Recommendation notes that because Plaintiffs did not clearly distinguish between costs and prices in its RFPs, Delta interpreted Plaintiffs' requests by using its own internal terminology and subsequently, Delta produced information in an aggregate format. The Report

2

and Recommendation further indicates that there was a two-year discovery period following service of Plaintiffs' requests, during which "the parties exchanged numerous, detailed letters and emails about the RFPs" and held multiple meet and confer sessions in an "attempt to reach a consensus on the scope of the document production."  Report and Recommendation No. 9, ECF No. 411, at 2.  Notably, only one of the many questions posed by Plaintiffs to Delta concerned the designation "fuel' and whether it was "net of hedging."  *Id.* at 3.

The Court finds a general lack of clarity in Plaintiffs' RFPs, which left them open to interpretation by Delta.  Neither does it appear that Plaintiffs focused on the responsiveness of Delta's production in as timely a manner as they should have nor were Plaintiffs crystal clear in their communications with Delta regarding the granular level of detail that was being requested.  In attempting to reconstruct the negotiations between the parties, the Court is left with the impression that there was little agreement on the manner in which terms relating to costs and pricing were defined/used or on identifying distinctions between cost categories and components of costs, with the effect that responsive information was produced by Delta, but its usefulness to Plaintiffs is limited.  The Court notes that while Delta asserts that Plaintiffs raise a new argument with regard to cost categories and components, the record in this case indicates that there was a discussion of cost components and costs categories in connection with the briefing on the underlying motion to compel and the exhibits accompanying that briefing.

Plaintiffs' Objections focus on RFP 28, and as such, the Court will not revisit Plaintiffs' RFPs 13 and 36.  The Court finds, however, that Plaintiffs' RFP 28 — which specifies jet fuel and asks for pre-hedge and post-hedge prices — is specific enough to require that Delta provide data that will permit Plaintiffs to discern the actual purchase cost for fuel and variance between price

paid and hedged prices. According to the Plaintiffs, Delta possesses this fuel cost data at a more granular level, which will permit these inquiries to be answered. The Court notes that Delta has not indicated that production of such data on a more granular level will be unduly burdensome. In contrast, Plaintiffs' need for this information requested in RFP 28 — actual fuel costs, excluding ancillary costs — will "allow Plaintiffs to identify whether and when Delta's costs for fuel purchases rose or fell, and whether and the extent to which those costs were offset by hedging." Pls.' Objections, ECF No. 417, at 15. "This will allow Plaintiffs' experts to control for the effect of fuel purchase costs on airfares in their regression models to assess whether the alleged conspiracy elevated fares." *Id.* (citations omitted). Accordingly, with regard to fuel price data, the Court adopts the Special Master's recommendations as to resolution of Plaintiffs' RFPs 13 and 36, and the Court overrules the recommendations as to resolution of Plaintiffs' RFP 28. That issue shall be remanded to the Special Master for oversight of Delta's production of more granular information in response to Plaintiffs' RFP 28.

The Court turns next to production of Delta's hurdle rates, which hinge on Plaintiffs' RFP 10. That RFP was modified by the parties to require production of "documents that refer to or describe the policies, methods, formulas or algorithms used to price domestic airlines passenger transportation services . . ." Report and Recommendation, ECF No. 411, at 10 (citations omitted). Plaintiffs indicate that they learned during Delta's Rule 30(b)(6) deposition that Delta maintains historical "hurdle rates" data by transaction, where hurdle rates reflected "the minimum dollar value that Delta is willing to accept" for a particular flight, and they moved to compel production of that data pursuant to RFP 10. Pls.' Objections, ECF No. 417 at 2 (citing Transcript of Oral Hearing ("Tr.") at 66:1-22) (additional citations omitted). Plaintiffs theorize that the Report and

4

Recommendation "faults" Plaintiffs for first learning of hurdle rates in Delta's Rule 30(b)(6) deposition, but that theory is discredited by this Court as the Special Master specifically noted that Plaintiffs' discovery strategy was <u>not</u> used as a basis to recommend denying its motion to compel.

The Special Master found that Plaintiffs understood "hurdle rates" to be a "pricing mechanism," which was described as equivalent to the "minimum dollar value that Delta is willing to accept on [a] particular leg for [a] particular time, departure date, [and] flight [in a] booking period." Report and Recommendation, ECF No. 411, at 10. In contrast, during oral argument, Plaintiffs styled hurdle rates as a "policy" with respect to each flight and booking request. *Id.* at 11. The Special Master found that hurdle rates were not responsive to Request No. 10, and he noted that it appeared that Delta had produced what Plaintiffs requested in RFP 10. *Id.* at 12.[3]

Plaintiffs assert that, even after oral argument, it was unclear what hurdle rates represented insofar as Delta indicated that they are "sort of an internal reference mechanism." Pls.' Objections, ECF No. 417, at 3 (citing Tr. at 82:20-83:2). In their Objections, Plaintiffs request <u>clarification</u> and <u>articulation</u> by Delta as to their definition of hurdle rates since there is no apparent agreement on this subject. "If Plaintiffs are to be deprived of this information that is well within the scope of Request 10, both Delta and the R&R9 should be able to articulate what the data *do* refer to [but] [n]either does." Pls' Objections, ECF No. 417, at 4. Notably absent from Delta's Response to Plaintiffs' Objections is any definition or clear explanation of what hurdle rates are, and in fact, Delta makes clear its position that '[i]t is not Delta's burden, and certainly not the Special Master's

---

[3] In their Reply, ECF No. 419-1, at 5, Plaintiffs indicate that they "do dispute that Delta produced *actual* pricing policies, algorithms, methods, formulas" as opposed to documents "about" various pricing tools. Reply, ECF 419-1, at 5 & n. 9.

5

burden," to "adequately explain what hurdles rates 'refer to.'" Delta's Response, ECF No. 416, at 3-4. This Court finds this assertion by Delta flawed because without knowing how Delta defines hurdle rates, the Court is unable to determine if hurdle rates fall within the scope of Plaintiffs' RFP 10.[4]

In its Response to Plaintiffs' Objections, Delta relies first on the fact that hurdle rate [data] was determined to be non-responsive to RFP 10 pursuant to the Report and Recommendation. Delta argues that Plaintiffs may not now "rewrite" their definition of hurdle rates to cover anything used by Delta to price services, and Delta asserts further that Plaintiffs already have testimony and documentary evidence referring to or describing how hurdle rates are used. Delta focuses next on the fact that because hurdle rate [data] "consists of a field containing a numerical value for the hundreds of millions of tickets for which Delta has already produced detailed data," by its very nature, the hurdle rate values do not "refer to or describe [ ] policies, methods, formulas or algorithms." Delta's Response, ECF No. 416, at 3. Delta contends further that because the parties agreed RFP 10 did not request structured data, and hurdle rate data is structured data, production of such data is outside the scope of the agreement with respect to RFP 10. The Court finds too inflexible Delta's arguments that this data need not be produced simply because it is "data," and the parties agreed that Request No. 10 would generate documents versus data, particularly where "hurdle rates" have been left undefined.

---

[4] Plaintiffs note that Delta has produced some hurdle rate data during the course of its production of documents. Pls.' Objections, ECF No. 417, at 5 (referencing Delta's Exs. H, I, and J). Delta indicates however that "hurdle rate data" has never been produced although some documents produced for other purposes do reference hurdle rates. Delta's Response, ECF No. 416, at 5 & n. 4.

With regard to the relevance of the hurdle rates, Plaintiffs state that it is "self-evident," Pls.' Objections, ECF No. 417, at 5, as this is a case alleging an agreement to reduce capacity, where capacity was a "factor used to establish Delta's hurdle rates." Pls.' Objections, ECF No. 417, at 6 (citing Tr. at 72:5-18). Delta contests Plaintiffs' "[n]ew [a]rgument[]" that relevance is 'self-evident.'" Delta's Response, ECF No. 416, at 5. The Court does not view this assertion by Plaintiffs as a "new argument" nor does it rely on this assertion; instead, the Court relies on the record in this case. More specifically, Plaintiffs indicate that "the [hurdle rate] data will "show how capacity changes affected the lowest price that Delta would accept over time." Pls.' Objections, ECF No. 417, at 6 (Tr. at 72:5-18). Plaintiffs contend that hurdle rates "directly link airfares —by setting a floor —to available capacity," and these data go to the "common impact which Plaintiffs must establish at class certification." Pls.' Objections, ECF No. 417, at 6. Moreover, hurdle rates are "relevant as the actual prices paid [for airfare] because [Plaintiffs] need to understand . . . how and whether capacity changes were [a]ffecting the hurdle [rate] and whether that minimum floor price went up over time." *Id.* (citing Tr. at 72:19-73:7).

Upon review of the information and arguments pertaining to production of hurdle rates, the Court finds that the best course of action is to remand this issue to the Special Master, with instructions that Delta shall clarify and articulate its definition of "hurdle rates." After such clarification/articulation has been provided, the parties will be in a better position to determine whether or not this hurdle rate data is responsive to RFP 10, and the Special Master may make his recommendation, in light of this additional information. In the event that the Special Master determines that production of hurdle rates are appropriate, Plaintiffs acknowledge that production of this information would be voluminous. The Court notes however that Delta has not argued that

7

production would be unduly burdensome, and any burden must be weighed against Plaintiffs' need for the information.

In summary, this Court orders that the Special Master's Report and Recommendation be upheld as to resolution of Plaintiffs' RFPs 13 and 36. Delta shall provide Plaintiffs with granular information that is responsive to RFP 28, with the Special Master overseeing the timing and method of such production. With regard to the hurdle rates, this issue is remanded to the Special Master with instructions for Delta to clarify and articulate its definition of hurdle rates so that the parties can better determine whether such hurdle rates fall within the scope of Plaintiffs' RFP 10, and the Special Master can make his recommendation in light of this additional information.

The arguments presented by Plaintiffs in their [417] Objections and [419-1] Reply to Delta's Response were not viewed by this Court as being "new" arguments but were instead treated as refinements to prior arguments. This should not however establish a precedent for future briefing by the parties insofar as arguments relied upon by the parties should be fully and completely raised in detail before the Special Master.


Dated: November 6, 2019 _____/s/_____
COLLEEN KOLLAR-KOTELLY
UNITED STATES DISTRICT JUDGE