UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN RE DOMESTIC AIRLINE TRAVEL ANTITRUST LITIGATION | **MDL Docket No. 2656**<br>**Misc. No. 15-1404 (CKK)** |
| This Document Relates To:<br><br>ALL CASES | |

**MEMORANDUM OPINION**
(September 29, 2025)

This multidistrict litigation involves claims that, during the period January 2009 through mid-2015, four major airlines — Southwest Airlines Co. ("Southwest"), American Airlines, Inc. ("American"), Delta Air Lines, Inc. ("Delta"), and United Airlines, Inc. ("United") — colluded to limit capacity on their respective airlines in a conspiracy to fix, raise, maintain, and/or stabilize prices for domestic flights in violation of Sections 1 and 3 of the Sherman Antitrust Act (15 U.S.C. §§ 1, 3), and that Plaintiff Class Members paid artificially inflated ticket prices as a result of this alleged antitrust violation. On May 13, 2019, after holding a fairness hearing, this Court issued an [373] Order Approving Plaintiffs' Motion for Final Approval of Settlement Agreements with Settling Defendants' Southwest and American, accompanied by a [374] Memorandum Opinion which explained the rationale for the Court's decision. This litigation continued to proceed regarding Plaintiffs' claims against Non-Settling Defendants' Delta and United (hereinafter referred to collectively as "Defendants"). The parties engaged in discovery, and Defendants filed extensive summary judgment motions, with hundreds of exhibits.

On September 5, 2023, this Court issued its [615] Memorandum Opinion and [614] Order

1

denying the motions for summary judgment filed by Defendants Delta and United.[1] In its discussion of the legal standard, the Court acknowledged that in order to survive Defendants' motion for summary judgment, Plaintiffs had to prove a "pattern of parallel behavior" <u>as well as</u> "the existence of one or more plus factors that tends to exclude the possibility that the alleged conspirators acted independently." Mem. Op., ECF No. 615, at 18 (citations omitted). Before beginning its analysis of the arguments made by the parties, the Court outlined the arguments presented by Defendants:

> (A) there is no evidence of parallel capacity behavior because (1) Defendants' domestic system capacity changes differed substantially and sometimes exceeded GDP; (2) Defendants' capacity growth rates did not deviate from historical patterns; (3) Moving Defendants' competition at the route level and in other hubs defies an inference of conspiracy; (4) Plaintiffs have no evidence of punishment for Moving Defendants' [in this case, Delta's] above-GDP capacity growth; (5) there is no evidence of Delta/Defendants engaging in private conspiratorial communications; and (B) Moving Defendants had legitimate, non-conspiratorial reasons for their capacity actions and statements about capacity, which do not exclude the possibility of independent action and unilateral self-interest; and (C) Plaintiffs' plus factors are equally consistent with independent action because they hold true for other airlines.

*Id.* at 20.

This Court undertook an analysis of these arguments (in the same order in which the arguments were presented by Defendants), and the Court considered also Plaintiffs' counterarguments, as well as the exhibits relied upon by both sides. At the end of its 70-page opinion, the Court concluded that "Plaintiffs ha[d] presented enough evidence demonstrating a pattern of parallel behavior and the existence of one or more plus factors (that tend to exclude the possibility that Defendants acted independently) to survive Moving Defendants' motions for

---

[1] The Court incorporates by references its [615, redacted public version] Memorandum Opinion.

2

summary judgment." Mem. Op., ECF No. 615, at 70.

Pending before this Court are Defendants' [617] Motion for Certification for Interlocutory Appeal and [618] Motion for Reconsideration of this Court's Order denying summary judgment.[2] Defendants' motion is based on their allegation that "the Court made two legal rulings that directly conflict with clear legal precedent from every Circuit that has considered the issues raised in this motion," Defs.' Mot., ECF No. 617, at 7, namely (as stated by Defendants), (1) that "parallel actions by competitors (in this case, airlines) to increase price or limit output can by itself create an inference of a conspiracy," *id.* at 8, and (2) that "Defendants did not have a legitimate business interest in making public statements to investors about their 'forward-looking capacity plans' because the statements were useless to consumers." *Id.* at 9. In connection with the second alleged ruling, Nasdaq, Inc. ("Nasdaq") and the New York Stock Exchange, LLC. ("NYSE") (collectively, the "non-parties") filed their [621] Motion for Leave to File Amicus Brief, whereby they seek "to be heard in this matter to stress that, . . ., public companies have legitimate business reasons for disclosing information to investors about their forward-looking business plans and prospects, even

---

[2] In connection with this Opinion, the Court considered: (1) Non-Settling Defendants' [617] Motion for Certification for Interlocutory Appeal, which is consolidated with its Motion for Reconsideration (although the reconsideration motion is assigned ECF No. 618, for docketing purposes only) ("Defs.' Mot."); (2) Plaintiffs' [619] Opposition to Defendants' Motion ("Pls.' Opp'n"); (3) Defendants' [620] Reply to Plaintiffs' Opposition ("Defs.' Reply"); (4) Non-parties' New York Stock Exchange and Nasdaq, Inc.'s [621] Motion for Leave to File Amicus Brief ("Amicus Mot."); (5) Plaintiffs' [624] Opposition to the Amicus Motion ("Amicus Opp'n"); (6) United's [639] Notice of Supplemental Authority ("Supp. 1"); (7) Plaintiffs' [640] Response to Supplement 1("Resp. to Supp. 1"); (8) Delta's [641] Notice of Supplemental Authority ("Supp. 2"); (9) Plaintiffs' [642] Response to Supplement 2 ("Resp. to Supp. 2"); and (10) the record in this case. In an exercise of its discretion, the Court finds that holding oral argument in this action would not be of assistance in rendering a decision. *See* LCvR 7(f).

if that information is not useful to end consumers, such as, in this case, airline passengers." Amicus Mot., ECF No. 621, at 3.

Upon consideration of the pending motions, and for the reasons set forth herein, this Court DENIES Defendants' [617] Motion for Certification for Interlocutory Appeal and [618] Motion for Reconsideration and DENIES the non-parties' [621] Motion for Leave to File Amicus Brief. Below, the Court will address each motion, in turn. A separate Order accompanies this Memorandum Opinion.

I. Motion for Certification for Interlocutory Appeal

A. Legal Standard

Pursuant to 28 U.S.C. § 1292(b), a District court may certify an order for immediate appeal if: (1) it involves a controlling question of law; (2) a substantial ground for difference of opinion exists; and (3) immediate appeal would materially advance the ultimate termination of the case. *In re Rail Freight Fuel Surcharge Antitrust Litig.* ("*Rail Freight*"), Civ. No. 11-1049 (PLF), 2021 WL 2433737, *4 (D.D.C. June 15, 2021); *Citizens for Resp.& Ethics in Washington v. Am. Action Network* ("*CREW*"), 415 F. Supp. 3d 143, 144-45 (D.D.C. 2019) (citation and quotation marks omitted). This provision represents a departure from "the basic policy of postponing appellate review until after the entry of a final judgment," *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 475 (1978) (internal citation omitted) and provides an avenue for review of certain nonfinal orders "deemed pivotal and debatable." *Swint v. Chambers Cnty. Comm'n*, 514 U.S. 35, 46 (1995).

A "question of law" is defined as "an abstract legal issue or what might be called one of pure law, matters the court of appeals can decide quickly and clearly without having to study the record." *Rail Freight*, 2021 WL 2433737 at *4 (citations and internal quotation marks omitted).

4

In contrast, "[w]here the crux of an issue decided by the Court is fact-dependent, the Court has not decided a controlling question of law justifying immediate appeal," and "certification of the underlying legal question could only result in the court of appeals improperly wading into the factual pond of an ongoing matter." *Keystone Tobacco Co. v. U.S. Tobacco Co.*, 217 F.R.D. 235, 239 (D.D.C. 2003) (internal quotation marks omitted).

"Controlling" means the District Court's ruling on the certified issues "would require reversal if decided incorrectly" or "could materially affect the course of litigation with resulting savings of the court's or the parties' resources." *APCC Servs., Inc. v. Sprint Commc'ns Co., L.P.*, 297 F. Supp. 2d 90, 95-96 (D.D.C. 2003). "[R]esolution of an issue need not necessarily terminate an action in order to be controlling, but instead may involve a procedural determination that may significantly impact the action." *Rail Freight*, 2021 WL 2433737, at *4 (citation omitted). "A steadily growing number of decisions. . . have accepted the better view that a question is controlling . . . if interlocutory reversal might save time for the district court, and time and expense for the litigants." 16 Charles A. Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice & Procedure § 3930 at 426 (1996). Additionally, the "impact that the appeal will have on other cases is also a factor supporting a conclusion that the question is controlling." *APCC Servs.*, 297 F. Supp. 2d at 96.

The second requirement of "substantial ground for difference of opinion" is "often established by a dearth of precedent within the controlling jurisdiction and conflicting decisions in other circuits" or where the "challenged decision conflicts with decisions of several courts." *Id.* at 97 (citation omitted). A court can grant a Section 1292(b) certification even if it is "confident in its rulings," *Rail Freight*, 2021 WL 2433737, at *9; it need only conclude that "'the arguments

5

in support of contrary conclusions are not insubstantial.'" *Id.* (quoting *APCC Servs.*, 297 F. Supp. 2d at 98).

The requirement that "immediate appeal from the order may materially advance the ultimate termination of the litigation" is satisfied in cases where "reversal would hasten or at least simplify the litigation in some material way, such as by significantly narrowing the issues, conserving judicial resources, or saving the parties from needless expense." *Id.* at *5 (quoting *Matlock v. Whole Foods Mkt. Grp.*, 317 F. Supp. 3d 1, 6 (D.D.C. 2018)). Interlocutory review is warranted where "the interest in avoiding excessively burdensome and expensive litigation is 'significant relative to the efficiency interests sought to be advanced by adherence to the final judgment rule.'" *APCC Servs.*, 297 F. Supp. 2d at 110 (quoting *United States v. Philip Morris Inc.*, 314 F.3d 612, 617 (D.C. Cir. 2003)).

The party seeking interlocutory review also bears a "heavy burden to show that 'exceptional circumstances justify a departure from the basic policy of postponing appellate review until after the entry of final judgment.'" *CREW*, 415 F. Supp. 3d at 145 (quoting *Coopers & Lybrand*, 437 U.S. at 475); *see also Azima v. RAK Inv. Auth.*, 325 F. Supp. 3d 30, 34-35 (D.D.C. 2018) ("The party who seeks an interlocutory appeal under section 1292(b) must not only satisfy the certification elements in a technical sense; it also bears the burden of showing that such exceptional circumstances justify a departure from the basic policy of postponing appellate review until after the entry of a final judgment.") (cleaned up). Considering this standard, "interlocutory appeals are rarely allowed." *CREW*, 415 F. Supp. 3d at 144 (citation omitted); *see also Anderson v. Duncan*, No. 06-1565, 2013 WL 12328768, at *1 (D.D.C. Nov. 15, 2013) ("Courts permit interlocutory appeals infrequently.")

B. Analysis

Defendants proffer that they meet the standard for certification for an interlocutory appeal because the Court's Order involves two alleged "controlling questions of law," upon which there is "a substantial difference of opinion," and they are "outcome determinative." As previously noted herein, Defendants assert that the Court held that (1) parallel conduct by competing oligopolists, standing alone, gives rise to an inference of an unlawful agreement; and (2) public statements to its investors must be "useful to consumers" to qualify as a legitimate, unilateral explanation for its conduct. Plaintiffs assert that Defendants "blatantly mischaracterize the Court's holdings" with the purpose of meeting "the exceedingly high bar for certification," Pls.' Opp'n, ECF No. 619, at 5, and the Court agrees that Defendants' characterizations of this Court's holdings are inaccurate.

As a preliminary matter, this Court notes that the legal standard set forth in its Memorandum Opinion made clear that, to successfully contest summary judgment on an antitrust conspiracy claim based on circumstantial evidence, the Plaintiffs must prove a pattern of parallel behavior <u>as well as</u> the existence of one or more plus factors that tend to exclude the possibility that the alleged conspirators acted independently. And, as previously noted herein, the Court denied summary judgment after considering the arguments and evidence and concluding that Plaintiffs demonstrated a pattern of parallel behavior and presented sufficient plus factor evidence (evidence that tends to exclude independent conduct) from which reasonable inferences of a conspiracy could be drawn.

Nevertheless, Defendants contend that this Court held that parallel conduct by competing

oligopolists, standing alone, gives rise to an inference of an unlawful agreement as their first alleged "controlling issue of law." In support thereof, Defendants, in their Motion, ECF No. 617, at 8, reference a partial sentence from the conclusion section of this Court's Memorandum Opinion (at pages 68-69) – which the Court attributed to Plaintiffs – and they conflate this partial sentence into their conclusion that this Court relied solely upon the parallel actions by competing airlines to find an inference of conspiracy.[3] Defendants' proffer not only ignores the discussion of evidence that follows this statement, Mem. Op., ECF No. 615, at 69-70, but it also disregards most of this Court's Memorandum Opinion, which included an analysis of: the applicable legal standard (*id.* at 17-19); discussion of the pattern of parallel behavior (*id.* at 21-33); consideration of Defendants' proffered arguments and evidence regarding conduct alleged to be inconsistent with a conspiracy[4] (*id.* at 33-47) and Defendants' proffered legitimate, non-conspiratorial reasons for their capacity actions and capacity statements[5] (*id.* at 47-62); in conjunction with consideration of Plaintiffs'

---

[3] In their Reply, Defendants elaborate on this reference and state that "[f]or this reason alone, the Court held that a factfinder could reasonably reject Defendants' independent explanations for their actions and conclude that 'Defendants' capacity actions were not unilateral but were instead coordinated in order to limit capacity and drive up prices.'" Defs.' Reply, ECF No. 620, at 7 (quoting Mem. Op., ECF No. 615, at 53). The Court notes that this quote is taken out of context. At the conclusion of the section on capacity actions, the Court noted that Defendants had "proffered economic justifications for their alleged unilateral capacity discipline actions," but that "Plaintiffs cast doubt on Moving Defendants' proffered [business] justifications through [plus factor] evidence that supports Plaintiffs' theory that Defendants' capacity actions were not unilateral but were instead coordinated in order to limit capacity and drive up prices." Mem. Op., ECF No. 615, at 53 (this followed a discussion of the parties' arguments and counterarguments on capacity actions as well as several of Plaintiffs' proffered plus factors).

[4] These included arguments that: (1) Defendants' capacity changes differed substantially and sometimes exceeded GDP; (2) Defendants engaged in competition on routes and at hubs; (3) there had to be some punishment mechanism to enforce any conspiracy; and (4) Defendants did not engage in private conspiratorial communications.

[5] These included assertions that: (1) Delta's capacity actions were a response to macro-economic conditions that it confronted as it emerged from bankruptcy and new leadership; (2) United's

8

proffered plus factors (*id.* at 63-68) (cross-referencing the sections where some plus factors were discussed and discussing others separately).

Furthermore, while Defendants assert that "every Circuit that has considered this issue has uniformly held that as a matter of law that conscious parallelism is normal in an oligopoly and not evidence that tends to exclude the possibility of independent conduct," Defs.' Mot., ECF No. 617, at 20-21, this Court does not disagree with that statement. *See* Mem. Op., ECF No. 615 at 18-19, 21-22 (discussing the legal standard for Sherman Act Section 1 antitrust claims); at 20-21 (discussing oligopolies).[6]

In connection with their Motion for Certification, Defendants filed two Notices of Supplemental Authority, neither of which is binding on this Court. The first is a decision by the Superior Court of Justice of Ontario, Canada, in *Gifford v. Air Canada*, 2025 INSC 3335, which dismissed with prejudice a plaintiff's motion for class certification in a case involving conspiracy allegations against airline defendants. Plaintiffs note correctly that this decision was made "during the pleading stage prior to any discovery on a bare-bones complaint devoid of facts and alleging an entirely different conspiracy," and it is therefore "entirely inapposite." Pls.' Resp. to Supp. 1, ECF No. 640, at 1. The second Supplemental Authority is a June 24, 2025 memorandum opinion by the Honorable Beryl A. Howell, which grants summary judgment in favor of defendants in the

---

focus was on long-term stability and a rational approach to profit-maximization after 2009, even if not expanding more rapidly sacrificed marginal revenues in the short-term; (3) airline management was focused on responsibly managing the business for shareholders' benefit and to attract long-term stability and to attract long-term capital investment; and (4) providing investors more information about Defendants' business prospects was necessary in order to attract capital investment.

[6] Defendants cite most extensively to *In Re Dynamic Random Access Memory (DRAM) Indirect Purchaser Antitrust Litigation*, 28 F.4th 42 (9th Cir. 2022), as "illustrative."

9

multi-district litigation *In re Rail Freight Fuel Surcharge Antitrust Litigation* ("*Rail Freight Fuel Surcharge*"), MDL Dkt. No. 1869, Misc. No. 07-489 (MDL I); MDL Dkt. No. 2925, Misc. No. 20-008 (MDL II); Civil Action No. 11-1049 [ECF No. 392].[7]

Defendants attempt to compare the rulings in that case to the case at bar, but because summary judgment, by necessity, involves an examination of the record evidence, the decision in the *Rail Freight Fuel Surcharge* case neither binds nor sways this Court.[8]

Reviewing Defendants' discussion regarding its first alleged "controlling question of law," the Court finds that much of it may be characterized as a reframing of what was argued in their motions for summary judgment – that their conduct was consistent with legitimate, unilateral business strategy. Defendants' disagreement with this Court's application of the law to the facts and evidence in this case, and the inferences that resulted therefrom, is an insufficient basis for certification for an interlocutory appeal. "'A mere claim that the district court's ruling was incorrect does not demonstrate a substantial ground for difference of opinion.'" *Rail Freight*, 2021 WL 2433737 at *5 (quoting *Singh v. George Washington Univ.*, 383 F. Supp. 2d 99, 104 (D.D.C. 2005)). Accordingly, regarding Defendants' proffered first "controlling issue of law," the Court finds that Defendants have not satisfied the first and second prongs of Section 1292(b).

Nor does Defendants' second proffered "controlling issue of law" fare better. Defendants assert that this Court held that public statements to its investors must be "useful to consumers" to

---

[7] That opinion is attached to Defendants' Supplement 2, at ECF No. 641-1. The Court notes that an appeal has been filed by Defendants in the *Rail Freight Fuel Surcharge* case.

[8] As part of some string cites in connection with its discussion of legal standards, the *Rail Freight Fuel Surcharge* court referenced this Court's summary judgment opinion. *See* ECF No. 641-1, at 39, 41, 43, 44.

10

qualify as a legitimate, unilateral explanation for its conduct. In support thereof, Defendants reference one sentence from this Court's Memorandum Opinion, where the Court noted that it "agree[d] that Defendants' announcement about forward-looking capacity plans and the Defendants' alleged need for and their commitment to capacity discipline were 'useless to consumers.'" Mem. Op., ECF No. 615, at 58. Immediately thereafter, the Court commented that there is a "disconnect between what benefits airlines and their investors and what benefits consumers." *Id.* (emphasis added). That was the end of the Court's "consideration" of that topic. The Court notes that this discussion about interests of "consumers versus investors" arose in the context of Plaintiffs' reliance on the *Petroleum Products* case (which was cited by all parties in their briefs), and further, that the Court noted Delta's factual distinction of that case. *Id.* at 57-58. Nowhere did the Court hold that public statements to investors must be useful to consumers to qualify as a legitimate, unilateral explanation for Defendants' conduct. Moreover, this misstatement by Defendants ignores most of the Court's discussion of capacity statements, including its analysis of Plaintiffs' proffered plus factors that such statements expressed commitment to a common plan and Defendants shared competitively sensitive data. Mem. Op., ECF No. 615, at 53-62. Additionally, Defendants' statement is contrary to this Court's conclusion [after consideration of Defendants' arguments and Plaintiffs' counter-arguments] that "Plaintiffs have presented evidence about the manner, purposes, and effects of sharing capacity information that tends to exclude the possibility that it was merely part of the normal course of business – informing investors and keeping track of competitors – rather than unifying and pressuring Defendants to keep capacity low to drive up prices. . . ." *Id.* at 62.

Accordingly, this Court concludes that Defendants' second alleged "controlling issue of

11

law" is not a controlling issue of law, but rather, a misstatement that gives rise to the reiteration of Defendants' arguments regarding their proffered legitimate business interests in communicating with investors. As previously noted, Defendants' inaccurate characterization of, and expressed disagreement with, this Court's rulings are not sufficient grounds for the certification of an interlocutory appeal.[9]

Accordingly, for the reasons set forth herein, Defendants' Motion for Certification for Interlocutory Appeal is denied. The Court turns now to Defendants' alternative request for reconsideration, beginning with the legal standard.

II. Motion for Reconsideration

A. Legal Standard

A moving party seeking reconsideration under Federal Rule of Civil Procedure 54(b) must demonstrate "'(1) an intervening change in the law; (2) the discovery of new evidence not previously available; or (3) a clear error in the first order' to justify reconsideration." *Williams v. Walsh*, 619 F. Supp. 3d 48, 57 (D.D.C. 2022) (quoting *Lyles v. District of Columbia*, 65 F. Supp. 3d 181, 188 (D.D.C. 2014)). The moving party also bears "the burden of proving that some harm would accompany a denial of the motion to reconsider." *Loumiet v. United States*, 65 F. Supp. 3d 19, 24 (D.D.C. 2014) (Kollar-Kotelly, J.) "In order for justice to require reconsideration, logically,

---

[9] The Court notes that it does not disagree generally with the proposition that an "immediate appeal [of decisions denying summary judgment] may materially advance the ultimate termination of litigation, which is the third Section 1292(b) factor. However, in this case, the Court notes that, in presenting their arguments, Defendants challenged certain evidence discussed by this Court and the way this Court weighed that evidence, making any appeal more fact-intensive than one involving a question of "pure law, [which is a] matter the court of appeals can decide quickly and cleanly without having to study the record." *Arias v. DynCorp.*, 856 F. Supp. 2d 46, 53-54 (D.D.C. 2022) (quotation and internal quotation marks omitted).

it must be the case that, some sort of "injustice" will result if reconsideration is refused. That is, the movant must demonstrate that some harm, legal or at least tangible, would flow from a denial of reconsideration.'" *Cobell v. Norton*, 355 F. Supp. 2d 531, 540 (D.D.C. 2005).

Relief under Rule 54(b) is available "as justice requires." *Capitol Sprinkler Inspection, Inc. v. Guest Servs.*, 630 F.3d 217, 227 (D.C. Cir. 2011); *Citibank (S.D.), N.A. v. Fed. Deposit Ins. Corp.*, 857 F. Supp. 976, 981 (D.D.C. 1994). Reconsideration is "within the discretion of the trial court." *Id.*

B. Analysis

While Defendants cite the legal standard for a motion for reconsideration, they do not otherwise specifically address their request for reconsideration in their consolidated briefing. Defs.' Mot., ECF No. 617, at 12. Rather, they indicate generally that "the requirements for certification or reconsideration are met here," before proceeding to discuss the specific requirements set forth in Section 1292(b). Defs.' Mot., ECF No. 617, at 13. In this case, Defendants point to no intervening change in the law or discovery of any new evidence, and therefore, the Court presumes that they are claiming the "clear error" that was proffered in connection with their request for certification for an interlocutory appeal. As to Defendants' burden to demonstrate some sort of harm, they noted that this matter involves "considerable expense," and the parties bear the burden of having to proceed with class certification and trial. Defs.' Mot., ECF No. 617, at 14.

Because Defendants rely on the same arguments in support of their request for certification as in their request for reconsideration, the motion for reconsideration should be denied for the similar reasons. In sum, Defendants misstate the Court's holdings and attempt to reargue theories

13

previously argued by them and addressed by the Court. This is not grounds for reconsideration, which "cannot be used as 'an opportunity to reargue facts and theories upon which a court has already ruled, nor as a vehicle for presenting theories or arguments that could have been advanced earlier.'" *Loumiet*, 65 F. Supp. 3d at 24 (quoting *Estate of Gaither ex rel. Gaither v. District of Columbia*, 771 F. Supp. 2d 5, 10, n.4 (D.D.C. 2011)). Nor is it sufficient grounds for reconsideration where a party disagrees with the court's analysis. *United States v. Nelson*, 59 F. Supp. 3d 15, 20 (D.D.C. 2014); *Abulhawa v. United States Dep't of Treasury*, No. 15-2186, 2017 WL 2465045, at *2 (D.D.C. June 7, 2017). Accordingly, Defendants' request for reconsideration is denied. Finally, the Court turns to the issue of filing of an amicus brief.

III. Motion to File Amicus Brief

A. Legal Standard

Pursuant to Local Civil Rule 7(o)(1), a party seeking to file a brief as *amicus curiae* may do so upon leave of court. More specifically, LCvR7(o)(1) states:

> A motion for leave to file an amicus brief shall concisely state the nature of the movant's interest; identify the party or parties supported, if any; and set forth the reasons why an amicus brief is desirable, why the movant's position is not adequately represented by a party, and why the matters asserted are relevant to the disposition of the case. The motion shall state the position of each party as to the filing of such a brief and be accompanied by a proposed order. The motion shall be filed in a timely manner such that it does not unduly delay the Court's ability to rule on any pending matter. Any party may file an opposition to a motion for leave to file an amicus brief, concisely stating the reasons for such opposition, within 14 days after service of the motion or as ordered by the Court. There shall be no further briefing unless otherwise ordered by the Court.

"[D]istrict courts possess the inherent authority to appoint 'friends of the court' to assist in their proceedings." *In re Bayshore Ford Truck Sales, Inc*, 471 F.3d 1233, 1249 n.34 (11th Cir. 2006). "District courts have inherent authority to appoint or deny *amici* which is derived from Rule

14

29 of the Federal Rules of Appellate Procedure." *Jin v. Ministry of State Security*, 557 F. Supp. 2d 131, 136 (D.D.C. 2008) (citation omitted).

B. Analysis

The role of parties filing an amicus brief is to assist the court "in cases of general public interest by making suggestions to the court, by providing supplementary assistance to existing counsel, and by insuring a complete and plenary presentation of difficult issues so that the court may reach a proper decision." *Newark Branch, N.A.A.C.P. v. Town of Harrison*, 940 F.2d 792, 808 (3d Cir. 1991). In the instant case, non-parties NYSE and Nasdaq move for leave to file an Amicus Brief focused on Defendants' "legitimate business interest in making disclosures to investors about their 'forward-looking capacity plans.'" Amicus Mot., ECF No. 621, at 1. The Court notes that the reason for this filing is to provide support for Defendants' motion for certification, and more specifically, support for Defendants' second proffered finding of fact therein (regarding information being "useless to consumers"). The Amicus Motion is denied by this Court on several grounds. First, herein, this Court has indicated that Defendants' proffered finding of fact mischaracterizes this Court's ruling, and accordingly, that the motion for certification shall be denied. Second, the Amicus Motion is untimely, as it was filed well after the briefing on summary judgment, and it is unnecessary, considering the record in this case and particularly, that the information presented in the proposed amicus brief mirrors what was already argued by Defendants in their summary judgment briefs. Accordingly, the non-parties' motion to file an amicus brief is denied. A separate Order accompanies this Memorandum Opinion.

_____
COLLEEN KOLLAR-KOTELLY
UNITED STATES DISTRICT JUDGE

15